ROBERT H. PITTMAN #172154
County Counsel
MICHAEL A. KING #77014
Deputy County Counsel
County of Sonoma
575 Administration Drive, Room 105A
Santa Rosa, California 95403
Telephone: (707) 565-2421
Facsimile: (707) 565-2624
E-mail: michael.king@sonoma-county.org

Attorneys for Defendant
COUNTY OF SONOMA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD CUPP, an individual | **Case No. 4:23-cv-01007** |
| Plaintiff, | |
| vs. | **DEFENDANT'S REQUEST TO TAKE JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS** |
| COUNTY OF SONOMA, a municipal corporation; TENNIS WICK, in his individual and official capacities; TYRA HARRINGTON, in her individual and official capacities; MARK FRANCESCHI, in his individual and official capacities; TODD HOFFMAN, in his individual and official capacities; JESSE CABLK, in his individual and official capacities; ANDREW SMITH, in his individual and official capacities DOES 1-50, inclusive | Date: June 29, 2023 Time: 2:00 p.m. Courtroom: 6, 2nd Floor Judge: Jon S. Tigar |
| Defendants. | |

This Request for Judicial Notice is brought by Defendants County of Sonoma,

("Defendant") in connection with their Motion to Dismiss Complaint, being filed concurrently

herewith, which is noticed for hearing on June 29, 2023. In this request, Defendant asks the

Court to take judicial notice of the facts and documents identified below pursuant to Federal

Rule of Evidence 201, as such facts are not subject to reasonable dispute herein and are capable

1   of accurate and ready determination by resorting to sources whose accuracy cannot reasonably

2   be questioned.

3          When considering a motion to dismiss brought under Rule 12(b)(6), a Court may

4   consider undisputed matters of public record through a request for judicial notice, including state

5   court records. (*United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc*., 971

6   F.2d 244, (9th Cir. 1992); *Busch v. Torres,* 905 F. Supp. 766, 769, fn. 1 and 2 (C.D. Cal. 1995).)

7   In addition, the Court may take judicial notice of documents that are referenced in a complaint

8   and made part of its claims:

9          Although generally the scope of review on a motion to dismiss for failure to state a claim

10  is limited to the Complaint, a court may consider evidence on which the complaint necessarily

11  relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's

12  claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.

13  [citation omitted] The Court may treat such a document as part of the complaint, and thus may

14  assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).

15  [citation omitted]. (*Daniels-Hall v. Natl's Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010)

16  (internal quotation marks omitted).)

17         Pursuant to these authorities, Defendants seek judicial notice of the following categories

18  of public records, as described below.

19         1.  Dismissal and Judgment in United States District Court, Northern District, Case No.
20             4:20-cv-03456;

21         2.  Voluntary Dismissal in United States District Court, Northern District, Case No. 22-
22             cv-04307-TSH;

23         3.  Decision of Administrative Hearing Officer on February 11, 2021;

24         4.  Official public record, County of Sonoma Permit and Resource Management Dept.
25             ("Permit Sonoma")- publicly available; recent status;

26         5.  Vexatious litigant list (first page and page with Plaintiff's name) maintained by the
27             Judicial Council of California available at:
28             https://www.courts.ca.gov/documents/vexlit.pdf

6.  *Cupp v. Azzouni*, 2014 U.S. Dist. LEXIS 65183 (N.D. Cal. 2014)

7.  Order Granting Motion to Dismiss, *Cupp v. Straley*, Case No. 15-cv-01565-JD;

8.  Order Granting Summary Disposition, *Cupp v. Straley*, 2016 U.S. App. LEXIS 24088 (9th Cir. 2016)

9.  Orders in Alameda Superior Court denying request to vacate vexatious litigant status and in Sonoma Superior Court denying filing of writ Complaint.

10. California Court of Appeals Order denying petition for writ action to reverse lower court order denying filing.

WHEREFORE, Defendant requests judicial notice of these documents, and certain information contained therein, for consideration in connection with their Motion to Dismiss Complaint and Motion for Summary Judgment, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: April 4, 2023                    ROBERT H. PITTMAN, County Counsel

By:  /s/ *Michael A. King*
       Michael A. King
       Deputy County Counsel
       Attorneys for County of Sonoma

EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RONALD CUPP,

              Plaintiff,

     v.

ANDREW SMITH,

              Defendant.

Case No.  20-cv-03456-PJH

**ORDER OF DISMISSAL WITH PREJUDICE**

Re: Dkt. No. 143

Before the court is the parties' stipulation to dismiss this lawsuit with prejudice under Federal Rule of Civil Procedure 41(a)(1)(ii).  This case has been thoroughly litigated, and trial is set to begin in less than one week, on April 3, 2023.  The sole remaining claim is brought under Title 42 U.S.C. § 1983 for alleged breach of plaintiff's Fourth Amendment rights based on defendant Andrew Smith's February 15, 2019, inspection/search of the property at 4640 Arlington Avenue in Santa Rosa, California. Plaintiff has made clear that the claim is against Smith in both his personal and official capacity.  Dkt. 1, Dkt. 38 (SAC ¶ 8), Dkt. 129.  In light of the parties' agreement, the court ORDERS that this case is hereby DISMISSED WITH PREJUDICE as to all claims, causes of action, and parties, including against Smith in his personal and official capacity.

The parties' stipulation states, "Defendant reserves the right to request an award of fees and/or costs as allowed by the Court; Plaintiff reserves the right to oppose such request."  Dkt. 43 at 1.  Defendant, as the prevailing party, may submit a bill of costs in accordance with Federal Rule of Civil Procedure 54 and Civil Local Rule 54.  Plaintiff may object in accordance with those same Rules.

On the other hand, attorneys' fees may be awarded against an unsuccessful § 1983 plaintiff only "in exceptional circumstances" where the court finds "the plaintiff's action was frivolous, unreasonable, or without foundation." Harris v. Maricopa Cnty. Superior Ct., 631 F.3d 963, 968 (9th Cir. 2011) (cleaned up); see also 42 U.S.C. § 1988(b). Defendant may certainly file a fee petition in light of this authority. However, given the survival of the plaintiff's § 1983 claim to this stage of litigation, the court would be hard-pressed to find that an award of attorneys' fees would be appropriate under this standard.

**IT IS SO ORDERED.**

Dated: March 30, 2023

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RONALD CUPP,

          Plaintiff,

    v.

ANDREW SMITH,

          Defendant.

Case No.  20-cv-03456-PJH

**JUDGMENT**

    The issues having been duly heard and the court having granted the parties' stipulation to dismiss the case with prejudice,

    it is Ordered and Adjudged

    that plaintiff take nothing, and that the action is dismissed with prejudice.

    **IT IS SO ORDERED.**

Dated: March 30, 2023

*/s/ Phyllis J. Hamilton*

PHYLLIS J. HAMILTON
United States District Judge

EXHIBIT 2

Ronald Cupp
150 Raley Town Center Ste 2512
Rohnert Park, California [94928]
Telephone: (707) 318-9929
Plaintiff in Pro Se

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ronald Cupp | ) CASE NO: 22-cv-4307 PJH |
| | ) |
|     Plaintiff, | ) NOTICE OF VOLUNARY DISMISSAL |
| | ) WITHOUT PREJUDICE |
|     vs. | ) |
| | ) |
| COUNTY OF SONOMA; | ) |
| ANDREW SMITH, Individually; | ) |
| TODD HOFFMAN, Individually; | ) |
| TYRA HARRINGTON, Individually; | ) |
| MARK FRANCESCHI, Individually; | ) |
| TENNIS WICK, Individually; | ) |
| MICHAEL KING, Individually; | ) |
| ANTHONY CINQUINI, Individually; | ) |
| CINQUINI & PASSARINO, INC.; | ) |
| DOES 1-20 | ) |
| | ) |
|     Defendants. | ) |

NOTICE IS HEREBY GIVEN that pursuant to Federal Rules of Civil Procedure 41(a), Plaintiff voluntarily dismisses without prejudice the above entitled action against Defendants.

This notice of dismissal is being filed with the Court before Defendants filed an answer or responsive pleading.

August 26, 2022

/s/ *Ronald Cupp*

_____
Ronald Cupp, Plaintiff
Pro Se

### CERTIFICATE OF SERVICE

The undersigned certified that, on August 26, 2022, the foregoing NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE was filed electronically. Pursuant to Fed. R. Civ. P.5(d), counsel of record will be served by electronic mail on this same date.

August 26, 2022

/s/ *Ronald Cupp*

_____
Ronald Cupp, Plaintiff
Pro Se

EXHIBIT 3

Michael Gogna
Tel: (707) 328-9565
mgogna@sonic.net

February 11, 2021

## Statement of Decision and Administrative Order

*Property Address*: **4640 Arlington Ave.** Santa Rosa, CA ("the Property")
*Responsible Parties*: Ronald Cupp, Property owner
*PRMD Case No.*: VCM20-0768, VCM19-0123
*Hearing Dates*: December 11, 2020, continued to January 22, 2021

### Alleged Violations:

1. Construction without required permits (remodel of single family dwelling and barn, garage conversion to dwelling unit), and unlawful use (a change of occupancy for garage)[1]
2. Numerous instances of construction without required permits (9-foot fence in front yard setback, improvements to barn, room addition and re-roof of single family dwelling with skylights, addition of "on demand" propane water heater to garage, two sheds and a carport)
3. Commercial cannabis cultivation without required County approvals or permits
4. "Dangerous building" – faulty construction, faulty/dangerous electrical and gas (sic)
5. Unpermitted use of Property for occupied travel trailer
6. Unpermitted use of Property for junkyard conditions and contractor's storage yard[2]

### Violation Determinations

1. The evidence supports a determination that there was unpermitted construction to the primary dwelling and the barn, and conversion of a garage to a dwelling unit, as alleged in the 2019 Notice and Orders.
2. The evidence supports a determination that there were numerous instances of unpermitted construction, as described in Item #2, above.
3. The evidence supports a determination that the Property was used for an unpermitted commercial cannabis cultivation operation.
4. The evidence supports a determination of unpermitted occupancy of a travel trailer.
5. The evidence supports a determination of unpermitted use of the Property for junkyard conditions.
6. The allegation of a "dangerous building", as described in Exhibit "Q" to the County's Appeal/Abatement Hearing Report, is not within the scope of these proceedings and no order or determination is made with respect thereto.
7. The evidence does not support a determination of a zoning violation for the unpermitted occupancy of a converted garage.
8. The evidence does not support a determination of unpermitted use of the Property for a contractor's storage yard.

---

[1] The violations listed in this item #1 were the subjects of two Notice and Orders issued in February of 2019 and are referred to as the "2019 Notice and Orders".
[2] The violations listed in Items #2 through #6 were the subjects of seven Notice and Orders issued in July of 2020 and are referred to as the "2020 Notice and Orders".

## Summary of Hearing

On December 11, 2020, a duly noticed administrative hearing ("the First Hearing") was conducted by the undersigned ("the Hearing Officer"), a hearing officer appointed by the Sonoma County Board of Supervisors, to consider a request by County enforcement officials ("County staff") for an abatement order and the appeal of the property owner, Ronald Cupp ("Cupp"). County staff sought an abatement order pertaining to unpermitted construction, as well as unpermitted uses and occupancy at the Property. County staff also issued a series of Notice and Orders describing numerous alleged violations of the Sonoma County Code. Based on a jurisdictional challenge raised by Cupp at the First Hearing, which asserted that the matters pertaining to unpermitted construction and various other building code violations were not properly before the Hearing Officer, the Hearing Officer requested briefings from the parties regarding Cupp's challenge and continued the First Hearing to January 22, 2021.

Both parties have submitted documents as part of the proceedings. Prior to the First Hearing, County staff submitted an "Appeal/Abatement Hearing Report". Prior to the continued hearing on January 22, 2021 ("Continued Hearing"), County staff submitted another "Appeal/Abatement Hearing Report".[3] The two Appeal/Abatement Hearing Reports are hereinafter collectively referred to as the "Staff Report." County staff also submitted a "Memorandum of Response", a "Memorandum of Reply", and two documents titled "Response to Interim Ruling and Order". Prior to the First Hearing, Cupp submitted an "Abatement Hearing Statement", which had 34 exhibits attached. Prior to the Continued Hearing, Cupp submitted a "Brief in Response", including five attached exhibits, and a "Conditional Acceptance of [PRMD] Jurisdiction". After receiving and considering the arguments of the parties on the issue of hearing officer jurisdiction, the Hearing Officer issued an "Interim Ruling and Order" ("Interim Order") on January 18, 2021, which included several exhibits as attachments.

At the Continued Hearing, witnesses were duly sworn and documents and testimony were received as evidence. At the time of the Continued Hearing, Mark Franceschi ("Franceschi") and Inspectors Todd Hoffman ("Hoffman") and Andrew Smith ("Smith") appeared and testified for the County. County staff presented a Power Point presentation depicting various conditions on the Property that were referenced in the Notice and Orders. Cupp appeared and testified on his own behalf. Franceschi, Hoffman and Smith presented testimony and documentary evidence tending to support most of the alleged violations. Cupp presented testimony that challenged the validity of the inspections of the Property and the authority of the inspectors. When offered the opportunity by the Hearing Officer to refute each of the factual allegations pertaining to code violations, Cupp declined the invitation.[4] Consequently, there are alleged code violations for which there is little, or no, contrary factual evidence.

After receiving evidence, the matter was deemed "submitted" by the parties and the Continued Hearing was closed. Following the close of the Continued Hearing, the Hearing Officer issued two rulings, one that addressed Cupp's continuing challenge to jurisdiction ("Final Ruling on Jurisdictional Issues") and a second ("Rulings on Objections and Evidence") which responded to objections and evidence offered by the parties, and which included "*sua sponte*" evidentiary rulings as to certain exhibits submitted by the parties. Those two Rulings, as well as the January 18 Interim Order, are incorporated into this Statement of Decision and Administrative Order by this reference.

---

[3] It appears to the Hearing Officer that the only difference between the two Abatement Hearing reports is the date reference. The text of the two reports, except for references to the date of the reports, appears to be identical.

[4] When asked about specific alleged violations, Cupp asserted his Fifth Amendment right to not testify. Although this is not a criminal proceeding, no adverse inference was drawn from his assertion of that right, as will be discussed in more detail.

