ERIC G. YOUNG, ESQ. (SBN 190104)
**YOUNG LAW GROUP**
2544 Cleveland Avenue, Suite 210
Santa Rosa, California 95403
Tel.:  707.343.0556
Fax:  707.327.4360
Email: eyoung@younglawca.com
E-Service: service@younglawca.com

Attorneys for Plaintiff
RONALD CUPP

# UNITED STATES DISTRICT COURT

# NOTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| RONALD CUPP, an individual,<br><br>    Plaintiff,<br><br>    vs.<br><br>COUNTY OF SONOMA, a municipal corporation; TENNIS WICK, in his individual and official capacities; TYRA HARRINGTON, in her individual and official capacities; MARK FRANCESCHI, in his individual and official capacities; TODD HOFFMAN, in his individual and official capacities; JESSE CABLK, in his individual and official capacities; ANDREW SMITH, in his individual and official capacities; and DOES 1-50, inclusive.<br><br>    Defendants. | CASE NO.: 4:23-cv-01007<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT COUNTY OF SONOMA'S MOTION TO DISMISS**<br><br>Date: June 29, 2023<br>Time: 2:00 p.m.<br>Courtroom: 6, 2nd Floor<br>Judge: Jon S. Tigar |



# Table of Contents

I. INTRODUCTION ...................................................................................................... 1

II. STATEMENT OF FACTS ........................................................................................ 2

III. ARGUMENT .......................................................................................................... 6

   A. LEGAL STANDARD ........................................................................................... 6

   B. THE TWO-YEAR STATUTE OF LIMITATIONS DOES NOT APPLY IN CASES WHERE PLAINTIFF ALLEGES A SYSTEMIC PATTERN OR PRACTICE OF UNCONSTITUTIONAL CONDUCT UNDERTAKEN AS A RESULT OF OFFICIAL COUNTY POLICIES ........................ 7

   C. PLAINTIFF HAS ADEQUATELY PLEADED A *MONELL* CLAIM, BUT SHOULD BE GRANTED LEAVE TO AMEND TO ALLEGE IF THE COURT CONCLUDES THE COMPLAINT IS INSUFFICIENT ..................................................................................... 9

   D. THE COUNTY FAILS TO ANALYZE OR ACCURATELY ASSERT WHETHER PLAINTIFF CAN OBTAIN DAMAGES FOR VIOLATIONS OF ART. I, §§ 7, 13 ............................. 10

   E. THE COUNTY IS NOT IMMUNE FROM PLAINTIFF'S STATE LAW CLAIMS ..................... 11

   F. *YOUNGER* DOES NOT APPLY BECAUSE THE COUNTY HAS NOT INITIATED A STATE COURT ACTION AGAINST PLAINTIFF ........................................................................... 13

   G. THE "VEXATIOUS LITIGANT" STATUTES DO NOT SUPPORT DISMISSAL OF THIS ACTION, AND ARE NOTHING BUT AN AD HOMINEM ATTACK ........................................... 15

IV. CONCLUSION ....................................................................................................... 16

**Table of Authorities**

**Cases**

*AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) ............................ 7

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007 ...................................................................... 6

*Bus. Tel. Sys. v. Cohn,* 1994 WL 589487, 1994 U.S. Dist. LEXIS 14746 ...................................... 16

*Carpinteria Valley Farms v. City of Santa Barbara,* 344 F.3d 822, n.3 (9th Cir. 2003) ............. 9

*City of Canton v. Harris,* 489 U.S. 378 (1989) ............................................................................... 10

*City of St. Louis v. Proprotnik,* 485 U.S. 112 123 (1988 ............................................................... 10

*Cruz v. Beto,* 405 U.S. 319, 322 (1972) ............................................................................................ 6

*Doe v. County of Orange,* 2020 U.S. Dist. LEXIS 188536, 2020 WL 5947829 .......................... 11

*E.I. du Pont de Nemours & Co. v. Kolon Indus.,* 637 F.3d 435, 440 (4th Cir. 2011) .................... 6

*Estate of Osuna,* 392 F. Supp. 3d 1162, 1178 (E.D. Cal. 2019) ................................................... 11

*Garden City, Inc. v. Jose,* N.D. Cal., Sep. 5, 2013, Case No.: CV 13-0577 PSG ........................... 9

