ERIC G. YOUNG, ESQ. (SBN 190104)
**YOUNG LAW GROUP**
2544 Cleveland Avenue, Suite 210
Santa Rosa, California 95403
Tel.:  707.343.0556
Fax:  707.327.4360
Email: eyoung@younglawca.com
E-Service: service@younglawca.com

Attorneys for Plaintiff
RONALD CUPP

# UNITED STATES DISTRICT COURT

## NOTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

RONALD CUPP, an individual,

    Plaintiff,

    vs.

COUNTY OF SONOMA, a municipal corporation; TENNIS WICK, in his individual and official capacities; TYRA HARRINGTON, in her individual and official capacities; MARK FRANCESCHI, in his individual and official capacities; TODD HOFFMAN, in his individual and official capacities; JESSE CABLK, in his individual and official capacities; ANDREW SMITH, in his individual and official capacities; and DOES 1-50, inclusive.

    Defendants.

CASE NO.: 4:23-cv-01007

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Date: August 17, 2023
Time: 2:00 p.m.
Courtroom: 6, 2nd Floor
Judge: Jon S. Tigar



# Table of Contents

I. INTRODUCTION ................................................................................................................. 1

II. STATEMENT OF FACTS .................................................................................................. 2

III. ARGUMENT ................................................................................................................... 6

  A. LEGAL STANDARD ..................................................................................................... 6

  B. PLAINTIFFS CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS
  BECAUSE AT LEAST ONE EVENT OCCURRED WITHIN THE THE TWO-YEAR STATUTE
  OF LIMITATIONS; AND IN ANY EVENT, THE STATUTE IS TOLLED UNDER THE
  CONTINUING VIOLATIONS DOCTRINE ....................................................................... 7

    1. A Motion to Dismiss Cannot be Granted on Statute of Limitations Grounds if at Least One Act
    Complained of is Within the Applicable Period ................................................................. 8

    2. The Earlier Acts of Defendants as Alleged in the Complaint Should Not be Dismissed Because
    They Were Undertaken as a Systemic Pattern and Practice of Unconstitutional Behavior Promoted
    by Official County Policies .............................................................................................. 8

    3. Even if Defendants' Misconduct Occurring Before June 1, 2022 is Not Actionable, the Court
    Should Still Consider The Earlier Events as Evidence of an Unconstitutional Motivation ............ 13

  C. PLAINTIFF IS NOT PRECLUDED FROM LITIGATING THESE CLAIMS WITH THE
  EXCEPTION OF THE ALLEGATIONS AGAINST DEFENDANT ANDREW SMITH ARISING
  OUT OF THE EVENTS OF FEBRUARY 15, 2019 .......................................................... 14

  D. PLAINTIFF HAS STATED COGNIZABLE CLAIMS AGAINST CABLK AND HOFFMAN
  FOR THE EVENTS OF JUNE 1, 2022 ........................................................................... 17

  E. WITH THE EXCEPTION OF THE TAKINGS CLAIM, DEFENDANTS' REMAINING
  ARGUMENTS ARE REGURGITATIONS OF THE SAME ERRONEOUS ARGUMENTS
  PRESENTED IN THE COUNTY'S MOTION TO DISMISS ........................................... 18

    1. Plaintiff Abandoned His Takings Claim in Response to the ........................................... 18

    County's Motion to Dismiss ............................................................................................ 18

    2. Defendants, Again, Fail to Properly Analyze Whether Monetary Damages are Available Under
    the California Constitution ............................................................................................... 18

    3.Defendants Are Not Immune Under Cal. Govt. Code § 820.2 or Pursuant to Qualified Immunity
    .................................................................................................................................... 19

    4. The Younger Does Not Mandate Dismissal of Plaintiff's Case .................................... 20

    5. Defendants' Vexatious Litigant Argument is an ad Hominem Attack and a "Red Herring" ....... 20

IV. CONCLUSION ............................................................................................................... 21



# Table of Authorities

**Cases**

*31 Foster Children v. Bush*, 329 F.3d 1255, 1274–75 (11th Cir. 2003) ........................................ 20

*AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) ............................ 7

*Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) ...................... 17

*Baker v. Gen. Motors Corp.*, 522 U.S. 222, 233 n. 5, 118 S. Ct. 657, 139 L. Ed. 2d 580 (1998).. 14

*Baker*, 522 U.S. at 233 n. 5. ....................................................................................................... 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007 ................................................................. 6

*Carpinteria Valley Farms v. City of Santa Barbara,* 344 F.3d 822, n.3 (9th Cir. 2003)............ 13

*Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982) ............................. 16

*Cruz v. Beto*, 405 U.S. 319, 322 (1972) ....................................................................................... 7

*Deirmenjian v. Deutsche Bank, A.G.*, No. CV 06-00774 MMM (CWX), 2006 U.S. Dist. LEXIS 96772, 2006 WL 4749756, *40 (C.D. Cal. Sept. 25, 2006) ........................................................ 9

Doe v. County of Orange, 2020 U.S. Dist. LEXIS 188536, 2020 WL 5947829 .......................... 18

*Doe, supra*, at p. 11.................................................................................................................... 18

Doe, supra, at pp. 10-11 ............................................................................................................. 19

*E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011).................... 7

Estate of Osuna, 392 F. Supp. 3d 1162, 1178 (E.D. Cal. 2019) ................................................... 19

