ERIC G. YOUNG, ESQ. (SBN 190104)
**YOUNG LAW GROUP**
2544 Cleveland Avenue, Suite 210
Santa Rosa, California 95403
Tel.:  707.343.0556
Fax:  707.327.4360
Email: eyoung@younglawca.com
E-Service: service@younglawca.com

Attorneys for Plaintiff
RONALD CUPP

# UNITED STATES DISTRICT COURT

# NOTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| RONALD CUPP, an individual, | CASE NO.: 4:23-cv-01007 JST |
| Plaintiff, | **PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS [PROPOSED] FIRST AMENDED COMPLAINT** |
| vs. | |
| COUNTY OF SONOMA, a municipal corporation; TENNIS WICK, in his individual and official capacities; TYRA HARRINGTON, in her individual and official capacities; MARK FRANCESCHI, in his individual and official capacities; TODD HOFFMAN, in his individual and official capacities; JESSE CABLK, in his individual and official capacities; ANDREW SMITH, in his individual and official capacities; and DOES 1-50, inclusive. | Date: July 18, 2024<br>Time: 2:00 p.m.<br>Courtroom: 6, 2nd Floor<br>Judge: Hon. Jon S. Tigar |
| Defendants. | |

COMES NOW, Plaintiff RONALD CUPP, to request pursuant to Federal Rules of

Civil Procedure 201(b)(2), (c)(1)-(2) of the following adjudicative facts:

(1) The organizational hierarchy of Permit Sonoma; and in particular, the position

of Director of Permit Sonoma and Code Enforcement Manager, as reflected on the

Organizational Chart posted on the official website for Defendant COUNTY OF

SONOMA's Permit Sonoma, which can be found publicly at the following address:

https://permitsonoma.org/aboutus. A true and correct copy of the webpage containing the Organizational Chart as well as the Organizational Chart itself are attached hereto as **Exhibit 1** and incorporated herein by this reference.

(2) Sonoma County Ordinance No. 6245. A true and correct copy of the Ordinance is attached hereto as **Exhibit 2** and incorporated herein by this reference.

(3) Complaint by County of Sonoma in *County of Sonoma v. Alvarez*, Sonoma Superior Court Case No. 23CV00658. A true and correct copy of the Complaint is attached hereto as **Exhibit 3** and incorporated herein by this reference.

Date: June 24, 2024

**YOUNG LAW GROUP**

By: _____
ERIC G. YOUNG, ESQ., Attorneys for Plaintiff



PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS [PROPOSED] FIRST AMENDED COMPLAINT - 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1





← COUNTY OF SONOMA

🌐 Language



**SONOMA COUNTY**
# PERMIT SONOMA

What are you looking for?   🔍

| About Us | Permit Services & Data | Long Range Plans | Regulations and Initiatives | Zoning | Fire Prevention & HazMat |

PERMIT SONOMA  ›  ABOUT US

Share this: 

## About Us

### About Us

- Available Services
- News, Media, & Outreach    +
- Project Consultation
- Business Hours
- Feedback
- Accessibility Assistance

‹ **Back to PERMIT SONOMA**



On this page: Contact Us | What We Do | Organizational Chart

## Survey Says!



At Permit Sonoma, we take customer satisfaction seriously...and it shows!

Check out what our customers are saying about us (PDF).

## Contact Us

**We are committed to answering your inquiries.**

| CONTACT US BY PHONE | |
|---|---|
| **Permit Sonoma Phone** | (707) 565-1900 |
| | Our phone tree automated system will direct your call. |
| **Division and Section Phone Numbers** | Find out which Division or Section within Permit Sonoma to contact. |
| **Employee Directory** | Use the Employee Directory list only if you have been assigned a specific employee as a contact. Otherwise, please call the main phone number at (707) 565-1900 or find out which Permit Sonoma Division to contact. |

| CONTACT US BY EMAIL | |
|---|---|
| **Public Records Act Requests** | The Public Records Act allows the public to inspect and request copies of qualifying public records prepared or retained by any public agency. |
| **Ombudsperson** | The Ombudsperson provides value-added customer service on individual projects and facilitates process improvements that result in a more user-friendly permitting process. |
| **Permit Sonoma Webmaster** | Email the Webmaster about issues/suggestions related to Permit Sonoma web pages or the Permits Online permitting tool. |
| **Permit Sonoma Main Contact** | If you are unsure whom to contact, submit your inquiry here, and your message will be directed. |
| **Project Consultation** | Permit Sonoma offers pre-application meetings that allow you to meet with staff from the divisions and agencies that may be involved before you start the permitting process. County staff will review your proposal with you, tell you what you need to submit with your application and answer any questions you may have about the process. Staff will also review Federal, State, and County regulations, requirements, plans, policies, and standards that might apply to your proposal.<br><br>More information about pre-applications or schedule a meeting: Email the administrator |

Captured by FireShot Pro: 24 June 2024, 18:03:35
https://getfireshot.com

Case 4:23-cv-01397-JST   Document 42   Filed 06/24/24   Page 5 of 55

## FEEDBACK

**Give Us Your Feedback**   Tell us about your recent in-person or virtual visit by filling out our online comment card (available in English or Spanish).

## What We Do

Permit Sonoma, also known as the Permit and Resource Management Department (PRMD), is Sonoma County's consolidated land use planning and development permitting agency. Virtually any land development or construction in the unincorporated area of Sonoma County (outside the city limits of the nine cities) is reviewed, permitted, and inspected by Permit Sonoma.

The department was created as part of a countywide reorganization in 1995 by bringing staff from five separate departments together under one roof and with one joint mission. On January 1, 2019, the Fire Prevention and Hazardous Materials division joined Permit Sonoma.

Our department is organized into various Divisions, which are organized into multiple Sections, all working together to meet the goals of Permit Sonoma's mission.

- Division and Section Information

## Mission Statement

Our mission is to serve the people of Sonoma County by providing a customer-focused process for the orderly development of real property, balanced with resource stewardship under the general policy direction of the Board of Supervisors, and to develop and maintain standards that protect the health and safety of the public.

## Organizational Chart



---



## About Us



Sign Up for Permit Sonoma Email Updates

**Email Address**
PermitSonoma@sonoma-county.org

**Phone Operator**
Phone: (707) 565-1900
CA Relay Service: 711

**In Person Hours**
Monday – Tuesday, Thursday – Friday
    8:00 AM – 4:00 PM
Wednesday
    10:30 AM – 4:00 PM

Make An Appointment

**Permit Center & Mailing Address**
2550 Ventura Avenue
Santa Rosa, CA 95403
Google Maps™ Directions



**Permit Sonoma**
**County of Sonoma**
**Organizational Chart**
**Fiscal Year 2023-2024**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 2**



## ORDINANCE NO. 6245

**AN ORDINANCE OF THE BOARD OF SUPERVISORS OF THE COUNTY OF SONOMA, STATE OF CALIFORNIA, AMENDING CHAPTER 26 OF THE SONOMA COUNTY CODE TO ALLOW ADULT USE CANNABIS IN SONOMA COUNTY FOR THE FULL CANNABIS SUPPLY CHAIN, ENHANCE NEIGHBORHOOD COMPATIBILITY, ADD NEW DEFINITIONS AND MAKE MINOR NON-SUBSTANTIVE AMENDMENTS TO HARMONIZE WITH CALIFORNIA STATE LAW AND REGULATIONS WHERE APPROPRIATE**

The Board of Supervisors of the County of Sonoma, State of California, ordains as follows:

**SECTION I. Purpose and Findings.**

The proposed amendments are necessary and desirable to protect the public health, safety and environmental resources, provide a consistent regulatory pathway for the cannabis industry consistent with state regulations, foster a healthy, diverse and economically viable cannabis industry that contributes to the local economy, and ensure that environmental, public health, safety and nuisance factors related to the cannabis industry are adequately addressed.

The Medical Cannabis Regulation and Safety Act ("MCRSA"), signed into law in October 2015, constructed a comprehensive framework for the regulation of medical cannabis and replaced the collective/cooperative model with a dual commercial licensing scheme at the local and state levels.

A. On December 20, 2016, the Sonoma County Board of Supervisors adopted a series of ordinances, including the Medical Cannabis Land Use Ordinance (Ordinance Number 6189) to establish a comprehensive local cannabis program and to permit and regulate the complete supply chain of medical uses.

B. The Senate Bill 94, known as the "2017-2018 Budget Trailer Bill", signed into law on June 27, 2017, repealed the Medical Cannabis Regulation and Safety Act ("MCRSA") and incorporated certain provisions of MCRSA into the provisions of the Adult Use of Marijuana Act ("AUMA") to create one regulatory framework termed the Medicinal and Adult-Use Cannabis Regulation and Safety Act ("MAUCRSA").

C. On April 10, 2018, the Sonoma County Board of Supervisors adopted a Resolution of Intention, directing staff to explore and propose amendments to the Cannabis Ordinance to allow for Adult Use cannabis for the full supply chain and adopt new definitions and minor technical changes to harmonize with State law and regulations where appropriate.

D. This ordinance amendment package is intended to be Part 1 of a two part policy effort to alleviate neighborhood compatibility issues and harmonize with state regulations which were adopted after the County's adoption of the Cannabis Land Use Ordinance (Ordinance Number 6189) on December 20, 2016.

E. Adoption of this ordinance is exempt from the California Environmental Quality Act (CEQA), for the reasons set forth in the Board's Resolution No. 18-0442, adopted concurrently with this ordinance. Resolution No. 18- 0442 is hereby incorporated by reference as though fully

1

set forth herein.

F.  This ordinance is substantially consistent with the Sonoma County General Plan, for the reasons set forth in the Board's Resolution No. 18-0442, adopted concurrently with this ordinance. Resolution No. 18-0442 is hereby incorporated by reference as though fully set forth herein.

**SECTION II.  Sonoma County Code Chapter 26 (the Zoning Code) is hereby amended as follows:**

A.  **Section 26-02-140 (Definitions).**  Section 28-88-140 of Chapter 26  of the Sonoma County Code is amended as shown in Exhibit A attached hereto.

B.  **Section 26-88-250 (Commercial cannabis uses).** Section  26-88-250 of Chapter 26 of the Sonoma County Code is amended as shown in  Exhibit B, attached hereto.

C.  **Section  26-88-252 (Enforcement).** Section 26-88-252 of Chapter  26 of the Sonoma County Code is amended as shown in Exhibit B attached  hereto.

D.  **Section 26-88-254 (Cannabis cultivation Commercial medical).**  Section 26-88-254 of Chapter 26 of the Sonoma County Code is amended as  shown in Exhibit B attached hereto.

E.  **Section 26-88-256 (Medical cannabis dispensary uses).**  Section  26-88-256 of Chapter 26 of the Sonoma County Code is amended as shown in  Exhibit B attached hereto.

F.  **Section 26-88-258 (Cannabis cultivation Personal).**  Section  26-88-258 is amended as shown in Exhibit B attached hereto.

G.  **Amendments to Zoning Districts for Commercial Cannabis Uses.**

The following Subsections of Chapter 26 of the Sonoma County Code are  amended for Permitted Uses:

Section 26-04-010(p) – LIA Land Intensive Agriculture District  Section 26-06-010(t) LEA Land Extensive Agriculture District  Section 26-08-010(s) – DA Diverse Agriculture District

To be read as follows:

**"Commercial cannabis uses in compliance with Section 26-88-250 through 26-88-256"**

The following Subsections of Chapter 26 of the Sonoma County Code are  amended for Permitted Uses:

Section 26-44-010(u) – MP Industrial Park
Section 26-46-010(t) – M1 Limited Urban Industrial
Section 26-48-010(y) – M2 Heavy Industrial
Section 26-50-010(r) – M3 Limited Rural Industrial

to read as follows:

> **"Commercial cannabis ~~medical~~ uses in compliance with Section 26-88-250 through 26-88-256"**

The following Subsections of Chapter 26 of the Sonoma County Code are · amended for Uses Permitted with a Use Permit:

Section 26-04-020 (r) – LIA Land Intensive Agriculture
Section 26-06-020 (t) – LEA Land Extensive Agriculture
Section 26-08-020 (t) – DA Diverse Agriculture
Section 26-10-020 (tt) – RRD Rural and Resource Development
Section 26-44-020 (q) – MP Industrial Park
Section 26-46-020 (aa) – M1 Limited Urban Industrial
Section 26-48-020 (z) – M2 Heavy Industrial
Section 26-50-020 (aa) – M3 Limited Rural Industrial
Section 26-34-020 (ll) – C3 General Commercial District
Section 26-36-020 (pp) – LC Limited Commercial

to read as follows:

> **"Commercial cannabis ~~medical~~ uses in compliance with Section 26-88-250 through 26-88-256"**

The following Subsections of Chapter 26 of the Sonoma County Code are  amended:

Section 26-30-020 (z) – C1 Neighborhood Commercial
Section 26-32-020 (ee) – C2 Retail Business and Service
Section 26-36-020 (oo) – LC Limited Commercial

to read as follows:

> "Commercial ~~Medical~~ Cannabis ~~Dispensary~~ uses, in compliance with  Section 26-88-250 and 26-88-256"

The following Subsection of Chapter 26 of the  Sonoma County Code are amended:

Section 26-86-010 – Required parking "Use" table  to read as follows:

> "~~Medical~~ cannabis dispensary"

**Section III.  Pipeline Projects.** Notwithstanding the minimum lot size requirement, applications for commercial cannabis cultivation operations that were approved or determined complete for processing prior to the effective date of this ordinance may continue to be processed and reviewed under the minimum lot size in effect at the time their applications were deemed complete or approved.  Any of these applications for commercial cannabis cultivation may continue to be renewed as a legal, nonconforming use under limited term use permits in compliance with the provisions of Article 94 (Nonconforming Uses), except that the cultivation area shall not be increased in size.

