ROBERT H. PITTMAN #172154
County Counsel
MICHAEL A. KING #77014
Deputy County Counsel
County of Sonoma
575 Administration Drive, Room 105A
Santa Rosa, California 95403
Telephone: (707) 565-2421
Facsimile: (707) 565-2624
E-mail: michael.king@sonoma-county.org

Attorneys for Defendants
COUNTY OF SONOMA, TENNIS WICK,
TYRA HARRINGTON, MARK FRANCESCHI,
TODD HOFFMAN, JESSE CABLK

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| RONALD CUPP<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF SONOMA, et al,<br><br>Defendants. | CASE NO.: 4:23-cv-01007<br><br>**DEFENDANTS' CASE MANAGEMENT CONFERENCE STATEMENT**<br>**[FRCP Rule 26(f); Civil Local Rule 16-9]**<br><br>Date:  January 14, 2025<br>Time: 2:00 p.m.<br>Location: Courtroom 6; 2nd Floor<br>Judge: Hon. Jon S. Tigar |

The parties to the above-entitled action met and conferred on January 7, 2025, after Defendants' counsel submitted a draft Joint Case Management Statement to Plaintiff counsel on January 3, 2025. Plaintiff counsel submitted two edited versions during and after that meet and confer discussion.  Defense counsel agreed to both versions with the addition of a single sentence in Section 21B. Defense counsel advised Plaintiff counsel of the minor edit at 4:44 p.m. and approved the draft with that addition.  Since the Joint Statement was apparently not filed by Plaintiff counsel, Defense counsel made the minor addition and submitted the final draft Statement to Plaintiff on January 8 requesting it be filed, or Defense counsel would do it without signature by Plaintiff counsel.

Since Plaintiff counsel has neither filed the Joint Statement, nor advised that he approves Defense counsel doing it, Defendants see no option but to submit this Statement. The attached is Plaintiff's last draft with the single addition requested by Defense counsel on January 7.

Dated:  January 8, 2025

By: /s/ *Michael A. King*
MICHAEL A. KING,
Deputy County Counsel
Attorneys for Defendants

ERIC G. YOUNG, ESQ. (SBN 190104)
**YOUNG LAW GROUP**
2544 Cleveland Avenue, Suite 210
Santa Rosa, California 95403
Tel.:  707.343.0556
Fax:  707.327.4360
Email: eyoung@younglawca.com
E-Service: service@younglawca.com

Attorneys for Plaintiff
RONALD CUPP

ROBERT H. PITTMAN #172154
County Counsel
MICHAEL A. KING #77014
Deputy County Counsel
County of Sonoma
575 Administration Drive, Room 105A
Santa Rosa, California 95403
Telephone: (707) 565-2421
Facsimile: (707) 565-2624
E-mail: michael.king@sonoma-county.org

Attorneys for Defendants
COUNTY OF SONOMA, TENNIS WICK,
TYRA HARRINGTON, MARK FRANCESCHI,
TODD HOFFMAN, JESSE CABLK, ANDREW SMITH

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| RONALD CUPP<br><br>    Plaintiff,<br><br>    vs.<br><br>COUNTY OF SONOMA, et al,<br><br>    Defendants. | CASE NO.: 4:23-cv-01007<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT [FRCP Rule 26(f); Civil Local Rule 16-9]**<br><br>Date:  January 14, 2025<br>Time: 2:00 p.m.<br>Location: Courtroom 6; 2nd Floor<br>Judge: Hon. Jon S. Tigar |



The parties to the above-entitled action submit this Joint Case Management Statement & Proposed Order pursuant to the Standing Order for All Judges of the Northern District of California and Civil Local Rule 16-9 and Civil Local Rule 16-9:

## 1. JURISDICTION & SERVICE

Cupp has served all Defendants. There are no issues regarding personal jurisdiction or venue. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), 28 U.S.C. § 2201 (declaratory relief), and 42 U.S.C. § 1983.

## 2. FACTS

A. Plaintiff's Statement of Relevant Facts:

In or around 2015 and 2017, as a response to California's legalization of cannabis, the County of Sonoma ("the County") enacted and implemented an official policy known as the "Code Enforcement Enhancement Program" (CEEP), which gave new and sweeping powers to the County's Code Enforcement Division ("CED"), part of the County's Permit Resources Management Department ("PRMD") a.k.a. Permit Sonoma. In 2019, the County augmented the new powers granted to CED by also enacting a clandestine policy authorizing the use of unmanned aerial vehicles a.k.a. "drones" to surveil private land in the County.

While ostensibly enacted to clear a backlog of old local code violations cases that had allegedly languished due to staffing shortages, the true intent and purpose of CEEP was to transform CED, which is not a "law enforcement" agency within the meaning of California laws, into a quasi-law enforcement agency to target unpermitted cannabis operation – particularly small-time operations. Once cannabis was legalized in 2016, and regulation was handed over to local jurisdictions, the County (by no means an outlier) immediately recognized the potentially revenue generating potential that lay in front of it. By enacting CEEP and implementing it the way the County has done, the County has created a government-sponsored revenue machine for the County at the expense of private landowners. As implemented,

CEEP has established and incentivized a concerted and purposeful government scheme to maximize revenue by squeezing every dollar possible out of the pockets of private landowners in the form of excessive fines and penalties for alleged local code violations.

To find these alleged code violations, CED officers routinely search private land – using drones and other, more traditional methods – without first obtaining inspection warrants. Receipt of a "confidential complaint" frequently triggers warrantless CED inspections. On information and belief, at least some of these complaints lack a complaining citizen, but due to confidentiality which cloaks such complaints, the landowner remains ignorant of the ruse. When inspection warrants are sought, it is often after the fact, and in case after case, CED officers present false and misleading declarations in support of an inspection warrant to judicial officers which hide or obfuscate their unconstitutional behavior.

The result for private landowners is to be caught between Scylla and Charybdis. On the one hand, they face a multi-pronged effort designed to maximize revenue while preventing compliance. The County imposes crippling fines for every possible violation a CED officer spies, characterizing them as health and safety violations to inflate their significance and cost. When violations cannot be found, they are manufactured out of whole cloth, including for conditions where the landowner holds a valid permit.

Once violated, landowners are given only the shortest possible window of opportunity to challenge the violations through an administrative appeal process – 10 days – after which time the violations are conclusively presumed to be accurate according to local ordinance. In almost every case, the County does not even advise the landowner of the total fees and penalties he owes in 10 days, so landowners do not appreciate the precariousness or gravity of the situation they now find themselves in. Even for the proactive landowners who timely requests an administrative appeal, the process is subject to County delays and may not even happen. It's an administrative quagmire for unsuspecting landowners.

Some landowners try to remedy the violations. If these landowners engage in self-help to remedy violations – e.g., they take down a shed voluntarily – their violations continue because they did not apply for an obtain a demolition permit and obtain a "sign off" on the demolition by a CED officer. When these landowners do apply for permits to remediate the alleged violations, however, they are often subjected to repeated and unexplained delays and forced to clear impossible administrative and procedural hurdles. All the while, their fines and penalties continue to increase on a per diem basis, even though the condition is long gone.

Under this per diem penalty regime, The County has no incentive to act promptly, if ever, for a landowner. To date, the County has not even granted a reprieve for landowners facing fines and penalties for the period when the County shut down entirely during the COVID-19 pandemic. The County is also reaching back in time to gather alleged violations that are 5, 10, and even 20 years old, applying fines and penalties calculations in disregard of current methods of calculations and in disregard of other County policies designed to protect landowners. It is little wonder then that counsel has met family after family facing financial ruin, holding bills from the County for $300,000, $500,000, or even $1 million dollars for so-called health and safety violations or "public nuisances" that are sheer fantasy trumped up CED officers.

On the other side of this scheme, landowners face a Charybdis whirlpool where, when they cannot pay off the fines and penalties, they are sued by the County, their land seized either through a receivership petition or a tax deed, and they are permanently dispossessed of their property.

Under either scenario, both of which were activated and instigated by formal County policies, landowners who come under County scrutiny are financially ruined, with many losing their entire life's savings or land their families have held for generations.

Plaintiff contends these policies either as enacted or implemented are unconstitutional, or they have enabled, promoted, instigated, or ratified a pattern of unconstitutional conduct by government



officials operating through Permit Sonoma. Specifically, Cupp contends these official County policies and the pattern of behavior or practices emanating from them, including but not limited to the use of drones to search private land without a warrant, subject the County to liability under the *Monell* Doctrine. Cupp contends his private land located at 4640 Arlington Avenue was subjected to a warrantless drone search in or about July 2022 by CED officers; namely, Defendants TODD HOFFMAN and JESSE CABLK. Cupp has reason to believe, based on information learned as recently as September 10, 2024, that his property *may* have been searched without a warrant by drones operating since July 2022 not only by CED, but also by other local agencies that work in tandem with CED such as the County Department of Agriculture ("the Ag Dept.") The Ag Dept. flies at least one drone over private land without warrants looking for unpermitted cannabis growing operations. The County is now attempting to seize Cupp's land through a tax sale as well. Cupp seeks compensatory, nominal, and punitive damages as well as injunctive and equitable relief.