# Factual and Procedural Background

In February of 2019, Smith conducted an inspection of the Property.[5]  Based on that inspection, Smith issued the 2019 Notice and Orders.  The first 2019 Notice and Order generally alleged "construction without permits" and pertained to a vacant single family dwelling and a barn that were being remodeled without required permits and a garage having been remodeled into a dwelling unit.  (See **Exhibit "B"**)[6]  The second 2019 Notice and Order alleged an "Unlawful Use" of the Subject Property referencing a "change of occupancy" as a result of the conversion of a garage to a dwelling unit.  (See **Exhibit "C"**)  In response to the 2019 Notice and Orders, Cupp sent a "Constructive Notice of Trespass & Deprivation of Rights" letter to County personnel."  (See **Exhibit "D"**).

In April of 2019, the County issued two "Civil Penalties Due and Payable" notifications to Cupp.  (See **Exhibits "E"** and **"F"**, hereinafter referred to as "Determination Notices").  The Determination Notice shown in Exhibit E was for "unpermitted land uses" as described in Exhibit C, and the Determination Notice in Exhibit F was for "unpermitted construction", as described in Exhibit B.  Notably, and contrary to the Staff Report, neither of the Determination Notices provided Cupp with notice of appeal rights concerning civil penalties that were being assessed.

In July of 2020, County staff conducted another inspection of the Subject Property. This second inspection was pursuant to a Superior Court-issued Inspection Warrant. Based on that inspection, County staff issued the 2020 Notice and Orders, which consisted of seven separate Notice and Orders.  Of those seven, four generally alleged "construction without permits", two were for "unlawful uses" and one was for "a dangerous building".  (See **Exhibits "N"** through **"T"**)  During the course of the Continued Hearing, Franceschi testified that the violations described in Exhibits "P" and "S" of the 2020 Notice and Orders were "duplicative" of the violations described in Exhibit "B" of the 2019 Notice and Orders.  In response to the 2020 Notice and Orders, Cupp sent a letter to County staff titled "Constructive Notice of Trespass & Deprivation of Rights ", dated August 4, 2020.  (See **Exhibit "U"**)

As mentioned above, the Hearing Officer requested briefings from the parties on a jurisdictional challenge raised by Cupp and issued an Interim Order on January 18, 2021.  The Interim Order determined that the Hearing could proceed as to all but one of the alleged violations.  The Hearing Officer ruled that the violations for "Dangerous Building", as described in Exhibit "Q", were more suited for a technical assessment and were aligned with issues raised in *Lippman v. City of Oakland* (2017) 19 Cal.App.5[th] 750  (substandard living conditions).  An appeal of those violations should be considered, if at all, in accordance with §1.8.8 of the Building Standards Code.

## Summary of Decision

A.  Three alleged violations of unpermitted construction described in the 2019 Notice and Orders are confirmed.  However, these alleged violations for unpermitted remodel of the single family dwelling, the barn and the garage conversion are duplicative of similar violations contained in the 2020 Notice and Orders.  (See Exhibits "P" and "S").  For that reason, the abatement order and assessment of civil penalties for these violations will be addressed in Paragraph "C" below.

---

[5] It is noted here that Cupp initiated litigation in Federal District Court claiming that the February 2019 inspection constituted a trespass and an unlawful search.  That litigation is on-going and the lawfulness of that search is not at issue in this Hearing.

[6] Unless otherwise specified, all Exhibit references are references to exhibits that were included in the Staff Report.

B. The allegation of a zoning violation for conversion of a garage to a dwelling unit, as described in the 2019 Notice and Orders, is not confirmed.  While the evidence presented confirms that improvements to the garage had been made to convert the garage into a dwelling unit, the Staff Report indicates that this work had not been completed, and there was no evidence presented that established an actual "use" of the garage as a dwelling unit.

C. Seven alleged violations of unpermitted construction described in the 2020 Notice and Orders are confirmed.  The confirmed violations are for unpermitted construction of a 9-foot fence (Exhibit "N"), barn remodel (Exhibit "P"), the unpermitted additions and remodels to the single family residence and garage, described in Exhibit "S", and construction of two sheds and a carport (Exhibit "T").  Cupp must apply for all required permits to legalize or remove the unpermitted work, pay the applicable permit fees, and diligently pursue work authorized under such permits to completion, all in accordance with the terms of the Administrative Abatement Order, below.  If Cupp fails to apply for all required permits to legalize or remove the remodel work that was performed without required permits within the specified timeframe, or fails to pay applicable permit fees, or fails to diligently pursue work authorized under such permits to completion, the following civil penalties shall be imposed:  (1) a civil penalty in the amount of **$26,400.00**, based on a daily civil penalty of $75.00 per day for each of the two residential violations; and (2) a civil penalty in the amount of **$44,080.00**, based on a daily civil penalty of $50.00 per day for each of the five violations deemed to be non-commercial accessory structures.  These civil penalty assessments begin on July 30, 2020 and shall continue to accrue at that rate until all required permits are obtained to either "legalize" or remove unpermitted the construction.  This order also addresses the violations contained in Exhibit "B" that were part of the 2019 Notice and Orders.

D. The allegation of an unlawful commercial cannabis use is confirmed.  A civil penalty in the amount of **$42,000.00** is assessed based on a daily civil penalty amount of $7,000.00 per day for a period of six days.

E. The allegation of the unpermitted occupancy of a travel trailer is confirmed.  Cupp is ordered to terminate the occupancy of the travel trailer, in accordance with the terms of the Administrative Abatement Order, below.  A civil penalty in the amount of **$8,800.00** is assessed based on a civil penalty in the amount of $50.00 per day beginning on July 30, 2020 and shall continue to accrue at that rate until the use of the Property for an occupied travel trailer is permitted, or that use is terminated and the termination of that use is confirmed by a County staff site inspection.

F. The allegation of the existence of junkyard conditions is confirmed.  Cupp is ordered to terminate the use of the Property as a "junkyard" as defined in Sonoma County Code §26-02-140.  A civil penalty in the amount of **$8,800.00** is assessed based on a civil penalty in the amount of $50.00 per day beginning on July 30, 2020 and shall continue to accrue at that rate until use of the Property as a "junkyard" ceases and is confirmed by a County staff site inspection.

G. The allegation of a "dangerous building" for faulty construction, construction without a permit, and "faulty/dangerous electrical and gas" (sic) is not within the scope of this proceeding for the reasons set forth in the Hearing Officer's Interim Order.

H. The allegation of unpermitted use of the Property for a contractor's storage yard is not confirmed.  There was no evidence to support a finding that any equipment or described materials were used by Cupp in the conduct of building trades or building craft.

I. County staff is to issue a written authorization, as necessary or appropriate, to allow electrical service to the Property to be restored, as described in the Administrative Abatement Order.

# Findings of Fact

The following represent the Hearing Officer's findings of fact, based on the evidence presented:

1. Cupp is the current owner of the Property.

2. On, or about, January 29, 2019, PRMD received a complaint in which the complaining party asserted (1) that the Property was formerly bank owned, and (2) a belief that remodel work on a single family residence, as well as conversion of a garage to a dwelling unit, was being performed without permits.

3. Smith sent a "courtesy notice" on January 29, 2019, addressed to "Federal National Mortgage Association" in Jacksonville, FL, describing the complaint as "construction without a permit".[7]

4. Smith conducted a Property inspection on February 15, 2019.[8] He observed that a single family residence and a barn were being remodeled. He also observed "construction materials in and around the Single Family Dwelling". He also observed "a variety of construction materials, including lumber" inside the garage door, as well as "a large supply of lumber and cut tailings" outside of the garage. Smith also observed that a garage had been modified "into what was a dwelling space" but that "it had not been completed".

5. Smith spoke to someone who was operating power tools inside the converted garage.

6. Smith determined that no permits had been issued for the observed remodels and garage conversion.

7. Smith posted the 2019 Notice and Orders on the Property describing the alleged code violations.

8. Cupp responded to the 2019 Notice and Orders with a "Constructive Notice of Trespass and Deprivation of Rights", dated February 20, 2019 (or erroneously dated February 20, 2018).

9. Cupp testified that "I actually pulled a permit to build the barns through the County", but no permit or permits were offered as evidence prior to, or during, the Continued Hearing.

10. Cupp testified that the second-story remodel was done in 1979, before he purchased the Property.

11. Cupp testified that "the lower structure" was built over the well in 1979, prior to his ownership.

12. On July 20, 2020, County staff obtained an Inspection Warrant to conduct a Property Inspection.[9] Pursuant to the Inspection Warrant, County staff conducted a Property inspection on July 30, 2020. During the inspection, County staff observed the conditions described in the 2020 Notice and Orders.

13. A 9-foot fence was constructed within the front yard setback area without required permits.

14. Additions and remodels were made to a single family residence and a barn, and improvements were made to a garage, all without required permits. Violations referenced in the 2020 Notice and Orders that pertain to unpermitted improvements to the single family residence, barn and garage are duplicative of the same violations in the 2019 Notice and Orders.

15. Two sheds and a carport were constructed without required permits.

---

[7] No information was offered at the Hearing as to the actual Property owner on January 29, 2019, or why the "courtesy letter" was sent to Federal National Mortgage Association" in Jacksonville, FL.

[8] As mentioned previously, the validity of Smith's February 2019 Property inspection is the subject of litigation in federal court. Although Cupp has again challenged the validity of that inspection in this proceeding, the Hearing Officer has deferred to the pending federal court litigation for a determination of the validity of the February 2019 Property inspection.

[9] At the Hearing, Cupp challenged the validity of the Inspection Warrant, but that challenge is beyond the scope of this Hearing.

Page | 5

16.  The Property was being used for an unpermitted commercial cannabis operation of approximately 500 mature cannabis plants.  Cupp testified that the unpermitted commercial cannabis operation ceased on July 30, 2020.  However, Cupp offered no photographic or documentary evidence to show that the commercial cannabis operation actually ceased on that date.  Cupp also did not request a compliance inspection.

17.  The Property was being used for the unpermitted occupancy of a travel trailer and as a "junkyard" as defined in Sonoma County Code §26-02-140.

18.  Cupp has not requested a compliance inspection for any of the alleged violations on the Property since issuance of the 2020 Notice and Orders.

19.  The Staff Report contained a "Penalties Due Calculation Sheet" for the 2019 Notice and Orders, but does not contain a "Penalty Schedule" that correlates to the Penalties Due Calculation Sheet.  The Staff Report did not contain a "Penalties Due Calculation Sheet" or a "Penalty Schedule" for the 2020 Notice and Orders.

20.  A "Response to Interim Ruling and Order" submitted by County staff during the Continued Hearing contained a "Cannabis Penalty Calculation Sheet" and a "Cannabis Violation Penalty Schedule", but did not contain a "Penalties Due Calculation Sheet" or a "Penalty Schedule" for the other 2020 Notice and Orders.

21.  The Staff Report and the County's "Response to Interim Ruling and Order" include an analysis and calculation of civil penalties to be assessed.  According to testimony from Franceschi, the 2019 violations "were incorporated into – or duplicated and included in the 2020 violations".  He also testified that the penalty calculations for the 2020 violations "should be the same" as the penalty calculations shown in Exhibit Y to the Staff Report, which were for the 2019 violations because "it's the same violation, as we discussed they were duplicated."

22. Two "Determination of Civil Penalties" letters were sent to Cupp regarding the 2019 Notice and Orders, but not for the 2020 Notice and Orders. The two "Determination of Civil Penalties" that were sent to Cupp did not contain a statement advising Cupp that he could appeal the amount of civil penalties.  However, because County Staff and Cupp have agreed that the Hearing would serve as an appeal of all issues relating to the 2019 Notice and Orders and the 2020 Notice and Orders, the omission of the right to appeal the amount of civil penalties is deemed harmless error.

23.  There is no evidence in the record that any of the alleged violations in the 2019 Notice and Orders or the 2020 Notice and Orders had a significant effect on neighboring properties.

24. There is no evidence in the record that the any of the alleged violations in the 2019 Notice and Orders or the 2020 Notice and Orders actually caused human health or safety, or environmental, damage.

25. As to the unpermitted commercial cannabis cultivation operation, there is evidence in the record, including photographs, that tend to indicate that the operation required significant amounts of electricity to function (pictures of "grow lights", two "industrial warehouse sized" air conditioning units, nutrient mixing tank, and numerous "electrical lines".)

26. Cupp testified that electric service to the Property was terminated on August 4, 2021 and has not been restored.

27.  As to the unpermitted commercial cannabis cultivation operation, there is no evidence in the record that Cupp had an economic incentive or benefit from the cannabis operation.

## Legal Analysis and Conclusions of Law

### Summary of applicable laws, regulations and policies

A. *Permit Requirement from County of Sonoma County Code (§§26-88-250 – 254)*-- Commercial cannabis activities are subject to permit requirements as shown in 26-88-250, Table 1A-D.  No other type of commercial cannabis activities are permitted except as specified in Table 1A-D.

B. *Unlawful Use/Zoning Violation from County of Sonoma County Code  (§26-92-200(a))* -- Prohibits the use of land for any purpose or in any manner other than for "permitted uses" as listed in the County's Zoning Ordinance.

C. *Permit Requirement from Sonoma County Building Code (§7-5)*-- No person is allowed to erect, construct, alter, repair, move, improve, convert or demolish any building or structure in the unincorporated area of this county, or cause the same to be done, without first obtaining a separate building permit for each such building or structure as required by the Building Code.

D. *Sonoma County Code 1-7.1(a) (Relevant Portions)* -- Sets forth applicable penalty amounts for violations of various County Code sections, including Sections §§26-88-250, 7-5 and 26-92-200. Authorizes the enforcing officer to set the amount of civil penalties within prescribed ranges.

E. *Sonoma County Code §1-7(b)* (Relevant portion) – Authorizes the County to collect costs incurred by the County in abating nuisance conditions, which includes costs of administrative overhead, salaries and expenses incurred by PRMD and County counsel.

F. *Sonoma County Code §1-7(b)* (Relevant portion) --  A "responsible party" includes "[A] person with an ownership interest in real property upon which a violation is found".

G. *Sonoma County Code §1-7.1(f)(3)(a)*-- A responsible party must pay the civil penalties imposed for an unpermitted use of property for commercial cannabis cultivation.

H. *Sonoma County Code §1-7(a)(4)(iii))* -- A responsible party must pay to the County a daily penalty in an amount determined by the enforcing officer.