*Golden Eagle Distributing Corp. v. Burroughs Corp.,* 801 F. 2d 1531, 1542 (9th Cir. 1986) ..... 16

*Gregory v. City of Louisville,* 444 F.3d 725, 724 (6th Cir. 2006) .................................................... 9

*Herrera v. City of Palmdale* ............................................................................................................ 15

*Jewel v. Nat'l Sec. Agency,* 673 F.3d 902, 903 n.3 (9th Cir. 2011) ................................................ 7

*Katzberg v. Regents of the Univ. of Calif.,* 29 Cal.4th 300 (2002) ............................................... 11

*McDougal v. County of Imperial,* 942 F.2d 668, 674 .......................................................................... 7

*Missouri ex rel. Koster,* 847 F.3d at 655–56 ..................................................................................... 7

*Monell v. Dept. of Social Services,* 436 U.S. 658, 690 ..................................................................... 9

of *Ogborn v. City of Lancaster,* 101 Cal.App.4th 448 ...................................................................... 12

*Ogborn, supra,* 101 Cal.App.4th at 461 ........................................................................................... 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



*Owens v Okure*, 488 US 235, 240 (1989) ............................................................ 7

*Pembauer, supra,* 475 U.S. at pp. 484-485 ...................................................... 10

*Pembaur v. City of Cincinatti,* 475 U.S. 469, 482-483 (1989) ......................... 10

*Retail Clerks Int'l Ass'n v. Schermerhorn,* 373 U.S. 746, 753 n. 6 (1963) .................... 7

*Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 205 (7th Cir.1985) ............... 16

*Sharp v. City of Houston*, 164 F.3d 923, 936 (5th Cir. 1999 ........................... 9

*Shen v. Albany Unified Sch. Dist.*, 2018 U.S. Dist. LEXIS 144656, 2018 WL 4053482 .............. 11

*Thinket Ink Info Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004). ..... 7

*Watson v. City of Kansas City*, 857 F.2d 690, 696 (10th Cir. 1988) ..................... 9

*Webb v. Trader Joe's Co*., 999 F.3d 1196, 1204 (9th Cir. 2021 ....................... 7

**Statutes**

42 USC § 1983 .......................................................................................... 7

Cal. Code of Civil Procedure section 340(3 ................................................... 7

*California Code of Civil Procedure section 391(b)* ....................................... 15

Government Code section 815.2(b). ............................................................. 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Plaintiff RONALD CUPP (hereinafter "Plaintiff" or "Cupp") hereby respectfully submits the following Memorandum of Law in Opposition to Defendant COUNTY OF SONOMA'S ("the County") Motion to Dismiss:

## I. **INTRODUCTION**

Despite the County's *ad hominem* attacks on Plaintiff, Plaintiff's Complaint is not an unwarranted attack. Plaintiff's Complaint is an attempt to redress a pattern and practice of ongoing violations of Plaintiff's constitutional and legal rights as a private property owner. The County brings this lawsuit on itself for promulgating at least two policies that activated the unconstitutional behavior alleged in the Complaint and by using its Permit Resource Management Department ("PRMD") as an official tool to run roughshod over Plaintiff's rights as well as the rights of potentially thousands of other private property owners in the County.

Plaintiff's Complaint for Declaratory Relief, Injunctive Relief and Damages ("the Complaint" or "Compl.") arises from a pattern and practice of unconstitutional behavior by local government officials employed by the County through PRMD.

Plaintiff alleges that the County and additional named Defendants violated – _and continue to violate_ - his rights under the 4th, 5th and 14th Amendments, the California Constitution, and common law by engaging in a pattern and practice of unlawful and unconstitutional misconduct. Specifically, Plaintiff alleges that Defendants:

- Conducted several, warrantless searches of Plaintiff's private property, including using drones in an unlawful and unconstitutional manner;

- Submitted a false or misleading affidavit to a local judge in order to obtain an inspection warrant for Plaintiff's private property



- Instituted abatement proceedings against him, including wrongfully placing an abatement lien on Plaintiff's private property which County officials continue to refuse to remove despite Plaintiff's Herculean efforts and substantial expenditure of funds to comply with citations he received as well as meeting additional demands from the County regarding Plaintiff's private property;

- Wrongfully disconnected electricity and gas to his property during the pendency of a prior action, *Cupp v. Smith* 4:20-cv-03456PJH, and refused to restore it for some 19 months until Smith (represented by the County) lost a motion for summary judgment in that action;

- Enforced – and continue to enforce - local rules, regulations and procedures against Plaintiff in an unfair, arbitrary and capricious manner; and

- Trespassed on his property and invaded his privacy.