*Fischel v. Equitable Life Assur. Soc'y of the United States,* 307 F.3d 997, 1005 n. 5 (9th Cir. 2002)........................................................................................................................................... 14

*Green v. Los Angeles County Superintendent of Schs.,* 883 F.2d 1472, 1480 (9th Cir. 1989) ... 10

*Gutowski v. County of Placer,* 108 F.3d 256, 259 (9th Cir. 1997) ................................................. 10

*In re Schimmels,* 127 F.3d 875, 881 (9th Cir. 1997) ................................................................. 14



*Int'l Union of Operating Eng'rs-Employers Constr. Indus. Pension, Welfare & Training Trust*
   *Funds v. Karr*, 994 F.2d 1426, 1430 (9th Cir. 1993) ................................................. 16

*Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 903 n.3 (9th Cir. 2011) ..................................... 7

*Katzberg v. v. Regents of the Univ. of Calif., 29 Cal.4th 300* (2002) ........................................ 18

*La. Mun. Police Emps.' Ret. Sys. v. Wynn* (9th Cir. 2016) 829 F.3d 1048, 1062 ......................... 17

*Mansourian v. Regents of the Univ. of Cal.,* 594 F.3d 1095, 111 (9th Cir. 2010) .......................... 9

*McDougal v. County of Imperial*, 942 F.2d 668, 674 ...................................................... 7

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) ............ 20

*Missouri ex rel. Koster*, 847 F.3d at 655–56 ........................................................... 7

*Morgan v. Nat'l R.R. Passenger Corp.,* 232 F.3d 1008, 1015-1016 (9th Cir. 2000) ...................... 9

*Nichols v. City of Palm Springs,* 2014 U.S. Dist. LEXIS 197732, 2014 WL 12703286 at *6 ........ 8

*Nichols v. City of Palm Springs,* 2014 U.S. Dist. LEXIS 197732, 2014 WL 12703286 at *9 (Oct.
   6, 2014) ......................................................................................... 9

*Nunn v. Hill,* 2:22-cv-01396-TLN-EFB (HC) , (E.D. Cal., Dec. 9, 2022) ..................................... 20

*Ogborn v. City of Lancaster*, 101 Cal.App.4th 448 ...................................................... 19

*Owens v Okure*, 488 US 235, 240 (1989) ................................................................... 7

*Presbyterian Church (USA) v. United States,* 870 F.2d 518, 527 (9th Cir. 1989) ...................... 19

*Retail Clerks Int'l Ass'n v. Schermerhorn,* 373 U.S. 746, 753 n. 6 (1963) ..................... 7

*RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045 ...................................................... 11

*RK, supra,* 307 F.3d at 1058-1062 ......................................................................... 11

*RK, supra,* 307 F.3d at 1062 ............................................................................... 13

*Robi v. Five Platters, Inc.*, 838 F.2d 318, 321-22 (9th Cir. 1988)) ................................. 14

*Rodriguez v. City of Los Angeles*, 2015 U.S. Dist. LEXIS 190012 (May 8, 2015) ...................... 10



*Rodriguez, supra,* at *53-54 ............................................................................. 11

*Ross v. IBEW*, 634 F.2d 453, 457 (9th Cir. 1980) ............................................. 15

*Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507-08, 121 S. Ct. 1021, 149 L. Ed. 2d 32 (2001) ....................................................................................................... 14

*Shen v. Albany Unified Sch. Dist.*, 2018 U.S. Dist. LEXIS 144656, 2018 WL 4053482, at *4 (N.D. Cal. Aug. 24, 2018).................................... 18

*Shurtleff v. City of Boston,* 142 S.Ct. 1583 (2022) ........................................ 19

Stewart v. United States Bancorp, 297 F.3d 953, 956 (9th Cir. 2002)........................... 15

*Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003)......................................................................................................... 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.* , 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). .......................................................................................... 17

*Thinket Ink Info Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004). ..... 7

*Troutt v. Colo. W. Ins. Co.*, 246 F.3d 1150, 1156 (9th Cir. 2001). .......................... 14

*W. Systems, Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992) ............................ 16

*Ward v. Caulk,* 650 F.2d 1144, 1147-48 (9th Cir. 1981)........................................ 9

*Ward, supra,* 650 F.2d at 1147............................................................................ 9

*Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021 ............................ 7

*Wright v. Beck,* 981 F.3d 719, 737 (9th Cir. 2020) ............................................ 19

*Younger v. Harris*, 401 U.S. 37 (1971) ............................................................. 20

**Statutes**

42 USC § 1983............................................................................................. 7

Cal. Code of Civil Procedure section 340(3 ....................................................... 7



Federal Rule of Civil Procedure 12(b)(6) .............................................................. 15

under Rule 19." Fed. R. Civ. P. 41(b). ................................................................. 15

**Other Authorities**

Cal. Const., Art I, § 7 ............................................................................................ 18



Plaintiff RONALD CUPP (hereinafter "Plaintiff" or "Cupp") hereby respectfully submits the following Memorandum of Law in Opposition to Defendants' Motion to Dismiss pursuant to Fed R. Civ. Proc. 12(b)(6) ("Motion") ("Rule 12(b)(6)"):

## I. INTRODUCTION

Plaintiff's Complaint arises from a pattern and practice of unconstitutional behavior by local government officials employed by the County through PRMD. Plaintiff alleges that the County and these Defendants violated – *and continue to violate* - his rights under the 4th, 5th and 14th Amendments, the California Constitution, and common law by engaging in a pattern and practice of unlawful and unconstitutional misconduct.