**Section IV.  Severability.**   If any section, subsection, sentence, clause, or  phrase of this Ordinance is for any reason held to be unconstitutional or invalid,  such decision shall not affect the validity of the remaining portion of this  Ordinance. The Board of Supervisors hereby declares that it would have passed  this Ordinance and every section, subsection, sentence, clause or phrase thereof  irrespective of the fact that any one or more sections, subsections, sentences, clauses or phrases be declared unconstitutional or invalid.

**Section V.  Effective Date.**  This Ordinance shall become effective 30 days  from the date of its passage by a majority vote. A fair and adequate summary of  this ordinance was published at least five days prior to the public hearing, and an  additional summary shall be published once before the expiration of fifteen (15)  days after passage, with the names of the Supervisors voting for or against the  same, in The Press Democrat, a newspaper of general circulation published in the County of Sonoma, State of California.

In regular session of the Board of Supervisors of the County of Sonoma,  introduced and adopted this 16th day of October, 2018, on regular roll call of the  members of said Board by the following vote:

**SUPERVISORS:**

Gorin: Aye   Rabbitt:  Aye  Zane:  Aye   Hopkins:  Aye   Gore: Aye

Ayes:   5   Noes:    0   Absent:   0     Abstain:  0

     **WHEREUPON,** the Chair declared the above and foregoing Ordinance  duly adopted and



SO ORDERED.

_____
Chair, Board of Supervisors
County of Sonoma

ATTEST:

_____
Sheryl Bratton,
Clerk of the Board of Supervisors

4

Ordinance No. 6245

**Definitions in Section 26-02-140**

**Applicant – Cannabis**: A person that is applying for a permit to engage in commercial cannabis activity pursuant to this chapter.

**Cannabis:** All parts of the plant Cannabis sativa Linnaeus, Cannabis indica, or Cannabis ruderalis, or any other strain or varietal of the genus Cannabis that may exist or hereafter be discovered or developed whether growing or not; the seeds thereof; the resin, whether crude or purified, extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds, or resin. "Cannabis" also means the separated resin, whether crude or purified, obtained from cannabis. "Cannabis" does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of the plant which is incapable of germination. For the purpose of this section, "cannabis" does not mean "industrial hemp" as defined by Section 81000 of the California Food and Agricultural Code or Section 11018.5 of the California Health and Safety Code, or the weight of any other ingredient combined with cannabis to prepare topical or oral administrations, food, drink, or other product. Cannabis is classified as an agricultural product separately from other agricultural crops.

**Cannabis Business Owner:** A person with an aggregate ownership interest of 20 percent or more in the person applying for a permit, unless the interest is solely a security, lien, or encumbrance; the chief executive officer of a nonprofit or other entity; a member of the board of directors of a nonprofit; the trustee(s) and all persons that have control of the trust and/or the commercial cannabis business that is held in trust; and/or an individual who will be participating in the direction, control, or management of the person applying for a permit.

**Cannabis Cultivation:** Any activity involving the planting, growing, harvesting, drying, curing, grading, or trimming of cannabis.

**Cannabis Cultivation Area:** The total aggregate area(s) of cannabis cultivation on a single premises as measured around the outermost perimeter of each separate and discrete area of cannabis cultivation at the dripline of the canopy expected at maturity and includes, but is not limited to, the space between plants within the cultivation area, the exterior dimensions of garden beds, garden plots, hoop houses, green houses, and each room or area where cannabis plants are grown, as determined by the review authority.

**Cannabis Cultivation – Indoor:** Cannabis cultivation within any type of structure using exclusively artificial lighting.

**Cannabis Cultivation – Mixed-Light:** Cannabis cultivation in a greenhouse or other similar structure using natural light, light deprivation, and/or any combination of natural and supplemental artificial lighting.

1

Ordinance No. 6245

**Cannabis Cultivation – Outdoor:** Cannabis cultivation using no artificial lighting conducted in the ground or in containers outdoors.

**Cannabis Cultivation Site:** The premises where commercial cannabis is planted, grown, harvested, dried, cured, graded, or trimmed or where all or any combination of those activities occurs.

**Cannabis Dispensary:** A facility where cannabis, cannabis products, or devices for the use of cannabis are offered, either individually or in any combination, for retail sale, including an establishment that delivers cannabis and/or cannabis products as part of a retail sale.

**Cannabis Distribution:** The procurement, sale, and transport of cannabis and cannabis products between licensees.

**Cannabis License:** A license issued by the State of California pursuant to the Medicinal and Adult-Use Cannabis Regulation and Safety Act (MAUCRSA).

**Cannabis Licensee:** Any person issued a license by the State of California under the Medicinal and Adult-Use Cannabis Regulation and Safety Act (MAUCRSA).

**Cannabis Manufacturer:** A person that conducts the production, preparation, or compounding of cannabis or cannabis products either directly or indirectly or by extraction methods, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis at a fixed location that packages or repackages cannabis or cannabis products or labels or relabels its container.

**Cannabis Manufacturing:** All aspects of the extraction process, infusion process, and packaging and labeling processes, including preparing, holding, or storing of cannabis products. Manufacturing also includes any preparing, holding, or storing of components and ingredients.

**Cannabis – Medical:** Any cannabis or cannabis product intended to be sold for use pursuant to the Compassionate Use Act of 1996 (Proposition 215), found at Section 11362.5 of the Health and Safety Code.

**Cannabis Operator:** The individual authorized to represent the person applying for or operating pursuant to a permit authorizing any commercial cannabis activity pursuant to this chapter.

**Cannabis Product:** Cannabis that has undergone any process whereby the plant material has been transformed into a concentrate, including, but not limited to, concentrated cannabis, or an edible or topical product containing cannabis or concentrated cannabis and other ingredients.

**Cannabis Testing Laboratory:** A laboratory, facility, or entity in the State of California that offers or performs tests of cannabis or cannabis products.

**Cannabis Transport:** The physical movement of cannabis or cannabis products from one licensed premises to another licensed premises.

2

Ordinance No. 6245

**Commercial Cannabis Activity**: The cultivation, possession, manufacture, distribution, processing, storing, laboratory testing, packaging, labeling, transportation, delivery, or sale of cannabis and cannabis products as provided for in this chapter.

**Delivery**: The commercial transfer of cannabis or cannabis products to a customer, including use by a retailer of any technology platform owned and controlled by the retailer.

**Greenhouse:** A permanent structure, including glasshouses, conservatories, hothouses, or other similar structures for the covered propagation and growing of plants, constructed with a translucent roof and/or walls.

**Hoop House – Cannabis:** A temporary structure used for season extension or crop protection erected for less than 180 days where the material covering the structure is removable. Hoop houses do not have any electrical components, such as ventilation or artificial lighting, and are not used for light deprivation.

**Light Deprivation:** The elimination of natural light in order to induce flowering, using black out tarps or any other opaque covering.

**Nonmanufactured Cannabis:** Flower, shake, kief, leaf, and pre-rolls.

**Nonvolatile Solvent:** Any solvent used in the extraction process that is not a volatile solvent. For purposes of this chapter, 'nonvolatile solvents' include carbon dioxide and ethanol.

**Nursery – Cannabis:** A person that produces only clones, immature plants, seeds, and other agricultural products  used specifically for the planting, propagation, and cultivation of cannabis.

**Person:** An individual, firm, partnership, joint venture, association, corporation, limited liability company, estate, trust, business trust, receiver, syndicate, tribe, or any other group or combination acting as a unit, and the plural as well as the singular.

**Process, Processing, or Processes – Cannabis:** All activities associated with drying, curing, grading, trimming, rolling, storing, packaging, and labeling of nonmanufactured cannabis.

**Premises – Cannabis:** The designated structure or structures and land specified in the application that is owned, leased, or otherwise held under the control of the applicant or person holding a valid permit where commercial cannabis activity will be or is conducted.

**Volatile solvent:**  Any solvent that is or produces a flammable gas or vapor that, when present in the air in sufficient quantities, will create explosive or ignitable mixtures.

Ordinance No. 6245

### Sec. 26-88-250. - Commercial cannabis uses.

(a)  Purpose. This section provides the development and operating standards for commercial cannabis activities to ensure neighborhood compatibility, minimize potential environmental impacts, provide safe access to medicine, and provide opportunities for economic development.

(b) Applicability. Commercial cannabis activities shall be permitted only in compliance with the requirements of Sections 26-88-250 through 26-88-256 and all other applicable requirements for the specific type of use and those of the underlying base zone.

(c) Limitations on Use. The following limitations apply to all commercial cannabis activities.

(1) Commercial cannabis uses for non-medical cannabis for adult use is prohibited, unless a use permit is obtained.

(2) Commercial cannabis activities shall only be allowed in compliance with all applicable county codes, including but not limited to, grading, building, plumbing, septic, electrical, fire, hazardous materials, and public health and safety.

(3)The permit holder shall comply with all laws and regulations applicable to the type of use and shall comply with all permit, license, approval, inspection, reporting and operational requirements of other local, state, or other agencies having jurisdiction over the type of operation. The permit holder shall provide copies of other agency and department permits, licenses, or certificates to the review authority to serve as verification for such compliance.

(4) Permits for commercial cannabis activities shall only be issued where written permission from the property owner or landlord is provided.

(5) Tasting, promotional activities, and events related to commercial cannabis activities are prohibited.

(6) Commercial cannabis activities are prohibited from using volatile solvents, including but not limited to Butane, Propane, Xylene, Styrene, Gasoline, Kerosene, 02 or H2, or other dangerous poisons, toxins, or carcinogens, such as Methanol, Methylene Chloride, Acetone, Benzene, Toluene, and Tri-chloro-ethylene, as determined by the Fire Marshall.

(d) Permit Requirements. Commercial cannabis activities shall be subject to the land use permit requirements as shown in Table 1A-D Allowed Cannabis Uses and Permit Requirements. No other type of commercial cannabis activities are permitted except as specified in Table 1A-D. The county may refuse to issue any discretionary or ministerial permit, license, variance or other entitlement, which is sought pursuant to this chapter, including zoning clearance for a building permit, where the property upon which the use or structure is proposed is in violation of the county code. Commercial cannabis activities shall also be subject to permit requirements and regulations established by the Sonoma County Department of Health Services.

(e) Term of Permit. Zoning permits for commercial cannabis activities shall be issued for a limited term not to exceed one (1) year from the date of permit approval. Use permits for commercial cannabis activities may be approved for a limited term of up to five (5) years from the date the use permit certificate is issued, after all pre-operational conditions of the use permit have been met. Limited term permits shall expire and have no further effect unless a complete application for renewal is submitted prior to the expiration date. No

4

Ordinance No. 6245

property interest, vested right, or entitlement to receive a future permit to conduct a commercial cannabis activity shall ever inure to the benefit of such permit holder.

(f) Health and Safety. Commercial cannabis activity shall not create a public nuisance or adversely affect the health or safety of the nearby residents or businesses by creating dust, light, glare, heat, noise, noxious gasses, odor, smoke, traffic, vibration, unsafe conditions or other impacts, or be hazardous due to the use or storage of materials, processes, products, runoff or wastes.

(g) Taxes. Permit holders shall comply with Sonoma County Code Section 35, the Sonoma County Cannabis Business Tax Ordinance, and any additional taxes that may be enacted by the voters or any additional regulations that may be promulgated.

(h) Operator Qualifications. Cannabis operators must meet the following qualifications:

(1) Cannabis operators and all employees must be at least twenty-one (21) years of age.

(2) Cannabis operators shall be subject to background search by the California Department of Justice. Permits for commercial cannabis activities shall not be approved for operators with serious or violent felony convictions, as specified in subdivision (c) of Section 1192.7 of the Penal Code and subdivision (c) of Section 667.5 of the Penal Code.

(3) Cannabis operators must have authority to legally bind the person applying for and/or operating pursuant to a permit.

(4) Cannabis operators must meet the definition of a cannabis business owner.

(i) Weights and Measures. All scales used for commercial transactions shall be registered for commercial use and sealed by the Department of Agriculture/Weights and Measures.

(j) Tracking. Permit holders shall comply with any track and trace program established by the county and state agencies. Permit holders must maintain records tracking all cannabis and cannabis products and shall make all records related to commercial cannabis activity available to the county upon request.

(k) Inspections. Premises shall be subject to inspections by appropriate local and state agencies, including but not limited to the Department of Agriculture/Weights & Measures and Permit and Resource Management Department. Premises shall be inspected at random times for conformance with the county code and permit requirements. The inspection shall be conducted during regular business hours. If interference in the performance of the duty of the agency having jurisdiction occurs, the agency may temporarily suspend the permit and order the permit holder to immediately cease operations.

(l) Monitoring. Permit holders shall be subject to monitoring. A fee may be adopted by the board of supervisors and collected by the agency having jurisdiction or the county tax collector to pay for monitoring and enforcement.

(m) Appeals. Appeals of any permit issuance or denial issued by the Department of Agriculture/Weights & Measures shall be subject to review and appeal procedures pursuant to Chapter 36. Appeals of any permit issuance or denial issued by PRMD shall be subject to review and appeal procedures pursuant to Chapter 26.