Cupp filed a First Amended Complaint (FAC) on April 30, 2024; alleging some additional facts and additional violations by Defendants including a violation of the Eighth Amendment's prohibition against excessive fines and penalties levied by the County pursuant to one or more of its unconstitutional policies and practices under *Monell*. The County moved to dismiss the FAC under FRCP 12(b)(6).

B. <u>Defendants' Statement of Relevant Facts</u>:

Defendant County of Sonoma conducted various inspections of the property located at 4640 Arlington Avenue, Santa Rosa, CA, through its employees, due to notice of construction without permits, building code violations and zoning code violations.  Most of the issues raised in this litigation have been previously determined through prior litigation in *Cupp v. Smith*, Northern District Court Case No. 4:20-cv-03456 and the Administrative Hearing process available through the Sonoma County Code.

Plaintiff is also making new allegations of an unlawful drone search of the property at 4640 Arlington Ave, Santa Rosa in June 2022.  These allegations are denied.



Defendants are presently unaware of facts being claimed other than alleged in the Complaint, which are generally being denied.

### 3. **LEGAL ISSUES**

A. Plaintiff's Statement of Legal Issues:

This is Plaintiff's Statement of Legal Issues as they are presently framed by the Complaint and do not discuss any amendments Cupp intends to make.

(i) Whether Cupp has cognizable claims against Cablk or Hoffman for common law trespass or invasion of privacy as alleged in paragraphs 149 and 156 of the Complaint, related to the 2022 incident involving the use of a drone to search the Arlington Avenue property;

(ii) Whether Cupp has a cognizable claim against the County under the *Monell* Doctrine that the County has and continues to maintain one of more unconstitutional policies or practices related not only to the County's use of drones in violation of the 4th Amendment but also the County's policies and practices related to its methods of enforcement including but not limited to assessment of fines and penalties, use of local taxing authority and/or receivership procedures to seize private land from landowners, and use of other judicial and governmental agencies and procedures to impose unconstitutionally excessive fines and/or penalties in violation of the 8th Amendment.

(iii) Whether Cupp is entitled to compensatory damages based on any of the legal issues discussed in (i)-(ii), above, including but not limited to any fines, penalties, fees, or other damages incurred within two years before the filing of the Complaint in this action;

(iv) Whether Cupp is entitled to any additional compensatory damages beyond those stated in (iii), above, in light of the 9th Circuit's ruling in *Thomas v. County of Humboldt (Thomas)*, Case No. 23-15847, issued on December 30, 2024 [Allowing plaintiffs' putative class action to proceed alleging that the County of Humboldt's system of administrative penalties and fees pertaining to cannabis abatement violates the 8th Amendment's Excessive Fines Clause. Plaintiffs stated ripe and



cognizable claims for 8th Amendment violations; Plaintiffs plausibly alleged a sufficient concrete injury to satisfy standing due to the County's imposition of penalties, even before any payment. The continued imposition of significant penalties caused plaintiffs emotional and psychological distress, and they incurred expenses attempting to abate the violations by hiring engineers to inspect their property and attorneys to defend them in hearings.] *See,* Plaintiff's **Exhibit 1**, attached (unofficial copy) for the Court's convenience.

(v) Whether Cupp is entitled to either declaratory relief; specifically, Cupp seeks declaratory relief that one or more of the actions undertaken by Defendants as alleged in the Complaint were unconstitutional or unlawful;

(vi) Whether Cupp is entitled to injunctive relief; specifically, Cupp seeks injunctive relief enjoining Defendants from entering the private property of the residents of Sonoma County without first securing an inspection warrant unless (1) necessary due to exigent circumstances threatening life, health or safety; (2) Defendants have the consent of the owner or possessor of the property to enter without an inspection warrant; or (3) the property is "open field" or the search is conducted from a public vantage point.

B. <u>Defendants' Statement of Legal Issues</u>:

For purposes of this Statement, Defendants do not dispute that Plaintiff is claiming the issues stated above.  Defendant raised as defenses in their Motions to Dismiss pursuant to FRCP Rule 12: claim and issue preclusion, statutes of limitation, absolute and qualified immunities under Federal and State law, reasonableness of defendants' conduct, plaintiff's failure to mitigate damages, failure to timely file a tort claim, and other defenses as may appear to be warranted after the pleadings are settled.

## 4. <u>MOTIONS</u>

A. <u>Plaintiff's Position</u>: The pleadings will likely need to be amended further in light of the *Thomas* decision. Cupp has built this into the proposed schedule, and it should not require any further delay in commencing discovery.

B. <u>Defendants' Position</u>: This Court has already determined some of the issues raised in the First Amended Complaint. Defendants filed a Motion to Dismiss all the allegations in the First Amended Complaint. They also requested dismissal of any injunctive and declaratory relief based upon the *Younger* Abstention Doctrine.

Defendants anticipate filing a motion for summary judgment in the event that any claims remain after discovery. Defendants do not presently anticipate filing any discovery motions. There does not appear to be any basis for excessive depositions or written interrogatories.

## 5. <u>AMENDMENT OF PLEADINGS</u>

A. <u>Plaintiff's Position</u>: The parties await a determination on the County's 12(b)(6) motion. Plaintiff anticipates substantial discovery issues. Absent a stipulation, Cupp will seek an order allowing the number of depositions to exceed the number provided in Fed R. Civ. Proc. Rule 30(a)(2)(A)(i). Cupp also intends to move for injunctive relief as alleged in the Complaint. Cupp may file a motion for summary judgment after discovery. Cupp will file all appropriate pre-trial motions in limine.

B. <u>Defendants' Position</u>: No new amendments to the Complaint should be entertained by the Court.

## 6. <u>EVIDENCE PRESERVATION</u>

A. <u>Plaintiff's Position</u>: Plaintiff's counsel has reviewed the Court's *Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information* ("ESI Guidelines") and discussed them in detail with Cupp. Due to scheduling conflicts and defense counsel's need to have surgery, counsel was unable to conduct an in-depth Rule 26(f) meet and confer until June 13, 2023.

At the telephonic conference on June 13, 2023, an attempt was made to discuss the ESI checklist that forms part of the Northern District's approved Guidelines for the Rule 26(f) conference. Cupp's counsel was prepared to provide all the information required by the checklist, and indeed, did provide said information on Cupp's behalf. Defense counsel either did not know the answers to many of the topics contained in the ESI Checklist, or he was unprepared to discuss them on June 13, 2023. Defense counsel acted as though a discussion of the ESI Checklist was catching him utterly by surprise. He promised instead to provide the information at some later date, despite the fact the Rule 26(f) conference had been scheduled for date prior to June 13. When Cupp's counsel pressed for a date when the information would be provided and suggested that the information be provided no later than June 26, 2023 along with a mutual exchange of the parties initial disclosures – which has also not yet occurred – defense counsel became irate. He would not commit to the date offered or any date for providing the additional ESI information or exchange disclosures. With regard to the initial disclosures, defense counsel stated, "We are not required to." With regard to providing further ESI information, defense counsel stated, "You'll get what you get." Not surprisingly, this lack of cooperation led to a breakdown in the Rule 26(f) conference. Consequently, from Cupp's counsel's perspective, no agreement or understanding was reached on many ESI issues, nor is there any understanding as to when, if ever, an exchange of initial disclosures of information will take place. This necessitated Cupp's counsel having to write an extensive letter to defense counsel following the conference, confirming what unfortunately had taken place.

B. <u>Defendants' Position</u>:   Defense counsel was ready to discuss these issues prior to June 13, 2023, and was provided Plaintiff's request for discussion on ESI Guidelines on June 13.  The parties discussed the guidelines at length and Defense counsel is aware of what Plaintiff wants to be preserved and generally what sections of the guidelines Plaintiff counsel believes should be provided by Defendants.  Defense counsel now believes that the scope of discovery has been significantly narrowed



by the Court's ruling on the Rule 12 Motions. All discovery should be based upon the present pleadings, not the original Complaint.

### 7. <u>DISCLOSURES</u>

A. <u>Plaintiff's Position</u>: At present, neither side has served initial disclosures. No discovery has occurred, and no depositions have been taken. Again, the only reason these steps have not been taken on Plaintiff's behalf is due to counsel's illness as explained in the Young Declaration.