### Analysis and Conclusions Regarding Construction without Required Permits

The 2019 Notice and Orders cited three instances of construction without required permits: remodel of the single family residence, remodel of a barn, and remodel/conversion of a garage to a dwelling unit. The 2020 Notice and Orders cited seven instances of construction without required permits; the same three that were described in the 2019 Notice and Orders, plus construction of a nine-foot fence, two sheds and a carport.[10]  Franceschi testified that the 2020 Notice and Orders pertaining to unpermitted construction for the single family residence and the barn were duplicative of the 2019 Notice and Orders because "they [the violations] still existed" and "they were still included in violation notices that were sent following that 2020 inspection."  The violations that were described in the 2019 Notice and Orders are included in the 2020 Notice and Orders and will not be separately considered for purposes of determining an appropriate abatement order or civil penalties.  A preponderance of evidence supports the determination of a violation of Section 7-5 of the Sonoma County Code for unpermitted construction of a nine-foot fence in the front yard, the remodel of a single family dwelling, the remodel of a barn, the remodel/conversion of a garage, and the construction of two sheds and a carport.

---

[10] The 2020 Notice and Orders included an alleged violation for "dangerous building" based on "faulty construction". However, the Hearing Officer has determined that this alleged violation is beyond the scope of the Hearing.

The appropriate level of civil penalties to be assessed for the seven instances of unpermitted construction requires an analysis of "factors to be considered" in accordance with Sonoma County Code §1-7.1(c). Those factors align with the factors used by County staff in the "Penalties Due Calculation Sheet" (See **Exhibit "Y"**). While the penalty calculations contained in Exhibit Y pertain to the 2019 Notice and Orders, Franceschi testified that because the unpermitted construction violations cited in the 2020 Notice and Orders were the same as those cited in the 2019 Notice and Orders, the penalty calculations for the 2020 Notice and Orders should be the same as what is shown on Exhibit Y. However, the evidence presented does not support the penalty calculations shown in Exhibit Y. For example, the category of "Seriousness of Violation" uses a score of "10", which indicates that the violation "caused human health/safety or environmental damage". However, Franceschi testified that he had no knowledge of any damage from the unpermitted construction. Similarly, the category of "Effect on Other Properties" has an assigned score of "10" which requires a determination of "significant effect on other properties". However, Franceschi testified that "we have not received specific complaints from the neighborhood about any of the unpermitted construction." As for the category of "Sophistication of Owner", there is no evidence in the record that the requirement of permits was known to Cupp for the 2019 Notice and Orders. However, because the 2019 Notice and Orders are not separately considered for purposes of determining the appropriate level of civil penalties, Cupp's knowledge or awareness of the need for permits (with respect to the 2019 Notice and Orders) is of no significance. However, after having received the 2019 Notice and Orders, Cupp certainly had knowledge that County regulations required permits for the remodel/addition work that was being performed. Therefore, as to the 2020 Notice and Orders, a score of "10" is appropriate for this category as to the unpermitted construction violations.

The evidence presented regarding the seven instances of unpermitted construction supports a score of "5" for the category of "Seriousness of Violation" and a score of "1" "Effect on Other Properties", resulting in an overall score of 7.15 for the seven occurrences of unpermitted construction violations described in the 2020 Notice and Orders. The unpermitted remodel/additions to the single family dwelling and the converted garage are "residential" in nature, pursuant to *Sonoma County Code §1-7.1(a)(2)*. The five remaining violations for unpermitted construction (the 9-foot fence, barn, two sheds and a carport) fall into the category of "Other Violations", as they appear to be non-commercial accessory structures, per *Sonoma County Code §1-7.1(a)(7)*.

If Cupp applies for permits to "legalize" or remove the unpermitted construction, a civil penalty in the amount of 4.4 times the regular permit fee shall be imposed to obtain all permits. If Cupp does not apply for required permits, civil penalties for unpermitted construction shall be in the amount of $75.00 per day for each of the two residential violations and $50.00 per day for each of the violations deemed to be non-commercial accessory structures. These civil penalties shall be imposed in accordance with the terms of the Administrative Abatement Order, below.

## Analysis and Conclusions Regarding Non-Cannabis Zoning Violations/Unlawful Uses

The 2019 Notice and Orders cited one instance of a zoning violation, or "unlawful use", for the unpermitted conversion of a garage to a dwelling unit. The 2020 Notice and Orders did not include this zoning violation. However, the 2020 Notice and Orders contained three other non-cannabis related zoning, or "unlawful use", violations, namely; (1) an occupied travel trailer; (2) junkyard conditions; and (3) a contractor's storage yard. It is unclear as to why the garage conversion use violation was not included in the 2020 Notice and Orders, since Franceschi testified that the 2020 Notice and Orders were "duplicative of" the 2019 Notice and Orders. Nothing presented in the Staff Report, nor the testimony of County staff at the Hearing, provided evidence of actual "use" of the garage as a dwelling unit. The two

photographs of the garage, one taken on February 15, 2019, and a second, taken on July 30, 2020, did not show actual use of the garage as a dwelling unit.  So while the violation for construction/remodel of the garage is established, the alleged violation for "use" of the garage as a dwelling unit is not confirmed.

There was also an allegation of an unlawful use included in the 2020 Notice and Orders for "a contractor's storage yard".  The only evidence offered in support of this violation, other than the Notice and Order (Exhibit "R") was a statement in the Staff Report indicating that ". . . storage of construction materials was observed."  While construction materials may have been observed during a site inspection, the presence of "construction materials", alone, is not sufficient to establish a zoning violation for a contractor's yard.  County Code Section 26-02-140, defines a contractor's yard as "any land and/or building(s) used primarily for the storage of . . . building materials, paints, pipe or electrical components, any of which is used by the owner or occupant of the premises in the conduct of any building trades or building craft."  (emphasis added)  There was no evidence showing that the observed construction materials were used by Cupp in the conduct of any building trades or building craft.  Therefore, the violation for unlawful use of the Property for a contractor's yard is not confirmed.

The evidence shows that a travel trailer on the Property was occupied and was being rented to a tenant.  As for "junkyard conditions", Smith testified that he observed "multiple debris piles . . . as well as trash, junk and scrap" that exceeded an area of 500 square feet that was spread around various locations on the Property.  This evidence was not refuted, so the violations for "use" of the Property for an occupied travel trailer and junkyard conditions are confirmed.  Because the travel trailer was not "owner occupied", it is not considered a "residential violation", as described in *Sonoma County Code 1-7.1(a)(2)*.  Similarly, *Sonoma County Code 26-02-140* excludes travel trailer from the definition of a "residential – dwelling unit".  Therefore, for purposes of determining an appropriate level of civil penalty, the two confirmed unlawful uses, occupied travel trailer and "junkyard conditions" will be considered "Other Violations".

The only analysis provided to show how County staff determined a recommended daily civil penalty for these two "unlawful use/zoning violations" is found on the "Civil Penalties Due Calculation Sheet", which was attached as the second page of Exhibit Y.  This sheet lists a "Violation #" of "VPL19-0130", which correlates to the 2019 allegation of "change of occupancy – convert garage to dwelling unit."  The evidence presented did not support a determination of this alleged unlawful use.  However, Franceschi testified that any penalties associated with the 2020 violations are the same as the penalty calculations for the 2019 violations.  Based on that testimony, it appears to be the position of County staff that the civil daily penalties for the two non-cannabis related zoning, or "unlawful use", violations (i.e., an occupied travel trailer and "junkyard conditions") should be calculated applying the same scores and factors used on the second page of Exhibit Y.

Referring to those scores and factors, County staff has assigned a score of "10" to the category of "Seriousness of Violation", which requires a showing that the violation "has caused human health/safety or environmental damage".  While it is possible, perhaps even likely, that the two uses of property found to be violations have the potential for causing such damage, there was no evidence of actual damage.  The score for this category is changed to "5".  Similarly, the category of "Effect on Other Properties" was assigned a score of "10" which requires a showing that the violations had a "significant effect on other properties".  However, there was no evidence that any of the violations on the Property had any effect on other properties.  The score for this category is changed to "1", and the overall score for these two violations is adjusted to 7.15.  Based on the foregoing, it is the Hearing Officer's determination that the appropriate amount of a daily civil penalty relating to the travel trailer occupancy and for the "junkyard conditions" is $50 per day, beginning on July 30, 2020.

**Analysis and Conclusions Regarding Unlawful Commercial Cannabis Cultivation**

The evidence presented clearly established a large-scale commercial cannabis use. The Staff Report indicates the cultivation operation consisted of "approximately 500 mature cannabis plants on the Property." There was no evidence to refute the use of the Property for a commercial cannabis use. In fact, Cupp testified that "all the cannabis [use] stopped that day", referring to the day of the second Property inspection (July 30, 2020), which can be taken as an admission that there was a "cannabis use" prior to that day. So the violation for unpermitted commercial cannabis use is confirmed.

Determining the length of that use is more complicated. The Staff Report suggests that the duration of that use should extend from the day of the Notice and Order (July 30, 2020) until the date of the First Hearing (December 11, 2010), or 134 days. Given the recommended amount of a recommended penalty of $8,500 per day, this would result in a civil penalty of $1,139,000.00, a sum that requires close scrutiny. (*United States v. Bajakajian (1997) 524 U.S. 321*)

The Notice and Order for this violation (Exhibit "O") indicated that Cupp was "required to notify this Department and schedule a re-inspection to verify the removal of the illegal use." It also advised Cupp that it was his responsibility "to arrange a site inspection to verify removal of the violation." Because Cupp did not arrange for a subsequent compliance inspection, Franceschi testified that County staff "is assuming that the cannabis we observed has probably been harvested by now, but their cultivation operations still continue unabated on the [P]roperty." No one from County staff offered any evidence as to how the determination was made that the "cultivation operations still continue unabated" into December of 2020. At the Hearing, Counsel argued that Cupp "had the ability to reduce his liability for civil penalties by simply, one, abating it, or two, calling for an inspection. He did neither." When pressed as to whether the County had any evidence that Cupp had not actually abated the violation, Counsel acknowledged that "I'm not making that representation at all". She relied on the fact that "because he did not call, that's how – why the penalties continue to accrue." So the County has offered no evidence as to the actual abatement of the violation other than Cupp's failure to call for an inspection. Rather, County staff relies on a presumption that the cannabis cultivation continued unabated because a compliance inspection was not requested nor conducted.

On the other hand, Cupp testified at the Hearing that all cannabis use stopped on July 30, 2020. However, Cupp offered no documentary or photographic evidence to support that statement. If that use had, in fact, stopped on July 30, it is reasonable to expect that Cupp would have notified County staff of that fact, since the Property was exposed to significant daily penalties for any continued unlawful use.[11]

A reasonable method of assessing the timing of the "abatement" of that use is to examine the infrastructure that was observed as part of the cannabis cultivation operation. Testimony and photographs show that this operation required a significant amount of electrical power to provide electricity for, among other things, two "industrial warehouse sized" air conditioning units, two separate "grow rooms" with "grow lights", and a nutrient mixing tank. Cupp testified that power to the Property was terminated on August 4, and that testimony was not refuted. A reasonable inference can be drawn that without electricity on the site, the cultivation operation was impaired, if not terminated, when electric service to the Property was terminated.

---

[11] The Notice and Order for this violation indicated a potential penalty "of up to $10,000" per day.

Franceschi testified that "the fact that there is no power does not mean that you . . . can't be cultivating cannabis currently in some kind of mixed light." This testimony invites the Hearing Officer to speculate as to potential growing opportunities, but it lacks any supporting evidence as to actual cultivation activity beyond August 4, 2020. Franceschi also testified that "we have not ever been invited back to the property to verify the cannabis has been abated", and because of this lack of an invitation "the inspection staff has not been able to perform a compliance inspection". However, the record indicates that inspection staff was able to perform two property inspections previously without "ever having been invited". With daily penalties accruing at a proposed rate of $8,500 per day, it seems reasonable to expect County staff to have made some outreach effort within the 134 days of presumed non-compliance to determine whether the cannabis cultivation violation had actually been abated.[12]

The Notice and Order for this violation (Exhibit "O") provided notice to Cupp that this particular violation would be assessed a daily penalty of "up to $10,000" until the violation was abated. But unlike the violations for the 2019 Notice and Orders, no "Civil Penalties Due and Payable" forms (such as shown in **Exhibits "E"** and **"F"**) were sent to Cupp regarding the 2020 Notice and Orders. So while County staff and Counsel contend that Cupp had the ability to avoid or mitigate the amount of civil penalties that were accruing (a contention that is not disputed), no evidence was presented to show that Cupp had actual knowledge of the amount of civil penalties that were accruing, <u>on a daily basis</u>, for the commercial cannabis cultivation violation for a period of 134 days, the proposed duration of the violation.

In determining the appropriate level of daily civil penalties for the cannabis operation, it is necessary to refer to the "Cannabis Penalty Schedule Sheet" that was submitted by County staff during the course of the Continued Hearing. Of note, the category of "Effect on Other Properties" was given a score of "10", which requires a showing that the violation "had a significant effect on other properties." However, Franceschi testified that staff had not received any complaints from the neighborhood about the cannabis cultivation activity on the Property. The required showing to support a score of "10" for this category has not been made and the score is changed to "1" for a "minor effect". Similarly, for "Culpability of Owner", a score of "10" was assigned. That score requires a showing that the "Owner created, added to, or allowed the violation", <u>plus an additional showing</u> that the owner had "economic incentive or benefit." There was no evidence tending to show that Cupp had an economic incentive or benefit relating to the cannabis cultivation operation. The score for this category is changed to "5".

Based on all of the foregoing, it is the Hearing Officer's determination that the appropriate amount of a daily civil penalty for the unpermitted commercial cannabis cultivation, using the revised scores from the "Cannabis Penalty Schedule Sheet" and the "Cannabis Violation Penalty Schedule" (which was also submitted during the course of the Continued Hearing), is $7,000 per day. It is the Hearing Officer's further determination that the duration for the accrual of daily civil penalties should be five days, extending from July 30, 2020 (the date of the 2020 Notice and Orders) to August 4, 2020, the date that electrical service to the Property was terminated.