Plaintiff seeks declaratory relief, injunctive relief, and damages.

## II. <u>STATEMENT OF FACTS</u>

PRMD is commonly known in the County as "Permit Sonoma" and is made up of several divisions. (See, Young Dec., submitted herewith, ***Exhibit 1***). One division is Code Enforcement. Generally, Code Enforcement inspects private property to discover building code violations, cites property owners for violations, imposes fines and penalties against property owners, conducts administrative hearings, and determines the extent of property owner liability to the County for violations. However, since at least 2017, Code Enforcement has had a direct mandate to be a revenue-generating operation at the expense of the County's private property owners.

Two official policies adopted, approved or known by the County's Board of Supervisors activated the constitutional violations alleged in the Complaint, which affect not only Plaintiff



_____
PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT COUNTY OF SONOMA'S
MOTION TO DISMISS
- 2

but many others. The County promulgated these policies, or allowed them to take effect, either at the behest of two PRMD officials sued herein as additional Defendants or in conjunction with these Defendants. They are:

- Defendant TENNIS WICK ("Wick"), PRMD Director, who is vested by local ordinance with policy-making authority for PRMD and the responsibility for all code enforcement work that takes place in the County

(Compl., p. 4:13-28); and

- Defendant TYRA HARRINGTON ("Harrington"), Code Enforcement Manager, who oversees the code enforcement activities and officers employed by the County, is directly involved in creating policy for PRMD alongside Wick, engages directly in inspection activities; determines whether fines or penalties are imposed on property owners and in what amounts, and whether property owners will be offered a settlement of liabilities by the County or not. Harrington has the final say on all matters regarding the Code Enforcement Division.

(Compl., p 5:1-5).

In addition to the aforementioned Defendants, certain code enforcement officers of various ranks, employed by the County and sued herein as additional Defendants, either committed the unconstitutional acts alleged in the Complaint; or they failed to train, supervise, or discipline the code enforcement officers for their actions whom they know are committing constitutional violations or encourage such conduct to promote County policy. They are:

- Defendant MARK FRANCESCHI ("Franceschi"), Code Enforcement Supervisor, who supervises the code enforcement officers employed by PRMD, is responsible for overseeing the training and discipline of these officers, and who conducts



administrative hearings when they are offered to property owners (Compl. 5:6-9);

- Defendant TODD HOFFMAN ("Hoffman"), Code Enforcement Inspector II, (Compl. 5:10-14);

- Defendant JESSE CABLK ("Cablk"), Senior Code Enforcement Inspector, (Compl. 5:15-19.); and

- Defendant ANDREW SMITH ("Smith"), Code Enforcement Inspector, (Compl. 5:20-24)

The first policy – the Code Enforcement Enhancement Policy (CEEP) – was presented to the County Board of Supervisors on or about March 27, 2017 by Wick. (Compl., p. 9:24-18) Under the guise of being a program to resolve a backlog of old property violations by hiring new code enforcement officers, CEEP actually represented a fundamental shift in the way PRMD previously handled property violations, which was a much more collaborative approach designed to help property owners resolve violations rather than punishing them. CEEP created a new position, Code Enforcement Manager, which was subsequently filled by Harrington, a former deputy sheriff. The effect of CEEP, though not stated expressly in the policy, was to incentivize Harrington to "increase cost recovery" by making her salary dependent on the collection of penalties and fines levied against property owners. As a direct result of CEEP, Harrington has adopted and approved overly aggressive and often unconstitutional methods in the work of Code Enforcement, including inspections of private land without warrants, use of drones to search private land without warrants, and the imposition of excessive and punitive fines against property owners. These methods have all caused harm – and continue to cause harm – to Plaintiff and many additional property owners in the County. (Compl., p. 9:19-11:2.)