Specifically, Plaintiff alleges that Defendants:

- Conducted several, warrantless searches of Plaintiff's private property, including using drones in an unlawful and unconstitutional manner;

- Submitted a false or misleading affidavit to a local judge in order to obtain an inspection warrant for Plaintiff's private property

- Instituted abatement proceedings against him, including wrongfully placing an abatement lien on Plaintiff's private property which County officials continue to refuse to remove despite Plaintiff's Herculean efforts and substantial expenditure of funds to comply with citations he received as well as meeting additional demands from the County regarding Plaintiff's private property;

- Wrongfully disconnected electricity and gas to his property during the pendency of a prior action, *Cupp v. Smith* 4:20-cv-03456PJH, and refused to restore it for some 19 months until Smith (represented by the County) lost a motion for summary judgment in that action;

---

- Enforced – and continue to enforce - local rules, regulations and procedures against Plaintiff in an unfair, arbitrary and capricious manner; and

- Trespassed on his property and invaded his privacy.

Detailed facts in support of these allegations are set forth in the Complaint, which Plaintiff will not reiterate here in the interests of brevity. Where appropriate, Plaintiff concedes certain points raised by Defendants; namely, that Defendant ANDREW SMITH can be dismissed and, further, that Plaintiff is no longer asserting a "takings" claim for the removal of electricity and gas to his property.

Otherwise, Defendants' Motion should be denied because Plaintiff has stated cognizable claims for declaratory relief, injunctive relief, and damages. Defendants' Motion seeks to controvert the facts alleged in the Complaint, which is not appropriate at this stage of the proceedings, and it rests on faulty arguments unsupported by law under the facts of this case. To the extent the Court finds the Complaint deficient, Plaintiff respectfully requests leave to amend, as Plaintiff has not pleaded all facts now known to him or even all claims he has for relief.

## II. <u>STATEMENT OF FACTS</u>

PRMD is commonly known in the County as "Permit Sonoma" and is made up of several divisions. One division is Code Enforcement. Generally, Code Enforcement inspects private property to discover building code violations, cites property owners for violations, imposes fines and penalties against property owners, conducts administrative hearings, and determines the extent of property owner liability to the County for violations. However, since at least 2017, Code Enforcement has had a direct mandate to be a revenue-generating operation at the expense of the County's private property owners.

Two official policies adopted, approved or known by the County's Board of Supervisors activated the constitutional violations alleged in the Complaint, which affect not only Plaintiff but many others. The County promulgated these policies, or allowed them to take effect, either at the behest of two PRMD officials sued herein as additional Defendants or in conjunction with these Defendants. They are:

- Defendant TENNIS WICK ("Wick"), PRMD Director, who is vested by local ordinance with policy-making authority for PRMD and the responsibility for all code enforcement work that takes place in the County.

   (Compl., p. 4:13-28); and

- Defendant TYRA HARRINGTON ("Harrington"), Code Enforcement Manager, who oversees the code enforcement activities and officers employed by the County, is directly involved in creating policy for PRMD alongside Wick, engages directly in inspection activities; determines whether fines or penalties are imposed on property owners and in what amounts, and whether property owners will be offered a settlement of liabilities by the County or not. Harrington has the final say on all matters regarding the Code Enforcement Division.

   (Compl., p 5:1-5).

In addition to the aforementioned Defendants, certain code enforcement officers of various ranks, employed by the County and sued herein as additional Defendants, either committed the unconstitutional acts alleged in the Complaint; or they failed to train, supervise, or discipline the code enforcement officers for their actions whom they know are committing constitutional violations or encourage such conduct to promote County policy. They are:

- Defendant MARK FRANCESCHI ("Franceschi"), Code Enforcement Supervisor, who supervises the code enforcement officers employed by PRMD, is responsible for overseeing the training and discipline of these officers, and who conducts administrative hearings when they are offered to property owners (Compl. 5:6-9);

- Defendant TODD HOFFMAN ("Hoffman"), Code Enforcement Inspector II, (Compl. 5:10-14);

- Defendant JESSE CABLK ("Cablk"), Senior Code Enforcement Inspector, (Compl. 5:15-19.) (Hoffman and Cablk operate the County's drones to inspect private property; and

- Defendant ANDREW SMITH ("Smith"), Code Enforcement Inspector, (Compl. 5:20-24) (Plaintiff concedes Smith can be dismissed)

The first policy – the Code Enforcement Enhancement Policy (CEEP) – was presented to the County Board of Supervisors on or about March 27, 2017 by Wick. (Compl., p. 9:24-18) Under the guise of being a program to resolve a backlog of old property violations by hiring new code enforcement officers, CEEP actually represented a fundamental shift in the way PRMD previously handled property violations, which was a much more collaborative approach designed to help property owners resolve violations rather than punishing them. CEEP created a new position, Code Enforcement Manager, which was subsequently filled by Harrington, a former deputy sheriff. The effect of CEEP, though not stated expressly in the policy, was to incentivize Harrington to "increase cost recovery" by making her salary dependent on the collection of penalties and fines levied against property owners. As a direct result of CEEP, Harrington has adopted and approved overly aggressive and often unconstitutional methods in the work of Code Enforcement, including inspections of private land without warrants, use of drones to search

private land without warrants, and the imposition of excessive and punitive fines against property owners. These methods have all caused harm – and continue to cause harm – to Plaintiff and many additional property owners in the County. (Compl., p. 9:19-11:2.)