(n) Exercise of Permit and Notification of Changes. Permits are issued to and held by the person engaged in commercial cannabis activity, and specific to the premises for which it was issued. A permit holder shall, at all times, have one cannabis operator. Prior written notice must be provided to the agency having jurisdiction for any changes to ownership or cannabis operator, and any changes must comply with applicable code requirements. New cannabis operators shall be required to participate in an orientation and/or exam(s), as determined by

Ordinance No. 6245

the agency having jurisdiction. Permit holders shall notify the agency having jurisdiction prior to any of the following:

(1) A new person meeting the definition of cannabis business owner of the permit holder.

(2) Change in business entity type of the permit holder.

(3) Change in legal business name of the permit holder.

(4) A new person serving as operator of the permit holder.

(5) A new property owner of the parcel on which the premises is located.

(o) Permit Renewal. Applications for permit renewal may be administratively approved by the agency having jurisdiction only if:

(1)The use has been conducted in accordance with this section, with the operation's approved plan, and with all applicable use permit conditions of approval;

(2)There are no outstanding violations related to health, safety, land use, or tax; and;

(3)The requirements of Section 26-92-040 are met.

(p) Indemnification of County. At the time of submitting an application for a permit pursuant to Sections 26-88-250 through Section 26-88-256, the applicant, and, if different than applicant, the lawful owner(s) of the property on which applicant seeks approval to engage in any commercial cannabis activity, shall agree, as part of the application, to defend, indemnify and hold harmless the county and its agents, officers, attorneys and employees from any claim, action or proceeding brought against the county or its agents, officers, attorneys or employees to attack, set aside, void or annul an approval of the county, its advisory agencies, appeal boards of board of supervisors, which action is brought within the applicable statute of limitations. The indemnification shall include damages awarded against the county, if any, costs of suit, attorney fees and other costs and expenses incurred in connection with such action.

Ordinance No. 6245

## Table 1A: Allowed Cannabis Uses and Permit Requirements for Agricultural and Resource Zones

| LAND USE | MAXIMUM CULTIVATION AREA PER PARCEL (square feet or plant) | MINIMUM PARCEL SIZE | Land Intensive Agriculture | Land Extensive Agriculture | Diverse Agriculture | Resources and Rural Development | Timber Preserve | Special Use Regulations |
|---|---|---|---|---|---|---|---|---|
| | | | LIA[1] | LEA[1] | DA[1] | RRD[1] | TP | |
| **CANNABIS USES** | | | | | | | | |
| Personal Cultivation | 100 sq ft including up to 6 plants for adult use, per residence | None | P | P | P | P | P | |
| **Commercial Cannabis Uses** | | | | | | | | 26-88-250 - 254 |
| Cottage | 25 plants | 10 ac | ZP | ZP | ZP | MUP | — | |
| Specialty Outdoor | 5,000 sq. ft. or 50 plants | 10 ac | CUP | ZP | ZP | CUP | — | |
| Small Outdoor | 5,001 - 10,000 | 10 ac | CUP | ZP | ZP | CUP | — | |
| Medium Outdoor | 10,001 - 43,560 | 10 ac | CUP | CUP | CUP | CUP | — | |
| Nursery Outdoor | Limited as Expressed Above | | CUP | CUP | CUP | CUP | — | |
| **Indoor Cultivation** | | | | | | | | |
| Cottage | 500 | 10 ac | ZP[2] | ZP[2] | ZP[2] | MUP[2] | — | |
| Specialty Indoor | 501 - 5,000 | 10 ac | CUP[2] | CUP[2] | CUP[2] | CUP[2] | — | |
| Small Indoor | 5,001 - 10,000 | 10 ac | — | — | — | — | — | |
| Medium Indoor | 10,001 - 22,000 | 10 ac | — | — | — | — | — | |
| Nursery Indoor | Limited as Expressed Above | | CUP[2] | CUP[2] | CUP[2] | CUP[2] | — | |
| **Mixed Light Cultivation** | | | | | | | | |
| Cottage | 2,500 | 10 ac | ZP[2] | ZP[2] | ZP[2] | MUP | — | |
| Specialty Mixed Light | 2,501 - 5,000 | 10 ac | CUP[2] | CUP | CUP | CUP | — | |
| Small Mixed Light | 5,001 - 10,000 | 10 ac | CUP[2] | CUP | CUP | CUP | — | |
| Medium Mixed Light | 10,001 - 22,000 | 10 ac | — | — | — | — | — | |
| Nursery Mixed Light | Limited as Expressed Above | | CUP[2] | CUP | CUP | CUP | — | |
| **Centralized Processing** | | 10 ac | CUP[2] | CUP[2] | CUP[2] | | | |
| **Distributor-Transport Only**[3] | | 10 ac | MUP | MUP | MUP | MUP | | |

| TYPE OF PERMIT REQUIRED | |
|---|---|
| ZP | Permitted Use if standards met- CEQA exempt; Zoning Permit and Building Permit only |
| MUP | Minor Use Permit or Hearing Waiver; CEQA applies unless Cat Exempt; can add conditions |
| CUP | Use Permit - noticed hearing before Planning Commission; CEQA; can add conditions |
| — | Use not allowed |

Notes:
1. Commercial Cannabis Uses on properties with a Land Conservation (Williamson Act) Act Contract are subject to Uniform Rules for Agricultural Preserves.
2. Within existing previously developed areas, including hardscape, or legally established structures built (finaled) prior to January 1, 2016. No net increase in impervious surface.
3. Distributor-Transport Only restricts the licensee to only transporting cannabis goods that the licensee has cultivated or manufactured.

## Table 1B: Allowed Cannabis Uses and Permit Requirements for Commercial Zones

| LAND USE | MAXIMUM CULTIVATION AREA PER PARCEL | MINIMUM PARCEL SIZE | Commercial Office | Neighborhood Commercial | Retail Business and Services | General Commercial | Limited Commercial | Commercial Rural | Agricultural Services | Recreation and Visitor Serving | Special Use Regulations |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | CO | C1 | C2 | C3 | LC | CR | AS | K | |
| **CANNABIS USES** | | | | | | | | | | | |
| **Personal Cultivation**[1] | 100 sq ft including up to 6 plants for adult use, per residence | None | P | P | P | P | P | P | | | 26-88-250, 252, and 256 |
| **Testing/Laboratories** | per use permit | | — | — | — | MUP | MUP | — | — | — | |
| **Dispensaries: Storefront and Delivery** | per use permit | | — | CUP | CUP | CUP | | CUP | — | — | |

| TYPE OF PERMIT REQUIRED | |
|---|---|
| MUP | Minor Use Permit or Hearing Waiver; CEQA applies unless Cat Exempt; can add conditions |
| CUP | Use Permit - noticed hearing before Planning Commission; CEQA; can add conditions |
| — | Use not allowed |

Notes    1 Personal Outdoor Cultivation is prohibited in multifamily units and in the R2 and R3 zones

7

Ordinance No. 6245

## Table 1C: Allowed Cannabis Uses and Permit Requirements for Industrial Zones

| LAND USE | MAXIMUM CULTIVATION AREA PER PARCEL (square feet or plant) | MINIMUM PARCEL SIZE | Industrial Park | Limited Urban Industrial | Heavy Industrial | Limited Rural Industrial | Public Facilities | Special Use Regulations |
|---|---|---|---|---|---|---|---|---|
| | | | MP | M1 | M2 | M3 | PF | |
| **CANNABIS USES** | | | | | | | | |
| **Personal Cultivation**[1] | 100 sq ft including up to 6 plants for adult use, per residence | None | P | P | P | P | P | **26-88-250 -252** |
| **Indoor Cultivation** | | | | | | | | |
| Cottage | 500 | None | ZP | ZP | ZP | ZP | — | |
| Specialty Indoor | 501 - 5,000 | None | MUP | MUP | MUP | MUP | — | |
| Small Indoor | 5,001 - 10,000 | None | MUP | MUP | MUP | MUP | — | |
| Medium Indoor | 10,001 - 22,000 | None | MUP | MUP | MUP | MUP | — | |
| Nursery Indoor | Limited as Expressed Above | | MUP | MUP | MUP | MUP | — | |
| **Mixed Light Cultivation** | | | | | | | | |
| Cottage | 2,500 | 2 ac | — | MUP | MUP | MUP | — | |
| Specialty Mixed Light | 2,501 - 5,000 | 3 ac | — | MUP | MUP | MUP | — | |
| Small Mixed Light | 5,001 - 10,000 | 5 ac | — | MUP | MUP | MUP | — | |
| Medium Mixed Light | 10,001 - 22,000 | 10 ac | — | MUP | MUP | MUP | — | |
| Nursery Mixed Light | Limited as Expressed Above | | — | MUP | MUP | MUP | — | |
| **Testing/Laboratories** | | | MUP | MUP | MUP | MUP | — | |
| **Manufacturing** | | | | | | | | |
| Level 1 - nonvolatile solvents | per use permit | | MUP | MUP | MUP | MUP | — | |
| **Centralized Processing** | per use permit | | MUP | MUP | MUP | MUP | — | |
| **Microbusiness**[2] | per use permit | | MUP | MUP | MUP | MUP | — | |
| **Distributor-Transport** | per use permit | | MUP | MUP | MUP | MUP | — | |
| **Distributer-Transport Only**[3] | per use permit | | MUP | MUP | MUP | MUP | — | |

| TYPE OF PERMIT REQUIRED | |
|---|---|
| ZP | Permitted Use if standards met- CEQA exempt; Zoning Permit and Building Permit only |
| MUP | Minor Use Permit or Hearing Waiver; CEQA applies unless Cat Exempt; can add conditions |
| — | Use not allowed |

Notes
1 Personal Outdoor Cultivation is prohibited in multifamily units and in the R2 and R3 zones

2 Does not alter the already allowed uses and only formalizes the potential to request this combined state license type.

3 Distributer-Transport Only restricts the licensee to only transporting cannabis of the licensee.

Ordinance No. 6245

Sec. 26-88-252. - Enforcement.

(a) Violations.

(1) Any activity performed contrary to the provisions of Sections 26-88-250 through 26-88-258 is hereby declared to be a violation of this chapter and a public nuisance.

(2) Any violation of a term, condition, or the approved plans and specifications of any permit issued pursuant to Sections 26-88-250 through 26-88-256 shall constitute a violation of this chapter.

(3)Each and every day during any portion of which any violation of Sections 26-88-250 through 26-88-258 or any permit issued thereunder is committed, continued, or allowed to continue shall be a separate offense.

(b) Enforcement. Complaints regarding the noncompliance of commercial cannabis activity or personal cultivation with Sections 26-88-250 through 26-88-258, as applicable, will be addressed by the agency having jurisdiction which may conduct an investigation to determine whether there was a violation of the county code, a zoning standard, or a use permit condition. Sheriff reports, online searches, citations, aerial photos or neighbor documentation may constitute proof of a violation. The agency having jurisdiction shall have discretion to investigate or prosecute any potential violation.

(c)   Suspension, Revocation or Modification.

(1) Any permit, license or approval issued pursuant to this chapter may be suspended, revoked, or modified by the agency having jurisdiction, if the Director or the Agricultural Commissioner determines any of the following:

a. Circumstances under which the permit was granted have changed and the public health, safety, and welfare require the suspension, revocation, or modification;

b. The permit was granted, in whole or in part, on the basis of a misrepresentation or omission of a material statement in the permit application; or

c. One (1) or more of the conditions or standards of the permit have not been substantially fulfilled or have been violated.

(2)Any suspension, revocation, or modification action taken by the Department of Agriculture/Weights and Measures shall be subject to review and appeal procedures pursuant to Chapter 36. Any suspension, revocation, or modification action taken by the Permit and Resource Management Department shall be subject to review and appeal procedures pursuant to Chapter 26. The revocation of any cannabis permit shall have the effect of terminating the permit and denying the privileges granted by the permit.

(3) Upon revocation, the permit holder and each person who meets the definition of cannabis business owner of the permit holder shall not apply for or be issued a permit for any commercial cannabis activity for a period of at least two (2) years.

(d) Administrative Remedies. The remedies provided for in this section apply to violations verified by the agency having jurisdiction, and shall be cumulative and not exclusive. This section is not intended to, and does not, establish any criminal liability.

(1) Administrative Enforcement Action. A violation of Sections 26-88-250 through 26-88-258 or any permit issued thereunder shall be subject to civil enforcement and abatement

Ordinance No. 6245

methods pursuant to Section 1-7.3 of the county code, as determined by the agency having jurisdiction.

(2)   Administrative Citations.

a. Any person violating or causing violation of any provision of Sections 26-88-250 through 26-88-258 or any permit issued pursuant to those sections may be issued an administrative citation by the agency having jurisdiction pursuant to Section 1.7-6.

b. Any person issued an administrative citation shall be liable for and shall remit payment of any fine(s) assessed in connection with the citation in compliance with Section 1.7-6 of this code.

c. Any person issued an administrative citation may appeal the citation to a hearing officer in compliance with Section 1-7.6 of this code.

**Cannabis Civil Penalties Schedule**

| Violation | First Offense | Second Offense | Third Offense |
|---|---|---|---|
| Exceedance of Allowed or Permitted Cultivation Area | $20 per square foot | $30 per square foot | $50 per square foot |
| Non-compliance with Standard or Condition | $1,000 | $5,000 | $10,000 |
| Unpermitted Cannabis Use | $10,000 | $25,000 | $50,000 |

(3) Civil Penalties. In addition to any and all other costs, fees, penalties and expenses which may be assessed or imposed as a result of a violation of the county code, the following civil penalties may be applied to violations associated with commercial cannabis activity, as determined by the agency having jurisdiction.

a. For cultivation in exceedance of the permitted cultivation area, no more than twenty dollars ($20.00) per square foot per day for the first violation; no more than thirty dollars ($30.00) per square foot per day for the second violation within two (2) years; and no more than fifty dollars ($50.00) per square foot per day for the third violation within two (2) years.

b. For each violation of a standard or condition of the permit or county code, no more than one thousand dollars ($1,000.00) per day for the first violation; no more than five thousand dollars ($5,000.00) per day for a second violation within two (2) years; and no more than ten thousand dollars ($10,000.00) per day for each additional violation within two (2) years.

c. For each unpermitted cannabis use, no more than ten thousand dollars ($10,000.00) per day for the first violation; no more than twenty-five thousand dollars ($25,000.00) per day for the second violation within two (2) years; and no more than fifty thousand dollars ($50,000.00) per day for the third violation within two (2) years.