B. <u>Defendants' Position</u>:

The parties discussed this issue on June 13, 2023. Defendants believe that initial disclosures (and discovery) before the pleadings are settled, are a potential waste of both parties' time and resources. Defendants will seek guidance from the Court about a date for initial disclosures at the time of the Case Management Conference.

### 8. <u>DISCOVERY</u>

A. <u>Plaintiff's Position</u>:

(i) <u>Protective Order</u>: Cupp intends to conduct discovery into specific matters related to the County's policies, procedures and practices related to inspections of private property by Permit Sonoma/Code Enforcement and its permit approval process. It is anticipated the defense will want a protective order limiting the dissemination of this information. Cupp's position is that at least some of the information may already be in the public sphere. To the extent the information has not previously been made public by the County, Cupp's position is that the information is a matter of public concern to the people of the County, and that the information belongs to the people and not the County. Subject to the Court's orders, Plaintiff's counsel reserves the right to discuss this matter with members of the press, specifically including but not limited to the Sonoma County Press Democrat.

(ii) <u>Initial Disclosures</u>: Neither side has exchanged initial disclosures. These should be ordered forthwith, and Cupp requests an order to that effect.



(iii) <u>Subjects of Discovery</u>: Cupp contends that discovery will pertain to all claims and defenses alleged by any of the parties. Cupp expects that discovery will include, but not be limited to, all communications and correspondence, including emails, voicemail, or other electronic communications, that discuss, describe, evidence, or pertain to Cupp or the Arlington Avenue property, specifically, from on or about January 2019 up to an include the present time, as certain allegations in the Complaint are continuing. Discovery will also include, but not be limited to, policies, practices and procedures undertaken by the County from 2010 to not later than June 2022, including statistical data, that pertains to inspections of private property by Permit Sonoma/Public Resource Management Department/Code Enforcement, applications for inspection warrants to conduct inspections, procedures related to and the manner in which administrative citations are issued and hearings are conducted, the County's methodology for calculating fines and penalties against property owners for Code violations, cooperation between Code Enforcement and local law enforcement agencies in conduct searches without warrants (either search or inspection warrants), and the role of County Counsel's office in these matters.

<u>Electronic Discovery</u>: Cupp believes an electronic discovery order will be necessary in this case based on Plaintiff's counsel's prior dealings with the County and its rather narrow view of discovery, particularly its approach to e-discovery. Plaintiff agrees most documents may be produced as searchable PDFs without metadata. However, there are exceptions, including spreadsheets, database records or information, texts and chat applications, and emails, which should be produced in native or near-native format with any software needed to view them. Cupp anticipates collecting drone-related data, including video and geo-positioning data that will also require special handling and production.

<u>Privilege Claims</u>: No order is sought at this time.

<u>Timing of Discovery</u>: No discovery has been conducted. Discovery should commence immediately. No reason exists to delay discovery in this matter, particularly in light of the *Thomas* decision. Both parties have conducted discovery in the underlying state case, *County of Sonoma v. Cupp*,



Case No. SCV-273578, but the County has successfully managed to forestall any further discovery by Cupp in that matter, which will be the subject of further motions. This is all the more reason why discovery should be commenced here.

To that end, Cupp will serve today a brief FRCP Rule 34(a) Request to Produce Documents, seeking documents and electronically stored information which Cupp knows the County has already compiled in response to one or more Public Records Act (PRA) Requests served on the County late last year by the American Civil Liberties Union (ACLU), which has been investigating the County's use of Code Enforcement for many months in possible preparation for its own lawsuit. Because the County has already compiled and provided this documentation to the ACLU, it is required by law to provide it to Cupp if Cupp served a PRA Request. GOV'T CODE § 7921.300 [No limitation allowed based on purpose for which records are sought]; GOV'T CODE § 7922.500 [Public agency not permitted to delay or obstruct the inspection or copying of public records]; GOV'T CODE § 7921.500 [Administration of agency under inspection allowed unless disclosure is otherwise prohibited by law]; (Added by Stats. 2021, Ch. 614, Sec. 2. (AB 473) Effective January 1, 2022. Operative January 1, 2023, pursuant to Sec. 7931.000); GOV'T CODE § 7921.505(b) [if a state or local agency discloses to a member of the public a public record that is otherwise exempt from this division, this disclosure constitutes a waiver of the exemptions allowed under PRA including Sections 7920.505, 7924.510, 7924.700, and other similar provisions of law].

Discovery Limits: Cupp anticipates that this matter will require more than ten (10) depositions as provided in Rule 30(a)(2)(A)(i) and sought a stipulation from defense counsel to exceed the number provided by the rule at the Rule 26(f) conference on June 13, 2023. In order to establish a *Monell* claim based on a practice or procedure, Cupp must demonstrate that his treatment by Defendants was not an isolated incident, necessitating the deposition of a number of other affected property owners. Plaintiff's counsel has submitted, and continues to submit, declarations from property owners who will



need to be deposed. The number of affected property owners who have signed declarations already approaches ten (10) individuals, and there are several more that Cupp has yet to submit. It was Cupp's counsel's understanding that defense counsel had agreed to the stipulation, but based on his additions to this joint statement, Cupp's counsel is now not so certain.

At the Rule 26(f) conference, counsel agreed to depart from Rule 33(a) and, further, that each side could propound up to 60 interrogatories total. Now, defense counsel is "seeking guidance" from the Court, so evidently, defense counsel is backing out of the stipulation reached at the Rule 26(f) conference.

Cupp agrees to serve all discovery requests and responses by electronic mail. Cupp proposes that for purposes of computing time, service of discovery requests by email shall be treated as if service was made by U.S. mail pursuant to Fed. R. Civ. P. 5(b)(2)(C). It is unclear if defense counsel agrees to treat this service as if it is service by mail.

Finally, Cupp proposes that any expert witnesses be deposed by remote video conferencing if the expert is located more than 50 miles from Santa Rosa, California, and that the video depositions may be used at trial. Cupp will explore an appropriate stipulation with Defendants' counsel. It is unclear if defense counsel agrees that the video testimony can be used at trial in lieu of live testimony.

B. <u>Defendants' Position</u>:

Discovery should not commence until the pleadings are finalized.  Initial disclosures should also not be required until after the Plaintiff's pleadings are settled.  There is no legitimate reason to direct discovery to non-parties (any defendant who was dismissed), nor to allow a wide and unrestrained scope of discovery if Plaintiff is not allowed to proceed on numerous causes of action.  To proceed in that fashion will undoubtedly lead to disagreements on the responses (by either side) and a request for referral to a magistrate judge for assistance resolving the disagreements.

Defendants believe that based upon the Court's decision on the Rule 12 Motions, that the number



of depositions will be limited and not exceed the amount allowed per side by Federal rule. The number of interrogatories should not exceed more than 25 per side. There is no basis under the pleadings about a single incident which is factually disputed, that any significant discovery is necessary. It should be noted that the alleged June 2022 drone flyover incident took place long after the inspections of the property and the February 2021 Administrative Hearing decision that Plaintiff violated various zoning and building codes.

The parties will seek guidance from the Court in the event that agreement cannot be reached about the total number of depositions and interrogatories per side.

Defendants agrees to electronic service of discovery requests and responses, but it should be noted that many of the records that may be requested are not electronic records, but paper records.

Defendants agree to depositions of expert witnesses via remote video conferencing; and possibly with use of the video testimony at trial in lieu of live testimony.

### 9. CLASS ACTIONS

A. <u>Plaintiff's Position</u>: This is no longer an issue, so the defense position is moot.

B. <u>Defendants' Position</u>: Based upon the Plaintiff's acknowledgment, no further position is needed except that no class exists.

### 10. RELATED CASES

A. <u>Plaintiff's Position</u>: Subsquent to the filing of this case, Defendants filed the state case mentioned below. There is also a related matter now filed, *Meyer v. County of Sonoma*, Case No. 3:24-cv-09056, which was filed on December 13, 2024. It has not yet been served.

B. <u>Defendant's Position</u>:  *County of Sonoma v. Ronald Cupp*, Case No. SCV 273578 was filed in the Superior Court of California, Sonoma County.  This case was filed to enforce the Administrative Hearing Decision pertaining to this property. Work was commenced pursuant to permits and has been substantially completed.  There are outstanding issues of civil penalties, staff and counsel costs, as well



as any remaining conditions to abate.  Plaintiff Ronald Cupp filed a Cross-Complaint in that action and is now being represented by the same attorney who is representing him in this case.

## 11. RELIEF

A. <u>Plaintiff's Position</u>: Under the current Complaint, Cupp seeks the following relief: compensatory damages, punitive damages against individual Defendants (on state law claims), declaratory and injunctive relief. Cupp also seeks an award of attorney's fees and costs as well as interest as allowed by law.