---

[12] It is noted that Smith sent a letter to Cupp, dated December 30, 2019, in which Smith advised Cupp that he (Cupp) should notify Smith if the violations described in the 2019 Notice and Orders had been abated because daily penalties were accruing. (See Exhibit "L") However, since the violations described in the 2019 Notice and Orders are not being separately considered or assessed, that letter is of no significance to the determination of appropriate daily civil penalties. It is of note that no similar letter was sent for the 2020 Notice and Orders and the associated civil penalties that were accruing. Although not a specific "finding" or determination in this proceeding, the failure of County staff to undertake any follow up efforts to arrange for a site inspection pertaining to the 2020 violations, while penalties were accruing at a rate of several thousands of dollars per day, could raise questions or concerns about possible motives for not undertaking any follow up efforts.

**Analysis and Conclusions Regarding Amount of Civil Penalties**

Both parties have raised an issue with respect to the amount of civil penalties to be assessed. Cupp argued (in his Abatement Hearing Statement) that the proposed fines are excessive, and violate the Eighth Amendment to the U.S. Constitution, which prohibits the imposition of excessive fines.   When originally enacted, the Eighth Amendment applied only to federal actions, but more recently, the prohibition contained in  the Eighth Amendment has been held to apply to states, by virtue of the 14th Amendment to the U.S. Constitution.  (see _Timbs v. State of Indiana (2019) 586 U.S. ____, 139 S. Ct. 682_; see also, _McDonald v. Chicago, 561 U. S. 742, 767, 130 S. Ct. 3020_)  The California Constitution also prohibits the imposition of excessive fines.  (see _Cal. Constitution, Article I, Section 17)._

Cupp complains, among other things, that the County "has been charging fines and penalties every day, and it took 22 months to get this hearing, and I think they shouldn't even be allowed any of that until after the hearing."  Cupp's complaint might have merit, except for the fact that County staff is not proposing to assess fines or penalties pertaining to the 2019 violations.  Nor is County staff proposing to assess fines or penalties for a 22-month period.  Pursuant to the Staff Report and testimony from Franceschi, County staff is recommending that daily fines and penalties only be assessed beginning on July 30, 2020, and continuing through December 11, 2020, the date of the First Hearing.  (It is noted that County staff is also recommending that daily penalties continue to accrue after the Hearing date in the event that compliance with the Administrative Abatement Order is not achieved.)

During the Continued Hearing, the Hearing Officer noted that an earlier hearing date of October 23, 2020, had been scheduled but that the County "indefinitely continued" that hearing.  The Hearing Officer questioned County staff as to whether daily penalties should continue to accrue during a period when the County is unable to schedule a hearing or unilaterally continues a scheduled hearing. Franceschi testified that, under different circumstances, it might be appropriate to stop the accrual of daily penalties.  For example, if Cupp had requested a compliance inspection, but County staff was unable to respond to that request, a halt in the daily accruals might be warranted.  But according to Franceschi, Cupp "never called, never offered an inspection on those issues" and so the daily penalties should continue to accrue because "nothing's changed" with respect to the violations.  Counsel made the point that Cupp had not called for inspections, something that "is totally within his control . . . meaning he had the ability to reduce his liability for civil penalties."

Counsel also cited to two California cases for the proposition that the penalties were "clearly in control of the property owner to lessen and mitigate if he had just abated the violations."  The cases cited by Counsel were _People v. Braum (2020) 49 Cal.App.5th 342_, and _City and County of San Francisco v. Sainez (2000) 77 Cal.App.4th 1302_.  In _Braum_, the trial court imposed more than $6 million in civil fines for violations of the city's zoning ordinance.  In upholding the trial court's civil fine assessment, the court stated the following:  "Because, as the landlord, it was within his power to comply in a timely manner with the City's enforcement efforts, and thereby mitigate the amount of penalties imposed, his own conduct dictated that the amount of penalties . . . would be substantial."  (_Braum_, supra, at p. 362). Similarly, in _Sainez_, San Francisco brought an action against  owners of rental property for violations of local housing and building codes.  The trial court imposed penalties amounting to $767,000, and the trial court's judgment was affirmed on appeal.[13]  In explaining its decision, the Court of Appeal noted that "Defendants had it within their control first to prevent, and then to stop, the accumulation of penalties." (_Sainez_, at p. 1316.)

---

[13] The judgment of the trail court was modified to correct mathematical miscalculations that were made by the trial court judge

The authority cited by Counsel is persuasive.  Cupp had it in his control to mitigate the amount of penalty accruals but opted not to do so.  The Hearing Officer has determined that the appropriate amount of civil penalties to be assessed for the listed violations, if the abatement orders are not followed, is $130,080.[14]  Considering all the factors discussed above, it is the Hearing Officer's determination that the amount of daily penalties being assessed is proportional to the violations, are not "excessive", and do not run afoul of either the U.S. or California Constitutions.

## Administrative Abatement Order

Having considered the evidence presented, and having reviewed  applicable laws and regulations pertaining to the alleged code violations, **IT IS HEREBY  ORDERED**:

1. **Within twenty (20) business days of the date of this Order,** Cupp must either initiate a process to "legalize" the improvements made to the single family residence and the garage by submitting complete building permit applications (with construction drawings, as required) to obtain required permit(s) from the County for these structures or Cupp must submit a complete application for a demolition (or removal) permit to remove these improvements. To initiate the process to "legalize" or remove these improvements, Cupp must contact PRMD staff to determine the procedures (and costs) required to obtain all required permits and then diligently pursue obtaining such a permits.  The cost of obtaining required permits shall be **4.4 times the normal cost** of obtaining such permits.  All work undertaken pursuant to any permit issued by the County to "legalize" or remove the improvements made to the single family residence and the garage must be diligently pursued to completion and must be inspected by County staff for compliance with all applicable codes and permits. If Cupp fails to comply with this section of the Order, a civil penalty of $75 per day shall be assessed beginning on July 30, 2020 and continuing until these violations are abated and Cupp requests inspections by County staff to confirm the abatement.

2. **Within twenty (20) business days of the date of this Order,** Cupp must either initiate a process to "legalize" the nine-foot fence, the improvements made to the barn, the two sheds and the carport by submitting complete building permit applications (with construction drawings, as required) to obtain required permit(s) from the County for these structures or Cupp must submit a complete application for a demolition (or removal) permit to remove these improvements. To initiate the process to "legalize" or remove these improvements, Cupp must contact PRMD staff to determine the procedures (and costs) required to obtain all required permits and then diligently pursue obtaining such a permits.  The cost of obtaining required permits shall be **4.4 times the normal cost** of obtaining such permits.  All work undertaken pursuant to any permit issued by the County to "legalize" or remove these improvements must be diligently pursued to completion and must be inspected by County staff for compliance with all applicable codes and permits. If Cupp fails to comply with this section of the Order, a civil penalty of $50 per day shall be assessed beginning on July 30, 2020 and continuing until all of these violations are abated and Cupp requests inspections by County staff to confirm the abatement.

---

[14] This amount is based on applying the daily civil penalties for each described violation for a period of 176 days, beginning on July 30, 2020 and continuing to January 22, 2021, the date of the Continued Hearing.

3. **Within ten (10) business days of the date of this Order**, Cupp must either initiate a process to "legalize" occupancy of the travel trailer by applying for required permit(s) from the County to allow the travel trailer to be occupied, or Cupp must cease the use of a travel trailer as an occupancy. To initiate the process to "legalize" the occupancy, Cupp must contact PRMD staff to determine the procedures (and costs) required to obtain all required permits and then diligently pursue obtaining such a permits. The cost of obtaining required permits shall be **4.1 times the normal cost** of obtaining such permits. All work undertaken pursuant to any permit issued by the County to allow for occupancy of the travel trailer must be completed within sixty (60) days of the issuance of such permit. Alternatively, Cupp is ordered to schedule a site inspection with PRMD code enforcement staff to verify the cessation of occupancy of the travel trailer within 10 business days from the date of this Order. If Cupp fails to comply with this section of the Order, a civil penalty of $50 per day, beginning on July 30, 2020 will be assessed and will continue until the violation is abated and Cupp requests inspections by County staff to confirm the abatement.

4. **Within thirty (30) business days of the date of this Order**, Cupp must abate the use of the Property as a "junkyard" by removing all debris piles, trash, junk and scrap, or reducing the accumulation of such materials to an area of less than 100 square feet. Cupp must also contact PRMD inspection staff within that same timeframe to request an inspection for compliance with this section of the Order. A civil penalty of $50 per day is assessed, beginning on July 30, 2020 and will continue until the violation is abated and Cupp requests inspections by County staff to confirm the abatement.

5. A civil penalty in the amount of **$42,000** is assessed for the unpermitted commercial cannabis use. Cupp is encouraged to work with PRMD staff to reach an agreement on how and by when this payment is to be made. Failing to reach an agreement within 10 business days of the date of this Order, payment is to be made within 20 business days of the date of this Order in the manner described in paragraph 8, below.

6. Cupp is liable to the County for costs of abatement, which includes County staff time in addressing the violations, and for Hearing Officer and court reporter services. Within 15 business days of the date of this Order, Cupp shall pay to the County the sum of **$18,493.25**, in accordance with the instructions in paragraph 8, below. The costs of abatement include (1) Code Enforcement Division investigative time and secretarial time in pursuing abatement ($12,021.40) , as detailed in the Staff Report and subsequent County invoice; (2) Hearing Officer fees ($5,670.00); and (3) fees for court reporter services ($801.85).

7. Any timeframes or deadlines described in this Order shall be extended if delays in pursuing compliance or abatement efforts are not due to the fault, or lack of diligence, on the part of Cupp. The length of any such extension shall be equal to the amount of time associated with the delay(s). Any timeframes or deadlines described in this Order may be extended upon written request of Cupp but are subject to the consent or approval of PRMD staff, which consent or approval shall not be unreasonably withheld or denied.

8. All payments required to be made herein shall be payable to "County of Sonoma" and sent or delivered to "County of Sonoma, Attn:  PRMD, 2550 Ventura Ave., Santa Rosa, CA 95403".

/ /

**This Statement of Decision and Administrative Order is final, subject to judicial review in accordance with the provisions of California Code of Civil Procedure §1094.6.  Judicial review of this decision must be sought no later than ninety (90) days following the date shown on the Certificate of Mailing, attached hereto, pursuant to California Code of Civil Procedure §1094.6.**

Date:  February 11, 2021

Michael Gogna, Administrative Hearing Officer

EXHIBIT 4



# PERMIT SONOMA FIRE PREVENTION DIVISION

### FIRE SERVICES * HAZARDOUS MATERIALS

| Address | **Cupp Property**<br>**4640 Arlington Ave, Santa Rosa**<br>**2019 CFC Review**<br>**Revised Fire Plan Review Approval** | | | | |
|---|---|---|---|---|---|
| 12/01/2022 | **SRA** | NO | **USE** | *Residential* | **Occupancy Class** *R3/U* |
| **SQFT Existing** | -0- | | **SQFT NEW** | 3,945 | **Total Fire Area** 3,945 |
| **Stories** | 1 | | **Height** | 12 ft | **Over an Acre** YES |
| **Construction Type** | V-B | | **Permit#** | BLD | 22-2038 |
| **Fire Sprinklers** | Req. NFPA 13D | | **Fire Alarm** | N/A | **CUPA** NO |
| **Deferred Submittals** | Fire Access | | Fire Sprinklers | N/A | N/A | N/A |
| **APN# 134-251-063** | | | **Fire Agency** | | **Sonoma County FD** |
| Martin L. Price (707) 279-4222 | | | Martin.Price@sonoma-county.org | | |

**The project listed above has been reviewed and determined to be:**

☐ **APPROVED** (no modifications required)

☒ **APPROVED AS NOTED** (minor modifications required - review attached comments)

☐ **NOT APPROVED** (revise and <u>respond in writing</u> per attached comments and resubmit)

☐ **INCOMPLETE** (provide additional information per attached comments and resubmit; <u>respond in writing</u>)

**Inspections:**

Prior to final approval, all State and Local Codes shall be verified by field inspection by a member of the **Sonoma County Fire and Emergency Services Dept.** The following Inspections are required:

**Schedule of Inspections**: 707-565-3551 using the automated system of the Building Department.

- Fire Final  (198)
- Fire Access/Water Supply (121)



# PERMIT SONOMA FIRE PREVENTION DIVISION

### FIRE SERVICES * HAZARDOUS MATERIALS

**Scope of Work**

Per Oracle Consulting Memorandum dated 3/20/22

- In 2019/2020 violations for many of the unpermitted improvements were issued to the structure; the following [3] violations remain unresolved. BLD22-2038 will both resolve the following violations, and legalize all other work completed to the structure, of which no violations were issued
- VBU20-0450: CWOP - un-permitted construction to barn including mechanical, electrical, gas, plumbing, & partition walls
- VBU20-0451: DANGEROUS BUILDING - faulty construction, construction without permit, faulty/dangerous electrical & gas
- VBU19-0077: unpermitted barn remodel. The attached plan-set is application for a single building permit to accomplish 3 separate outcomes.
- Permit Application # BLD22-2038 additionally to provide for covered parking
- Separate from the violations issued to the barn/storage structure [2] other violations were recorded for construction without permits to an SFD and an ADU also on the parcel. Those violations #s and the subsequent building permit applications submitted to legalize and resolve the SFD/ADU renovations are:
    - VBU19-0076; (Resolution) BLD21-4961
    - VBU19-0078; VPL19-0130 (Resolution) BLD21-5010
- This #BLD22-2038 permit is to accomplish the following outcomes:
    - A. To convert occupancy #3 "Storage and Equipment Shed w/conc. Floor; 1,313 sq. ft." into a residential garage to provide covered parking for the SFD/ADU permit applications; requirements for covered parking.
    - B. To convert occupancy #4 "Barn w/dirt floor; 1,490 sq. ft." into a Office/Gym/Yoga studio, as per ordinance. Fig. 1 APN 134-251-063 Page 3 of 3
    - C. To legalize additional improvements that were made to the building that were not part of the Code Enforcement violations, namely concrete flooring in the "Barn w/dirt floor" that was added without permits and reconfiguration of internal walls to meet zoning requirements for an "open floorplan"
    - D. To legalize construction of a new attached utility room.
    - E. To legalize propane service to the building
    - F. To remove the forementioned outstanding barn violations by both demolishing portions of the unpermitted utilities installed without permits and legalizing other portions of the utilities with a building permit as part of the Barn to office/gym and Storage to Garage conversions.
    - G. To install a new bathroom. Currently there is no bathroom in the structure

ACCELA indicates the following:

- Project description - Demolition of cannabis installations, interior partitions, electrical and mechanical fixtures.
- Legalize with building permit utilities and as-built utility enclosure.
- Legalize with building permit as-built toilet and sink.
- Install (N) wastewater transfer pump.
- (E) Barn use changed to office/yoga studio.
- (E) Storage shed use changed to garage, to serve SFD.