At the same time, CEEP made "a number of minor policy modifications and delegations"



and "policy modifications to increase effectiveness." In effect, the Board of Supervisors deleted the authority to "bypass the administrative process" and proceed directly to lawsuits and other punitive measures against property owners. Once again, this represented a fundamental shift in PRMD's work in the County, and it granted virtually unfettered discretion to Wick and Harrington to speed up the recovery of fines and penalties and to increase "citation fee revenue," which has resulted in the unconstitutional acts in the Complaint and which will be the subject of complaints by future property owners. (Compl., p. 11:3-23; Young Decl, submitted herewith.)

On information and belief, CEEP did not immediately take effect because PRMD's focus had to shift in October 2017 due to the Nuns, Tubbs, and Pocket Fires (the Sonoma Complex Fire). On further information and belief, PRMD remained involved with efforts to clean up after the fires for many months after the fires. (Compl., p. 11:24-12:8.)

By at least 2019, however, Code Enforcement was undertaking its new role as the "property police" with zeal, including engaging in a warrantless search of Plaintiff's property in February 2019. In August 2019, the local newspaper, the Press Democrat ("PD"), wrote an unflattering article about Wick for over-promising and under-delivering through PRMD's enforcement activities. Pressure from the press further incentivized Wick and Harrington to step up enforcement activities, which has resulted in further unconstitutional behavior by officials employed at PRMD. (Compl., p. 12:9-15:7.)

Whether as a result of the PD article or it was already underway, shortly after the PD article, PRMD promulgated its own, five-page policy and procedure document on the use of unmanned aircraft system (UAS) (i.e., "drones"). (Compl., 15:10-15.) The County did not publish its new drone policy on the County's public website, but instead, published it solely on the County's "intranet." On information and belief, officials at PRMD, including the individual



Defendants named herein – but particularly Wick and Harrington – made this decision deliberately to conceal the drone policy as well as PRMD's heightened enforcement activities from the public. In addition, on further information and belief, the County hired a private drone operator without putting the job out for public bid, a further step to keep the County's new drone policy and program a secret. (Compl., p. 17:7-18:14.)

From the enactment or promulgation of these policies, the entirety of the unconstitutional misconduct alleged in the Complaint flows. Not alleged in the Complaint, but for which Plaintiff requests leave to allege in an amended complaint, is a violation of the 8th Amendment for excessive fines and penalties, to further augment the allegations regarding conspiracy, and to amend the Complaint as a class action on behalf of other, similarly situated private property owners in the County. (See, Young Declaration, submitted herewith.)

Defendants now move to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) ("the Motion"). For the reasons set forth herein, the Court should deny the Motion.

### III. <u>ARGUMENT</u>

#### A. LEGAL STANDARD

To survive a motion to dismiss, Plaintiffs must establish only that they have stated a claim to relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); see also *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011). The allegations of the complaint must be accepted as true. *Cruz v. Beto,* 405 U.S. 319, 322 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn,* 373 U.S. 746, 753 n. 6 (1963). Thus, the plaintiff need not necessarily plead a



_____
PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT COUNTY OF SONOMA'S
MOTION TO DISMISS
- 6

particular fact if that fact is a reasonable inference from facts properly alleged. *See id.*

"Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Missouri ex rel. Koster*, 847 F.3d at 655–56; see also *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment."); *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012); *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 903 n.3 (9th Cir. 2011); *Thinket Ink Info Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).

**B. THE TWO-YEAR STATUTE OF LIMITATIONS DOES NOT APPLY IN CASES WHERE PLAINTIFF ALLEGES A SYSTEMIC PATTERN OR PRACTICE OF UNCONSTITUTIONAL CONDUCT UNDERTAKEN AS A RESULT OF OFFICIAL COUNTY POLICIES**

The County correctly points out that 42 USC § 1983 does not contain a statute of limitations within its language. The United States Supreme Court has directed that 42 USC § 1988 "requires courts to borrow and apply to all § 1983 claims the one most analogous state statute of limitations, which is California's personal injury statute codified in the Cal. Code of Civil Procedure section 340(3)." *Owens v Okure*, 488 US 235, 240 (1989); *McDougal v. County of Imperial*, 942 F.2d 668, 674. According to these authorities, the applicable statute of limitations would be two years from the date the cause of action accrued.