At the same time, CEEP made "a number of minor policy modifications and delegations" and "policy modifications to increase effectiveness." In effect, the Board of Supervisors deleted the authority to "bypass the administrative process" and proceed directly to lawsuits and other punitive measures against property owners. Once again, this represented a fundamental shift in PRMD's work in the County, and it granted virtually unfettered discretion to Wick and Harrington to speed up the recovery of fines and penalties and to increase "citation fee revenue," which has resulted in the unconstitutional acts in the Complaint and which will be the subject of complaints by future property owners. (Compl., p. 11:3-23; Young Decl, submitted herewith.)

On information and belief, CEEP did not immediately take effect because PRMD's focus had to shift in October 2017 due to the Nuns, Tubbs, and Pocket Fires (the Sonoma Complex Fire). On further information and belief, PRMD remained involved with efforts to clean up after the fires for many months after the fires. (Compl., p. 11:24-12:8.)

By at least 2019, however, Code Enforcement was undertaking its new role as the "property police" with zeal, including engaging in a warrantless search of Plaintiff's property in February 2019. In August 2019, the local newspaper, the Press Democrat ("PD"), wrote an unflattering article about Wick for over-promising and under-delivering through PRMD's enforcement activities. Pressure from the press further incentivized Wick and Harrington to step up enforcement activities, which has resulted in further unconstitutional behavior by officials employed at PRMD. (Compl., p. 12:9-15:7.)



Whether as a result of the PD article or it was already underway, shortly after the PD article, PRMD promulgated its own, five-page policy and procedure document on the use of unmanned aircraft system (UAS) (i.e., "drones"). (Compl., 15:10-15.) The County did not publish its new drone policy on the County's public website, but instead, published it solely on the County's "intranet." On information and belief, officials at PRMD, including the individual Defendants named herein – but particularly Wick and Harrington – made this decision deliberately to conceal the drone policy as well as PRMD's heightened enforcement activities from the public. In addition, on further information and belief, the County hired a private drone operator without putting the job out for public bid, a further step to keep the County's new drone policy and program a secret. (Compl., p. 17:7-18:14.)

From the enactment or promulgation of these policies, the entirety of the unconstitutional misconduct alleged in the Complaint flows. Not alleged in the Complaint, but for which Plaintiff requests leave to allege in an amended complaint, is a violation of the 8th Amendment for excessive fines and penalties, to further augment the allegations regarding conspiracy, and to amend the Complaint as a class action on behalf of other, similarly situated private property owners in the County.

Defendants now move to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) ("the Motion"). For the reasons set forth herein, the Court should deny the Motion, subject to any exceptions Plaintiff has articulated.

### III. <u>ARGUMENT</u>

### A. LEGAL STANDARD

To survive a motion to dismiss, Plaintiffs must establish only that they have stated a claim to relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see*


YOUNG LAW

also *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011). The allegations of the complaint must be accepted as true. *Cruz v. Beto,* 405 U.S. 319, 322 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn,* 373 U.S. 746, 753 n. 6 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. *See id.*

"Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Missouri ex rel. Koster*, 847 F.3d at 655–56; see also *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment."); *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012); *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 903 n.3 (9th Cir. 2011); *Thinket Ink Info Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).

**B. PLAINTIFFS CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS BECAUSE AT LEAST ONE EVENT OCCURRED WITHIN THE THE TWO-YEAR STATUTE OF LIMITATIONS; AND IN ANY EVENT, THE STATUTE IS TOLLED UNDER THE CONTINUING VIOLATIONS DOCTRINE**

The County correctly points out that 42 USC § 1983 does not contain a statute of limitations within its language. The United States Supreme Court has directed that 42 USC § 1988 "requires courts to borrow and apply to all § 1983 claims the one most analogous state statute of limitations, which is California's personal injury statute codified in the Cal. Code of Civil Procedure section 340(3)." *Owens v Okure*, 488 US 235, 240 (1989); *McDougal v. County of Imperial*, 942 F.2d 668, 674. According to these authorities, the applicable statute of limitations would be two years from the date the cause of action *accrued*. For the reasons



_____
PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT COUNTY OF SONOMA'S MOTION TO DISMISS
- 7 -

articulated below, however, Defendants cannot obtain dismissal based on their statute of limitations argument.

### 1. A Motion to Dismiss Cannot be Granted on Statute of Limitations Grounds if at Least One Act Complained of is Within the Applicable Period

Defendants acknowledge that the acts complained of against Defendant JESSE CABLK on June 1, 2022 are *within the statute of limitations*. CABLK did not act alone on that date. The Complaint clearly alleges that CABLK acted together with Defendant TODD HOFFMAN on June 1, 2022. (Compl., p. 29, ¶ 86.) If the allegations against CABLK about his actions on June 1, 2022 withstand Defendants' Motion, then so do the allegations against HOFFMAN.

A complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim. *Nichols v. City of Palm Springs,* 2014 U.S. Dist. LEXIS 197732**,** 2014 WL 12703286 at *6. Here, at least one act complained of falls within the two-year statute of limitations, a fact Defendants acknowledge.