Ordinance No. 6245

    d. In the event that the use or structure in violation may be permitted with an appropriate permit up to a maximum of fifty (50) times the amount of the standard fee for each required approval, review, and permit.

 (4) Three Strikes Penalty. Upon receipt of any combination of three (3) administrative citations, verified violations, or hearing officer determinations of violation of any of the permit requirements or standards issued to the owner or operator at any property or combination of properties of the same owner or operator within a two-year period, the permit for a cannabis operation is revoked, subject to prior notice and to appeal. Appeals shall be filed within ten (10) days of the notice of revocation. Upon revocation, an application to reestablish a cannabis operation at the subject property shall not be accepted for a minimum period of two (2) years.

(5) Removal of Violation. The penalties imposed by this section may not apply if the agency having jurisdiction establishes that within five (5) days after the date of mailing or hand delivery of notice of the existence of the violation, the person removed from the property the cannabis, the cannabis equipment, the use, or structure which constituted that violation.

Sec. 26-88-254. - Cannabis cultivation—Commercial.

(a) Purpose. This section establishes development criteria and operating standards for commercial cannabis cultivation as allowed by the base zone in compliance with Section 26-88-250, Commercial Cannabis Uses.

(b) Applicability. This section shall apply to all commercial cannabis cultivation, including but not limited to, outdoor, indoor, and mixed light cultivation and associated drying, curing, grading, and trimming facilities including centralized processing facilities. Commercial cannabis cultivation operations shall comply with this section in addition to the requirements of Section 26-88-250, Commercial Cannabis Uses.

(c) Permit Requirements. Commercial cannabis cultivation shall be subject to the land use permit requirements as shown in Table 1A-D Allowed Cannabis Uses and Permit Requirements. Zoning permits for outdoor cultivation may be issued by the Department of Agriculture/Weights, and Measures. Zoning permits and use permits for all other cultivation activities shall be issued by the Permit and Resource Management Department. New structures, roads, and fences or conversion of existing structures or shipping containers, or similar structures, to cannabis cultivation shall be subject to design standards maintained by the review authority.

(d) Limitations on Use. All cultivation shall be conducted and maintained in compliance with this section and the Best Management Practices for Cannabis Cultivation issued by the Agricultural Commissioner. The Agricultural Commissioner shall establish and publish the applicable best management practices and shall enforce the provisions of this section for outdoor cultivation areas and management of pesticides and fertilizers for all cultivation types. Permanent structures used in cultivation shall be subject to permits issued by the Permit and Resource Management Department and other agencies having jurisdiction and shall be conducted and maintained in compliance with this code.

(e) Multiple Permits. Multiple cultivation permit applications will be processed concurrently. Multiple cultivation permits may be issued to a single person, provided that the total

11

Ordinance No. 6245

combined cultivation area within the county does not exceed one (1) acre. For the purposes of this provision, the entire cultivation area of a permit shall be attributed in full to each person who meets the definition of cannabis business owner of the permit holder.

(f) Development Criteria.

    (1) Minimum Lot Size. A minimum lot size of 10 acres is required for all commercial cannabis operations in the agricultural and resource zones (LIA, LEA, DA, RRD).

    (2) Multi-Tenant Operations. Multiple permits may be issued for multi-tenant operations on a single parcel provided that the aggregate cultivation area does not exceed the maximum area allowed for the cultivation type and parcel size in compliance with Table 1A-D Allowed Cannabis Uses and Permit Requirements.

    (3) Square Footage Limitations. The total combined square footage of the cultivation area shall not exceed the maximum size thresholds as defined in Table 1A-D Allowable Cannabis Uses and Permit Requirements which provides the maximum size per parcel.

    (4) Propagation and Vegetative Production Area.

        a. Vegetative and other non-flowering propagative cannabis plant material may be cultivated for on-site use, subject to land use permit requirements as shown in Table 1A-D Allowed Cannabis Uses and Permit Requirements.

        b. Additional propagation and vegetative production area may be considered with a use permit, not to exceed 25% of the permitted cultivation area, provided this plant material is kept in a separate, unique area away from flowering plants.

    (5) Cannabis Processing. No more than nine (9) centralized cannabis processing facilities shall be permitted in Agricultural Zones within the unincorporated county at any (1) one time and shall be allowed to process cannabis grown onsite and within the local area. All other processing is limited to on-site cultivation use only.

    (6) Property Setbacks- Outdoor. Outdoor cultivation areas and all structures associated with the cultivation shall not be located in the front yard setback area and shall be screened from public view. Outdoor cultivation areas shall not be visible from a public right of way. Outdoor cultivation areas shall be setback a minimum of one hundred feet (100') from property lines and a minimum of three hundred feet (300') from residences and business structures on surrounding properties.

    Outdoor cultivation sites shall be setback a minimum of one thousand feet (1,000') from a school providing education to K-12 grades, a public park, childcare centers, or an alcohol or drug treatment facility. The distance shall be measured in a straight line from the property line of the protected site to the closest property line of the parcel with the cannabis cultivation use. This park setback may be reduced with a use permit when it is determined that an actual physical equivalent separation exists due to topography, vegetation or slope, that no offsite impacts will occur, and that the cannabis operation is not accessible or visible from the park.

    (7) Property Setbacks- Indoor. All structures used for indoor cultivation shall comply with the setbacks for the base zone and any applicable combining zone. Structures associated with cultivation shall not be located in the front yard setback area and shall be screened from public view. There shall be no exterior evidence of cultivation either within or outside the structure.

    Indoor cultivation within agricultural and resource zones shall be setback a minimum of six hundred feet (600') from a school providing education to K-12 grades. The distance

12

Ordinance No. 6245

shall be measured in a straight line from the property line of the protected site to the closest property line of the parcel with the cannabis cultivation use.

(8) Property Setbacks- Mixed Light. Mixed light structures shall be setback a minimum of one hundred feet (100') from property lines and a minimum of three hundred feet (300') from residences and business structures on surrounding properties in agricultural and resource zones. Mixed Light structures in industrial zones shall be setback three hundred feet (300') from residences on surrounding properties.

Mixed light structures in all zones shall be setback a minimum of one thousand feet (1,000') from a school providing education to K-12 grades, a public park, childcare centers, or an alcohol or drug treatment facility. The distance shall be measured in a straight line from the property line of the protected site to the closest property line of the parcel with the cannabis cultivation use. This park setback may be reduced with a use permit when it is determined that an actual physical equivalent separation exists due to topography, vegetation or slope, that no offsite impacts will occur, and that the cannabis operation is not accessible or visible from the park.

(9) Airport Compatibility. All cannabis operations shall comply with the Comprehensive Airport Land Use Plan.

(10) Building Requirements. All structures used in commercial cultivation shall comply with all applicable sections of the county code.

(11) Biotic Resources. Proposed cultivation operations, including all associated structures, shall require a biotic resource assessment at the time of application that demonstrates that the project is not located within, and will not impact sensitive or special status species habitat, unless a use permit is obtained. Any proposed cultivation operation, including all associated structures, located within adopted federal critical habitat areas must have either all appropriate permits from the applicable state and federal agencies with jurisdiction over the listed species, or a biotic assessment concluding that the project will not result in "take" of a protected wildlife species within the meaning of either the federal or California Endangered Species Acts.

(12) Conversion of Timberland. Cannabis cultivation activities, including associated structures, may only be located within a non-forested area that was in existence prior to December 20, 2016, and there shall be no tree removal or timber conversions to accommodate cultivation sites, unless a use permit is obtained.

(13) Property Setbacks- Riparian Corridor Stream Conservation Areas. Structures used for cultivation shall be located outside the Riparian Corridor Stream Conservation Areas (RC combining zone) and outside any designated Biotic Habitat area (BH combining zone). Outdoor cultivation areas shall conform to the agricultural Riparian Corridor setback set forth in Section 26-65-040. Outdoor cultivation areas shall conform to the wetland setback set forth in Section 36-16-120, unless a use permit is obtained.

(14) Cultural and Historic Resources. Cultivation sites shall avoid impacts to significant cultural and historic resources by complying with the following standards. Sites located within a Historic District shall be subject to review by the Landmarks Commission, unless otherwise exempt, consistent with Section 26-68-020 and shall be required to obtain a use permit. Cultivation operations involving ground disturbing activities, including but not limited to, new structures, roads, water storage, trenching for utilities, water, wastewater, or drainage systems shall be subject to design standards and referral

Ordinance No. 6245

to the Northwest Information Center and local tribes. A use permit will be required if mitigation is recommended by the cultural resource survey or local tribe.

The following minimum standards shall apply to cultivation permits involving ground disturbance. All grading and building permits shall include the following notes on the plans:

If paleontological resources or prehistoric, historic-period or tribal cultural resources are encountered during ground-disturbing work at the project location, all work in the immediate vicinity shall be halted and the operator must immediately notify the agency having jurisdiction of the find. The operator shall be responsible for the cost to have a qualified paleontologist, archaeologist and tribal cultural resource specialist under contract to evaluate the find and make recommendations in a report to the agency having jurisdiction. Paleontological resources include fossils of animals, plants or other organisms. Historic-period resources include backfilled privies, wells, and refuse pits; concrete, stone, or wood structural elements or foundations; and concentrations of metal, glass, and ceramic refuse. Prehistoric and tribal cultural resources include obsidian and chert flaked-stone tools (e.g., projectile points, knives, choppers), midden (culturally darkened soil containing heat-affected rock, artifacts, animal bone, or shellfish remains), stone milling equipment, such as mortars and pestles, and certain sites features, places, cultural landscapes, sacred places and objects with cultural value to a California Native American tribe.

If human remains are encountered, work in the immediate vicinity will stop and the operator shall notify the agency having jurisdiction and the Sonoma County Coroner immediately. At the same time, the operator shall be responsible for the cost to have a qualified archaeologist under contract to evaluate the discovery. If the human remains are determined to be of Native American origin, the Coroner must notify the Native American Heritage Commission within twenty-four (24) hours of this identification.

(15) Farmland Protection. Where a commercial cultivation site is located within an Agricultural Zone (LIA, LEA, DA), the operation shall be consistent with General Plan Policy AR-4a. Indoor and mixed light cultivation facilities shall not remove agricultural production within Important Farmlands, including Prime, Unique and Farmlands of Statewide Importance as designated by the state Farmland Mapping and Monitoring Program, but may offset by relocating agricultural production on a 1:1 ratio.

If the premises is located on a site under a Land Conservation Act (Williamson Act) contract, the use must comply with the Land Conservation Act contract, any applicable Land Conservation Plan, and the Sonoma County Uniform Rules for Agricultural Preserves and Farmland Security Zones, including provisions governing the type and extent of compatible uses listed therein.

(16) Fire Code Requirements. The applicant shall prepare and implement a Fire Prevention Plan for construction and ongoing operations and obtain any permits required from the Fire and Emergency Services Department. The Fire Prevention Plan shall include, but not be limited to: emergency vehicle access and turn-around at the facility site(s), vegetation management and fire break maintenance around all structures.

(17) Grading and Access. Cultivation sites shall be prohibited on natural slopes steeper than fifteen percent (15%), as defined by Section 11-22-020, unless a use permit is obtained. Grading shall be subject to a grading permit in compliance with Chapter 11 of the county code.

Ordinance No. 6245

(18) Hazardous Materials Sites. No commercial cannabis activity shall be sited on a parcel listed as a hazardous materials site compiled pursuant to Government Code Section 65962.5, unless a use permit is obtained.

(19) Lighting. All lighting shall be fully shielded, downward casting and not spill over onto structures, other properties or the night sky. All indoor and mixed light operations shall be fully contained so that little to no light escapes. Light shall not escape at a level that is visible from neighboring properties between sunset and sunrise.

(20) Runoff and Stormwater Control. Runoff containing sediment or other waste or by-products shall not be allowed to drain to the storm drain system, waterways, or adjacent lands. Prior to beginning grading or construction, the operator shall prepare and implement a storm water management plan and an erosion and sediment control plan, approved by the agency having jurisdiction. The plan must include best management practices for erosion control during and after construction and permanent drainage and erosion control measures pursuant to Chapter 11 of the county code. All cultivation operators shall comply with the best management practices for Cannabis Cultivation issued by the Agricultural Commissioner for management of wastes, water, erosion control and management of fertilizers and pesticides.

(21) Security and Fencing. A Site Security Plan shall be required. All Site Security Plans shall be held in a confidential file, exempt from disclosure as a public record pursuant to Government Code Section 6255(a). Security cameras shall be motion-sensor and be installed with capability to record activity beneath the canopy but shall not be visible from surrounding parcels and shall not be pointed at or recording activity on surrounding parcels. Surveillance video shall be kept for a minimum of thirty (30) days. Video must use standard industry format to support criminal investigations. Lighting and alarms shall be installed to insure the safety of persons and to protect the premises from theft. All outdoor and mixed light cultivation sites shall be screened by non-invasive fire resistant vegetation and fenced with locking gates  with a Knox lock. No outdoor or mixed light cultivation sites located on parcels adjacent to public parks shall be visible from trails or public access points. Razor wire and similar fencing shall not be permitted. Weapons and firearms at the cultivation site are prohibited. Security measures shall be designed to ensure emergency access in compliance with fire safe standards. All structures used for cultivation shall have locking doors to prevent free access.