B. <u>Defendants' Position</u>:  There is no legal or factual basis for recovery of any damages or for any form of injunctive relief.

## 12. SETTLEMENT AND ADR

A. <u>Plaintiff's Position</u>: Plaintiff requests a referral to a Magistrate Settlement Conference once the pleadings are settled and some discovery has occurred.

B. <u>Defendants' Position</u>:  The parties attempted to resolve many of the issues presented in this case, with the Honorable Kandis A. Westmore after referral in Case No. 4:20-cv-03456.  Defendants are amenable to referral to Judge Westmore, or another Magistrate Judge.

## 13. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

A. <u>Plaintiff's Position</u>: Plaintiff has already objected to magistrate judge jurisdiction, but as noted above, Cupp will consent to a referral to a Magistrate Settlement Conference.

B. <u>Defendants' Position</u>: Not applicable.

## 14. OTHER REFERENCES

A. <u>Plaintiff's Position</u>: Based on the outcome of the Rule 26(f) conference, Plaintiff anticipates the potential need for a discovery referee. Plaintiff is not making that a formal request at this time, but reserves the right to make this request should a lack of cooperation persist.

B. <u>Defendants' Position</u>: None at this time.



## 15. <u>NARROWING OF ISSUES</u>

A. <u>Plaintiff's Position</u>: This issue was previously addressed in the discussion above regarding Defendants' motions to dismiss.

B. <u>Defendants Position</u>:  Defendants believe that the issues have been narrowed significantly as a result of its Motions to Dismiss.  They anticipate further narrowing of issues and final judgment via Motion.

## 16. <u>EXPEDITED TRIAL PROCEDURE</u>

A. <u>Plaintiff's Position</u>: Cupp does not believe this matter can be handled under the expedited trial procedures.

B. <u>Defendants' Position</u>:  It is possible that after the motions to dismiss, the issues in this case can be handled via expedited trial procedures.

## 17. <u>SCHEDULING</u>

<u>Plaintiff's Position</u>:

| Action/Activity/Proceeding | Due Date/Deadline/Hearing Date |
|---|---|
| Amendments in light of *Thomas* Decision, if any are necessary | January 31, 2025 |
| Close of fact discovery | August 1, 2025 |
| Expert disclosure/reports due | August 29, 2025 |
| Expert/rebuttal reports due | September 19, 2025 |
| Expert discovery cut-off | October 10, 2025 |
| File motions for summary judgment by | October 31, 2025 |
| File oppositions to motions for summary judgment by | November 14, 2025 |
| File replies to motions for summary judgment by | December 1, 2025 |

| Pre-trial conference | TBD |
| Trial | TBD (Plaintiff requests a trial date in 2025) |

B. <u>Defendants' Position</u>: Defendants expect neither fact nor expert discovery should not take very long based upon the ruling on the Motions to Dismiss.  The issues are very narrow at present.

## 18. <u>TRIAL</u>

A. <u>Plaintiff's Position</u>: Plaintiff has demanded a jury trial and estimates the trial would take 5 full days as the pleadings are framed presently. The trial time could be longer if additional parties or claims are added, or if the matter is certified as a class.

B. <u>Defendants' Position</u>:  The trial could be shorter depending upon the remaining issues.

## 19. <u>DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS</u>

A. <u>Plaintiff's Position</u>: Plaintiff has no such interests to report.

B. <u>Defendants' Position</u>:  None known at present.

## 20. <u>PROFESSIONAL CONDUCT</u>

A. <u>Plaintiff's Position</u>: Plaintiff's counsel has reviewed the Guidelines for Professional Conduct for the Northern District of California.

B. <u>Defendants' Position</u>:  Defense counsel has reviewed the Guidelines for Professional Conduct for the Northern District of California.

## 21. <u>OTHER MATTERS FOR CONSIDERATION</u>

A. <u>Plaintiff's Position</u>: It is of paramount concern and importance that this matter proceed, particularly that disclosure and discovery commence at once. Any further delay prejudices Cupp, emboldens the County's continued violations of the Constitutional rights of its people, and promotes obstructionist litigation tactics the FRCP expressly forbids. FRCP Rule 1.



Delay, delay, delay is the County's "M.O." It is front and center in the underlying state case where the County has sought to compel discovery from Cupp when it suits them, but seek protective orders from the Court when Cupp tries to obtain discovery from the County. This has led to lop-sided decisions by the state court, which will be subjects of further motions. There is simply no merit to Defendant's position that neither discovery nor disclosures should commence until the pleadings are settled. Defendants want to have their "cake and eat it too."

B. <u>Defendants' Position</u>:  Defendants disagree with comments made by Plaintiff counsel in this section and related sections.

Dated:                                            **YOUNG LAW GROUP**


By:_____
ERIC G. YOUNG, ESQ., Attorneys for
Plaintiff RONALD CUPP


Dated:  January 7, 2025


By: *Michael A. King*_____
MICHAEL A. KING,
Deputy County Counsel
Attorneys for Defendants



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*CUPP V COUNTY OF SONOMA*

**PLAINTIFF'S EXHIBIT 1**

_____



**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| |
|---|
| CORRINE MORGAN THOMAS; DOUG THOMAS; BLU GRAHAM; RHONDA OLSON; CYRO GLAD, |
| *Plaintiffs-Appellants*, |
| v. |
| COUNTY OF HUMBOLDT, California; HUMBOLDT COUNTY BOARD OF SUPERVISORS; HUMBOLDT COUNTY PLANNING & BUILDING DEPARTMENT; MIKE WILSON, Vice Chair, Board of Supervisors; REX BOHN, member, Board of Supervisors; MICHELLE BUSHNELL, member, Board of Supervisors; STEVE MADRONE, member, Board of Supervisors; JOHN H. FORD, Director, Humboldt County Planning and Building Department; NATALIE ARROYO, in her official capacity as Supervisor of Humboldt County, |
| *Defendants-Appellees*, |
| and |

No. 23-15847

D.C. No. 1:22-cv-05725-RMI

OPINION

VIRGINA BASS, Chair, Board of
Supervisors,

*Defendant*.

Appeal from the United States District Court
for the Northern District of California
Robert M. Illman, Magistrate Judge, Presiding

Argued and Submitted April 9, 2024
San Francisco, California

Filed December 30, 2024

Before:  Richard A. Paez and Jennifer Sung, Circuit Judges,
and Sidney A. Fitzwater,[*] District Judge.

Opinion by Judge Paez

## SUMMARY[**]

### Eighth Amendment's Excessive Fines Clause

The panel affirmed in part and reversed in part the
district court's dismissal of a putative class action brought

---

[*] The Honorable Sidney A. Fitzwater, United States District Judge for
the Northern District of Texas, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

by residents of Humboldt County pursuant to 42 U.S.C. § 1983, alleging, in part, that the County's system of administrative penalties and fees pertaining to cannabis abatement violates the Eighth Amendment's Excessive Fines Clause.

Pursuant to the County Code, illegal cultivation of cannabis can carry a daily fine of anywhere between $6,000 and $10,000. Once the County's Code Enforcement Unit serves a responsible party with a notice of violation ("NOV"), the party has ten days to abate all violations or face penalties, subject to an appeals process, during which the penalties continue to accrue. Plaintiffs contend that the County charges landowners with violations based on imprecise data, or on the conduct of previous property owners. The district concluded that because plaintiffs had yet to pay a fine, they lacked standing, the Eighth Amendment claim was unripe, and both the facial and as-applied challenges were untimely.

The panel first held that plaintiffs' claim under the Excessive Fines Clause was constitutionally ripe and that plaintiffs plausibly alleged a sufficient concrete injury to satisfy standing due to the County's imposition of penalties, even before any payment. The continued imposition of significant penalties caused plaintiffs emotional and psychological distress, and they incurred expenses attempting to abate the violations by hiring engineers to inspect their property and attorneys to defend them in hearings. Prudential ripeness considerations further counseled in favor of allowing the litigation to proceed.

The panel found that with one exception, plaintiffs' challenges under the Excessive Fines Clause were timely. The statute of limitations begins to run on a claim

(whether facial or as-applied) when a plaintiff knows or has reason to know of the actual injury, not, as the district court found, when the challenged ordinance is enacted. Plaintiffs' facial claim began to run when they received NOVs, which was the earliest point at which they could have known of the penalties at issue. Because at least some plaintiffs alleged they received their initial NOVs within two years of filing suit, the panel reversed the district court's dismissal of plaintiffs' facial challenge as untimely. Several of the named plaintiffs also appeared to have timely as-applied challenges, although plaintiff Cyro Glad's as-applied Eighth Amendment claim appeared to be untimely because he received his initial NOV nearly four years before the suit was filed and no daily penalties were imposed within the limitations period. The panel, therefore, partially reversed the district court's dismissal of the as-applied excessive fines challenges as untimely but affirmed the dismissal with respect to Cyro Glad.