# PERMIT SONOMA FIRE PREVENTION DIVISION

### FIRE SERVICES * HAZARDOUS MATERIALS

- Removes the following violation(s):
  - VBU20-0450: CWOP - un-permitted construction to barn including mechanical, electrical, gas, plumbing, & partition walls
  - VBU20-0451: DANGEROUS BUILDING - faulty construction, construction without permit, faulty/dangerous electrical & gas
  - VBU19-0077: unpermitted barn remodel

**Fire Conditions of Approval**
1. Required Deferred Submittals
   a. NFPA 24 Private fire underground and fire hydrant systems.  CFC Sec. 507.2.1 and 507.5
   b. Fire flow and hydraulic calculations.  CFC Sec. 507.3 and Appendix B.
   c. Water supply test.  CFC Sec. 507.4
   d. NFPA 13 automatic sprinkler system.  CFC Sec. 903.
   e. NFPA 24 private fire underground.  CFC Sec. 507.2.1
   f. NFPA 20 fire pump, if required.  CFC Sec. 913.
   g. NFPA 72 fire alarm system.  CFC Sec. 907.
   h. Vehicle gates at fire apparatus access roads.  CFC Sec. 503.6 and Appendix D103.5.
   i. Plans for fire safety during construction.  CFC Sec. 3308.

2. The following items will be verified during construction:
   a. Portable fire extinguishers.  NFPA 10, CMC Sec. 513.11, Title 19 Chapter 3, CFC Sec. 906.4 and 904.12.5.2.
   b. Complex directory.  CFC Sec. 505.1.3 (local amendment)
   c. Knox key boxes.  CFC Sec. 506.1.
   d. 12" high illuminated building address numbers.  CFC Sec. 505.1, 505.1.2 and 505.1.4.
   e. Fire-resistive construction shall be marked.  CBC Sec. 703.7.
   f. Through and membrane penetrations in fire-resistive construction shall comply with CBC Sec. 714.
   g. NFPA 704 placards.  CFC Sec. 407.3 and 5003.5
   h. MSDS sheets.  CFC Sec. 407.2 and 5003.4
   i. This review does not include hazardous materials.  Such review is under separate permit.
   j. The Site Plan appears to indicate the rear exterior wall of the subject building is about 300 ft from the public right-of-way.  Fire apparatus access roads shall be provided to within 150 ft of all portions of exterior walls.  Fire apparatus access roads shall comply with Sonoma County Fire Safe Standards, Ordinance 6318 – Division B Emergency Access, including but not limited to pavement design, width, longitudinal and transverse slope, inside turning radius, etc.  Fire apparatus access roads with length over 150 ft shall have an approved turnaround.



# PERMIT SONOMA FIRE PREVENTION DIVISION

### FIRE SERVICES  *  HAZARDOUS MATERIALS



k.  (Fire 11/28/22) The plans and other documents submitted appear to indicate a change in use/occupancy from barn, Group F-1 cannabis cultivation and operations, to Group U private garage, and Group R office/Yoga Studio.

    (1)  Buildings undergoing a change in use/occupancy shall comply with CFC Sec. 102.3.

    (2)  The subject building has gross floor area = 3,945 gross sq. ft.

    (3)  Group S, B and U occupancies over 3,000 sq. ft. shall be protected with an approved sprinkler system.  CFC Sec. 903.2.

    (4)  Detached accessory structures to Group R-3 not classified as a dwelling unit exceeding 3,000 sq. ft. in gross floor area shall be protected with an automatic sprinkler system.  CFC Sec. 903.2 Exception 2 (local fire code amendments).

    (5)  Alterations which exceed 50% of the existing floor area considered a *substantial improvement*, and shall be protected by an automatic sprinkler system.  CFC Sec. 903.6.

    (6)  The required automatic sprinkler system is a deferred submittal.

l.  (Fire 11/28/22) Drawing A1.5 indicates a proposed Floor Plan.  Provide required fire-resistive construction and protected openings between Group R yoga studio and Group U garage.  CRC Sec. R302.5.

EXHIBIT 5

VEXATIOUS LITIGANT LIST
From Prefiling Orders Received from California Courts
Prepared and Maintained by the Judicial Council of California
(Orders prohibiting future filings entered through April 1, 2023)

| LAST NAME | FIRST NAME | MIDDLE | COURT | CASE NO. | DATE | COMMENTS |
|---|---|---|---|---|---|---|
| A & R TOWING, INC. | | | Santa Clara Superior Court | 507SC002040 | 08/02/07 | Also see Vincent Cardinalli |
| A D MOON CO. | | | Los Angeles Superior Court | BC340942 | 04/01/08 | Amended Order 6/4/2008 & Order 9/30/08 |
| A D MOON COMPANY | | | Los Angeles Superior Court | BC340942 | 04/01/08 | Amended Order 6/4/2008 & Order 9/30/08 |
| A D MOON CONSTRUCTION CO. | | | Los Angeles Superior Court | BC340942 | 04/01/08 | Amended Order 6/4/2008 & Order 9/30/08 |
| A D MOON CONSTRUCTION COMPANY | | | Los Angeles Superior Court | BC340942 | 04/01/08 | Amended Order 6/4/2008 & Order 9/30/08 |
| ABATECOLA | Aldo | | Court of Appeal, 4th Dist, Div 2 | E032511 | 11/21/03 | |
| ABBOTT | Cesar | Luis | Orange County Superior Court | A219294 | 01/26/06 | |
| ABBOTT | Robert | L. | Marin Superior Court | CV011726 | 09/28/04 | |
| ABNER | Janice | | Los Angeles Superior Court | TC019311 | 03/03/06 | |
| ABRAHAM | Roy | | Santa Clara Superior Court | 16CV290410 | 03/30/16 | |
| ABRAHAMS | Charles | L. | San Diego Superior Court | 3720160001 8061CUORCTL | 05/05/17 | |
| ABREAU (H-16924) | Armando | | Kings Superior Court | 10C0462 | 06/16/11 | |
| ACAR | Kazim | | San Francisco Superior Court | CGC16551043 | 01/20/17 | |
| ACUNA (CDCR#C-43165) | Arcadio | | Del Norte Superior Court | CVCV092017 | 06/28/11 | |
| ADAMS | Merrill | | Santa Clara Superior Court | 20111CV204753 | 04/25/16 | |
| ADDAMS-MORE | Marti | | Los Angeles Superior Court | BC324812 | 05/26/06 | |
| AFOS, JR. | Prisco | | Santa Clara Superior Court | 19CV345943 | 07/25/19 | |
| AGHA | Ali | T. | Sonoma Superior Court | 209605 | 05/24/95 | |
| AGHAEGBUNA | Chukwu | | Los Angeles Superior Court | 18STCV01841 | 03/01/19 | aka George Aghaegbuna |
| AGOPIAN | Serge | | Los Angeles Superior Court | ES005460 | 04/16/99 | |
| AGOPIAN | Serge | | Court of Appeal, 2nd Dist, Div 2 | B124766 | 09/08/99 | |
| AGRA | Gideon | | San Bernardino Superior Court | CIVRS1107035 | 08/03/12 | |
| AGUILAR | Teresa | | Los Angeles Superior Court | BC341498 | 01/25/06 | Order states specifics. |
| AHEARN | Cynthia | Clancy | Los Angeles Superior Court | SC108471 | 10/20/10 | |
| AHMADI | Arash | | Alameda Superior Court | RG15784017 | 02/05/16 | |
| AJEGBO | Felix | | Los Angeles Superior Court | BC658924 | 02/03/21 | |
| AJEGBO | Felix | E. | Los Angeles Superior Court | BC658924 | 02/03/21 | |
| AKBAR | Alex | M. | Orange County Superior Court | 778364 | 05/14/98 | |
| AKBAR | Touba | N. | Orange County Superior Court | 778364 | 05/14/98 | |
| AKBAR | Zahra | | Orange County Superior Court | 778364 | 05/14/98 | |
| AL FAME | | | San Diego Superior Court | GIC760144 | 02/14/01 | See SCSD GIC758829 & GIC758748 |
| AL-HAKIM | Abdul-Jalil | | Alameda Superior Court | C-811337 | 06/17/19 | |
| ALATRAQCHI | Rashid | | San Francisco Superior Court | CGC11516342 | 03/13/14 | Order states specifics. |
| ALBERTS | David | | San Diego Superior Court | 37-2014-00034849-CUBCCTL | 04/03/15 | |
| ALCANTAR | Miguel | A | Los Angeles Superior Court | 21STCV01445 | 03/04/21 | |
| ALDRIDGE | Stephen | M. | Court of Appeal, 2nd Dist, Div 7 | B116354 | 03/02/99 | |
| ALEXANDER | Cherie | | San Diego Superior Court | GIC851029 | 01/09/06 | |
| ALEXIS | Brian | | Los Angeles Superior Court | BD431906 | 12/18/13 | |
| ALFORD | Paul | | Court of Appeal, 4th Dist, Div 2 | E039756 | 02/14/07 | |
| ALFORQUE | Casiano | N. | San Diego Superior Court | 728543 | 05/14/99 | |
| ALI | Jumah | | Monterey Superior Court | M82821 | 09/13/07 | aka Jumah Thomas Ali-Moore |
| ALI | Jumah | Abdullahi | Monterey Superior Court | M82821 | 09/13/07 | aka Jumah Thomas Ali-Moore |
| ALI | Sherif | | San Diego Superior Court | D387067 | 07/14/97 | |
| ALI | Syed | Nazim | San Francisco Superior Court | CGC-22-598262 | 08/09/22 | |
| ALI | Syed | Nazim | Santa Clara Superior Court | 22CV401219 | 12/28/22 | aka Alex Ali |
| ALI AKBAR | Hakim | | Lassen Superior Court | 54688 | 01/10/12 | aka Frederick Jones (CDCR#P85158) |
| ALIGANGA | Frances | E. | Solano Superior Court | FCS024767 | 03/28/05 | |
| ALI-MOORE | Jumah | Thomas | Monterey Superior Court | M82821 | 09/13/07 | aka Jumah Thomas Ali-Moore |
| ALI-MOORE (CDCR#D-62389) | Jumah | Thomas | Monterey Superior Court | M82821 | 09/13/07 | |
| ALI-THOMAS MOORE | Jumah | | Monterey Superior Court | M82821 | 09/13/07 | aka Jumah Thomas Ali-Moore |

VEXATIOUS LITIGANT LIST
From Prefiling Orders Received from California Courts
Prepared and Maintained by the Judicial Council of California
(Orders prohibiting future filings entered through April 1, 2023)

| LAST NAME | FIRST NAME | MIDDLE | COURT | CASE NO. | DATE | COMMENTS |
|---|---|---|---|---|---|---|
| COOK | Caroline | M. | Monterey Superior Court | 21CV000425 | 03/11/21 | |
| COOK | Caroline | M. | Monterey Superior Court | 20CV003220 | 05/04/21 | |
| COOK | Graham | | Napa Superior Court | 2601469 | 07/08/98 | |
| COOK | Kha'ry | | Solano Superior Court | FSC063636 | 12/15/20 | |
| COOK | Kha'ry | | Solano Superior Court | FSC063637 | 12/15/20 | |
| COOKS | Charles | R. | Sacramento Superior Court | 34201600205504 | 12/01/17 | |
| COOLEY | Nathan | | Los Angeles Superior Court | 09C00290 | 06/08/11 | |
| COONEY | Deborah | | San Diego Superior Court | 00030747-CU-UD-CTL | 02/25/16 | |
| COOPER | Bobby | K. | Los Angeles Superior Court | BC110162 | 03/10/95 | |
| COOPER | Christina | D. | Calaveras Superior Court | CV34178 | 12/30/20 | |
| COOPER | Craig | B. | Marin Superior Court | CIV1504572 | 06/01/17 | |
| COOPER | Johnny | D. | Fresno Superior Court | 10CECG03974 | 12/08/10 | aka for Johnny D. Cooper, Sr. |
| COOPER | Mark | K. | Sonoma Superior Court | MCV148876 | 10/06/97 | |
| COOPER, SR. | Johnny | D. | Fresno Superior Court | 10CECG03974 | 12/08/10 | |
| COPLAN | Debra | D. | Los Angeles Superior Court | BC049781 | 08/17/92 | |
| COPLAN | Debra | D. | Court of Appeal, 2nd Dist, Div 1 | B079363 | 11/30/94 | |
| COREAS | Victor | Manuel | Los Angeles Superior Court | BC594492 | 01/15/16 | |
| CORKERY | Henry | | Los Angeles Superior Court | DOW12S00220 | 04/09/12 | |
| COULOMBE | Jackie | | Ventura Superior Court | CIV246856 | 06/21/07 | |
| COULOMBE | Jackie | | Ventura Superior Court | CIV246957 | 06/21/07 | |
| COURI | James | | Riverside Superior Court | SC1600482 | 04/28/16 | |
| COWAN | Cathy | | Los Angeles Superior Court | SWD101781 | 10/09/98 | |
| COWAN | Rennie | | Los Angeles Superior Court | BC377362 | 01/10/08 | |
| COX | Ernest | | Amador Superior Court | 15-CV-9306 | 10/19/15 | |
| CRANE | Robert | | Marin Superior Court | FL1503702 | 03/21/17 | |
| CRAYTON (PO7736 ASU1-148) | Timothy | | Kern Superior Court | S1500CV272291SPC | 06/13/12 | |
| CRIGLER | Seglenda | | San Francisco Superior Court | CGC13-535903 | 05/01/14 | |
| CROCKETT, JR. | Homer | E. | Los Angeles Superior Court | 13K14067 | 05/28/14 | |
| CROOK | Jasper | | Riverside Superior Court | PRRI1901129 | 09/28/20 | |
| CROSS | Nancy | Jewell | San Mateo Superior Court | 369856 | 04/28/92 | |
| CROTEAU | Hans | | San Diego Superior Court | GIE020950 | 01/21/05 | |
| CROW | Brad | | San Diego Superior Court | 1794 | 06/09/92 | |
| CROW | D. | Bradley | San Diego Superior Court | 1794 | 06/09/92 | |
| CROWE | Kelly | | Sacramento Superior Court | 04CS01039 | 05/25/06 | |
| CRUZ | Guillermo | Trujillo | Kern Superior Court | BCV16101576 & BCV17101450 | 06/28/18 | |
| CRUZ | Lily | | Alameda Superior Court | RG16833855 | 12/15/16 | aka Doris Marree Walker |
| CSERNA | Kathryn | | Santa Clara Superior Court | 116CV290006 | 07/19/16 | |
| CUMBY | Lamont | | Los Angeles Superior Court | 18STRO01473 | 03/23/18 | |
| **CUMIFORD** | **Tiffany** | | **Ventura Superior Court** | **56-2021-00553059-PR-GP-OXN** | **02/28/23** | |
| CUMMING | Steven | Robertson | San Bernardino Superior Court | PROPS1601037 | 04/05/21 | |
| CUNNEEN | Garrett | Daniel | San Francisco Superior Court | CGC03416312 | 04/18/05 | |
| CUNNINGHAM | Archibald | | San Francisco Superior Court | FDI03753770 | 04/13/09 | |
| CUNNINGHAM (D#98935/M-224L) | Lorenzo | | Sacramento Superior Court | 05AS04843 | 06/14/06 | |
| CUNNINGHAM | Nanette | C. | Kern Superior Court | D352403 | 09/18/09 | See Ventura re: Cunningham, N (in this matter only) |
| CUNNINGHAM | Nanette | C. | Ventura Superior Court | S1501PT28170 | 08/30/12 | See Kern re: Cunningham, N (in this matter only) |
| **CUPP** | **Ronald** | **V.** | **Alameda Superior Court** | **RG15780643** | **11/12/15** | |
| CURRIE | Maneva | A. | Court of Appeal, 2nd Dist, Div 5 | B253379 | 11/14/14 | |
| CURRY | Elizabeth | | Alameda Superior Court | RG21101019 | 09/24/21 | see Elizabeth White |
| CYRUS | Suprina | | Los Angeles Superior Court | C687542 | 11/03/92 | |
| DADASHIAN | Ramin | | Contra Costa Superior Court | D13-04989 | 01/31/22 | |