The County's analysis is correct, however, only as far as it goes. The gravamen of Plaintiff's Complaint is not a series of discrete, wrongful acts, some of which are, admittedly, outside the two-year period and some of which are not. Instead, Plaintiff alleges that in March 2017 and September 2019, the County adopted or allowed two policies to take effect – CEEP and the drone policy. Together, these policies have incentivized overly aggressive and unlawful



code enforcement and revenue-generation activities by employees of Permit Sonoma at the expense of property owners in the County, including warrantless entries onto private property. (Compl. P. 9:13-11:2.) Plaintiff further alleges that CEEP authorized Permit Sonoma to bypass certain procedural steps the department had previously taken when dealing with property owners and encouraged Permit Sonoma employees to immediately cite property owners and assess penalties of one kind or another, while violating the constitutional rights of property owners. (Compl. p. 11:3-23.)

In addition, Plaintiff alleges that on September 10, 2019, PRMD promulgated with the knowledge and approval of the County to enhance PRMD's code enforcement activities, which the County did not make public. Similarly, the County hired a private drone operator as a contractor without putting the position out for public bid. Like CEEP, the drone policy encourages the use of drones to conduct inspections without first obtaining an inspection warrant, regardless of whether there are exigent circumstances or not. (Compl. p. 15:8-21:21.)

Plaintiff alleges that all of the conduct complained of in the Complaint occurred pursuant to, and as a result of, these unconstitutional policies, and that these policies established a pattern and practice of unconstitutional behavior by officials and employees of PRMD. These policies remain in effect today, and Cupp has been harmed by them as alleged in the Complaint.

Plaintiff does not merely allege a series of discrete acts; he alleges a pattern and practice of unconstitutional misbehavior by employees of PRMD acting pursuant to policies that have established a systemic problem in the County, not only for Plaintiff but also for other property owners. Plaintiff may rely on misconduct outside the two-year period because in this context, the two-year statute of limitations simply does not apply. *Garden City, Inc. v. Jose,* N.D. Cal.,



Sep. 5, 2013, Case No.: CV 13-0577 PSG.

Nevertheless, to the extent Plaintiff has not adequately pleaded a pattern and practice of unconstitutional acts stemming from official policies of the County, Plaintiff respectfully requests leave to amend, as Plaintiff has not pleaded the entirety of facts known to the Plaintiff. *Carpinteria Valley Farms v. City of Santa Barbara,* 344 F.3d 822, n.3 (9th Cir. 2003). Plaintiff also has additional claims he has not yet pleaded but can adequately plead to survive a motion to dismiss.

### C. PLAINTIFF HAS ADEQUATELY PLEADED A *MONELL* CLAIM, BUT SHOULD BE GRANTED LEAVE TO AMEND TO ALLEGE IF THE COURT CONCLUDES THE COMPLAINT IS INSUFFICIENT

Admittedly, neither CEEP nor the drone policy expressly state that PRMD should engage in unconstitutional behavior. Few local policies would ever be so blatant. However, this reality is not the end of the *Monell* inquiry.

A plaintiff generally may use one of four methods to establish *Monell* liability. First, a plaintiff may point – as Plaintiff does here – to an officially adopted or promulgated policy. (*Monell v. Dept. of Social Services*, 436 U.S. 658, 690.)

Second, a plaintiff may point to a custom or practice that is not written or formally adopted, but that is pervasive enough to have the force of law. *Gregory v. City of Louisville*, 444 F.3d 725, 724 (6th Cir. 2006) [custom of using overly aggressive show ups]; *Sharp v. City of Houston*, 164 F.3d 923, 936 (5th Cir. 1999) [finding custom existed for transfers and demotion when officers reported misconduct]; *Watson v. City of Kansas City,* 857 F.2d 690, 696 (10th Cir. 1988) [finding a sufficient showing of the police department's custom for mishandling domestic violence cases].

Third, a plaintiff can establish *Monell* liability pursuant to *City of Canton v. Harris*, 489 U.S. 378 (1989). This method applies where a plaintiff can point to a failure to train, supervise, discipline, or adequately screen employees. *City of St. Louis v. Proprotnik,* 485 U.S. 112 123 (1988), citing *Pembaur v. City of Cincinatti,* 475 U.S. 469, 482-483 (1989).