### 2. The Earlier Acts of Defendants as Alleged in the Complaint Should Not be Dismissed Because They Were Undertaken as a Systemic Pattern and Practice of Unconstitutional Behavior Promoted by Official County Policies

Another detail Defendants do not address is that CABLK and HOFFMAN also did not, and do not, act in a vacuum. Indeed, none of the subordinate Defendants employed by PRMD operate rogue. They act pursuant to the policies, practices, procedures and training implemented by their superiors, Defendants TENNIS WICK and TYRA HARRINGTON. WICK is the Director and Code Enforcement for PRMD, and HARRINGTON is the Code Enforcement Manager for PRMD. Both were intimately involved with promulgating CEEP in March 2017 and the County's drone policy in September 2019. These policies lie at the core of this case.



Beyond their acknowledgment, Defendants statute of limitations argument as to the earlier incidents alleged in the Complaint misses the mark because of the continuing violations doctrine. Plaintiff should not be barred from asserting the earlier incidents alleged in the Complaint because all of the incidents occurred as part of systemic pattern and practice of unconstitutional behavior by Defendants, which was animated and incentivized by two, official policies approved by the COUNTY. Both policies are alleged in detail in the Complaint. Therefore, Plaintiff should be entitled to the benefits of the continuing violations doctrine.

The continuing violations doctrine is an exception to the statute of limitations. *Ward v. Caulk,* 650 F.2d 1144, 1147-48 (9th Cir. 1981); see, *Deirmenjian v. Deutsche Bank, A.G.*, No. CV 06-00774 MMM (CWX), 2006 U.S. Dist. LEXIS 96772, 2006 WL 4749756, *40 (C.D. Cal. Sept. 25, 2006) (internal quotes omitted). "The doctrine comes into play when a defendant's unlawful conduct begins before, but continues into, the statutory period." *Deirmenjian, supra,* at *40.)

One theory recognized under the continuing violations doctrine is the "systematic pattern or practice theory," which "involve[s] demonstrating a company wide policy or practice." *Morgan v. Nat'l R.R. Passenger Corp.,* 232 F.3d 1008, 1015-1016 (9th Cir. 2000). The theory has merit where, as is the case here, a plaintiff can show that the policy or practice operated, at least in part, within the limitations period. *Mansourian v. Regents of the Univ. of Cal.,* 594 F.3d 1095, 111 (9th Cir. 2010). "A continuing violation is occasioned by continuing unlawful acts, not by continual ill effects from an original violation." *Ward, supra,* 650 F.2d at 1147.

Although the systematic pattern or practice theory is generally applied in the employment context, the Ninth Circuit has recognized it in non-employment cases. *Nichols v. City of Palm Springs,* 2014 U.S. Dist. LEXIS 197732, 2014 WL 12703286 at *9 (Oct. 6, 2014). One such case



is *Rodriguez v. City of Los Angeles*, 2015 U.S. Dist. LEXIS 190012 (May 8, 2015).[1] In *Rodriguez,* two plaintiffs had been subjected to an injunction imposing a curfew on them due to their alleged identification as gang members. The injunction was served on one of the plaintiffs, Rodriguez, in 2005 and 2006. The other plaintiff, Cazarez, was served in December 2009. Plaintiffs filed suit challenging the injunctions under Section 1983 on February 7, 2011.

On a motion for summary judgment (not a motion to dismiss), the City raised the statute of limitations as a defense, arguing that the date the injunction was served triggered the running of the two-year statute. Plaintiffs responded by asserting the continuing violations doctrine saved their case. In agreeing with the plaintiffs' contention, the Court remarked that the plaintiffs' claims were timely because they "have asserted...an ongoing unconstitutional policy or practice." *Id.* at *54.

Thus, to invoke the continuing violations doctrine , Plaintiff must show "a series of related acts, one or more of which falls within the limitations period, <u>*or*</u> the maintenance of a discriminatory system both before and during [that] period. *Gutowski v. County of Placer,* 108 F.3d 256, 259 (9th Cir. 1997), citing *Green v. Los Angeles County Superintendent of Schs.,* 883 F.2d 1472, 1480 (9th Cir. 1989) (citations omitted) (emphasis added). Thus, a continuing violation may be established through a series of related acts against one individual, *or* by a systematic policy or practice of discrimination. *Id.* (emphasis added).

Plaintiff has met this standard sufficiently to avoid dismissal of the Complaint. Plaintiff alleges that Defendants' actions – both those that are outside the two-year period as well as the events of June 1, 2022 which Defendants admit *is within* the two-year period – all resulted from

---

[1] No Westlaw citation was available.



the County's approval of two unconstitutional policies – CEEP and the drone policy. Both policies animated and incentivized the conduct by these Defendants by creating a pattern and practice of unconstitutional behavior designed to enforce the County's policies. These policies have not only affected Plaintiff, but they also continue to do so. Moreover, numerous other individuals have been adversely affected, as evidenced by the sworn statements submitted to the Court.

While facially similar, this case is different from *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045 mentioned in *Rodriguez, supra,* at *53-54. Significantly, *RK* was an appeal after the granting of summary judgment, not a motion to dismiss when all inferences must be drawn in favor of a plaintiff.

Moreover, in *RK,* the plaintiffs were the owners of a downtown Seattle nightclub. They brought suit under Section 1983 and various state law grounds, alleging that the City of Seattle discriminated on account of race by instituting abatement proceedings against them and other downtown clubs that played rap and hip-hop music, declaring them to be public nuisances pursuant to an unconstitutional local ordinance. The Court disagreed with plaintiffs that the date the City commenced an abatement hearing was the operative accrual date for the statute of limitations. Instead, the Court determined it was an earlier date when the decision was made to institute abatement proceedings against them. Moreover, by the time the plaintiffs got around to bringing suit, however, they had already sold their nightclub. While plaintiffs argued they had no choice but to sell their nightclub at a "fire sale," the Court concluded this was not due to a wrongful act on the part of the City, and furthermore, it was merely an "effect of the City's earlier decision to prosecute the abatement action." *RK, supra,* 307 F.3d at 1058-1062.