(g)   Operating Standards.

(1) Compliance Inspections. All cultivation sites shall be subject to on-site compliance inspections by agencies having jurisdiction. The inspection shall be conducted during regular business hours.

(2) Air Quality and Odor. All indoor and mixed light cultivation operations and any drying, aging, trimming and packing facilities shall be equipped with odor control filtration and ventilation system(s) to control odors, humidity, and mold. All cultivation sites shall utilize dust control measures on access roads and all ground disturbing activities.

(3) Energy Use. Electrical power for indoor cultivation, mixed light operations, and processing including but not limited to illumination, heating, cooling, and ventilation, shall be provided by any combination of the following: (i) on-grid power with one hundred percent (100%) renewable source; (ii) on-site zero net energy renewable source; or (iii) purchase of carbon offsets of any portion of power not from renewable

15

Ordinance No. 6245

sources. The use of generators for indoor and mixed light cultivation is prohibited, except for portable temporary use in emergencies only.

(4) Hazardous Materials. All cultivation operations that utilize hazardous materials shall comply with applicable hazardous waste generator, underground storage tank, above ground storage tanks, and AB 185 (hazardous materials handling) requirements and maintain any applicable permits for these programs from the Fire Prevention Division, Certified Unified Program Agency (CUPA) of Sonoma County Fire and Emergency Services Department, or Agricultural Commissioner.

(5) Hours of Operation. Outdoor harvesting activities and indoor or mixed light cultivation and processing activities may be conducted seven (7) days a week, twenty-four (24) hours per day as needed. Deliveries and shipping, and outdoor processing activities, shall be limited to the hours from 8:00 a.m. to 5:00 p.m., unless a use permit is obtained.

(6) Noise Limits. Cultivation activities shall not exceed the General Plan Noise Standards Table NE-2, measured in accordance with the Sonoma County Noise Guidelines.

(7) Occupational Safety. Cultivators shall comply with all applicable federal, state, and local laws and regulations governing California Agricultural Employers, which may include: federal and state wage and hour laws, CAL/OSHA, OSHA, and the California Agricultural Labor Relations Act.

(8) Waste Management. A Waste Management Plan addressing the storing, handling, and disposing of all waste by-products of the cultivation and processing activities in compliance with the Best Management Practices issued by the Agricultural Commissioner shall be submitted for review and approval by the agency having jurisdiction. The plan shall characterize the volumes and types of waste generated, and the operational measures that are proposed to manage and dispose, or reuse the wastes in compliance with best management practices and county standards.

All garbage and refuse on the site shall be accumulated or stored in non-absorbent, water-tight, vector resistant, durable, easily cleanable, galvanized metal or heavy plastic containers with tight fitting lids. No refuse container shall be filled beyond the capacity to completely close the lid. All garbage and refuse on the site shall not be accumulated or stored for more than seven (7) calendar days, and shall be properly disposed of before the end of the seventh day in a manner prescribed by the Solid Waste Local Enforcement Agency. All waste, including but not limited to refuse, garbage, green waste and recyclables, must be disposed of in accordance with local and state codes, laws and regulations. All waste generated from cannabis operations must be properly stored and secured to prevent access from the public.

(9) Waste Water Discharge. A waste water management plan shall be submitted identifying the amount of waste water, excess irrigation and domestic wastewater anticipated, as well as disposal. All cultivation operations shall comply with the Best Management Practices issued by the Agricultural Commissioner and shall submit verification of compliance with the Waste Discharge Requirements of the State Water Resource Control Board, or waiver thereof. Excess irrigation water or effluent from cultivation activities shall be directed to a sanitary sewer, septic, irrigation, graywater or bio-retention treatment systems. If discharging to a septic system, a system capacity evaluation by a qualified sanitary engineer shall be included in the management plan.

Ordinance No. 6245

All domestic waste for employees shall be disposed of in a permanent sanitary sewer or on-site septic system demonstrated to have adequate capacity.

(10) Water Source. An on-site water supply source adequate to meet all on site uses on a sustainable basis shall be provided. Water use includes, but may not be limited to, irrigation water, and a permanent potable water supply for all employees. Trucked water shall not be allowed, except as provided below and for emergencies requiring immediate action as determined by the Director. The onsite water supply shall be considered adequate with documentation of any one (1) of the following sources:

a. Municipal Water: A municipal water supplier as defined in California Water Code Section 13575. The applicant shall provide documentation from the municipal water source that adequate supplies are available to serve the proposed use.

b. Recycled Water: The use of recycled process wastewater or captured rainwater from an onsite use or connection to a municipal recycled water supply for non-potable use, provided that an adequate on-site water supply is available for employees and other uses.

c. Surface Water: An existing legal water right and, if applicable, a Streambed Alteration Agreement issued by the California Department of Fish and Wildlife.

d. Groundwater Well:

1. The site is located in Groundwater Availability Zone 1 or 2, and not within an area for which a Groundwater Management Plan has been adopted or within a high or medium priority basin as defined by the State Department of Water Resources; or

2. Within Groundwater Availability Zone 3 or4, or an area for which a Groundwater Management Plan has been adopted or designated high or medium priority basin, the proposed use would:

a. The proposed use would not result in a net increase in water use on site through implementation of water conservation measures, rainwater catchment or recycled water reuse system, water recharge project, or participation in a local groundwater management project; or

b. Trucked recycled water may be considered for the cultivation area with a use permit, provided that adequate on-site water supplies are available for employees and other uses; or

c. A qualified professional prepares a hydro-geologic report providing supporting data and analysis and certifying that the onsite groundwater supply is adequate to meet the proposed uses and cumulative projected land uses in the area on a sustained basis, and that the operation will not:

i. result in or exacerbate an overdraft condition in basin or aquifer;

ii. result in reduction of critical flow in nearby streams; or

iii. result in well interference at offsite wells.

(11) Groundwater Monitoring: Water wells used for cultivation shall be equipped with a meter and sounding tube or other water level sounding device and marked with a measuring reference point. Water meters shall be maintained in a calibrated state and documentation shall be submitted to the Permit and Resource Management Department at least once every five (5) years. Static water level and total quantity of water pumped shall be recorded quarterly and reported annually. Static water level is the depth from

17

Ordinance No. 6245

ground level to the well water level when the pump is not operating after being turned off. Static water level shall be measured by turning the pump off at the end of the working day and recording the water level at the beginning of the following day before turning the pump back on. Groundwater monitoring reports shall be submitted annually to the Permit and Resource Management Department by January 31 of each year. The annual report shall include water meter readings, the total quarterly quantities of water pumped from well(s) used in processing, and static water levels.

(12) Groundwater Monitoring Easement: Prior to the issuance of any permit for commercial cannabis cultivation pursuant to this chapter, an easement is required to be recorded to provide Sonoma County personnel access to any on-site water well serving the proposed use and any required monitoring well to collect water meter readings and groundwater level measurements. Access shall be granted for this purpose Monday through Friday from 8:00 a.m. to 5:00 p.m. Easements conveyed to the County under this Section shall be signed and accepted by either the Director of Permit and Resource Management or the Agricultural Commissioner. All easement language is subject to review and approval by the agency having jurisdiction and County Counsel prior to recordation.

Ordinance No. 6245

### Sec. 26-88-256. - Cannabis dispensary uses.

(a) Purpose. This section provides the location and operational standards for any cannabis dispensary within the unincorporated county in order to promote the health, safety, and general welfare of its residents and businesses.

(b) Applicability. Cannabis dispensaries shall be permitted only in compliance with the requirements of this section, the requirements of Section 26-88-250, and all other applicable requirements of the underlying zoning district.

(c) Permit Requirements. A use permit issued in compliance with Sections 26-92-070 and 26-92-080 shall be required for any cannabis dispensary. Cannabis dispensaries shall also be subject to permit requirements and regulations established by the Sonoma County Department of Health Services. Cannabis dispensaries must comply with all other applicable building codes and requirements, including accessibility requirements.

(d) Limit on Number of Dispensaries. No more than nine (9) cannabis dispensaries shall be permitted within the unincorporated county at any one (1) time.

(e) Compliance with Operating Plan and Conditions Required. A cannabis dispensary shall submit, as a part of the use permit application, an operating plan that specifies the manner in which operations will be handled and security provided, and which details the number of employees, number of customers, hours and days of operation allowed and approved. The operating plan shall provide that the dispensary shall require, at a minimum, a photo identification for any person entering the site, as well as a doctor's written recommendation in compliance with state law, if applicable. Any cannabis dispensary approved under this section shall be operated in conformance with the approved operating plan and shall meet any specific, additional operating procedures and measures as may be imposed as conditions of approval to ensure that the operation of the dispensary is consistent with protection of the health, safety and welfare of the community, qualified patients, and primary caregivers, and will not adversely affect surrounding uses.

(f) Location Requirements. Property setbacks for cannabis dispensaries shall be measured in a straight line from the property line of the protected site to the closest property line of the parcel with the cannabis dispensary.

(1) A cannabis dispensary shall not be established on any parcel containing a dwelling unit used as a residence, nor within one hundred feet (100') of a residential zoning district.

(2) A cannabis dispensary shall not be established within one thousand feet (1,000') of any other cannabis dispensary or a public park, nor within five hundred feet (500') from a smoke shop or similar facility.

(3) A cannabis dispensary shall not be established within one thousand feet (1,000') from a school providing education to K-12 grades, childcare center, or drug or alcohol treatment facility.

(4) Notwithstanding, the subsections (f)(1) and (2) may be waived by the review authority when the applicant can show that an actual physical separation exists between land uses or parcels such that no off-site impacts could occur.

(5) A cannabis dispensary proposed within the sphere of influence of a city will be referred to the appropriate city for consultation.

(g) Operating Standards. The following are the minimum development criteria and operational standards applicable to any cannabis dispensary use:

19

Ordinance No. 6245

(1) The building in which the dispensary is located shall comply with all applicable local, state and federal rules, regulations, and laws including, but not limited to, building codes and accessibility requirements;

(2) The dispensary shall provide adequate security on the premises, including lighting and alarms, to insure the safety of persons and to protect the premises from theft. The applicant shall submit a security plan. The Security Plan shall remain confidential.

(3) The site plan, circulation, parking, lighting, facility exterior, and any signage shall be subject to design review committee review and approval. The planning director may waive this requirement where the applicant can demonstrate that existing facilities, including parking, lighting and landscaping, already meet the requirements of this section;

(4) No exterior signage or symbols shall be displayed which advertises the availability of cannabis, nor shall any such signage or symbols be displayed on the interior of the facility in such a way as to be visible from the exterior;

(5) If the dispensary denies entry for monitoring and inspection to any employee of an agency having jurisdiction, the dispensary may be closed. Customer access to the premises shall be limited to individuals who are at least twenty one (21) years of age and individuals who are least eighteen (18) years of age with a valid doctor's recommendation. All individuals entering the site shall present a photo identification and shall establish proof of doctor's recommendation, if applicable, except as representing a regulatory agency. The operating plan submitted as a part of the use permit application shall specify how this provision will be complied with and enforced;

(6) No dispensary shall hold or maintain a license from the State Department of Alcoholic Beverage Control to sell alcoholic beverages, or operate a business that sells alcoholic beverages. No alcoholic beverages shall be allowed or consumed on the premises;

(7) An exhaust and ventilation system shall be utilized to prevent off-site odors;

(8) No dispensary shall conduct or engage in the commercial sale of any product, good or service unless otherwise approved by the use permit. A dispensary may sell live starter plants, clones and seeds from qualified nurseries, but shall not cultivate or clone cannabis. A dispensary may sell manufactured cannabis, including edible products, and vaporizing devices if allowed by a permit issued by the Department of Health Services. Not more than ten percent (10%) of the floor area, up to a maximum of fifty (50) square feet may be devoted to the sale of incidental goods for personal cultivation but shall not include clothing, posters,, or other promotional items;

(9) No cannabis shall be consumed on the premises;

(10) No dispensary may increase in size without amending the use permit. The size limitation shall be included in the operational plan required by Section 26-88-256(e), of this section;

(11) Parking must meet the requirements of Section 26-86-010.

(12) Operating days and hours shall be limited to Monday through Saturday from 7:00 a.m. to 7:00 p.m., including deliveries, or as otherwise allowed by the use permit. Operating hours may be further restricted through the use permit process where needed to provide land use compatibility.

(13) Cannabis delivery services may only be allowed with a dispensary use permit.

20

Ordinance No. 6245

**Sec. 26-88-258. - Cannabis cultivation—Personal.**

(a) Purpose. This section establishes development criteria and operating standards for personal cannabis cultivation for medical or adult use.

(b) Cultivation of cannabis for personal use shall be subject to the following standards and limitations as allowed in the base zone. These standards shall apply to all types of cannabis cultivation (indoor, outdoor, and mixed light) unless otherwise specified.

(1) Residency Requirement. Cultivation of cannabis for personal use is limited to parcels with a residence and a full-time resident on the premises where the cultivation is occurring.

(2) Maximum Personal Cultivation. Cultivation of cannabis for personal use is limited to no more than one hundred (100) square feet per residence, of which up to six (6) plants can be cultivated for adult use purposes.

(3) Outdoor Personal Cultivation. Cannabis plants shall not be located in front and side yard setback areas and shall not be visible from a public right of way. Outdoor cannabis cultivation is prohibited on parcels with multi-family units or in the medium and high density residential zones (R2 and R3).