Turning to the merits, the panel held that plaintiffs alleged a plausible claim for relief under the Excessive Fines Clause. Plaintiffs alleged that the administrative penalties, which can reach millions of dollars, and the County's demolition orders are punitive, not remedial. They also plausibly alleged that the fines were excessive given that (1) at least some of the plaintiffs have been charged with violations that pre-date their occupation of their respective properties; (2) the violations were inaccurately charged or were the fault of previous property owners; (3) lesser penalties could accomplish the same health and safety goals; and (4) the alleged offenses caused no harm beyond a technical lack of compliance with the County's cannabis permitting regulations.

## COUNSEL

Jared McClain (argued), Institute for Justice, Arlington, Virginia; Robert Johnson, Institute for Justice, Shaker Heights, Ohio; Thomas V. Loran III, Pillsbury Winthrop Shaw Pittman LLP, San Francisco, California; Derek M. Mayor, Pillsbury Winthrop Shaw Pittman LLP, Sacramento, California; for Plaintiffs-Appellants.

Pamela K. Graham (argued), Colantuono Highsmith & Whatley PC, Pasadena, California; John A. Abaci, Colantuono Highsmith & Whatley PC, Sonoma, California; Michael G. Colantuono, Colantuono Highsmith & Whatley PC, Grass Valley, California; for Defendants-Appellees.

Thomas Q. Swanson, Hilgers Graben PLLC, Lincoln, Nebraska, for Amicus Curiae Daniel J. Altstatt.

## OPINION

PAEZ, Circuit Judge:

This putative class action arises out of Humboldt County's system of administrative penalties and fees involving cannabis abatement. Plaintiffs—residents of Humboldt County—filed this action under 42 U.S.C. § 1983, alleging a number of constitutional claims against the County. The district court dismissed all claims in their entirety on various grounds. We focus only on one of Plaintiffs' claims: that the County's system of administrative penalties and fees violates the Eighth Amendment's

Excessive Fines Clause.[1]   The district court dismissed that claim because it concluded that the claim was not justiciable and that it was untimely.  For the reasons below, we affirm in part, reverse in part, and remand for further proceedings.

## I. Background

### A.

This case concerns Humboldt County's enforcement of its local building and zoning laws, specifically those involving cannabis abatement.  We briefly discuss the relevant provisions of the Code of Humboldt County, California ("HCC" or "the County Code").

Pursuant to the County Code, violations of local building and zoning laws are classified into four categories ranging from "Category 1" to "Category 4."  HCC §§ 352-3(e)-(h). Those violations classified as Category 4 are the most severe and carry the greatest penalty: a daily fine of anywhere between \$6,000 and \$10,000.  *Id*. § 352-6(a)(4).  As relevant here, the illegal cultivation of cannabis, as well as any other violation that facilitates the illegal cultivation of cannabis, is classified as a Category 4 offense.  *Id*. § 352-3(h).

The County's Code Enforcement Unit is responsible for enforcement.  *Id*. § 352-3(j).  Once the Code Enforcement Unit determines that a violation has occurred, it serves each "Responsible Party" with a "Notice of Violation [(NOV)] and Proposed Administrative Civil Penalty."  *Id*. § 352-7. The County Code requires the NOV to contain certain information, including the name and last known address of

---

[1] In a separately filed memorandum disposition, we address Plaintiffs' remaining claims.

each responsible party and a "description of the specific acts or omissions that gave rise to the Violation." *Id*. § 352-8.

A responsible party who is served with an NOV must abate the violations within ten days or face penalties. *Id*. § 352-5(b)(1).[2]   Indeed, pursuant to the County Code, fines are imposed automatically no later than ten days after service of the NOV. *Id*. §§ 352-3(m)(1), 352-5(b)(1). Moreover, in the case of "subsequent or ongoing cannabis Violations or Violations that exist as a result of or to facilitate illegal cultivation of cannabis, the imposition of administrative civil penalties will start to accrue after service of [an NOV]," unless a tenant (rather than the property owner) is in possession of the property. *Id*. § 352-3(m)(2). The imposition of the "penalty" becomes "final" and the Code Enforcement Unit "acquire[s] jurisdiction to collect the full amount thereof and any and all Administrative Costs and/or Attorney's Fees" ten calendar days after service of the NOV unless a responsible party timely appeals. *Id*. § 352-8(l).

If a responsible party appeals "the determination that . . . a Violation has occurred and/or the amount of the administrative civil penalty [imposed] . . . , the Code Enforcement Unit shall set the matter for hearing before [a] Hearing Officer and serve a 'Notice of Administrative Civil Penalty Appeal Hearing' upon each Appellant." *Id*. § 352-9. The hearing must be scheduled "no sooner than fifteen (15) calendar days after the date on which the Notice of Administrative Civil Penalty Appeal Hearing is served on

---

[2] The County is authorized to issue an additional NOV and impose an additional penalty if the violations remain after ninety days. HCC § 352-5(d). It can additionally "withhold issuance of any licenses, permits and other entitlements to a Responsible Party on any project that is subject to unpaid administrative civil penalties." *Id*. § 352-5(e).

the Appellant." *Id*. § 352-11.  The imposition of fines, however, does not stop during this period, and can continue "up to and including the ninetieth (90th) calendar day," *id*. § 352-5(a), following the original "Imposition Date," *id*. § 352-3(m).

On appeal, the hearing officer has the authority to determine that no violation has occurred and terminate the administrative proceedings.  *Id*. § 352-12.  If the hearing officer determines that a violation has occurred or continues to exist, they can affirm the civil penalty or reduce it in limited circumstances.  In no event, however, can the hearing officer reduce the penalty "to an amount that is less than the minimum amount set forth [in the County Code] for the Violation category imposed." *Id*. § 352-12(b).  For example, in the case of Category 4 offenses, the reduction cannot result in a penalty lower than \$6,000 per day.  *Id*. § 352-6(a)(4).  Once the hearing officer's decision is final, the responsible party may seek judicial review.  *Id*. § 352-13.

Finally, once jurisdiction to collect the administrative civil penalty is final, the Code Enforcement Unit may serve the responsible party with a "Notice of Administrative Civil Penalty Assessment" and collect the penalty or impose a lien on the property, *id*. §§ 352-15, 352-16(l), unless the responsible party objects and requests additional review by the County's Board of Supervisors, *id*. § 352-16(i).

**B.**

Plaintiffs are residents of Humboldt County who allege that they have been aggrieved by the County's enforcement of its cannabis-abatement regulatory scheme.  In general, Plaintiffs allege that the County charges landowners with violations of the County Code on the basis of (1) imprecise images taken from satellites or drones without reasonable

suspicion or any further investigation, or (2) the conduct of previous owners, which ceased before Plaintiffs purchased their respective properties.  Plaintiffs also allege that the County fails to record the violations of previous owners, such that new landowners like Plaintiffs have no actual or constructive knowledge of ongoing violations when they purchase land.   The County nonetheless serves these landowners with vague NOVs that fail to properly inform them of the grounds for the charges or their right to appeal. Once served with an NOV, Plaintiffs allege that landowners face "immediate costs and immense pressure to settle due to the County's issuance of ruinous fines unsupported by any legitimate governmental interest, its refusal to drop baseless charges, its undue delay in providing hearings, its denial of permits while abatements are pending, and the cost the County imposes to prove one's innocence."

In October 2022, Plaintiffs filed this action on behalf of themselves and others similarly situated in the district court. As relevant here, Plaintiffs allege that the County's system of administrative penalties and fees with respect to cannabis abatement violates the Excessive Fines Clause of the Eighth Amendment.  After Plaintiffs filed an amended complaint, the County moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The County also requested judicial notice of over 500 pages of documents, which the court granted.[3]

---

[3] Plaintiffs assert that the district court improperly relied on facts it took from documents it judicially noticed.  Because Plaintiffs' allegations in their amended complaint are sufficient to conclude that their claim is justiciable, we do not address the propriety of the district court's judicial-notice ruling.

The district court granted the County's motion to dismiss. The district court reasoned that "the [Complaint was] overwhelmingly dominated by legal arguments couched as factual allegations, unreasonable inferences, unwarranted deductions, conclusory assertions, unjustified labels, and hyperbole." With respect to the Plaintiffs' claim under the Excessive Fines Clause of the Eighth Amendment, the district court concluded first that Plaintiffs' claim was not justiciable because Plaintiffs lacked standing and the claim was unripe, and second that their claim was untimely. This appeal followed.