EXHIBIT 6

**A** Neutral
As of: July 9, 2020 8:43 PM Z

# *Cupp v. Azzouni*

United States District Court for the Northern District of California

May 12, 2014, Decided; May 12, 2014, Filed

No. C 14-1283 MMC

**Reporter**
2014 U.S. Dist. LEXIS 65183 *; 2014 WL 1922186

*RONALD* VERNON *CUPP*, Plaintiff, v. MARK AZZOUNI, et al., Defendants.

**Subsequent History:** Reconsideration denied by *Cupp v. Azzouni, 2014 U.S. Dist. LEXIS 101715 (N.D. Cal., July 18, 2014)*

Stay denied by, Dismissed by, Without prejudice *Cupp v. Azzouni, 2014 U.S. Dist. LEXIS 101716 (N.D. Cal., July 18, 2014)*

Related proceeding at *People v. Cupp, 2017 Cal. App. Unpub. LEXIS 7308 (Cal. App. 1st Dist., Oct. 23, 2017)*

# Core Terms

injunctive, declaratory, estoppel, quotation, arrest

**Counsel:** [*1] *Ronald* Vernon *Cupp*, Plaintiff, Pro se, Santa Rosa, CA.

For Mark Azzouni, City of Santa Rosa, Defendants: John Jeffrey Fritsch, City Attorney's Office, City of Santa Rosa, Santa Rosa, CA.

For Sara Delaney, Defendant: Sheila Shah Lichtblau, Marin County Counsel, San Rafael, CA.

For Superior Court for the State of California, County of Sonoma, Superior Court for the State of California,

County of Sonoma, Case no: SCR628864, Defendants: Kimberly M. Drake, LEAD ATTORNEY, Jarvis Fay Doporto and Gibson LLP, Oakland, CA.

For Scott Bachman, Defendant: Daniel B. Alweiss, Office of the Attorney General, Civil/Tort, Oakland, CA.

**Judges:** MAXINE M. CHESNEY, United States District Judge.

**Opinion by:** MAXINE M. CHESNEY

# Opinion

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS; VACATING MAY 23, 2014 HEARING**

Before the Court are three motions to dismiss, filed, respectively, by defendant Scott Bachmann ("Bachmann") on April 9, 2014, defendant Superior Court for the State of California, County of Sonoma ("Superior Court") on April 10, 2014, and defendant Sara Delaney ("Delaney") on April 10, 2014. Defendants Mark Azzouni ("Azzouni") and City of Santa Rosa have joined in Delaney's motion. Plaintiff *Ronald* Vernon *Cupp* ("*Cupp*") has filed, along [*2] with a motion to strike, a single opposition addressing the three motions. Bachmann, the Superior Court, and Delaney have replied separately, and Azzouni and City of Santa Rosa have joined in Delaney's reply.

The Court, having read and considered the papers filed in support of and in opposition to the motions, deems

the matters suitable for determination on the parties' respective written submissions, VACATES the hearing scheduled for May 23, 2014, and rules as follows.

## BACKGROUND

On January 23, 2013, **Cupp** was arrested by Azzouni, accompanied by Bachmann and Delaney, in front of his office in Rohnert Park, California. (See Compl. ¶¶ 16-18.) **Cupp** was thereafter transported to and held at the Sonoma County Sheriff's Office's Main Adult Detention Facility. (See id. ¶ 28.) On January 25, 2013, **Cupp** was brought to court to appear before a magistrate on criminal charges. (See id. ¶ 31.) The criminal case against him is still pending. (See id. ¶ 40.)

On December 12, 2013, **Cupp** filed for Chapter 7 bankruptcy protection. (See Delaney Request for Judicial Notice ("RJN") Ex. E.) In the Chapter 7 bankruptcy schedules he filed, **Cupp** did not list among his assets any legal claims. (See id. Ex. F at [*3] 6.) He received a discharge in bankruptcy on March 18, 2014. (See id. Ex. G.)[1]

On March 20, 2014, **Cupp** filed the instant complaint, in which he alleges his arrest was not made pursuant to a warrant (see id. ¶ 36), that he "was jailed without probable cause, without committing a crime" (see id. ¶ 33), and that he "was not taken immediately to a neutral judge for a 'probable cause hearing'" (see id.). Based thereon, he brings claims pursuant to _42 U.S.C. §§ 1983_, _1985_, _1986_, and _1988_. He seeks $16 million in compensatory and punitive damages as well as declaratory and injunctive relief.

Defendants **[*4]** now move to dismiss the complaint in its entirety pursuant to _Rule 12(b)(6) of the Federal Rules of Civil Procedure_, arguing, inter alia, **Cupp**'s claims for damages are barred by judicial estoppel and lack of standing, and that his claims for declaratory and

injunctive relief are barred under _Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971)_.[2]

## LEGAL STANDARD

Dismissal under _Rule 12(b)(6) of the Federal Rules of Civil Procedure_ can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. See _Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990)_. _Rule 8(a)(2)_, however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See _Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)_ (quoting _Fed. R. Civ. P. 8(a)(2)_). Consequently, "a complaint attacked by a _Rule 12(b)(6)_ motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief **[*5]** requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See _NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986)_. "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" _Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)_ (quoting _Twombly, 550 U.S. at 570_). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" _Twombly, 550 U.S. at 555_. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See _Iqbal, 556 U.S. at 678_ (internal quotation and citation omitted).

## DISCUSSION

### A. Judicial Estoppel/Standing

---

[1] By his motion to strike, **Cupp** objects to the Court's consideration of the above-referenced three documents. Generally, a district court, in ruling on a motion brought under _Rule 12(b)(6)_, may not consider material beyond the complaint. A district court may, however, take judicial notice of undisputed matters of public record, including documents on file in federal or state courts. See _Harris v. Cnty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012)_. The Court has concluded that the three documents are part of the bankruptcy court's record, and, accordingly, **Cupp**'s objection thereto is hereby overruled.

[2] In light of the findings set forth below, the Court does not address herein the other arguments defendants raise in support of dismissal.

## 1. Judicial Estoppel

Judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir.1990)* (internal quotation and citation omitted). **[*6]** It "precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." See *Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001)*. Defendants argue that ***Cupp***, by failing to include in his bankruptcy schedules the legal claims he now brings, should be judicially estopped from seeking damages based on any such claims. As discussed below, the Court agrees.

A debtor has an "express, affirmative duty to disclose all assets, including contingent and unliquidated claims," see *Hamilton, 270 F.3d at 785* (internal quotation and citation omitted), and, consequently, will be "judicially estopped from asserting a cause of action not . . . mentioned in [his] schedules," see *id. at 783*. "Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules . . . to identify the cause of action as a contingent asset." See *id. at 784*.

Here, as noted, ***Cupp*** was arrested and charged in January 2013, almost eleven months before he filed for bankruptcy (see Delaney RJN Ex. E), **[*7]** and, as noted, he did not list the instant claims as contingent assets on his bankruptcy schedules (see id. at Ex. F at 6). Rather, two days after receiving a discharge, he filed the instant complaint. Although courts have recognized that the application of judicial estoppel may not be warranted where a debtor either lacks knowledge of a claim or has no motive to conceal it, see *Ah Quin v. County of Kauai Dept. of Transp., 733 F.3d 267, 272 (9th Cir. 2013)*, here it is clear that ***Cupp***, during the pendency of the bankruptcy proceedings, had both knowledge of the claims he now brings and, given the amount he seeks to recover in damages, a motive to conceal them.

Accordingly, to the extent ***Cupp*** seeks damages as a form of relief, the complaint will be dismissed on the basis of judicial estoppel.

## 2. Standing

Where, as here, a party has filed for bankruptcy, the bankruptcy "estate is comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case," see *11 U.S.C. § 541(a)(1)*, including a legal cause of action, see *Cusano v. Klein, 264 F.3d 936, 945 (9th Cir. 2001)*. Where a debtor fails "properly to schedule an asset, including a cause **[*8]** of action, that asset continues to belong to the bankruptcy estate and [does] not revert to [the debtor]." See *id. at 945-46*; *11 U.S.C. § 554(d)* (providing "[p]roperty of the estate that is not abandoned . . . and that is not administered in the case remains property of the estate"). Where a legal claim remains property of the bankruptcy estate, a debtor lacks standing to bring a lawsuit on such claim. See *Sierra Switchboard Co. v. Westinghouse Elec. Corp., 789 F.2d 705, 706, 710 (9th Cir. 1986)* (affirming dismissal of emotional distress claim; holding plaintiff "lacked capacity to sue" because plaintiff's claim "remained property of the bankruptcy estate" under *§ 541(a)(1)*). As noted, ***Cupp*** did not schedule the instant claims as contingent assets. Consequently, the claims remain property of the bankruptcy estate, and ***Cupp*** lacks standing to sue thereon.

Accordingly, to the extent ***Cupp*** seeks damages as a form of relief, the complaint will be dismissed on such additional ground.

## B. Younger Abstention

"[I]n the absence of exceptional circumstances creating a threat of irreparable injury 'both great and immediate,' a federal court must not intervene by way of either injunction or declaratory **[*9]** judgment in a pending state criminal prosecution." *Kugler v. Helfant, 421 U.S. 117, 123, 95 S. Ct. 1524, 44 L. Ed. 2d 15 (1975)* (quoting *Younger, 401 U.S. at 46*). Here, the claims at issue in the above-titled action arise from the arrest and prosecution currently at issue in the state court, and ***Cupp*** seeks an injunction staying the state court proceedings until resolution of his claims in the district court, as well as a declaratory judgment that his arrest was made without a valid warrant. (See id. ¶¶ 54, 60.) Defendants argue the injunctive and declaratory relief sought by ***Cupp*** would impermissibly interfere with his pending prosecution. The Court, again, agrees.

"[A] prosecution even though alleged to be unauthorized and hence unlawful is not alone ground for relief in equity," *Younger, 401 U.S. at 46* (internal quotation and citation omitted), as the "cost, anxiety, and inconvenience of having to defend against a single criminal prosecution" are "not by themselves . . .

considered 'irreparable' in the special legal sense of that term," see id. Rather, a party seeking relief such as that sought here must show either "bad faith" on the part of the state officials responsible for the prosecution, see *Kugler, 421 U.S. at 124*, **[*10]** or that the prosecution is "only one of a series of repeated prosecutions to which he will be subjected," *Younger, 401 U.S. at 49*; see, e.g., *Krahm v. Graham, 461 F.2d 703, 705-06 (9th Cir. 1972)* (finding good cause for injunctive relief where plaintiffs showed prosecutions were part of "anti-pornography campaign . . . spearheaded by the mayor" and pending cases were similar to "eleven that [had] resulted in acquittals," as well as "two that were dismissed on the morning of trial"). "A plaintiff asserting bad faith prosecution as an exception to Younger abstention must allege specific facts to support an inference of bad faith." See *Collins v. Kendall County, Ill., 807 F.2d 95, 98 (7th Cir. 1986)*.

Here, **Cupp** has alleged no facts sufficient to make the requisite showing. Rather, he asserts in conclusory fashion that "all" defendants "acted in bad faith, wantonly, recklessly, willfully, maliciously, and 'in concert' with additional state officers." (See Compl. ¶ 39.) Nonetheless, the Court will afford **Cupp** leave to amend to plead, if he is able, facts sufficient to support the requested intervention.

Accordingly, to the extent **Cupp** seeks declaratory and injunctive relief, the complaint **[*11]** will be dismissed with leave to amend.

**CONCLUSION**

For the reasons stated above, defendants' motions to dismiss are, in each instance, hereby GRANTED, as follows:

1. To the extent **Cupp** seeks damages as a form of relief, the complaint is DISMISSED.

2. To the extent **Cupp** seeks declaratory and injunctive relief, the complaint is DISMISSED with leave to amend as described above.

3. In the event **Cupp** wishes to file a First Amended Complaint, he shall file such pleading no later than May 28, 2014. In any such First Amended Complaint, **Cupp** may only add facts as specifically described above. **Cupp** may not add any new federal or state law claims, or add any new defendant, without first obtaining leave of court. See *Fed. R. Civ. P. 15(a)(2)*.