Finally, a plaintiff may point to a particular decision or act made by someone who is asserted to be the final policymaker for an entity. The U.S. Supreme Court has held that in certain circumstances, the decisions or the acts of a final policymaker, even if only on a single occasion, may be attributed to a municipal defendant in a Section 1983 action. *Pembauer, supra,* 475 U.S. at pp. 484-485 [county prosecutor's decision to send deputy sheriffs into a premises to get a witness was county policy even though it only happened once].

At least for purposes of surviving Defendant's Motion, Plaintiff has already adequately pleaded *Monell* liability using the first, second and fourth methods. In addition, Plaintiff is aware of further facts not yet pleaded which would establish *Monell* liability under any of the four methods. For example, additional individuals have come forward to sign declarations showing how their rights have also been violated by PRMD. (See, Young Declaration.) These violations are not isolated instances, and by no means are they a one-off unique to Plaintiff. Therefore, even if the Court should conclude that Plaintiff has not adequately pleaded *Monell* liability in the current iteration of the Complaint, Plaintiff should be granted leave to amend.

### D. THE COUNTY FAILS TO ANALYZE OR ACCURATELY ASSERT WHETHER PLAINTIFF CAN OBTAIN DAMAGES FOR VIOLATIONS OF ART. I, §§ 7, 13

In its Motion, the County asserts that Plaintiff cannot obtain damages for violations of Art I, §§ 7 or 13. The County fails to address whether either declaratory or injunctive relief would be available under those provisions, and should be held to concede that issue.



_____
PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT COUNTY OF SONOMA'S MOTION TO DISMISS
- 10

With respect to the issue of damages, the County relies principally on *Katzberg v. Regents of the Univ. of Calif.*, 29 Cal.4th 300 (2002). The County's treatment and reliance on *Katzberg* is flawed for two reasons. First, while a right to damages pursuant to a provision of the California Constitution is properly analyzed under *Katzberg*, the complex analysis required by *Katzberg* is not even mentioned in Defendant's Motion. *Katzberg* is given nothing more than a passing citation by the County. Failing to properly analyze *Katzberg* on a motion to dismiss was directly criticized in *Doe v. County of Orange*, 2020 U.S. Dist. LEXIS 188536, 2020 WL 5947829, a case involving similar arguments. There, the Court wrote:

> "Whether a provision of the California Constitution provides for a private right of action is governed by the analysis set forth in *Katzberg*…which Defendants cite in their motion, however, the complex analysis required in *Katzberg*, is missing… 'Defendants have not done [*Katzberg*] justice by making what is effectively a passing reference to it in their briefs, and the Court declines to take it up in that underdeveloped form'."

*Doe, supra,* at p. 11, citing *Shen v. Albany Unified Sch. Dist.*, 2018 U.S. Dist. LEXIS 144656, 2018 WL 4053482, at *4 (N.D. Cal. Aug. 24, 2018). Because this is a Motion to Dismiss, like in *Doe,* the Court should reach the same conclusion and disregard the County's Motion on this point.

Even if the Court does not disregard the County's passing mention of *Katzberg* without analysis, it should still deny the Motion on substantive grounds, at least with respect to Plaintiff's Art. I, § 13 claim. As the Court recognized in *Doe*, "the California Supreme Court has not yet decided whether Article I, § 13 creates a private right of action for damages, and federal courts are split on the issue. *Doe, supra,* at pp. 10-11, citing *Estate of Osuna*, 392 F. Supp. 3d 1162, 1178 (E.D. Cal. 2019) (collecting cases).

**E. THE COUNTY IS NOT IMMUNE FROM PLAINTIFF'S STATE LAW CLAIMS**



The County's argument is similarly flawed with respect to its immunity argument. The County incorrectly asserts – as it did unsuccessfully in Plaintiff's prior case, *Cupp v. Smith* 4:20-cv-03456PJH [DOC 78] – that its employees are immune from state law claims under Government Code section 820.2. Thus, the County cannot be held liable under Government Code section 815.2(b). This argument is flawed, circular reasoning that must necessarily fail as it did previously.

The case of *Ogborn v. City of Lancaster*, 101 Cal.App.4th 448 (2002 addresses and explains the interplay of three immunity statutes, including Government Code section 820.2, in a case involving various actions by code enforcement inspectors. In *Ogborn*, the City of Lancaster undertook a program to clean up certain properties in the city, including a property occupied by tenants who were living in a dilapidated house at a property that also had junkyard conditions and other defects. Code enforcement officer Hawley was in charge of the program. Two, other code enforcement officers, St. John and Tebbs, inspected the tenants' property pursuant to an inspection warrant.