Unlike *RK*, Plaintiff does not allege a series of discrete, wrongful acts, some of which are, admittedly, outside the two-year period and some of which are not. Instead, Plaintiff alleges that in March 2017 and September 2019, the County adopted approved CEEP and the drone policy, respectively. Together, these policies have promoted, and continue to promote, a pattern and practice of overly aggressive and unlawful code enforcement by these Defendants – including but not limited to warrantless entries onto private property for the purpose of generating revenue for the County at the expense of property owners. (Compl. P. 9:13-11:2.)

Plaintiff further alleges that CEEP authorized WICK and HARRINGTON to bypass certain procedural steps the department had previously taken when dealing with property owners and encouraged these Defendants, and the remaining subordinate Defendants, to immediately cite property owners and assess penalties of one kind or another, enforce local codes in an unfair, arbitrary and capricious manner, all the while violating the constitutional rights of property owners. (Compl. p. 11:3-23.) These new policies set in motion practices and procedures that inspired these Defendants to engage in the conduct complained of in the Complaint.

All of the conduct complained of in the Complaint occurred pursuant to, and as a result of, these unconstitutional policies, and that these policies established a pattern and practice of unconstitutional behavior by these Defendant employees of PRMD. At least one of the events that comprise this pattern and practice – the events of June 1, 2022 - occurred within the two-year statute of limitations – a fact Defendants freely admit in their Motion. Moreover, these activating policies and practices of PRMD as alleged in the Complaint remain in effect today, and Cupp and others continue to be harmed by them.



### 3. Even if Defendants' Misconduct Occurring Before June 1, 2022 is Not Actionable, the Court Should Still Consider The Earlier Events as Evidence of an Unconstitutional Motivation

If the Court concludes that all of Defendants' misconduct that falls outside of the two-year period is not actionable, the Court must still consider the misconduct as evidence of an unconstitutional motive. As the *RK* Court held, "We do not assess in a vacuum whether the acts falling within the limitations period raise an inference of discrimination. We consider the evidence in its entirety." *RK, supra,* 307 F.3d at 1062. "In assessing whether acts occurring within the limitations period are unconstitutional, we may look to pre-limitations period events as evidence of an unconstitutional motive." *Ibid*. Thus, the Court should consider the entirety of Plaintiff's allegations, taking the allegations as true and indulging in all reasonable inferences in Plaintiff's favor, to determine if Plaintiff has alleged causes of action sufficient to withstand a motion to dismiss at this early stage in the case.

Based on the foregoing, the statute of limitations does not bar Plaintiff's Complaint against any of these Defendants. If Plaintiff has not adequately pleaded a pattern and practice of unconstitutional acts by these Defendants stemming from official policies of the County, Plaintiff respectfully requests leave to amend, as Plaintiff has not pleaded the entirety of facts known to the Plaintiff. *Carpinteria Valley Farms v. City of Santa Barbara,* 344 F.3d 822, n.3 (9th Cir. 2003). Plaintiff also has additional counts he has not yet pleaded but can adequately plead to survive a motion to dismiss, and he respectfully requests leave to amend the Complaint to plead these additional counts.



_____
PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT COUNTY OF SONOMA'S MOTION TO DISMISS
- 13

**C. PLAINTIFF IS NOT PRECLUDED FROM LITIGATING THESE CLAIMS WITH THE EXCEPTION OF THE ALLEGATIONS AGAINST DEFENDANT ANDREW SMITH ARISING OUT OF THE EVENTS OF FEBRUARY 15, 2019**

The doctrine of res judicata includes two closely-related, but distinct, concepts — claim preclusion and issue preclusion, also known as collateral estoppel. *Fischel v. Equitable Life Assur. Soc'y of the United States,* 307 F.3d 997, 1005 n. 5 (9th Cir. 2002) ["The doctrine of res judicata includes both claim preclusion and issue preclusion,"] citing *Baker v. Gen. Motors Corp.,* 522 U.S. 222, 233 n. 5, 118 S. Ct. 657, 139 L. Ed. 2d 580 (1998). "Claim preclusion prevents parties from relitigating the same claim or cause of action, which includes 'litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'"*Id.* (quoting *Robi v. Five Platters, Inc.,* 838 F.2d 318, 321-22 (9th Cir. 1988)). Under the doctrine of issue preclusion, "an issue of fact or law, actually litigated and resolved by a valid final judgment, binds the parties in a subsequent action, whether on the same or a different claim." *Baker*, 522 U.S. at 233 n. 5. "Res judicata and collateral estoppel are two different doctrines which are often confused for each other." *Troutt v. Colo. W. Ins. Co.,* 246 F.3d 1150, 1156 (9th Cir. 2001).