(4) Indoor and Mixed-Light Personal Cultivation.

a. Indoor and mixed light personal cultivation must be contained within an enclosed accessory structure, greenhouse, or garage. Cultivation within a structure approved for residential use as set forth in Chapter 7 of the county code is prohibited, unless there is no other feasible alternative location.

b. Light systems shall be fully shielded, including adequate coverings on windows, so as to confine light and glare to the interior of the structure.

(5) Personal Cultivation Structures. All structures used for cultivation shall comply with the following:

a. All structures (including greenhouses) used for cultivation must be legally constructed with all applicable permits such as grading, building, electrical, mechanical and plumbing.

b. All structures associated with the cultivation shall not be located in the front yard setback area and shall adhere to the setbacks stated within the base zone. There shall be no exterior evidence of cannabis cultivation. Greenhouses shall be screened from the public right of way.

c. All structures used for cultivation shall have locking doors or gates to prevent free access. All cultivation structures shall be equipped with odor control filtration and ventilation systems adequate to prevent odor, humidity, or mold.

d. The use of generators is prohibited, except as emergency back-up systems.

(6) All cultivation shall comply with the Best Management Practices for Cannabis Cultivation issued by the Agricultural Commissioner for management of wastes, water, erosion and sediment control and management of fertilizers and pesticides.

a. Individuals are prohibited from cannabis manufacturing using volatile solvents, including but not limited to Butane, Propane, Xylene, Styrene, Gasoline, Kerosene, 02 or H2, or other dangerous poisons, toxins, or carcinogens, such as Methanol, Methylene Chloride, Acetone, Benzene, Toluene, and Tri-chloro-ethylene, as determined by the Fire Marshall.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25 **EXHIBIT 3**

26

27

28





ROBERT H. PITTMAN #172154
County Counsel
DIANA E. GOMEZ # 127417
Deputy County Counsel
County of Sonoma
575 Administration Drive, Room 105
Santa Rosa, California 95403-2815
Telephone: (707) 565-2421
Fax: (707) 565-2624
Diana.Gomez@sonoma-county.org

Attorneys for Plaintiff,
COUNTY OF SONOMA

ELECTRONICALLY FILED
Superior Court of California
County of Sonoma
9/21/2023 1:10 PM
By: Taylor Curtis, Deputy Clerk

[Exempt from filing fees (CAL. GOV'T. CODE § 6103)]
[Deemed verified (CAL. CIV. PROC. CODE § 446)]

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

COUNTY OF SONOMA,

Plaintiff,

v.

IGNACIO ALVAREZ and IDOLINA
ALAVAREZ TRUSTEES OF THE IGNACIO
AND IDOLINA ALVAREZ REVOCABLE
TRUST, FREDDY ALVAREZ, and DOES 1
through 20, inclusive,

Defendants.

Case No. 23CV00658

COMPLAINT TO ABATE PUBLIC
NUISANCES; TO PERMANENTLY
ENJOIN BUILDING, GRADING AND
ZONING CODE VIOLATIONS; AND FOR
MONEY JUDGMENT FOR COSTS, FEES,
AND CIVIL PENALTIES.

Unlimited Civil Case

## INTRODUCTION

Plaintiff County of Sonoma ("County") brings this action to compel Defendants IGNACIO ALVAREZ and IDOLINA ALVAREZ, TRUSTEES OF THE IGNACIO AND IDOLINA ALVAREZ REVOCABLE TRUST and FREDDY ALVAREZ (hereinafter collectively "Defendants or Property Owners"), to abate violations of the Sonoma County Code ("SCC") Chapters 7 (Building), 11 (Grading), and 26 (Zoning) and pay abatement costs and civil penalties.

This action is brought due to the illegal uses of their real property, which include unpermitted greenhouses, solar arrays and structures, unpermitted grading of roads and cannabis cultivation. Pursuant to the SCC, every violation of the SCC constitutes a public nuisance. The County has been attempting to seek voluntary abatement of the violations on the real property

1

and payment of its costs, fees, and penalties since 2004, but these efforts have failed. Despite Notice and Orders to correct the violations being issued in 2005, 2018 and 2019, the violations were not abated. Further, all opportunities to challenge the decisions of the County were lost by the failure of Defendants to timely appeal or to exhaust their administrative remedies. Thus, the adjudication of the existence of the violations, and the determination of the amount of the daily civil penalties are final.

The County now seeks an Order from this Court compelling Defendants to abate the building, grading, and zoning violations, permanently enjoining said uses, and for payment of costs, fees, and accrued civil penalties.

## PARTIES

1.      At all times herein relevant, County was and is a political subdivision of the State of California duly authorized to bring this action.

2.      Defendants Ignacio Alvarez and Idolina Alvarez are the persons who are the Responsible Parties code violations on the Property, as they are the persons and/or entities that own, operate, possess, and/or control the real property known as 3250 Calistoga Road, Santa Rosa, California in the unincorporated area of Sonoma County, California, Assessor Parcel Number 028-330-005, ("the Property") and who caused, allowed, or maintained the violations of the Sonoma County Code ("SCC") thereon.

3.      On April 21, 2015, the Property was granted to Defendants Ignacio Alvarez and Idolina Alvarez as Trustees, of the IGNACIO AND IDOLINA ALVAREZ REVOCABLE TRUST, DATED APRIL 5, 2007, via a Grant Deed, Recorded Document No. 2015033698 attached herein as **Exhibit A**.

4.      County is informed and believes and thereon alleges that, Defendant Freddy Alvarez (hereinafter "Defendant Freddy Alvarez") is the son of Defendants Ignacio and Idolina Alvarez, and is the Responsible Party for the code violations on the Property, as he exercised possession or control of the Property, and caused, maintained, allowed, or is otherwise responsible for the violations and who exercised possession or control of the SCC on the Property

5.      The true names and capacities, whether corporate, individual, or associate, of

2

1  those Defendants sued herein as Does 1 through 20, inclusive, are unknown to the County who

2  therefore sues said Defendants by such fictitious names.  The County is informed and believes,

3  and upon such information and belief, alleges, that at all times herein relevant, Defendants,

4  Does 1 through 30, inclusive, were or are owners, co-owners, agents of owners, lessees,

5  sublessees, occupants, users, hirers, operators, managers, or maintainers of the Property, holders

6  of liens on the Property, or successors in interest in the Property, or a combination of the

7  foregoing who, individually or collectively, caused or authorized the public nuisances on the

8  Property.  The County will request leave of this court to amend this complaint to insert the true

9  names and capacities of said Defendants when the same have been ascertained.

## JURISDICTION AND VENUE

11      6.    Venue is proper in this judicial district as the Property is real property located in

12  the unincorporated area of Sonoma County, California.

13      7.    The omission or commission of acts and violations of law by Defendants as

14  alleged in this Complaint occurred within the unincorporated area of the County of Sonoma, and

15  State of California.

16      8.    Sonoma County Code Sections 1-7.1(f)(1) and 1-7.3(m) authorize the County to

17  bring this action to abate a public nuisance and provides the County with the authority to

18  commence a judicial action and to seek any remedies available to it, including abatement and

19  injunctive relief to enjoin violations of the SCC.

20      9.    Sonoma County Code Section 1-7(e) provides that every violation of any

21  provision of the SCC or regulation of the County is a public nuisance, SCC Section 1-7 (f)(2)

22  and (f)(3) provides for the recovery of  "costs" incurred by the county in pursuing abatement,

23  associated remedies, and civil penalties, including administrative overhead, salaries, attorneys'

24  fees, and expenses incurred by any county department or agency, and attorney fees; and SCC

25  Section 1-7.1 provides for the recovery of daily civil penalties for each violation.

## REGULATORY BACKGROUND

27      10.    The ordinances of the County of Sonoma are codified in the Sonoma County

28  Code ("SCC").

3

11.     County requests, pursuant to Evidence Code Sections 453 and 452(b), that this Court take judicial notice of the following:

    a.     California Civil Code section 731 which provides county counsel the right to bring a civil action to abate a nuisance;

    b.     California Civil Code sections 3491 and 3494 which allows abatement of public nuisances by any public body or officer;

    c.     SCC Section 1-7, "General enforcement provisions", including subsections (b) "Definitions," (d) "Continuing Violation," (e) "Violation as a Public Nuisance," and subsection (f) "Public Nuisance Abatement;"

    d.     SCC Section 1-7.1, "Civil Penalties" for violations of the SCC;

    e.     SCC Section 1-7.3, "Administrative Procedure for Abatement";

    f.     SCC Section 1-7.3(e) -- Failure to appeal a notice and order shall constitute a waiver of the right to an appeal hearing and adjudication of violations raised in the notice;

    g.     SCC Section 1-7.3(f) -- Failure to appeal a determination of abatement costs and civil penalties shall be a final determination and conclusive evidence of the named person's liability for the abatement costs and civil penalties set forth therein;

    h.     SCC Chapter 7, Building Code, including Sections 7-5 and 7-13 and 7-19;

    i.     h.     SCC Chapter 11, Grading Code, including section 11-04-010 and 11-06-010.

    j.     i.     SCC Chapter 26, Zoning Code, including Article 8, sections 26-08-010 thru 26-08-030; and sections 26-92-010 and 26-92-200.

    k.     SCC Chapter 26, including sections 26-88-250 through 28-88-258, Cannabis Ordinance.

12.     The Property is a 15.53-acre "vacant" parcel zoned Rural Residential District ("RRD") and is governed by the uses set forth in SCC Chapter 26, Article 8.

13.     The Assessor's Office shows the parcel as "vacant" land and does not show any structures on the Property and the Property is not assessed for any structures.

14.     SCC Chapter 7 (Building) requires a permit before the construction and/or

4

modification of any structure on any Property within the County.

15. Unpermitted construction of structures, including greenhouses, solar array for well, and sheds, are a violation of SCC Chapter 7 and the Building Codes adopted therein.

16. SCC Chapter 26, section 26-92-010 provides that zoning permits shall be required for all buildings and structures erected, constructed, altered, repaired, or moved in or into any district established by this chapter, and for the use of vacant land or for a change in the character of the use of land within any district established by this chapter.

17. SCC Chapter 11 (Grading) requires a permit before the commencement of any construction grading or related work, including preparatory land clearing, vegetation removal, or other ground disturbance.

18. Unpermitted grading of a road and cut to slope is a violation of SCC Chapter 11.

19. SCC Chapter 26 (Zoning) establish zoning districts for the unincorporated area of Sonoma County and set forth standards for the use and occupancy of real property in each district to protect the public health, safety, general welfare, and the physical environment.

20. SCC Chapter 26, Sec. 26-92-200 prohibits using land in any manner not permitted in the district.

21. Commercial cannabis uses that are not in compliance with SCC Chapter 26, Article 88, sections 26-88-250 through 26-88-258, are a violation of the SCC.

22. Unpermitted commercial cannabis cultivations are not allowed in the RRD zoning District and are a violation of SCC Chapter 26.

23. Any violation of the SCC is a public nuisance (SCC section 1-7(e).)

24. SCC Section 1-7(b) states that "Costs" means all costs incurred by the County in pursuing abatement, associated remedies, and civil penalties, including administrative overhead, salaries, attorneys' fees, and expenses incurred by any county department or agency.

25. SCC Section 1-7(b) states that "Responsible Party", means:

    a. A person that causes, maintains, allows, or is otherwise responsible for a violation;

    b. A person with an ownership interest in real property upon which a violation

5

is found; or

    c.   A person who exercises possession or control of real property upon which a violation is found, including a tenant, agent, employee, contractor, subcontractor, or other occupant.

26.    SCC Section 1-7(f)(2) states that a responsible party is liable for all costs associated with the abatement of a violation.

27.    SCC Section 1-7(f)(3) states that the County may elect to seek recovery of its own attorneys' fees.

28.    SCC Section 1-7.1(b) states that civil penalties may be imposed by the enforcing officer, the hearing officer, or the court.

29.    SCC Section 1-7.3(e) states that the failure to timely appeal a notice order or determination constitutes a waiver of the right to an appeal hearing and adjudication of any administrative action.

30.    SCC Section 1-7.3(f)(4)(iii) states that a determination of abatement costs and civil penalties which is not timely appealed is a final determination and conclusive evidence of the responsible party's liability for costs and penalties.

31.    The County brings this action pursuant to SCC Section 1-7(f), 1-7.3(l), and 1-7.3(m), which provide the County with the authority to commence a judicial action to enjoin violations of SCC Chapter 7.

32.    The County also brings this action pursuant to SCC Sections 1-7 (b), (e), and (f) which provide that every violation of any regulatory provision of the SCC is declared to be a public nuisance and that the County Counsel of Sonoma County shall take such action as it may deem necessary to abate the same.

## FACTS COMMON TO ALL CAUSES OF ACTION

### 2004 Violations

33.    In November 2004, the County's Permit and Resources Management Department ("Permit Sonoma") received a complaint that unpermitted grading was being conducted on the

6

Property, including compacted soil, cutting of hill sides and the failure to place hay bales to control the erosion.

34.     Permit Sonoma staff had conversations with Defendants' representative in 2004 to explain that grading permits were required for the grading they observed on the Property.

35.     When no grading permit was applied for, on March 4, 2005, Permit Sonoma issued a Notice and Order for unpermitted grading of "approximately 800 lineal feet of new road, incomplete straw on approximately 200 square feet" violation VGR04-0167.