## II. Jurisdiction and Standard of Review

We have jurisdiction under 28 U.S.C. § 1291. Dismissals under Rule 12(b)(1) are reviewed de novo. *See Erickson v. Desert Palace*, *Inc.*, 942 F.2d 694, 694 (9th Cir. 1991). "[W]hen standing is challenged on the basis of the pleadings, we accept as true all material allegations of the complaint, and . . . construe the complaint in favor of the complaining party." *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988) (internal quotation marks and citation omitted).

A dismissal under Rule 12(b)(6) is also reviewed de novo. *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020). At the motion to dismiss stage, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to Plaintiffs." *Id.* (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008)).

## III. Discussion

The district court determined that Plaintiffs' claim under the Excessive Fines Clause of the Eighth Amendment was not justiciable as well as untimely. We therefore first

determine whether Plaintiffs' claim is justiciable—
specifically, that at least one named plaintiff in the putative
class has standing to bring such a claim and that the claim is
ripe—and then determine whether the claim is timely.[4]  We
then consider whether Plaintiffs plausibly allege that the
County's system of administrative penalties and fees
violates the Eighth Amendment.  For the reasons below, we
conclude that (1) at least one plaintiff has standing and their
claim is ripe; (2) with one exception, Plaintiffs' claims are
timely; and (3) Plaintiffs have plausibly alleged a violation
of the Excessive Fines Clause.

## A. Standing and Ripeness

The County contends that the Excessive Fines Clause
claim is not ripe because Plaintiffs have yet to pay a fine.
The district court, for the same reason, held that all Plaintiffs
lacked an injury-in-fact under Article III.  We conclude that
Plaintiffs' claim is indeed ripe and that they have suffered a
cognizable injury.[5]

"[S]tanding is an essential and unchanging part of the
case-or-controversy requirement of Article III." *Lujan v.
Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  Its "injury in
fact" prong requires a plaintiff to demonstrate an "invasion
of a legally protected interest that is (a) concrete and
particularized and (b) actual or imminent, not conjectural or
hypothetical." *Id.* at 560 (cleaned up).  A related doctrine,
ripeness, is "drawn both from Article III limitations on

---

[4] *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)
(en banc) ("In a class action, standing is satisfied if at least one named
plaintiff meets the requirements.").

[5] Because the County argues—as the district court determined—only that
the allegations in the amended complaint do not establish that they have
suffered any injury, we focus on the injury-in-fact prong of standing.

judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). The ripeness doctrine is designed to "separate matters that are premature for review because the injury is speculative and may never occur from those cases that are appropriate for federal court action." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993) (citation omitted). As a result, "[t]he constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). In addition, the ripeness doctrine has a prudential aspect "guided by two overarching considerations: the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 1141 (internal quotation marks and citation omitted).[6]

Here, in arguing that Plaintiffs' alleged injury is speculative because the fines have not yet been paid, the County effectively challenges Plaintiffs' ability to demonstrate an actual injury as well as ripeness. *See Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) ("Whether framed as an issue of standing or ripeness, the inquiry is largely the same: whether the issues presented are

---

[6] The Supreme Court has "cast doubt on the prudential component of ripeness in *Susan B. Anthony List v. Driehaus*, [573 U.S. 149 (2014)]." *Safer Chems., Healthy Fams. v. U.S. Env't Prot. Agency*, 943 F.3d 397, 412 n.8 (9th Cir. 2019) (quoting *Clark v. City of Seattle*, 899 F.3d 802, 809 n.4 (9th Cir. 2018)). Nonetheless, we consider the issue for the sake of thoroughness.

'definite and concrete, not hypothetical or abstract.'"
(quoting *Thomas*, 220 F.3d at 1139).

To begin, the Eighth Amendment provides: "Excessive
bail shall not be required, nor excessive fines imposed, nor
cruel and unusual punishments inflicted."   U.S. Const.
amend. VIII.  Although we have not previously considered
constitutional ripeness and the actual injury requirement in
the context of the Excessive Fines Clause, we have
addressed the issue in other cases involving the Eighth
Amendment.   For example, in *18 Unnamed John Smith
Prisoners v. Meese*, 871 F.2d 881 (9th Cir. 1989), we
considered whether a correctional facility's decision to
"double bunk" inmate-participants in the Department of
Justice's Witness Protection Program constituted infliction
of cruel and unusual punishment in violation of the Eighth
Amendment.  *Id.* at 882.  In so doing, we recognized that
"[o]ne does not have to await the consummation of
threatened injury to obtain preventive relief.  If the injury is
certainly impending, that is enough."  *Id.* at 883 (alteration
in original) (quoting *Thomas v. Union Carbide Agric. Prods.
Co.*, 473 U.S. 568, 581 (1985)).  We nonetheless held that
the inmates' Eighth Amendment claim was too speculative
because (1) there was "no evidence of a concrete injury
caused    by    actual    overcrowding,    intolerable
conditions, . . . and the like," and  (2) we could not
"conjecture with any reasonable measure of assurance what
impact the proposed double bunking would have on the
inmates."  *Id.*  In other words, the inmates' claims involved
"contingent future events that may not occur as anticipated,
or indeed not occur at all."  *Id.*

Here, by contrast, the factors identified in *18 Unnamed
John Smith Prisoners* counsel in favor of actual injury and
constitutional ripeness.  First, there are clear and concrete

injuries stemming from the imposition of the penalties. Taking Plaintiffs' factual allegations as true and drawing all reasonable inferences in their favor, the continued imposition of such significant penalties[7] has already caused Plaintiffs emotional and psychological distress. Plaintiffs also allege significant financial uncertainty because of these penalties, which the County does not dispute. These alleged injuries are sufficiently concrete to confer standing and establish that Plaintiffs' claim is ripe. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1109 (9th Cir. 2014) (recognizing emotional distress as a concrete and cognizable injury); *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1117 (9th Cir. 2017) (holding that allegations of "anxiety, stress, concern, and/or worry about [the plaintiff's] diminished employment prospects" presented concrete, cognizable injuries); *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010) (holding that "generalized anxiety and stress" can be sufficient to confer standing). Plaintiffs also allege that in the face of continuously imposed fines, they have spent money attempting to abate the violations by hiring engineers to inspect their property as well as attorneys to defend them in hearings. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) (recognizing standing where there is "a substantial risk that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm") (internal quotation marks and citation omitted)).

Second, unlike in *18 Unnamed John Smith Prisoners*, we can determine with reasonable certainty the impact of the penalties on Plaintiffs. Plaintiffs allege that the County

---

[7] At the upper end, Plaintiffs allege that the penalties imposed by the County can reach millions of dollars.

holds new owners responsible for violations and corresponding fines that were based on a prior owner's conduct. The amounts of the daily penalties are readily ascertainable from the number of days that have passed since the original imposition date. There is an objectively reasonable likelihood that these substantial penalties, which have already been imposed, financially burden Plaintiffs because Plaintiffs will have to pay them in full or settle with the County to avoid paying penalties they cannot afford. Thus, Plaintiffs have sufficiently alleged a concrete injury, and their Eighth Amendment claim is ripe.[8]

Decisions from our sister circuits addressing constitutional ripeness under the Excessive Fines Clause support our conclusion. The leading case is *Cheffer v. Reno*, 55 F.3d 1517 (11th Cir. 1995), which relied on our decision in *18 Unnamed John Smith Prisoners* to conclude that "challenges under the Excessive Fines Clause are . . . generally not ripe until the actual, or impending,

---

[8] In reaching the opposite conclusion, the district court relied on several other reasons purportedly demonstrating that Plaintiffs' alleged injuries were too speculative. For example, the court suggested that certain plaintiffs—specifically, Corinne and Doug Thomas—did not have standing because the previous owners of their properties were named as responsible parties, not the Thomases. Although the NOV attached to the Thomases' land was addressed to the previous owners, the Thomases specifically allege that, even after contacting the County and informing them that they were the new owners, the County has nonetheless held them responsible for the penalties. Moreover, the County Code itself defines a "Responsible Party" as "Any Owner, Beneficial Owner, [or] person . . . who has caused, permitted, *maintained*, conducted or otherwise allowed a Violation to occur."  HCC § 352-3(s) (emphasis added).   Based on this information, and drawing all reasonable inferences in the Thomases' favor, the Thomases have plausibly alleged that the penalties were directed at them.

*imposition* of the challenged fine." *Id.* at 1523 (emphasis added); *cf. Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1381 (11th Cir. 2019) (agreeing that a claim is not ripe because the plaintiff "does not allege that the City imposed a fine under that provision or that the imposition of a fine is immediately forthcoming"). Under this standard, Plaintiffs' Eighth Amendment claim is ripe. Under the plain terms of the County Code, the penalties *have* been imposed. *See* HCC § 352-3(m).