4. The Case Management Conference currently set for June 20, 2014 is hereby CONTINUED to August 22, 2014.

**IT IS SO ORDERED.**

Dated: May 12, 2014

/s/ Maxine M. Chesney

MAXINE M. CHESNEY

United States District Judge

_____

**End of Document**

EXHIBIT 7

1

2

3

4                  UNITED STATES DISTRICT COURT

5                 NORTHERN DISTRICT OF CALIFORNIA

6

7    RONALD CUPP, et al.,                    Case No.  15-cv-01565-JD

           Plaintiffs,
8
                                             **ORDER GRANTING MOTION TO**
9        v.                                  **DISMISS**

10   KATIE STRALEY, et al.,                  Re: Dkt. No. 7

           Defendants.
11

12

13         After foreclosure proceedings, the Sonoma County Sheriff's Office evicted pro se plaintiff

14   Ronald Cupp from his home and property.  Cupp and his tenant, Elias Stavrinides, sued the

15   County of Sonoma and Sheriff's Officer Katie Straley, for trespass and unreasonable seizure,

16   violation of the equal protection and due process clauses, loss of social standing, and intentional

17   infliction of emotional distress.

18                              **FACTUAL BACKGROUND**

19         The genesis of this case lies in the foreclosure of real property at 4640 Arlington Ave.,

20   Santa Rosa, CA 95407.  As alleged in the complaint, in May 2013 the Federal National Mortgage

21   Association, commonly known as Fannie Mae, filed an unlawful detainer action in Sonoma

22   County Superior Court, with the case number MCV-228269.  *See* Complaint, Case No. 3:14-cv-

23   01597-JD, Dkt. No. 1.  According to the complaint in that case, Ronald and Monica Cupp

24   defaulted on a promissory note secured by the property, which resulted in the property being sold

25   to Fannie Mae.  *Id.* 4-5, 7.  Fannie Mae filed the unlawful detainer action to take possession of the

26   property from the Cupps.  *See id.* at 8-9, 11.

27         The complaint further alleges that on April 2, 2014, a Sonoma County Sheriff's Officer

28   posted a Notice to Vacate on Ronald Cupp's house door, apparently as a result of a writ of

United States District Court
Northern District of California

United States District Court
Northern District of California

1   possession issued by the Sonoma County Superior Court in case number MCV-228269 on

2   February 18, 2014. *See* Complaint ¶¶ 22-23, Dkt. No. 1; Writ of Possession, Dkt. No. 20, Ex. A.[1]

3   Cupp and his tenant, Elias Stavrinides, were present at the time. *Id.* ¶¶ 25-27. Over the next few

4   days, Stavrinides -- and later his lawyer, David Bush -- attempted unsuccessfully to file copies of

5   Form CP10, "Claim of Right to Possession and Notice of Hearing" with the Sheriff's Office to

6   stop the eviction. *Id.* ¶¶ 29-41.

7       On April 7, 2014, Cupp removed case number MCV-228269 to federal court in this district

8   on April 7, 2014, as case number 3:14-cv-01597. *Id.* ¶ 42. The next day, Cupp filed a Notice of

9   Stay of Proceedings in Sonoma County Superior Court, told Sheriff's Officer Katie Straley about

10  the removal and the Notice of Stay, and posted copies of the Notice of Removal and the Notice of

11  Stay on the front door of the property at 4640 Arlington Ave. *Id.* ¶¶ 53, 55-57, 59-60. He

12  returned home that night to find that the Sheriff's Office had locked the gate of the property and

13  that "[a]ll doors[] to his house, work sheds, buildings, [and] trailers were broken into and left in

14  the open position." *Id.* ¶¶ 61-62.

15      On July 29, 2014, the Court remanded case number 3:14-cv-01597 to state court. *See* Case

16  No. 3:14-cv-01597, Dkt. No. 11.

17      On April 6, 2015, Cupp and Stavrinides filed their complaint in this case, which alleges

18  that the County of Sonoma violated the Fourth Amendment's prohibition against unlawful search

19  and seizure, the Eighth Amendment's prohibition against cruel and unusual punishment, the Fifth

20  and Fourteenth Amendments' guarantee of due process of law, and the Fourteenth Amendment's

21  guarantee of equal protection, apparently because they proceeded with the eviction despite the

22  Notice of Stay filed in state court. *See id.* ¶¶ 90, 98 & n.1. They also alleged claims for loss of

23  social standing and intentional infliction of emotional distress. *Id.* ¶¶ 104-14.

24

25

26  ─────────────────────
    [1] Defendants filed a request for judicial notice attaching the writ of possession issued by the
27  Sonoma County Superior Court in case number MCV-228269. *See* Dkt. No. 20. Because a court
    may "take judicial notice of undisputed matters of public record, including documents on file in
28  federal or state courts," *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal
    citation omitted), the Court takes judicial notice of the writ of possession.

**LEGAL STANDARD**

Federal courts are courts of limited jurisdiction.  *See Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986).  If not given the power to consider a claim under the United States Constitution or a federal statute, they lack subject matter jurisdiction and must dismiss the claim.  *See Chen-Cheng Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1415 (9th Cir. 1992).  The party asserting subject matter jurisdiction bears the burden of showing that it exists.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

When a federal court has proper jurisdiction, a complaint that fails to make "a short and plain statement of the claim showing that the pleader is entitled to relief," as required by Rule 8(a) of the Federal Rules of Civil Procedure, may be dismissed under Rule 12(b)(6).  To comply with Rule 8's requirements, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citing *Twombly* at 556).

Pro se pleadings are to be liberally construed, and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).  Nevertheless, "a liberal interpretation of a pro se civil rights complaint may not supply essential elements of the claim that were not initially pled." *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014) (quoting *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss."  *Id.*

**DISCUSSION**

Under the *Rooker-Feldman* doctrine, "review of state court decisions may only be conducted in the United States Supreme Court.  Lower federal courts may not review such decisions." *Partington v. Gedan*, 961 F.2d 852, 864 (9th Cir. 1992).  A complaint challenges a state court decision if the constitutional claims are "inextricably intertwined" with the state court's decision in a judicial proceeding. *District of Columbia Court of Appeals v. Feldman*, 460 U.S.

1   462, 483 n.16 (1983).  The *Rooker-Feldman* doctrine is a jurisdictional bar.  *Olson Farms, Inc. v.*

2   *Barbosa*, 134 F.3d 933, 937 (9th Cir. 1998).

3         A number of courts have held that section 1983 suits against state officials enforcing a writ

4   of possession issued by a state court are barred by the *Rooker-Feldman* doctrine.  *See Dang v.*

5   *Oakland Police Dept.*, No. C 13-4155 PJH, 2014 WL 793613, at *6-8 (N.D. Cal. Feb. 26, 2014)

6   (dismissing claims against Alameda County Sheriff's Office for enforcing state-court-issued writ

7   of possession pursuant to *Rooker-Feldman*); *Duenas v. Freitas*, No. C 13-0836 SBA, 2013 WL

8   3298249, at *3-4 (N.D. Cal. Jun. 28, 2013) (holding that subject matter jurisdiction was not

9   present where federal claims depended on finding state court writ of possession invalid); *Sorensen*

10   *v. Clarke*, No. EDCV 08-1142-CAS (JWJx), 2009 WL 122585, at *4-5 (C.D. Cal. Jan. 12, 2009)

11   (holding that claims against Sheriff Leroy D. Baca and Los Angeles County for carrying out

12   eviction pursuant to writ of possession were "barred by the *Rooker-Feldman* doctrine because they

13   are essentially a collateral attack on the Los Angeles County Superior Court's issuance of a writ of

14   possession"); *Busch v. Torres*, 905 F. Supp. 766, 771-72 (C.D. Cal. 1995) (holding that claims for

15   due process and Eighth Amendment violations against sheriff's officials for enforcing writ of

16   possession issued by state court constituted a "challenge to the state court judgment" and were

17   barred by *Rooker-Feldman*); *Homola v. McNamara*, 59 F.3d 647, 651 (7th Cir. 1995) (holding that

18   suits against deputies who execute a state court order are barred by *Rooker-Feldman*).  Even

19   liberally construed, plaintiffs' federal causes of action -- the first two counts -- depend on finding

20   either that the writ of possession issued by the state court was invalid, or that defendants could not

21   enforce it.  As the cited cases make clear, this United States District Court is without jurisdiction

22   to consider these claims under the *Rooker-Feldman* doctrine.

23         Plaintiffs argue that this case is not in effect an appeal of the state court judgment because

24   Cupp has a live and pending suit in Sonoma County Superior Court against the sheriff, with

25   docket number SCV-255005.  *See* Opposition to Motion to Dismiss at 6:20-25, Dkt. No. 10; *id.*

26   Ex. A.  That does not change the fact that this Court cannot pass on the validity of the writ of

27   possession issued in case number MCV-228269, which is what the Sheriff's Office enforced.

28   Plaintiffs also suggest that the defendants improperly enforced a "stayed" writ of possession.  *See*

United States District Court
Northern District of California

1    Opposition to Motion to Dismiss at 7:5-15.  But removing a state court case to federal court and

2    filing a notice to stay does not affect the validity or enforceability of writs issued by the state court

3    prior to removal.  *See* 28 U.S.C. § 1450 ("All injunctions, orders, and other proceedings had in [a

4    state court] action prior to its removal shall remain in full force and effect until dissolved or

5    modified by the district court.").  Plaintiffs do not allege that the writ of possession was ever

6    dissolved by the district court, so it remained in force, notwithstanding the removal to federal

7    court and the stay of the state court action.  Since it seems clear that the *Rooker-Feldman* hurdle

8    could not be cleared by the current claims whatever additional facts are pleaded, the Court denies

9    leave to amend the complaint on the grounds that it would be futile.  *See Cervantes v.*

10   *Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011); *Saul v. United States*, 928

11   F.2d 829, 843 (9th Cir. 1991).

12           That disposes of plaintiffs' federal law claims.  As for claims three and four, for loss of

13   social standing and intentional infliction of emotional distress, these are state law claims, and

14   plaintiffs do not allege that the Court has diversity jurisdiction over them.  The only potential basis

15   for jurisdiction is supplemental jurisdiction pursuant to 28 U.S.C. § 1367, and that statute provides

16   that a district court "may decline to exercise supplemental jurisdiction" if it has "dismissed all

17   claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  The Court declines to

18   exercise supplemental jurisdiction and consequently dismisses the state law claims as well.

19           Since this case can be resolved entirely on *Rooker-Feldman* grounds, the Court does not

20   reach defendants' alternative arguments that they are entitled to absolute immunity in executing

21   the state court writ of possession and that plaintiffs' state law claim for intentional infliction of

22   emotional distress is barred under the California Government Tort Claims Act.

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

The complaint is dismissed with prejudice, and the clerk is directed to enter judgment.

**IT IS SO ORDERED.**

Dated: August 10, 2015

_____
JAMES DONATO
United States District Judge

EXHIBIT 8

**A** Neutral
As of: July 9, 2020 8:41 PM Z

## *Cupp v. Straley*

United States Court of Appeals for the Ninth Circuit

November 15, 2016, Filed

No. 16-15329

**Reporter**
2016 U.S. App. LEXIS 24088 *

**RONALD CUPP** and ELIAS STAVRINIDES, Plaintiffs-Appellants, v. KATIE STRALEY and COUNTY OF SONOMA, Defendants-Appellees.

**Prior History: [*1]** D.C. No. 3:15-cv-01565-JD. Northern District of California, San Francisco.

*Cupp v. Straley, 2015 U.S. Dist. LEXIS 104866 (N.D. Cal., Aug. 10, 2015)*

**Disposition:** AFFIRMED.

**Counsel: RONALD CUPP**, Plaintiff - Appellant, Pro se, Rohnert Park, CA.

ELIAS STAVRINIDES, Plaintiff - Appellant, Pro se, Penngrove, CA.

For KATIE STRALEY, COUNTY OF SONOMA, Defendant - Appellees: Joshua A. Myers, Counsel, Sonoma County Counsel's Office, Santa Rosa, CA.

**Judges:** Before: CANBY, TASHIMA, and McKEOWN, Circuit Judges.

## Opinion

ORDER

A review of the record and the opening brief indicates that the questions raised in this appeal are so insubstantial as not to require further argument. *See United States v. Hooton, 693 F.2d 857, 858 (9th Cir. 1982)* (per curiam) (stating standard).

Accordingly, appellees' motion for summary disposition (Docket Entry No. 8) is granted. We summarily affirm the district court's judgment.

**AFFIRMED.**

**End of Document**

EXHIBIT 9

VL-115

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|---|

NAME: Ronald Cupp
FIRM NAME:
STREET ADDRESS: 150 Ralev Town Center Ste 2512
CITY: Rohnert Park          STATE: CA     ZIP CODE: 94928
TELEPHONE NO.: 707-318-9929     FAX NO.:
E-MAIL ADDRESS: ronc2009@gmail.com
ATTORNEY FOR (name):

☐ COURT OF APPEAL,          APPELLATE DISTRICT, DIVISION
☒ SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA
STREET ADDRESS: 600 Administration Drive
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Rosa, CA 95403
BRANCH NAME: Civil

PLAINTIFF/PETITIONER: Ronald Cupp
DEFENDANT/RESPONDENT: County of Sonoma
OTHER:

**FILED**

AUG - 6 2021

Clerk of Superior Court of California,
County of Sonoma
By _____
Deputy Clerk

**ORDER TO FILE**
**NEW LITIGATION BY VEXATIOUS LITIGANT**

Type of case: ☐ Limited Civil   ☒ Unlimited Civil   ☐ Small Claims
☐ Family Law   ☐ Probate   ☐ Other

CASE NUMBER:

## ORDER

Approval to file the attached document is:

a. ☐ Granted

b. ☒ Denied

c. ☐ Other:

☐ Attachment to order.   Number of pages:

Date: August 6, 2021

_____
PRESIDING JUDGE OR JUSTICE

Form Approved for Optional Use
Judicial Council of California
VL-115 [Rev. September 1, 2018]
For your protection and privacy, please press the Clear
This Form button after you have printed the form.