Thereafter, Hawley sent a letter to the tenants advising the property was unsafe and a nuisance, and an abatement hearing was held a short time later under the direction of Hawley. An order issued allowing for the demolition of the structure. St. John and Tebbs obtained another inspection warrant to abate the nuisance, which resulted in the tenants being forcibly removed from the property, the house was demolished, and the tenants personal property was destroyed. The tenants sued, and the code enforcement officers raised Sections 820.2, 820.4, and 821.8 in their defense. The trial court granted summary judgment in favor of the officers, which the Court of Appeal affirmed in part and reversed in part. The Court analyzed each statute and how it applied to each of the code enforcement officers.



First, the Court agreed that Section 820.2 immunized Hawley from liability because he did not directly participate in obtaining the warrant or the demolition at the property. All Hawley did was conduct the initial hearing declaring the property to be a nuisance. The Court recognized that the goal of Section 820.2 is to immunize "basic policy decisions," which are "discretionary," such as the decision to conduct an abatement hearing, rather than "operational" decisions like obtaining a warrant or demolishing property. *Ogborn, supra,* 101 Cal.App.4th at 461. Conversely, the Court disagreed that Section 820.2 immunized St. John. St. John was present at the property and gave the demolition order. The Court considered this to be the "implementation" of the city's abatement program, which is not a discretionary act. *Ibid.*

Applying the *Ogborn* rationale to this case, each unconstitutional act complained of in the Complaint was done either implementing CEEP or the County's drone policy. These are not discretionary acts by PRMD employees. The Defendant employees of PRMD are, therefore, not entitled to immunity under Government Code section 820.2. Thus, neither is the County entitled to immunity under Government Code section 815.2(b).

### F. *YOUNGER* DOES NOT APPLY BECAUSE THE COUNTY HAS NOT INITIATED A STATE COURT ACTION AGAINST PLAINTIFF

Despite the County's assertions to the contrary, Plaintiff has engaged in almost two years' worth of effort to the County's demands with respect to Plaintiff's property. Plaintiff has hired a code violation consultant and paid that individual over $60,000 to meet the County's demands. Just when Plaintiff is told he has complied, the County – acting through the additional Defendants named herein, particularly Hoffman - comes up with yet more reasons to hold open old property violations, issue new ones, or impose Draconian requirements on Plaintiff to free his property from the County's adverse actions.

Moreover, the County falsely asserts that the reason *Cupp v. Smith* 4:20-cv-03456PJH



did not settle was because of "several months delay" by Plaintiff. This is patently false. *Cupp v. Smith* arose out of violations issued on February 15, 2019. While Plaintiff requested an initial delay in his administrative hearing, PRMD – and virtually everyone else – was under a shut down/stay-at-home order from Governor Newsom due to the COVID-19 pandemic. As a result, Plaintiff was not even able to challenge the violations in *Cupp v. Smith* for almost two years from the date the violations were first issued. However, at no point has the County ever offered to abate Plaintiff's fines and penalties due to COVID-19. Those fines and penalties have continued to accrue on a per diem basis despite Plaintiff's efforts to comply and despite COVID-19. In fact, by the time settlement discussions were undertaken in *Cupp v. Smith*, the County, under the guise of negotiations, continued to come back at Plaintiff with ever-increasing demands for payment for both the fines and penalties as well as attorneys fees. To this day, County has failed or refuses to explain their calculations despite many requests by both Plaintiff and counsel. The fact *Cupp v. Smith* did not settle has nothing to do with any delay by Plaintiff.

Throughout Plaintiff's still ongoing ordeal with the County, and despite all the efforts to comply he has undertaken, the County continually threatens Plaintiff with a civil suit. In itself, holding the threat of such a suit over the heads of property owners is part of PRMD's overly aggressive, punitive attempts to exact payment from property owners like Plaintiff and many others. In Plaintiff's case, however, the County has not yet initiated a civil suit, despite two years' worth of threats. Now, in its Motion, County claims it is "forced to file a legal action in State Court to obtain the final abatement of conditions and recovery of civil penalties awared by the Hearing Officer on February 11, 2021." In other words, the County is now "forced" to sue to collect civil penalties going back to early 2021? In truth, there is nothing left to "abate" on



Plaintiff's property, and the County knows that it is merely their administrative and regulatory shenanigans that prevents Plaintiff from releasing his property from the County's clutches.