Defendants assert that all of Plaintiff's causes of action are precluded. Except for the allegations against SMITH, however, this argument simply does not hold water. This Court has federal question jurisdiction over this action, and thus it should apply the federal doctrine of res judicata. *Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 507-08, 121 S. Ct. 1021, 149 L. Ed. 2d 32 (2001). Under this doctrine, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *In re Schimmels,* 127 F.3d 875, 881 (9th Cir. 1997) (citations and internal quotation marks omitted). The elements necessary to establish claim preclusion are: "(1) an identity of claims, (2) a final judgment on the merits, and



(3) privity between parties." *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (citation omitted). Where res judicata applies, it "bar[s] all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties ... on the same cause of action...." *Ross v. IBEW*, 634 F.2d 453, 457 (9th Cir. 1980).

Generally, involuntary dismissals operate as an "adjudication on the merits," with exceptions for "lack of jurisdiction, for improper venue or for failure to join a party under Rule 19." Fed. R. Civ. P. 41(b). A dismissal with prejudice upon granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) constitutes a final judgment on the merits for claim preclusion purposes. Stewart v. United States Bancorp, 297 F.3d 953, 956 (9th Cir. 2002). Plaintiff acknowledges that he is subject to an involuntarily dismissal with prejudice in *Cupp v. Smith*, 20-cv-03456 PJH. SMITH was included as a party to this action based on his conduct on February 15, 2019, which involved a warrantless entry onto Plaintiff's private property whereupon SMITH conducted a search of the premises. SMITH did not use a drone on February 15, 2019, and as far as Plaintiff knows at this time, SMITH has not been involved in flying drones over Plaintiff's property since February 15, 2019. Except for the entry onto Plaintiff's private property on July 30, 2020, which Plaintiff contends in this action was authorized based on a false affidavit by HOFFMAN, SMITH has not entered upon Plaintiff's private property since February 15, 2019.

For the remaining Defendants, however, claim preclusion is inapplicable. In determining whether a present dispute concerns the same claim (or same cause of action) as did prior litigation, federal courts consider:



(1) [W]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action;

(2) whether substantially the same evidence is presented in the two actions;

(3) whether the two suits involve infringement of the same right; and

(4) whether the two suits arise out of the same transactional nucleus of facts.

*Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982) (citation omitted).

The Ninth Circuit has emphasized that the *Costantini* factors are "tools of analysis, not requirements." *Int'l Union of Operating Eng'rs-Employers Constr. Indus. Pension, Welfare & Training Trust Funds v. Karr*, 994 F.2d 1426, 1430 (9th Cir. 1993). Thus, for example, satisfaction of the fourth Constantini factor is often sufficient to find an identity of claims for res judicata purposes, even without analysis of the other factors. *Id.* When analyzing this factor, courts ask "whether [the two actions] are related to the same set of facts and whether they could conveniently be tried together." *W. Systems, Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992).

Cupp's pro per Complaint filed in Case No. 4:20-cv-03456 on May 21, 2020 did not allege "the same set of facts" and could not "conveniently be tried together" as those facts alleged in the Complaint in this case. Many of the events alleged in this case had not even happened at the time Cupp filed his initial Complaint in Case No. 4:20-cv-03456.

In addition, while it is true Cupp filed a First Amended Complaint in that case on October 7, 2020, which sought to include *Monell* allegations, many factual details now known to Cupp were not known then, and this becomes clear when the Complaint in Case No. 4:20-cv-03456 is compared to the Complaint in this case. Cupp did not know about either CEEP or the drone policy when he filed his First Amended Complaint.

Finally, the case Cupp filed on his own in Case No. 4:22-cv-4307 lacked the factual specificity of the Complaint filed in this case. And, even if the Court determines that Complaint relates "to the same set of facts" as this case, that Complaint was *voluntarily dismissed without prejudice*. It does not constitute an adjudication on the merits for purposes of preclusion.

### D. PLAINTIFF HAS STATED COGNIZABLE CLAIMS AGAINST CABLK AND HOFFMAN FOR THE EVENTS OF JUNE 1, 2022

When Defendants assert that "the Complaint only concludes 'on information and belief' that two Defendants flew a drone over the subject property without a warrant acting pursuant to policies and practices, Defendants are attempting to carve out only a portion of the Complaint for the Court to consider in isolation and ignore what this case is about – the County's unconstitutional policies and practices. As the discussion above in Section B.3 demonstrates, the Court should consider the entirety of the alleged misconduct. This is in accord with well-established principles the Court must apply when deciding a motion to dismiss. "The Supreme Court has instructed that courts ruling on a motion to dismiss must consider the complaint in its entirety." *La. Mun. Police Emps.' Ret. Sys. v. Wynn* (9th Cir. 2016) 829 F.3d 1048, 1062, citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).

Furthermore, Defendants argument that CABLK and HOFFMAN's actions on June 1, 2022 were not prohibited by the Fourth Amendment because "aerial observations of the curtilage of the home" are constitutionally permissible is arguing a factual matter, and it is inappropriate to raise a factual issue on a motion to dismiss. The court cannot consider material outside the complaint, such as facts presented in briefs. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).



Finally, the authorities Defendants cite on pag3 14, lines 13-14 do not deal with the use of drones, and Plaintiff should be permitted to fully develop his case to demonstrate that these authorities should not control the outcome of Plaintiff's case.

**E. WITH THE EXCEPTION OF THE TAKINGS CLAIM, DEFENDANTS' REMAINING ARGUMENTS ARE REGURGITATIONS OF THE SAME ERRONEOUS ARGUMENTS PRESENTED IN THE COUNTY'S MOTION TO DISMISS**

### *1. Plaintiff Abandoned His Takings Claim in Response to the County's Motion to Dismiss*

Perplexingly, Defendants seek to dismiss Plaintiff's "takings" claim when Plaintiff already voluntarily abandoned that claim in response to the County's Motion to Dismiss. Plaintiff is no longer asserting that a "taking" occurred for the reasons articulated by the County in its Motion.