36.     The Notice explained that the Property was in violations of SCC Chapter 24 and Defendants were required to obtain a grading permit to either restore the property to its preexisting condition by removing the fill, or to legalize the unlawful grading within 60 days, the violation was subject to mandatory abatement costs, investigation fees, and a failure to abate the violation as stated in the Notice would result in daily civil penalties being assessed.

37.     The Notice and Order also explained it was final notice unless an appeal was made in writing within thirty (30) days pursuant to SCC Section 1-7.3, and that a failure to timely appeal the Notice would result in the loss of the right to an administrative hearing and adjudication of the matter; and abatement costs and civil penalties would become due and payable.

38.     The Notice and Order was posted on the Property and sent via certified mail to Defendants at the latest address as listed on the Tax Roll.

39.     No appeal to the Notice and Order was received and it became a final determination and conclusive evidence of the Defendants' liability for abating the violation. (SCC Section 1-7.3(f)(1)).

40.     Over the next decade, no further action was taken by defendant to legalize the grading.

41.     On December 30, 2019, the Department sent Defendants letter stating that the code violation continues to exist on the Property and a "Notice of Abatement Proceeding" had been recorded against the title of the Property.

42.     The Defendants were also noticed that abatement costs continued to be expended

7

for the violation and that a daily civil penalty of $13 per day was continuing to accrue each day that the grading violation continued to exist.

43.     The grading violation has still not been corrected and costs, fees and civil penalties are owed and continue to accrue.

**2018 Violations**

44.     In October 2018, Permit Sonoma received a complaint that unpermitted cannabis was being grown on the Property.

45.     On October 15, 2018, Permit Sonoma issued a Notice and Order for unpermitted cannabis cultivation (VPL18-0341).  The Notice explained that Defendants were required to remove the cannabis and were subject to a civil penalty of up to $10,000.00 per day until a final inspection by Permit Sonoma was conducted which verified the removal of the cannabis.

46.     The Notice and Order also explained it was final notice unless an appeal was made in writing within thirty (30) days pursuant to SCC Section 1-7.3, and that a failure to timely appeal the Notice would result in the loss of the right to an administrative hearing and adjudication of the matter; and abatement costs and civil penalties would become due and payable.

47.     The Notice and Order was posted on the Property and sent via certified mail to Defendants at the latest address as listed on the Tax Roll.

48.     No appeal to the Notice and Order was received.

49.     On October 20, 2018, Permit Sonoma received a call from a caller who stated that there was 4,600 square feet of cannabis in cultivation on the Property.  Staff confirmed that no permits were issued to allow the cultivation.

50.     On December 4, 2018, Permit Sonoma conducted a site inspection on the Property with Defendant Freddy Alvarez.  The inspection revealed that there was no cannabis on the lower portion of the Property, but there was an unpermitted 20' x 30' greenhouse.

51.     They also observed a cannabis grow with approximately 30 plants on the upper portion of the Property which Freddy stated was his.  He told inspectors he did not have time for them to visit it and a re-inspection was scheduled for December 11, 2018.

8

52.     On December 10, 2018, Freddy cancelled the December 11, 2018, site inspection and stated that he had built a 15' x 20' shed without permits to dry cannabis in and wanted to remove it before being written up for it.

53.     On December 10, 2018, Permit Sonoma issued Notice and Orders for Construction Without a Permit for:

a)     20' x 30' greenhouse – (VBU18-0983);

b)     solar array for the well -- (VBU18-0984); and

c)     15' x 20' shed - (VBU18-0985).

54.     The Notices explained that Defendants were in violation of the Building Code and that they were required to correct the conditions within thirty (30) days, or they would be subject to civil penalties and the assessment of abatement costs pursuant to the Sonoma County Code. The Property was declared a public nuisance.

55.     Each Notice and Order also explained it was final notice unless an appeal was made in writing within ten (10) days pursuant to SCC Section 1-7.3, and that a failure to timely appeal the Notices would result in the loss of the right to an administrative hearing and adjudication of the matter; and abatement costs and civil penalties would become due and payable.

56.     The Notices were posted on the Property and sent via certified mail to Defendants at the latest address as listed on the Tax Roll.

57.     No appeal to any of the Notices was received and they became final determinations and conclusive evidence of the Defendants' liability for abating the violation. (SCC Section 1-7.3(f)(1)).

58.     On December 13, 2018, Permit Sonoma issued Defendants a Determination of Abatement Costs and Civil Penalties letter which stated that civil penalties in the amount of $10,000.00 per day had been assessed against the Property for the cannabis violation (VPL18-0341) which would continue to accrue until the violation is abated and verified by Permit Sonoma staff.

59.     The letter informed Defendants of their right to appeal the amount of the daily civil penalty and that if no appeal was made in writing within ten (10) days, they would lose their right to an administrative hearing of the matter.

60.     The letter was mailed to the Defendants at the latest address as listed on the Tax Roll.

61.     Defendants did not appeal the Civil Penalty Determination and the amount of the daily civil penalty for the cannabis violation (VPL18-0341) became a final determination and conclusive evidence of the Defendants' liability for the abatement costs and civil penalties contained therein. (SCC Section 1-7.3(f)(iii).)

62.     The daily civil penalties on the Building Code violations (VBU18-0983, VBU18-0984, and VBU18-0985) were assessed at a rate of $40 per day, per violation.

63.     On January 31, 2019, Permit Sonoma notified Defendants that a result of their failure to abate the violations, a "Notice of Abatement Proceedings" had been recorded against title to the Property, Recorded Document No. 2019010328 and 2019010323.

64.     On May 16, 2022, Permit Sonoma sent another letter stating that since the Building Code violations still existed on the Property, if Defendants did not contact Permit Sonoma to discuss abatement of the violations, the next step would be a referral to County Counsel for litigation.  No contact was made and no permits to legalize the construction were obtained.

**2019 Violations**

65.     On October 1, 2019, Permit Sonoma and the California Department of Fish and Wildlife (CDFW) were able to determine that a seasonal outdoor cannabis grow had been conducted on the Property since approximately 2013 and was currently occurring.

66.     On October 3, 2019, Permit Sonoma inspectors drove to the Property and smelled a strong odor of cannabis. They spoke to Defendant Freddy Alvarez and requested to inspect the site.  Freddy declined and requested an inspection at a later date. Inspectors explained that they were posting the Property for unpermitted cannabis cultivation and explained the civil penalties to him.  He stated that understood the explanation.

10

67.     On October 3, 2019, Permit Sonoma issued a Notice and Order for unpermitted cannabis cultivation, (VPL19-1079.)  The Notice explained that the Property was in violation of the SCC and Defendants were required to remove the unpermitted cannabis and a civil penalty of up to $10,000.00 per day would be imposed until a final inspection by Permit Sonoma was conducted, which verified the removal of the cannabis.

68.     The Notice and Order also explained it was final notice unless an appeal was made in writing within ten (10) days pursuant to SCC Section 1-7.3, and that a failure to timely appeal the Notice would result in the loss of the right to an administrative hearing and adjudication of the matter; and abatement costs and civil penalties would become due and payable.

69.     The Notice and Order was mailed to the Defendants at the latest address as listed on the Tax Roll and posted on the Property.  The Property was declared a public nuisance.

70.     No appeal to the Notice and Order was received and cannabis violation VPL19-1079 became a final determination and conclusive evidence of the Defendants' liability for abating the violation. (SCC Section 1-7.3(f)(1)).

71.     Although no request to inspect the Property for removal of the violation was made by any of the Defendants, on October 29, 2019, inspectors were at an adjacent property and were able to determine that the cannabis had been removed and the daily civil penalty accrual was stopped as of October 29, 2019.  It was later determined a call was received on October 25, 2019, so penalties stopped as of that date.

72.     On December 3, 2019, the Department sent Defendants a letter stating that a result of their failure to abate violations of Sonoma County Code, that exist on the property, a "Notice of Abatement Proceedings" had been recorded against the title of the Property, Recorded Document No. 2019092331.

73.     On December 4, 2019, Permit Sonoma sent Defendants a Determination of Abatement Costs and Civil Penalties letter which stated that civil penalties in the amount of $8,000.00 per day had been assessed against the Property for cannabis violation VPL19-1079. The civil penalties owed totaled $184,000.00 (23 days at $8,000.00 per day).

11

74.    The letter informed Defendants of their right to appeal the amount of the daily civil penalty and that if no appeal was made in writing within ten (10) days, they would lose their right to an administrative hearing of the matter.

75.    The letter was mailed to the Defendants at the latest address as listed on the Tax Roll.

76.    Defendants did not appeal the Civil Penalty Determination and the amount of the daily civil penalty for the cannabis violation (VPL19-1079) became a final determination and conclusive evidence of the Defendants' liability for the abatement costs and civil penalties contained therein. (SCC Section 1-7.3(f)(iii).)

77.    On July 31, 2023, County Counsel sent Defendants a Notice of Referral for Enforcement letter, which informed Defendants of all previous attempts by Permit Sonoma to have the violations abated.  The letter also informed them of the current status of the violation, their lack of action, made a demand for the total costs and civil penalties owed to date, and asked them to contact County Counsel to discuss the matter to attempt to settle the issues and avoid litigation being filed.  No response to the letter was received.

78.    As of the date of the filing of this Complaint on September 21, 2023, Permit Sonoma Costs are owed in the amount of $3,155.50 and County Counsel costs are owed in the amount of $2,627.00.

79.    As of the date of the filing of this Complaint on September 20, 2023, Civil Penalties are owed in the amount of **$842,088.00** as follows:

     a) Building Code Violation –Unpermitted Greenhouse (VBU18-0983), Civil Penalties totaling $69,880.00 (beginning December 10, 2010, through September 21, 2023, ($40.00 per day x 1746 days);

     b) Building Code Violation –Unpermitted Solar Array (VBU18-0984), Civil Penalties totaling $69,880.00 (beginning December 10, 2010, through September 21, 2023, ($40.00 per day x 1746 days);

     c) Building Code Violation –Unpermitted Structure (Shed) (VBU18-0985), Civil Penalties totaling $69,880.00 (beginning December 10, 2010,

12

through September 21, 2023, ($40.00 per day x 1746 days);

d) Zoning Code Violation – Unpermitted Cannabis (2018) (VPL18-0341), Civil Penalties totaling $570,000.00 (beginning October 15, 2018, through December 10, 2018, ($10,000.00 per day x 57 days);

e) Zoning Code Violation Unpermitted Cannabis (2019) (VPL19-1079), Civil Penalties totaling $184,000.00 (beginning October 3, 2019, through October 25, 2019, ($8,000.00 per day x 23 days); and

f) Grading Code Violation –Unpermitted Road and Cuts to Slope (VGR04-0167), Civil Penalties totaling $88,088.00 (beginning March 4, 2005, through September 21, 2023, ($13.00 per day x 6775 days).

80.    As of the date of the filing of this Complaint on September 20, 2023, no costs, fees, or penalties have been paid to the County in this abatement action despite notices and demand.  Costs, fees and penalties will continue to accrue until abatement of all violations of the SCC is completed and verified by Permit Sonoma.

81.    As of the date of the filing of this Complaint on September 20, 2023, all violations remain on the Property and the Property continues to be a public nuisance.

82.    It is anticipated that if a default judgment is necessary, County will have to expend up to an additional 5 hours of attorney time in litigating the default, at a rate of $284.00 dollars per hour, for a total of $1,420.00 in additional attorney's fees.

## FIRST CAUSE OF ACTION

### (Building Code Violations – Chapter 7)

83.    COUNTY incorporates Paragraphs 1 through 82 above herein, as though set forth in full.

84.    At all relevant times herein, the Property was, and is, in violation of the Building Code of the County of Sonoma, due to the unpermitted structures and dwellings and the substandard and dangerous buildings that remain on the Property.

85.    Defendants failed to appeal any of the Notice and Orders issued for the Building Violation on the Property and failed to exhaust their administrative remedies, and thus, cannot

13

contest the existence of these violations.

86.     Pursuant to SCC 1-7.3(f)(1), "A Notice(s) and Order(s) for which no timely appeal is filed is a final determination and conclusive evidence of the responsible party's liability for abating the violation."

87.     Defendants failed to abate the building code violations on the Property, despite a reasonable opportunity to do so, and failed to apply for and obtain the necessary permits to abate the violations.

88.     Defendants failed to appeal the Civil Penalty Determination and failed to exhaust their administrative remedies. Thus, they cannot contest the amount of the daily civil penalty imposed. (SCC §1-7.3(f)(4)(iii).)

89.     As a direct and proximate result of the alleged conduct of Defendants, the County has incurred and is continuing to incur costs, including, but not limited to, costs and attorney's fees as defined in SCC Section 1-7. The County cannot presently ascertain the final amount of those costs because those costs will continue accruing until all violations have been verified abated by final inspection. However, costs to date are set forth in Paragraph 78.

90.     By virtue of the unlawful acts alleged above, the County is entitled to the assessment of civil penalties against Defendants, pursuant to SCC Sections 1-7.1 and 1-7.3. The County cannot presently ascertain the final amount of the civil penalties because penalties are continuing to accrue. However, civil penalties to date are set forth in Paragraph 79, which will continue to accrue until all violations have been abated by final inspection.

## SECOND CAUSE OF ACTION

### (Grading Code Violations – Chapter 11)

91.     COUNTY incorporates Paragraphs 1 through 90 above herein, as though set forth in full.

92.     At all relevant times herein, the Property was and is in violation of the Grading Code of the County of Sonoma, as set forth in Chapter 11 of the SCC, due to the unpermitted grading of an unpermitted road and cuts to a.

93.     Defendants failed to appeal the Notice and Order issued for the Grading Code

14

Violation on the Property and failed to exhaust their administrative remedies, and thus, cannot contest the existence of these violations.