Moreover, the very reason the court in *Cheffer* found the claim unripe is not at issue here. In *Cheffer*, the plaintiffs alleged that they "*may* be arrested and convicted under [the relevant statute] and, if so, that they *may* be subject to the maximum imprisonment and civil penalties." 55 F.3d at 1524 (emphases added). As a result, the Eleventh Circuit concluded that the plaintiffs' "allegations amount[ed] to mere speculation about contingent future events." *Id.* Here, by contrast, Plaintiffs allege that they *have* been charged with violating the County Code, the daily fine has *automatically* accrued, and the County has reiterated on multiple occasions that Plaintiffs are responsible for paying the fine, thereby reducing the speculative nature of their injury.

In response, the County raises two arguments. First, the County suggests that the availability of an appeal hearing to contest the violation, before any penalty must be paid, indicates that Plaintiffs' allegations about the penalty "amount to mere speculation about contingent future events." *Cheffer*, 55 F.3d at 1524. And second, the County suggests that the authority of a hearing officer and other administrative and judicial officers to reduce a penalty underscores the contingent nature of the penalties. These arguments are unconvincing.

First, these arguments cannot change the fact that, by the time a responsible party obtains an administrative hearing—which, as Plaintiffs allege, can take years—the penalty will already have been imposed.  And, unless a hearing is requested within ten days of service of the NOV, there will be no administrative review before the penalty becomes collectable.  *See* HCC § 352-8(l)(i).

Second, given Plaintiffs' numerous allegations that the County has found them responsible and will not remove the penalties, there are fewer possible contingencies that could render Plaintiffs' alleged injuries speculative.  *See In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009) ("But plan completion is a single factual contingency—not a 'series of contingencies' rendering the decision 'impermissibly speculative.'" (quoting *Portland Police Ass'n v. City of Portland*, 658 F.2d 1272, 1273-74 (9th Cir. 1981))).  Plaintiffs do not need to demonstrate that it is "literally certain" that the harms they identify will materialize; therefore, the mere possibility that a hearing officer could determine that the penalties imposed were not warranted does not render Plaintiffs' alleged injuries speculative. *Clapper*, 568 U.S. at 414 n.5.

Third, assuming that a hearing officer does not terminate the proceedings, the officer's discretion to reduce any penalties is limited.  Indeed, according to the County Code, the hearing officer cannot reduce the penalty below the minimum amount set by the Code for the category of violation.   HCC § 352-12(b).   Here, cannabis-related offenses are classified as Category Four violations and carry a minimum penalty of $6,000 per day.  *Id*. § 352-6.  And because Plaintiffs allege that even this minimum amount is excessive, the hearing officer's discretionary authority to

reduce the fine to that amount does not make Plaintiffs' injuries contingent on the hearing officer's decisions.[9]

And fourth, as a factual matter, Plaintiffs' allegations cast doubt on the impartiality of the hearing officers. Indeed, Plaintiffs allege that the hearing officers are biased, such that Plaintiffs seem all but certain to face the penalty, even if they pursue an administrative hearing.

Our conclusion that Plaintiffs have standing to challenge the penalties already imposed upon them—but before payment—aligns with our precedents in other pre-enforcement standing and ripeness cases. In *Los Angeles Haven Hospice, Inc. v. Sebelius*, the plaintiff "was the object of [a] governmental action," specifically, "an individualized demand for repayment of over $2.3 million." 638 F.3d 644, 655 (9th Cir. 2011). We held that this alone was sufficient to establish a concrete injury. *Id.*; *see Susan B. Anthony List*, 573 U.S. at 159 (recognizing that a "plaintiff satisfies the injury-in-fact requirement" where "'there exists a credible threat'" that the government will enforce the challenged law (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)); *see also Babbitt*, 422 U.S. at 298 (recognizing that plaintiffs "should not be required to await and undergo criminal prosecution as the sole means to seeking relief" (quotation omitted)). Similarly, in *Hotel Employees & Restaurant Employees International Union v. Nevada Gaming Commission*, we held that "[w]here the

---

[9] The County points to cases where courts have reduced fines, citing for example *County of Humboldt v. Appellate Division of Superior Court*, 46 Cal. App. 5th 298, 304-05 (2020). As Plaintiffs argue, however, "[t]hat a court went beyond the text of the law to reduce mandatory fines worth more than a property's value does not preclude Plaintiffs from bringing an Eighth Amendment challenge to the penalties they face."

agency has threatened enforcement, the actual commencement of administrative enforcement proceedings is not necessary" to establish ripeness for a facial challenge to a regulatory system.  984 F.2d 1507, 1513 (9th Cir. 1993) (citing *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*., 461 U.S. 190, 201 (1983)); *see also Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1435 (9th Cir. 1996) (similar).

Finally, prudential ripeness considerations also counsel in favor of allowing the litigation to proceed.  As we observed in *Engquist*, prudential "[r]ipeness analysis has two prongs: the fitness of the issue for judicial review and the hardship to the parties if review is withheld." *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 1000 n.11 (9th Cir. 2007), *aff'd* 553 U.S. 591 (2008).  With respect to the "fitness" prong, we concluded that the constitutional challenges in that case "easily satisf[ied] both prongs of the ripeness test, as the issues presented are purely legal and delay will cause unnecessary hardship." *Id.*  Here, the issues are also purely legal, and at the motion to dismiss stage, we take the allegations in the amended complaint as true.

Likewise, Plaintiffs have sufficiently alleged that delay in adjudication will cause hardship.  For example, Plaintiffs allege that the County's conduct has resulted in such coercive force that several of the named plaintiffs have needed to "modify [their] behavior to avoid future adverse consequences." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 734 (1998).  Plaintiffs also allege that the County has used and will continue to impose penalties to coerce putative class members into undesirable settlements. Plaintiffs finally allege that the unique nature of this administrative penalty scheme causes even more fines and administrative fees to accrue over time. *Cf. id.* at 733

(suggesting that hardship can be demonstrated when the provisions challenged "subject [the plaintiffs] to any civil or criminal liability").

In sum, taking Plaintiffs' factual allegations as true and drawing all reasonable inferences in their favor, they have plausibly alleged a concrete injury as a result of the County's imposition of penalties, even before any payment.   We therefore conclude that Plaintiffs' claim under the Excessive Fines Clause is ripe.

## B. Timeliness

"Section 1983 does not contain its own statute of limitations." *Flynt v. Shimazu*, 940 F.3d 457, 461 (9th Cir. 2019) (quoting *Butler v. Nat'l Comm. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014)).   "Instead, claims brought under § 1983 are subject to the forum state's statute of limitations for personal injury suits."   *Id.* (citation omitted).   In California, "the relevant period is two years." *Id*. (citing Cal. Civ. Proc. Code § 335.1).   "Although state law determines the length of the limitations period, federal law determines when a civil rights claim accrues." *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (internal quotation marks and citation omitted).   "A claim may be dismissed as untimely pursuant to a 12(b)(6) motion only when the running of the statute of limitations is apparent on the face of the complaint." *United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (cleaned up).   The district court concluded that both Plaintiffs' facial and as-applied Eighth Amendment claims were untimely.   We disagree.

First, the district court erred in dismissing Plaintiffs' facial challenge because it was not brought within two years of the law's enactment.   The district court reasoned under

*Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020 (9th Cir. 2007), that all facial challenges against a local ordinance must be brought within two years of its enactment. As Plaintiffs correctly argue, however, we expressly rejected such a reading in *Scheer v. Kelly*, 817 F.3d 1183, 1187 (9th Cir. 2016). There, we recognized that *Action Apartment Ass'n, Inc.* applied only in the context of injury to property where "the very enactment of the statute [at issue] has reduced the value of the property or has effected a transfer of a property interest." *Id.* (quoting *Guggenheim v. City of Goleta*, 638 F.3d 1111, 1119 (9th Cir. 2010) (en banc)). By contrast, the statute of limitations begins to run on a claim (whether facial or as-applied) when a plaintiff "knows or has reason to know of the actual injury," not when the challenged ordinance was enacted. *Id.* at 1188 (quoting *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008)).

At the earliest, Plaintiffs' facial claim under the Excessive Fines Clause began to run when they received NOVs, the earliest point at which they could have known of the penalties at issue. Because at least some plaintiffs, for example the Thomases, allege they received their initial NOVs within two years of filing suit, we reverse the district court's dismissal of Plaintiffs' facial challenge as untimely.