**ORDER TO FILE**
**NEW LITIGATION BY VEXATIOUS LITIGANT**

Page 1 of 1
Code of Civil Procedure, § 391.7
www.courts.ca.gov

Print this form   Save this form

VL-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|---|

NAME: RONALD CUPP
FIRM NAME:
STREET ADDRESS: 150 RALEY TOWN CENTER STE 2512
CITY: ROHNERT PARK   STATE: CA   ZIP CODE: 94928
TELEPHONE NO.: 707-318-9929   FAX NO.:
E-MAIL ADDRESS: ronc2009@gmail.com
ATTORNEY FOR (name): Pro Per

[ ] COURT OF APPEAL,        APPELLATE DISTRICT, DIVISION
[x] SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA
STREET ADDRESS:
MAILING ADDRESS: 600 ADMINISTRATION DRIVE
CITY AND ZIP CODE: SANTA ROSA, CA 95403
BRANCH NAME: CIVIL

**FILED**

JUL 2 3 2021

Clerk of Superior Court of California,
County of Sonoma
By M-Cenley
    Deputy Clerk

PLAINTIFF/PETITIONER: RONALD CUPP
DEFENDANT/RESPONDENT: COUNTY OF SONOMA
OTHER:

## REQUEST TO FILE
## NEW LITIGATION BY VEXATIOUS LITIGANT

Type of case: [ ] Limited Civil   [ ] Unlimited Civil   [ ] Small Claims
[ ] Family Law   [ ] Probate   [x] Other

CASE NUMBER:

1. I have been determined to be a vexatious litigant and must obtain prior court approval to file any new litigation in which I am not represented by an attorney. Filing new litigation means (1) commencing any civil action or proceeding, or (2) filing any petition, application, or motion (except a discovery motion) under the Family or Probate Code.

2. I have attached to this request a copy of the document to be filed and I request approval from the presiding justice or presiding judge of the above court to file this document (name of document):
   MY PETITION WILL NOT BE COMPLETED UNTIL AFTER CLOSE OF BUSINESS, MY FILING TIME IS UP TO MIDNIGHT. MY DOCUMENT IS A PETITION FOR A WRIT OF MANDATE REGARDING AN ABATEMENT HEARING BEFORE THE SONOMA COUNTY PRMD. HEARING OFFICER ERRONEOUSLY RULED IN FAVOR OF THE COUNTY.

3. The new filing has merit because (Provide a brief summary of the facts on which your claim is based; the harm you believe you have suffered or will suffer; and the remedy or resolution you are seeking):
   SEE ATTACHMENT 1, STATEMENT
   SEE ATTACHMENT 2. FILING IN ALAMEDA SUPERIOR COURT IN MAY TO BE REMOVED FROM VEXATIOUS LITIGANT LIST AS STATUTE DOES NOT APPLY NOW AS TIME HAS PASSED WITH NEGATIVE RULINGS IN THE PAST.  COPY OF ALAMEDA SUPERIOR COURT FILING IS ATTACHED.

4. The new filing is not being filed to harass or to cause a delay because (give reasons):
   THIS REQUEST IS JUST TO HONOR THE COURT AS I DO NOT BELIEVE I AM REQUIRED TO FILE AS BEING REMOVED THE VEXATIOUS LITIGANT LIST IS IN PROCESS (COPY OF REQUEST FOR REMOVAL ATTACHED).
   MY PETITION FOR WRIT OF MANDATE HAS MERIT AS I BELIEVE THE ABATEMENT HEARING WAS INCORRECTLY HELD BY A 'HEARING OFFICER' IN CONTRIDICTION TO THE CA APPELLATE DECISION OF LIPPMAN V CITY OF OAKLAND 19 CAL.APP 5TH 75. (SEE ATTACHMENT 1. STATEMENT)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 7-23-21

RONALD CUPP
_____
(TYPE OR PRINT NAME)

▶ _____
        (SIGNATURE)

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
VL-110 [Rev. September 1, 2018]

**REQUEST TO FILE
NEW LITIGATION BY VEXATIOUS LITIGANT**

Code of Civil Procedure, § 391.7
www.courts.ca.gov

For your protection and privacy, please press the Clear This Form button after you have printed the form.   [Print this form]   [Save this form]   [Clear this form]

### ATTACHMENT TO VL-110

Although there are several items contained in my Petition for Writ of Mandate, the glaring violation that will be decided is listed below, ie: Lippman v. City of Oakland.

1.      STATEMENT FOR FORM VL-110 ITEMS #3 AND #4

### SONOMA COUNTY CODE ENFORCEMENT DOES NOT HAVE THE RIGHT TO CONDUCT AN ADMINISTRATIVE HEARING WITH A HEARING OFFICER THAT PERTAINS TO BUILDING CODE VIOLATIONS.

In Lippman v. City of Oakland (2017) recorded at19 Cal.App.5th 75, states the appeals process before a single hearing officer conflicts with the procedures set forth in the Building Code. Notably, however, the Building Code does not contemplate an appeal before a single hearing officer. Rather, the Building Code refers to an "appeals board."

Legislative history indicates that an appeal should exist outside the enforcement agency. In this case the Code Enforcement Division of the Sonoma County Permit and Resource Management Division. The Sonoma County's process of authorizing an appeal to a single hearing officer appointed by the enforcement agency is contrary to the plain language of the State Housing Law and the Building Code and is inconsistent with the legislative intent. It requires appeals to be heard by an appeals board, an authorized agency, or its governing body, rather than by a single hearing officer appointed by the enforcement agency.

Sonoma County Code 7-13 violates Lippman. **Sec. 7-13. Codes adopted and modifications. Section (B) (1),** "Appeals of any notice of violation or notice and order to abate any violation of this code shall be heard and decided by a *hearing officer* pursuant to Section 1-7.3 of the Sonoma County Code. This violates Lippmann.

This decision is coming from a Hearing Officer, Michael Gogna, who previously or still worked as a contract attorney for the County of Sonoma County Counsel's in some department function.

2.      My Vexatious Litigant status has passes as the cases used to determine my status have fallen off due to continuation of time. I-have filed in May 2021 to be removed from the list, copy of application attached.  I have filed at least two (2) times with the Presiding Judge in the last 5 years, was granted permission to appeal, went to the appellate court twice and was successful with part of case remanded back to Sonoma Superior Court. I do not file any frivolous cases or arguments of law.

VL-120

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|---|

NAME: **RONALD CUPP**

FIRM NAME:

STREET ADDRESS: **150 RALEY TOWN CENTER STE 2512**

CITY: **ROHNERT PARK**    STATE: **CA**   ZIP CODE: **94928**

TELEPHONE NO. **707-318-9929**    FAX NO.:

E-MAIL ADDRESS: **RONC2009@GMAIL.COM**

ATTORNEY FOR (name): **PRO SE**

☐ COURT OF APPEAL,            APPELLATE DISTRICT, DIVISION

☒ SUPERIOR COURT OF CALIFORNIA, COUNTY OF   **ALAMEDA**

STREET ADDRESS: **2233 SHORE LINE DR**

MAILING ADDRESS:

CITY AND ZIP CODE: **ALAMEDA, CA 94501**

BRANCH NAME: **CIVIL**

FILED
ALAMEDA COUNTY

MAY 1 1 2021

CLERK OF THE SUPERIOR COURT

PLAINTIFF/PETITIONER:

**PAGE V CUPP**

| APPLICATION FOR ORDER TO VACATE PREFILING ORDER AND REMOVE PLAINTIFF/PETITIONER FROM JUDICIAL COUNCIL VEXATIOUS LITIGANT LIST | CASE NUMBER: **RG15756876** |
|---|---|

Important, please read: This application must be filed in the court that entered the prefiling order, either in the action in which the prefiling order was entered or in conjunction with a request to the presiding justice or presiding judge to file new litigation under Code of Civil Procedure section 391.7. If you have made an application to vacate a prefiling order that was denied, you may not make another application to vacate in any California court until at least 12 months after the denial.

1. I have been determined to be a vexatious litigant under the California Code of Civil Procedure section 391. This application requests that the court vacate its prefiling order and order my name removed from the statewide vexatious litigant list.

2. The prefiling order or orders were issued in the following case or cases (list all):

   Court:  **SUPERIOR COURT ALEMEDA**          Court:  **SUPERIOR COURT SONOMA**

   Case Name:  **PAGE V CUPP**               Case Name:  **CUPP V EVERBANK**

   Case Number:  **RG15780643**              Case Number:  **SCV-255005**

   Date prefiling order entered:  **OCTOBER 15, 2015**    Date prefiling order entered:  _____

   ☐ Continued on *Attachment* (form MC-025).

3. I request that the prefiling order be vacated under Code of Civil Procedure section 391.8. (Describe below the material change in the facts on which the order was granted and how the ends of justice would be served by vacating the order.)

   Ronald Cupp currently does not meet the statutory requirement to be declared a vexatious litigant, as more than 5 years have past since he was declared such. Cupp was required to post undertaking in SCV-628864 above and did so. In this case the action was filed PRIOR to being declared vexatious. In continuing with this case, Cupp had to request of the Presiding Judge for permission to file appeals from Sonoma to Appellate Court, permission was granted, case remanded back to Sonoma for trial. Ronald Cupp did file a complaint March 2015 and dropped it due to Vexatious Litigant Status.

   Ronald Cupp HAS NOT FILED ANY NEW ACTIONS WHICH REQUIRE VEXATIOUS LITIGANT STATUS, and requests to be removed from the VEXATIOUS LITIGANT statewide registration list.

   ☐ Continued on *Attachment* (form MC-025).

Form Approved for Optional Use
Judicial Council of California
VL-120 [Rev. September 1, 2016]

**APPLICATION FOR ORDER TO VACATE PREFILING ORDER AND REMOVE PLAINTIFF/PETITIONER FROM JUDICIAL COUNCIL VEXATIOUS LITIGANT LIST**

Code of Civil Procedure, § 391.7
www.courts.ca.gov

VL-125

| ATTORNEY OR PARTY WITHOUT ATTORNEY | FOR COURT USE ONLY |
|---|---|

NAME: **RONALD CUPP**          STATE BAR NUMBER:

FIRM NAME:

STREET ADDRESS: **150 RALEY TOWN CENTER STE 2512**

CITY: **ROHNERT PARK**          STATE: **CA**   ZIP CODE: **94928**

TELEPHONE NO.: **707-318-9929**          FAX NO.:

E-MAIL ADDRESS: **ronc2009@gmail.com**

ATTORNEY FOR (name): **pro se**

☐ COURT OF APPEAL,          APPELLATE DISTRICT, DIVISION

☒ SUPERIOR COURT OF CALIFORNIA, COUNTY OF **ALAMEDA**

STREET ADDRESS: **2233 SHORE LINE DR**

MAILING ADDRESS:

CITY AND ZIP CODE: **ALAMEDA, CA 94501**

BRANCH NAME: **CIVIL**

PLAINTIFF/PETITIONER:

**PAGE V CUPP**

## ORDER ON APPLICATION TO VACATE PREFILING ORDER AND REMOVE PLAINTIFF/PETITIONER FROM JUDICIAL COUNCIL VEXATIOUS LITIGANT LIST

CASE NUMBER:

**RG15756876**

Plaintiff/Petitioner   **RONALD CUPP**                     requests that this court vacate the prefiling order and remove the vexatious litigant's name from the statewide list in the following case or cases (if more than one, list each separately):

Court:   **SUPERIOR COURT ALAMEDA**          Court:   **SUPERIOR COURT SONOMA**

Case Name: **PAGE V CUPP**          Case Name: **CUPP V EVERBANK**

Case Number: **RG15780643**          Case Number: **SCV-255005**

Date prefiling order entered: **OCTOBER 15, 2015**          Date prefiling order entered:

☐ Continued on *Attachment* (form MC-025)

☐ Granted

☒ Denied

Date: _____          _____
                                                PRESIDING JUSTICE OR JUDGE

The clerk is ordered to provide this order to the Judicial Council of California by fax at 415-865-4329 or by mail at the address below.

> Vexatious Litigant Prefiling Orders
> Judicial Council of California
> 455 Golden Gate Avenue
> San Francisco, California 94102-3688

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
VL-125 [Rev. September 1, 2016]

## ORDER ON APPLICATION TO VACATE PREFILING ORDER AND REMOVE PLAINTIFF/PETITIONER FROM JUDICIAL COUNCIL VEXATIOUS LITIGANT LIST

Code of Civil Procedure, § 391.8
www.courts.ca.gov

For your protection and privacy, please press the Clear This Form button after you have printed the form.          [ Print this form ]   [ Save this form ]          [ Clear this form ]

PROOF OF SERVICE BY MAIL

I certify that I am an employee of the Superior Court of California, County of Sonoma, and that my business address is 600 Administration Drive, Santa Rosa, California 95403; that I am not a party to this cause; that I am over the age of 18 years; that I am readily familiar with this office's practice for collection and processing of correspondence for mailing with the United States Postal Service; and that on the date shown below I placed a true copy of the **ORDER TO FILE NEW LITIGATION BY VEXATIOUS LITIGANT filed 8/6/21; REQUEST TO FILE NEW LITIGATION BY VEXATIOUS LITIGANT filed 7/23/21; copy of Application to Alameda County for Order to Vacate Prefiling Order and Remove Plaintiff/Petitioner form Judicial Council Vexatious Litigant List; and copy of Order on Application to Vacate Prefiling Order and Remove Plaintiff/Petitioner from Judicial Council Vexatious Litigant List** in an envelope, sealed and addressed as shown below, for collection and mailing at Santa Rosa, California, first class, postage fully prepaid, following ordinary business practices.

Date:  August 9, 2021

Arlene Junior
COURT EXECUTIVE OFFICER

By: *Missy Lemley*
Missy Lemley
Judicial Assistant

–ADDRESSES–

Ronald Cupp
150 Raley Town Center, Ste 2512
Rohnert Park, CA 94928

EXHIBIT 10

Court of Appeal, First Appellate District
Charles D. Johnson, Clerk/Executive Officer
Electronically FILED on 11/15/2021 by X. Ramos, Deputy Clerk

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

RONALD CUPP,

     Petitioner,

v.

THE SUPERIOR COURT OF
SONOMA COUNTY,

     Respondent;

COUNTY OF SONOMA, et al.,

     Real Parties in Interest.

A163613

(Sonoma County
Super. Ct. No. )

**THE COURT:**[*]

The petition for a writ of mandate is denied.

Dated: __11/15/2021__

_____ Tucher, P.J. _____ P.J.

PRESIDING JUSTICE

---

[*]     Tucher, P.J., Fujisaki, J., & Rodriguez, J.