The Court should reject the County's argument as legerdemain. *Younger* does not apply because there is no state proceeding that would be adversely impacted by the Court exercising federal jurisdiction, and there may well never be. *Herrera v. City of Palmdale* is inapposite because an action was already pending when Plaintiff sought relief from the federal courts.

Moreover, unlike *Herrera*, Plaintiff has not vaguely and incompletely sought declaratory and injunctive relief. Plaintiff's declaratory and injunctive relief is specifically tied solely to warrantless entries onto private property and certain warrantless uses of drones to conduct inspections without warrants. Plaintiff's case is not one of those "ordinary" situations referred to by the County where either declaratory or injunctive relief would interfere with the County's state court action, if and when it ever gets around to filing one.

## G. THE "VEXATIOUS LITIGANT" STATUTES DO NOT SUPPORT DISMISSAL OF THIS ACTION, AND ARE NOTHING BUT AN AD HOMINEM ATTACK

In its desperation to obtain complete dismissal of this action, the County relies to mudslinging. Assuming California's "vexatious litigant" statutes apply to a federal proceeding, which Plaintiff does not concede, Plaintiff is represented by counsel. Even when a plaintiff who has been declared a "vexatious litigant" comes to court with counsel, the doors to the court cannot be shut because of the plaintiff's status. California's "vexatious litigant" statutes expressly apply only to "pro per" filings. *California Code of Civil Procedure section 391(b)*. The County is well aware of this.

Moreover, the *De Long* case cited by the County offers no refuge for this argument. In *De Long*, the district court issued an order that a litigant who had filed a habeas petition could



not make any further filings without leave of court. On appeal, the 9th Circuit upheld the order as it related to the habeas petition, but only because the court lacked jurisdiction. Jurisdiction is not at issue here. As for the order enjoining future filings, the 9th Circuit vacated the district court's order on the grounds the litigant was not provided with an opportunity to oppose the order, the district court did not create an adequate record for review, and the order was overly broad.

In addition, the quote provided to this Court by the County about "flagrant abuse of the judicial process" is ironic considering this comment by the Court is nothing more than dicta contained in a brief conclusion by the Court. The quote forms no part of the Court's holding or even its reasoning, which even a cursory reading of the opinion reveals. This is much like quote: "A lawyer should not be able to proceed with impunity in real or feigned ignorance of authorities which render his argument meritless." *Golden Eagle Distributing Corp. v. Burroughs Corp.,* 801 F. 2d 1531, 1542 (9th Cir. 1986), citing *Rodgers v. Lincoln Towing Service, Inc.,* 771 F.2d 194, 205 (7th Cir.1985), supersedes by statute as stated in *Associated Bus. Tel. Sys. v. Cohn,* 1994 WL 589487, 1994 U.S. Dist. LEXIS 14746 [Court recognizes need for lawyers to be candid, but ultimately declines to impose Rule 11 sanctions].

Several years ago, Plaintiff was deemed a vexatious litigant under California law by the Alameda County Superior Court. He is eligible to be released from this encumbrance by the time this matter is heard. The County's argument is a "red herring" and should be rejected.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the County's Motion to Dismiss. Aside from the fact the Motion fails to completely dispose of Plaintiff's Complaint (e.g., the County failed entirely to address the drone allegations), the County's arguments are largely inaccurate



and are unsupported by law. The only exception is with the County's argument regarding a "taking" under the 5th Amendment. By reason of the duty of candor to the Court, counsel acknowledges that County's authorities on this count are correct, and Plaintiff concedes this point. With regard to the remainder of the County's arguments, however, the Motion should be denied. At the very least, Plaintiff should be given leave to amend the Complaint to supplement any deficiencies in pleading.

Respectfully submitted,

Dated: April 20, 2023                    **YOUNG LAW GROUP**

By: *_/s/Eric G. Young, Esq._*
ERIC G. YOUNG, ESQ., Attorneys for
Plaintiff RONALD CUPP