### *2. Defendants, Again, Fail to Properly Analyze Whether Monetary Damages are Available Under the California Constitution*

As the COUNTY did in its Motion, Defendants fail, again, to provide the analysis required under *Katzberg v.* v. *Regents of the Univ. of Calif., 29 Cal.4th 300* (2002) to determine if monetary damages are available under Cal. Const., Art I, § 7. Failing to properly analyze *Katzberg* on a motion to dismiss was directly criticized in Doe v. County of Orange, 2020 U.S. Dist. LEXIS 188536, 2020 WL 5947829, a case involving similar arguments. There, the Court wrote:

> "Whether a provision of the California Constitution provides for a private right of action is governed by the analysis set forth in Katzberg...which Defendants cite in their motion, however, the complex analysis required in Katzberg, is missing... 'Defendants have not done [Katzberg] justice by making what is effectively a passing reference to it in their briefs, and the Court declines to take it up in that underdeveloped form'."

*Doe, supra*, at p. 11, citing *Shen v. Albany Unified Sch. Dist.*, 2018 U.S. Dist. LEXIS 144656, 2018 WL 4053482, at *4 (N.D. Cal. Aug. 24, 2018).



Furthermore, as *Doe* points out, "the California Supreme Court has not yet decided whether Article I, § 13 creates a private right of action for damages, and federal courts are split on the issue. Doe, supra, at pp. 10-11, citing Estate of Osuna, 392 F. Supp. 3d 1162, 1178 (E.D. Cal. 2019) (collecting cases). This issue should not be resolved on a motion to dismiss.

### 3.Defendants Are Not Immune Under Cal. Govt. Code § 820.2 or Pursuant to Qualified Immunity

Defendants assert that they are immune from Plaintiff's state law claims under California Government Code section 820.2. With the exception of Defendant MARK FRANCESCHI ("Franceschi"), whose main role in the events of this case was to conduct the abatement proceedings against Cupp, Defendants are not immune under Section 820.2. The controlling case is *Ogborn v. City of Lancaster*, 101 Cal.App.4th 448, which is discussed at length in Plaintiff's Memorandum of Law in opposition to the COUNTY's Motion to Dismiss. Because these Defendants were directly involved in the implementation of CEEP or the drone policies, they were engaged in actions that are "operational" in nature as opposed to "discretionary." *Id.* at 461.

Defendants are also not entitled to claim qualified immunity because they are sued in both their individual and *official* capacities. Qualified immunity is not available to those who are sued in their official capacity. *Wright v. Beck,* 981 F.3d 719, 737 (9th Cir. 2020). Furthermore, qualified immunity does not apply to declaratory or injunctive relief. *Presbyterian Church (USA) v. United States,* 870 F.2d 518, 527 (9th Cir. 1989) Plaintiff sued both the COUNTY and those responsible for implementing and enforcing the COUNTY's policies. Courts routinely entertain suits against both municipal entities and their officials. *See, e.g., Shurtleff v. City of Boston,* 142 S.Ct. 1583 (2022).



### *4. The Younger Does Not Mandate Dismissal of Plaintiff's Case*

Under the doctrine known as "*Younger* abstention," federal courts are required to abstain from hearing cases that would interfere with pending state proceedings that implicate important state interests. *Nunn v. Hill,* 2:22-cv-01396-TLN-EFB (HC) , (E.D. Cal., Dec. 9, 2022)*, citing Younger v. Harris*, 401 U.S. 37 (1971). However, for *Younger* abstention to apply, a three-part test must be met:

- State court proceedings are currently underway;

- The proceedings implicate important state interests; and

- The state court forum provides an adequate opportunity to raise constitutional challenges

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982), discussed and affirmed in, *31 Foster Children v. Bush*, 329 F.3d 1255, 1274–75 (11th Cir. 2003).

Here, just as the COUNTY did in its Motion to Dismiss, Defendants seek to apply *Younger* when there are no state court proceedings currently underway against Plaintiff. The COUNTY has been threatening Plaintiff with state court proceedings for over two years and counting. Surely neither the COUNTY nor these Defendants think they can hold the mere threat of a state court lawsuit over the heads of the people as grounds to avoid having to answer for their misdeeds in federal court.

### *5. Defendants' Vexatious Litigant Argument is an ad Hominem Attack and a "Red Herring"*

In support of this argument, Defendants seek to incorporate the arguments advanced by the COUNTY in its Motion to Dismiss, which were refuted by Plaintiff in his Memorandum of Law in opposition to the COUNTY'S Motion. Plaintiff's response applies with equal force to Defendants' ad hominem attack, which is nothing more than a "red herring."



## IV. <u>CONCLUSION</u>

For the foregoing reasons, and subject to any exceptions articulated, the Court should deny the County's Motion to Dismiss. The Motion fails to completely dispose of Plaintiff's Complaint, and it sets forth many inaccurate arguments that are unsupported by law. At the very least, Plaintiff should be given leave to amend the Complaint to supplement any deficiencies in pleading.

Respectfully submitted,

Dated: June 1, 2023                    **YOUNG LAW GROUP**


By: */s/Eric G. Young, Esq.*
       ERIC G. YOUNG, ESQ., Attorneys for
       Plaintiff RONALD CUPP