94.    Pursuant to SCC 1-7.3(f)(1), "A Notice(s) and Order(s) for which no timely appeal is filed is a final determination and conclusive evidence of the responsible party's liability for abating the violation."

95.    Defendants failed to abate the grading code violation on the Property, despite a reasonable opportunity to do so, and failed to apply for and obtain the necessary permits to abate the violation.

96.    Defendants failed to appeal the Civil Penalty Determination and failed to exhaust their administrative remedies. Thus, they cannot contest the amount of the daily civil penalty imposed. (SCC §1-7.3(f)(4)(iii).)

97.    As a direct and proximate result of the alleged conduct of Defendants, the County has incurred and is continuing to incur costs, including, but not limited to, costs and attorney's fees as defined in SCC Section 1-7. The County cannot presently ascertain the final amount of those costs because those costs will continue accruing until all violations have been verified abated by final inspection. However, costs to date are set forth in Paragraph 78.

98.    By virtue of the unlawful acts alleged above, the County is entitled to the assessment of civil penalties against Defendants, pursuant to SCC Sections 1-7.1 and 1-7.3. The County cannot presently ascertain the final amount of the civil penalties because penalties are continuing to accrue. However, civil penalties to date are set forth in Paragraph 79, which will continue to accrue until all violations have been abated by final inspection.

### THIRD CAUSE OF ACTION

### (Zoning Code Violations – Chapter 26)

99.    COUNTY incorporates Paragraphs 1 through 98 above herein, as though set forth in full.

100.    At all relevant times herein, the Property was in violation of the Zoning Code of the County of Sonoma, as set forth in Chapter 26 of the SCC, due to the unpermitted cultivation of cannabis on the Property.

15

101.   Defendants failed to appeal any of the Notice and Orders issued for the Cannabis Violations on the Property and failed to exhaust their administrative remedies, and thus, cannot contest the existence of these violations.

102.   Pursuant to SCC 1-7.3(f)(1), "A Notice(s) and Order(s) for which no timely appeal is filed is a final determination and conclusive evidence of the responsible party's liability for abating the violation."

103.   Defendants failed to appeal the Civil Penalty Determination and failed to exhaust his administrative remedies. Thus, they cannot contest the amount of the daily civil penalty imposed. (SCC §1-7.3(f)(4)(iii).)

104.   Defendants abated the cannabis violations on the Property, but failed to pay costs, fees and civil penalties owed, despite demand. owed.

105.   As a direct and proximate result of the alleged conduct of Defendants, the County has incurred and is continuing to incur costs, including, but not limited to, costs and attorney's fees as defined in SCC Section 1-7. The County cannot presently ascertain the final amount of those costs because those costs will continue accruing until all violations have been verified abated by final inspection. However, costs to date are set forth in Paragraph 78.

106.   By virtue of the unlawful acts alleged above, the County is entitled to the assessment of civil penalties against Defendants', pursuant to SCC Sections 1-7.1 and 1-7.3. The civil penalties owed are set forth in Paragraph 79.

## FOURTH CAUSE OF ACTION

### (Public Nuisance)

107.   The County incorporates paragraphs 1 through 106, above herein, as though set forth in full.

108.   Defendants, as the owners of the Property and Responsible Parties for the Violations, have created, caused, or maintained violations of SCC Chapters 7, 11, and 26, as set forth in the herein Complaint.  Every violation of the SCC constitutes a public nuisance pursuant to Section 1-7 of the SCC.

109.   Defendants failed to timely appeal any of the Notices and Orders and cannot

16

contest the existence of the Building, Grading, and Zoning code violations.

110.    As a direct and proximate result of the alleged conduct of Defendants, the County has incurred and is continuing to incur costs, including, but not limited to, costs and attorney's fees as defined in SCC Section 1-7. The County cannot presently ascertain the final amount of those costs because those costs will continue accruing until all violations have been verified abated by final inspection. However, costs to date are set forth in Paragraph 59.

111.    By virtue of the unlawful acts alleged above, the County is entitled to the assessment of civil penalties against Defendants', pursuant to SCC Sections 1-7.1 and 1-7.3. The County cannot presently ascertain the final amount of the civil penalties because penalties are continuing to accrue. However, civil penalties to date are set forth in Paragraph 59, which will continue to accrue until all violations have been abated by final inspection.

## FIFTH CAUSE OF ACTION

### (Injunctive Relief)

112.    The County incorporates Paragraphs 1 through 111, above herein, as though set forth in full.

113.    By virtue of their ownership, authority and control of the Property, and their creation, maintenance, or allowance of conditions on the Property in violation of the provisions of the SCC Building, Grading and Zoning Codes, Defendants are subject to injunctive relief.

114.    As a result of Defendants' actions in violation of the Building, Grading and Zoning Codes of the County of Sonoma, Defendants have also created public nuisances subject to injunction and abatement.

115.    Defendants failed to timely appeal any of the Notices and Orders and cannot contest the existence of the Building, Grading, and Zoning Code violations.

116.    The County is informed and believes, and upon such information and belief alleges, that Defendants will continue to violate the building, grading, and zoning regulations of the County as alleged above, unless restrained and enjoined from doing so by this Court.

117.    The County has no plain, speedy or adequate remedy at law as shown by the facts alleged above.

17

118.   Unless Defendants are enjoined from continuing their course of conduct, the County will be irreparably injured in an amount that is not susceptible to calculation in terms of damages, in that Defendants have willfully and deliberately flouted the Building, Grading, and Zoning Codes of the County, despite the County's attempts to secure code compliance. Damages alone are not sufficient compensation as demonstrated by the facts alleged above.

119.   An injunction is furthermore necessary to prevent a multiplicity of actions.

120.   An injunction is authorized by SCC section 1-7(f).

## SIXTH CAUSE OF ACTION

### (Money Judgment for Failure to Pay Costs, Fees, and Civil Penalties)

121.   The County incorporates Paragraphs 1 through 120 above herein, as though set forth in full.

122.   Section 1-7 of the SCC provides that in an abatement action, costs incurred by the County in abating a public nuisance shall include, but are not limited to any administrative overhead, salaries and expenses incurred by County departments, including Permit Sonoma and County Counsel, and the County may seek recovery of its own attorney's fees.

123.   Section 1-7.3 of the SCC authorizes the County to impose civil penalties for the existence of violations of the SCC.   Penalties have been assessed at the rates set forth in Paragraph 79 above.

124.   Defendants failed to appeal any of the Notice and Orders issued for the Cannabis Violations on the Property and failed to exhaust their administrative remedies, and thus, cannot contest the existence of these violations.

125.   Pursuant to SCC 1-7.3(f)(1), "A Notice(s) and Order(s) for which no timely appeal is filed is a final determination and conclusive evidence of the responsible party's liability for abating the violation."

126.   Defendants failed to appeal the Civil Penalty Determination and failed to exhaust his administrative remedies. Thus, they cannot contest the amount of the daily civil penalty imposed. (SCC §1-7.3(f)(4)(iii).)

127.   To date, Defendants have failed to pay any costs, fees, or penalties, despite the

18

1  County's demands.

2  128.   As a direct and proximate result of Defendants' continued failure and refusal to

3  comply with the County's notices to pay costs and civil penalties, the County has been forced to

4  file this Complaint, seeking a judgment in favor of the County against Defendants for costs and

5  civil penalties.

6  129.   As a result, the County has incurred and is continuing to incur costs, including,

7  but not limited to, costs and attorney's fees as defined in SCC Section 1-7.

8  130.   Due to Defendants' failure to abate the violations, civil penalties have been

9  assessed for each violation and will continue accruing until a final inspection verifies abatement,

10  pursuant to SCC Sections 1-7.1 and 1-7.3.  The County cannot presently ascertain the final

11  amount of costs or penalties because they are continuing to accrue.  However, costs to date are

12  set forth herein in Paragraph 78, and penalties to date are set forth herein, in Paragraph 79. Costs

13  and penalties will continue to accrue at the rates set forth therein, until all violations have been

14  abated by final inspection.

15  **PRAYER**

16  WHEREFORE, the County prays judgment as follows:

17  1.   For an order from this Court ordering Defendants, and their successors, assigns,

18  and agents, and each of them, and any person acting in concert with them:

19  A.   To immediately cease the unlawful uses of the Property as alleged herein;

20  B.   To abate within thirty (30) days, the Building Code violations on the

21  Property by submitting permits to either legalize or remove the unpermitted Buildings and the

22  dangerous and substandard building conditions from the Property.

23  i.   For all permits described above, Defendants shall diligently pursue

24  the permit review process by responding within fifteen (15) days to any requests by Permit

25  Sonoma for corrections, modifications, or additional information.  Within fifteen (15) days of

26  permit application approval, Defendants shall pay all associated fees.  All work described in

27  these permits shall be completed and an inspection scheduled with Permit Sonoma to verify

28  completion of the work, within the timelines set forth in each permit;

19

C.      To abate within thirty (30) days, the Grading Code violations on the property by removing the unpermitted grading and restoring the Property to its preexisting condition.

D.      That Defendants, and their successors, assigns, and agents, and each of them, are responsible for scheduling a compliance inspection with the County to verify the abatement of any and all of the Building, Grading and Zoning Code violations.

2.      For an Order from this Court permanently enjoining Defendants, and their successors, assigns, and agents, and each of them, from maintaining any condition or use upon the Property contrary to the ordinances of the County, including but not limited to:

A.      Building Code Violation –Unpermitted Greenhouse (VBU18-0983);

B.      Building Code Violation –Unpermitted Solar Array (VBU18-0984);

C.      Building Code Violation –Unpermitted Structure (Shed) (VBU18-0985);

D.      Zoning Code Violation – Unpermitted Cannabis (2018) (VPL18-0341);

E.      Zoning Code Violation – Unpermitted Cannabis (2019) (VPL19-1079); and

F.      Grading Code Violation –Unpermitted Road and Cuts to Slope (VGR04-0167).

3.      For an Order from this Court that the County of Sonoma and its officers, agents or employees, or persons duly authorized to act on its behalf, may enter the Property during normal business hours with 48 hours written notice to Defendants by posting such notice on the Property, and without Defendants' consent, for the purpose of inspecting the Property for compliance with the SCC.  That Defendants and their successors, assigns, agents and each of them, shall hold Sonoma County and its officers, agents, employees, and persons duly authorized to act on its behalf harmless from and against any and all claims, demands, liabilities, costs, expenses, actions, and causes of action that may be asserted by any person or entity, including Defendants, arising out of or in connection with the performance of these inspection actions.

4.      For an Order from this Court that in the event Defendants, and their successors,

20

assigns, and agents, and each of them, and any person acting in concert with them, fail to bring the Property into compliance with all codes and ordinances of the SCC within the time limits set forth in this Order, the Director of Permit Sonoma ("Director") or a private contractor employed by the Director and/or by the Board of Supervisors, be authorized to enter the Property upon 48 hours' notice, which only need be posted on the Property, and be authorized to abate the unlawful conditions/public nuisances on the Property, and that:

A. The Sonoma County Sheriff may send such deputies as the Director deems appropriate to protect and supervise the aforementioned County officers, agents, employees, and persons duly authorized to act on its behalf; and

B. The costs for the abatement shall be paid by Defendants within 30 days from the date the invoice is mailed and if the County does not receive payment of these abatement costs, the amount may be assessed against the Property and may be collected in the same manner as taxes, as provided by Government Code section 25845 and SCC section 1-7(b), and/or may be recorded against the subject property by way of an Abatement Lien; and

C. Defendants and their successors, assigns, agents and each of them, shall hold Sonoma County and its officers, agents, employees, and persons duly authorized to act on its behalf harmless from and against any and all claims, demands, liabilities, costs, expenses, actions, and causes of action that may be asserted by any person or entity, including Defendants, arising out of or in connection with the performance of these enforcement action.

5. For an Order from this Court awarding the County judgment for costs and attorney's fees, as defined by SCC section 1-7(b) and further authorize the County to assess all costs and attorney's fees against the Property and to collect the same in the same manner as taxes as provided by Government Code section 25845 and by SCC section 1-7.3(j). As of the date of the filing of the herein Complaint, costs are as follows: **$3,155.50** in Permit Sonoma Costs and **$2,627.00** in County Counsel attorney's fees. These costs will continue to accrue.

6. For an Order from this Court awarding County additional costs incurred in this matter, including but not limited to staff costs, attorney's fees and costs for service of process.

7. For an Order from this Court assessing against Defendants, and each of them,

civil penalties which have accrued in this matter, as provided in SCC sections 1-7, 1-7.1 and 1-7.3, and as set forth in Paragraph 40 of this Complaint.  As of the date of the filing of the herein Complaint, penalties amount to **$842,088.00.**

8.      For an Order from this Court that civil penalties will continue accruing at the rates set forth in Paragraph 79 of this herein Complaint, until each violation is verified abated by Permit Sonoma.

9.      For an Order from this Court that if Defendants' failure to abate the violations and comply with the Court's Order results in the County filing a civil contempt action, a motion to enforce the judgment, a petition to appoint a receiver, or any other remedies to compel compliance with the herein Order, the prevailing party's fees shall be recovered and if the County is successful, Defendants shall pay all the County's fees and costs associated with bringing such action(s), including attorney's fees.

10.      For any such other and further relief as the Court shall deem just and proper.


Dated: September 21, 2023,                    ROBERT PITTMAN, Sonoma County Counsel


                                    By: *Diana E. Gomez*
                                        DIANA E. GOMEZ
                                        Deputy County Counsel
                                        Attorney for Plaintiff

22