Second, several of the named Plaintiffs appear to have timely as-applied challenges. The Thomases allege that they received their initial NOVs within the limitations period, so their as-applied challenge is timely. Although Rhonda Olson alleges that she received her initial NOVs shortly before the limitations period, she could nonetheless demonstrate timeliness in several ways. For example, because the NOVs were addressed to a different property owner, she may be able to prove that she did not know or

have reason to know *she* was subject to these penalties until later. The running of the statute of limitations is thus not apparent on the face of the complaint. *See Air Control Techs.*, 720 F.3d at 1178.

Additionally, even assuming that Olson should have known of her injury when she received the initial NOVs, the County continued to impose penalties associated with those NOVs during the limitations period. "When the continued enforcement of a statute inflicts a continuing or repeated harm, a new claim arises (and a new limitation period commences) with each new injury." *Flynt*, 940 F.3d at 462. In the excessive fines context, each imposition of a challenged fine is a new, distinct injury. *See* U.S. Const. amend. VIII (prohibiting "excessive fines *imposed*" (emphasis added)); *cf. Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act."). Because Olson alleges that the County imposed penalties on her well into the limitations period, and each imposition was a new unlawful act, Olson's as-applied challenge is not time-barred.

Finally, Olson may be able to prove that she was subject to a distinct unlawful act when, within the limitations period, the County issued a new NOV in her name, reimposing penalties after she disputed their basis. "Rather than being the inevitable consequence of an earlier decision [to issue the initial NOV], this decision [to issue a new NOV] was [plausibly] the result of 'independent consideration,'" and is therefore separately actionable. *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1061 (9th Cir. 2022) (quoting *Knox*, 260 F.3d at 1014). We reverse the district court's dismissal of the Thomases's and Olson's as-applied claims as untimely.

Plaintiff Cyro Glad's as-applied Eighth Amendment claim, however, appears to be untimely, even reading his complaint with the required liberality. Glad received his initial NOV nearly four years before this suit was filed and no daily penalties were imposed within the limitations period. Further, the NOV he received was addressed to him, so there is little question that he knew or should have known he was subject to the penalties at the time he received the NOV and for the ninety days during which daily penalties were imposed. While Glad may continue to face the coercive effects of the heavy penalties, that is not enough to make his as-applied claim timely. *See, e.g.*, *Garcia v. Brockway*, 526 F.3d 456, 462 (9th Cir. 2008) ("[A] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." (quoting *Ward v. Caulk*, 650 F.3d 1144, 1147 (9th Cir. 1981)). We therefore affirm the district court's order dismissing Glad's as-applied excessive fines claim as untimely.

## C. Plausible Claim

Next, we turn to whether Plaintiffs allege a plausible claim for relief under the Excessive Fines Clause.**[10]** Notably, our court has extended the protections of the Excessive Fines Clause to local penalties, fines, and fees. *See Pimentel v. City of Los Angeles* ("*Pimentel I*"), 974 F.3d 917, 922 (9th Cir. 2020); *see also Pimentel v. City of Los*

---

[10] The district court did not address whether Plaintiffs had alleged a plausible claim under the Excessive Fines Clause. Because our review is de novo and the issue is purely legal, we exercise our discretion to address it in the first instance. *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1214 (9th Cir. 2020) (quoting *Raich v. Gonzales*, 500 F.3d 850, 868 (9th Cir. 2007)).

*Angeles* ("*Pimentel II*"), 115 F.4th 1062, 1065 (9th Cir. 2024). "To determine whether a fine is grossly disproportional to the underlying offense, four factors are considered: (1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense." *Pimentel I*, 974 F.3d at 921. We conclude that Plaintiffs have plausibly alleged that the County's system of administrative penalties and fees violates the Excessive Fines Clause.

Plaintiffs allege that the penalties are clearly punitive, not remedial as argued by the County. As Plaintiffs allege, administrative penalties imposed by the County can reach millions of dollars. In the case of Olson, for example, the imposed penalty dwarfs the value of her property. And even if the penalties serve *some* remedial purpose, the Supreme Court has rejected, on a similar basis, the argument that such penalties are not punitive. *See United States v. Bajakajian*, 524 U.S. 321, 329 (1998) ("Although the Government has asserted a loss of information regarding the amount of currency leaving the country, that loss would not be remedied by the . . . confiscation of respondent's $357,144."); *see also Pimentel II*, 115 F.4th at 1067 (noting that only "purely remedial sanctions" are not subject to Eighth Amendment scrutiny).

With respect to the four factors identified in *Pimentel*, Plaintiffs have plausibly alleged that the fines at issue here are excessive. To assess the first factor, "[c]ourts typically look to the [alleged] violator's culpability." *Pimentel I*, 974 F.3d at 922. That is, "if culpability is low, the nature and extent of [their] violation is minimal." *Id.* "It is critical, though, that the court review the specific actions of the

violator rather than by taking an abstract view of the violation." *Id.* Here, the underlying offense is a property offense related to cannabis cultivation. More importantly, and considering the specific actions of the alleged violators, the amended complaint alleges that at least some of the plaintiffs have been charged with County Code violations that pre-date their occupation of their respective properties. At the time of their purchase and since then, Plaintiffs allege that the property was not used and has not been used for any cannabis cultivation or operation. In such cases, the nature and extent of the alleged violations are minimal. Indeed, even if plaintiffs like Olson were aware that the property had some past association with cannabis cultivation, Olson alleges that she was not aware of outstanding County Code violations because the County—contrary to the Code— failed to record the violations against the properties. HCC § 352-4(c).

Turning to the remaining factors, the second factor— "whether the underlying offense relates to other illegal activities"—supports Plaintiffs, even if the underlying offense is related to cannabis cultivation. *Pimentel I*, 974 F.3d at 923. Plaintiffs have plausibly alleged that such violations are either inaccurately charged or the fault of previous property owners. Likewise, the third factor— "whether other penalties may be imposed for the violation"—weighs in Plaintiffs' favor, as the permitting violations would carry a smaller fine if not for the tenuous nexus to cannabis, elevating the violations to Category 4 violations. *Id.* Moreover, it seems clear to us that lesser penalties could accomplish the same health and safety goals, and the County offers no reason to infer otherwise. And finally, as to the fourth factor, the "extent of the harm caused by the violation," Plaintiffs have alleged that the offenses

here have caused no harm beyond a technical lack of compliance with the County's cannabis permitting regulations. *Id.* As Plaintiffs argue on appeal, "[Olson] faces millions in penalties for what is now an empty field. No harm to the community justifies those penalties." *See also Bajakajian*, 524 U.S. at 340 (noting the absence of an "articulable correlation to any injury suffered by the government"); *Pimentel II*, 115 F.4th at 1072 (requiring the City to "provide *some* evidence that the penalty amount was actually tethered to the nature and extent of the harm caused by nonpayment").

In addition, Plaintiffs have alleged that the County's demolition orders are unconstitutionally excessive penalties. Importantly, the Eighth Amendment covers civil penalties like the demolition orders at issue here. *See Austin v. United States*, 509 U.S. 602, 610 (1993) (observing that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment" (quotation omitted)). Indeed, the removal of structures on a property owner's land is effectively an *in rem* forfeiture. *See Timbs v. Indiana*, 586 U.S. 146, 154 (2019) ("[C]ivil *in rem* forfeitures fall within the Clause's protection when they are at least partially punitive." (citation omitted)).

The County argues that "[a]batement of unlawful and potentially unsafe structures (like an unpermitted and uninspected tunnel under a [building]) is remedial, not punitive." Plaintiffs respond that the demolition orders also "serve to punish and deter unpermitted cannabis cultivation." Although a closer question than the imposition of penalties, taking Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, the demolition orders are at least partly punitive. Plaintiffs

allege that the orders target otherwise lawful structures simply because they once had a nexus to illegal cannabis cultivation, regardless of their effects on public health and safety. In the absence of other justifications, it is plausible that the demolition orders—and the significant expenses they pose to owners—serve, at least in part, to punish and deter unpermitted cannabis cultivation. Thus, for the same reasons as the penalties, Plaintiffs have plausibly alleged that the demolition orders violate the Excessive Fines Clause.

## IV. Conclusion

Local governments are often at the forefront of addressing difficult and complex issues. As a consequence, they undoubtedly require flexibility in their decision-making. Nonetheless, and as we have recently observed, "[t]he government cannot overstep its authority and impose fines on its citizens without paying heed to the limits posed by the Eighth Amendment." *Pimentel I*, 974 F.3d at 925. With this important caveat in mind, and for the foregoing reasons, we reverse the district court's dismissal of Plaintiffs' Eighth Amendment claim and remand for further proceedings consistent with this opinion.

**REVERSED in part, AFFIRMED in part, and REMANDED for further proceedings consistent with this opinion.**

Appellants shall recover their costs on appeal.