ROBERT H. PITTMAN #172154
County Counsel
MICHAEL A. KING #77014
Deputy County Counsel
County of Sonoma
575 Administration Drive, Room 105A
Santa Rosa, California 95403
Telephone: (707) 565-2421
Facsimile: (707) 565-2624
E-mail: michael.king@sonoma-county.org

Attorneys for Defendants
COUNTY OF SONOMA, TENNIS WICK,
TYRA HARRINGTON, MARK FRANCESCHI,
TODD HOFFMAN, JESSE CABLK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| RONALD CUPP<br><br>  Plaintiff,<br><br>vs.<br><br>COUNTY OF SONOMA, et al,<br><br>  Defendants. | CASE NO.: 4:23-cv-01007<br><br>**DEFENDANTS' CASE MANAGEMENT CONFERENCE STATEMENT (Cover page)  [FRCP Rule 26(f); Civil Local Rule 16-9]**<br><br>Date:  March 25 2025<br>Time: 2:00 p.m.<br>Location: Courtroom 6; 2nd Floor<br>Judge: Hon. Jon S. Tigar |

The parties to the above-entitled action met and conferred on January 7, 2025, after Defendants' counsel submitted a draft Joint Case Management Statement to Plaintiff counsel on January 3, 2025. Plaintiff counsel submitted two edited versions during and after that meet and confer discussion. Defense counsel agreed to both versions with the addition of a single sentence in Section 21B. Defense counsel advised Plaintiff counsel of the minor edit and approved the draft with that addition. After further request on January 8, Defense counsel submitted a separate document for filing. (ECF 70).

Defense counsel submitted a very similar draft to Plaintiff counsel on March 11, 2025, soliciting revisions and edits for filing a Joint Case Management Statement. Defense counsel also offered to meet

and confer telephonically. There was no response, so defense counsel sent another e-mail on Monday March 17, indicating that Defendants would again file a separate statement since there was no word from Plaintiff counsel, and no edits or revisions. Defendants submitted their own Statement on March 18. (ECF 72).

On April 30, 2025, Defense counsel submitted a similar draft to Plaintiff counsel with some updates based upon the Order Re: Defendants' Motion to Dismiss (ECF 73) and the status of the State Court action. Suggested calendar dates were entered without any confirmation from Plaintiff. Once again, Defense counsel solicited revisions and edits for filing a Joint Case Management Statement. There has been no response from Plaintiff counsel.

The attached Statement by Defendant primarily consists of Plaintiff's last draft from January 7, 2025, with one addition requested by Defense counsel on January 7 and a status update on the State Court Code Enforcement action set for trial June 13, 2025 (See Section 10). Although most of Plaintiff's draft language is retained from January 7, this proposed statement is not authorized in any way by Plaintiff counsel. No permission was given to a joint filing.

Dated: May 6, 2025

> By: /s/ *Michael A. King*
> MICHAEL A. KING,
> Deputy County Counsel
> Attorneys for Defendants

ROBERT H. PITTMAN #172154
County Counsel
MICHAEL A. KING #77014
Deputy County Counsel
County of Sonoma
575 Administration Drive, Room 105A
Santa Rosa, California 95403
Telephone: (707) 565-2421
Facsimile: (707) 565-2624
E-mail: michael.king@sonoma-county.org


Attorneys for Defendants
COUNTY OF SONOMA, TENNIS WICK,
TYRA HARRINGTON, MARK FRANCESCHI,
TODD HOFFMAN, JESSE CABLK, ANDREW SMITH

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| RONALD CUPP<br><br>　　　Plaintiff,<br><br>vs.<br><br>COUNTY OF SONOMA, et al,<br><br>　　　Defendants. | CASE NO.: 4:23-cv-01007<br><br>**[Draft] JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br>**[FRCP Rule 26(f); Civil Local Rule 16-9]**<br><br>Date:  May 13, 2025<br>Time: 2:00 p.m.<br>Location: Courtroom 6; 2nd Floor<br>Judge: Hon. Jon S. Tigar |

The parties to the above-entitled action submit this Joint Case Management Statement & Proposed Order pursuant to the Standing Order for All Judges of the Northern District of California and Civil Local Rule 16-9 and Civil Local Rule 16-9:

## 1. JURISDICTION & SERVICE

Cupp has served all Defendants. There are no issues regarding personal jurisdiction or venue. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), 28 U.S.C. § 2201 (declaratory relief), and 42 U.S.C. § 1983.

## 2. FACTS

A. Plaintiff's Statement of Relevant Facts:

In or around 2015 and 2017, as a response to California's legalization of cannabis, the County of Sonoma ("the County") enacted and implemented an official policy known as the "Code Enforcement Enhancement Program" (CEEP), which gave new and sweeping powers to the County's Code Enforcement Division ("CED"), part of the County's Permit Resources Management Department ("PRMD") a.k.a. Permit Sonoma. In 2019, the County augmented the new powers granted to CED by also enacting a clandestine policy authorizing the use of unmanned aerial vehicles a.k.a. "drones" to surveil private land in the County.

While ostensibly enacted to clear a backlog of old local code violations cases that had allegedly languished due to staffing shortages, the true intent and purpose of CEEP was to transform CED, which is not a "law enforcement" agency within the meaning of California laws, into a quasi-law enforcement agency to target unpermitted cannabis operation – particularly small-time operations. Once cannabis was legalized in 2016, and regulation was handed over to local jurisdictions, the County (by no means an outlier) immediately recognized the potentially revenue generating potential that lay in front of it. By enacting CEEP and implementing it the way the County has done, the County has created a government-sponsored revenue machine for the County at the expense of private landowners. As implemented,

CEEP has established and incentivized a concerted and purposeful government scheme to maximize revenue by squeezing every dollar possible out of the pockets of private landowners in the form of excessive fines and penalties for alleged local code violations.

To find these alleged code violations, CED officers routinely search private land – using drones and other, more traditional methods – without first obtaining inspection warrants. Receipt of a "confidential complaint" frequently triggers warrantless CED inspections. On information and belief, at least some of these complaints lack a complaining citizen, but due to confidentiality which cloaks such complaints, the landowner remains ignorant of the ruse. When inspection warrants are sought, it is often after the fact, and in case after case, CED officers present false and misleading declarations in support of an inspection warrant to judicial officers which hide or obfuscate their unconstitutional behavior.

The result for private landowners is to be caught between Scylla and Charybdis. On the one hand, they face a multi-pronged effort designed to maximize revenue while preventing compliance. The County imposes crippling fines for every possible violation a CED officer spies, characterizing them as health and safety violations to inflate their significance and cost. When violations cannot be found, they are manufactured out of whole cloth, including for conditions where the landowner holds a valid permit.

Once violated, landowners are given only the shortest possible window of opportunity to challenge the violations through an administrative appeal process – 10 days – after which time the violations are conclusively presumed to be accurate according to local ordinance. In almost every case, the County does not even advise the landowner of the total fees and penalties he owes in 10 days, so landowners do not appreciate the precariousness or gravity of the situation they now find themselves in. Even for the proactive landowners who timely requests an administrative appeal, the process is subject to County delays and may not even happen. It's an administrative quagmire for unsuspecting landowners.

Some landowners try to remedy the violations. If these landowners engage in self-help to remedy violations – e.g., they take down a shed voluntarily – their violations continue because they did not apply for an obtain a demolition permit and obtain a "sign off" on the demolition by a CED officer. When these landowners do apply for permits to remediate the alleged violations, however, they are often subjected to repeated and unexplained delays and forced to clear impossible administrative and procedural hurdles. All the while, their fines and penalties continue to increase on a per diem basis, even though the condition is long gone.

Under this per diem penalty regime, The County has no incentive to act promptly, if ever, for a landowner. To date, the County has not even granted a reprieve for landowners facing fines and penalties for the period when the County shut down entirely during the COVID-19 pandemic. The County is also reaching back in time to gather alleged violations that are 5, 10, and even 20 years old, applying fines and penalties calculations in disregard of current methods of calculations and in disregard of other County policies designed to protect landowners. It is little wonder then that counsel has met family after family facing financial ruin, holding bills from the County for $300,000, $500,000, or even $1 million dollars for so-called health and safety violations or "public nuisances" that are sheer fantasy trumped up CED officers.

On the other side of this scheme, landowners face a Charybdis whirlpool where, when they cannot pay off the fines and penalties, they are sued by the County, their land seized either through a receivership petition or a tax deed, and they are permanently dispossessed of their property.

Under either scenario, both of which were activated and instigated by formal County policies, landowners who come under County scrutiny are financially ruined, with many losing their entire life's savings or land their families have held for generations.

Plaintiff contends these policies either as enacted or implemented are unconstitutional, or they have enabled, promoted, instigated, or ratified a pattern of unconstitutional conduct by government

officials operating through Permit Sonoma. Specifically, Cupp contends these official County policies and the pattern of behavior or practices emanating from them, including but not limited to the use of drones to search private land without a warrant, subject the County to liability under the *Monell* Doctrine. Cupp contends his private land located at 4640 Arlington Avenue was subjected to a warrantless drone search in or about July 2022 by CED officers; namely, Defendants TODD HOFFMAN and JESSE CABLK. Cupp has reason to believe, based on information learned as recently as September 10, 2024, that his property *may* have been searched without a warrant by drones operating since July 2022 not only by CED, but also by other local agencies that work in tandem with CED such as the County Department of Agriculture ("the Ag Dept.") The Ag Dept. flies at least one drone over private land without warrants looking for unpermitted cannabis growing operations. The County is now attempting to seize Cupp's land through a tax sale as well. Cupp seeks compensatory, nominal, and punitive damages as well as injunctive and equitable relief.

Cupp filed a First Amended Complaint (FAC) on April 30, 2024; alleging some additional facts and additional violations by Defendants including a violation of the Eighth Amendment's prohibition against excessive fines and penalties levied by the County pursuant to one or more of its unconstitutional policies and practices under *Monell*. The County moved to dismiss the FAC under FRCP 12(b)(6).

B. <u>Defendants' Statement of Relevant Facts</u>:

Defendant County of Sonoma conducted various inspections of the property located at 4640 Arlington Avenue, Santa Rosa, CA, through its employees, due to notice of construction without permits, building code violations and zoning code violations.  Most of the issues raised in this litigation have been previously determined through prior litigation in *Cupp v. Smith*, Northern District Court Case No. 4:20-cv-03456 and the Administrative Hearing process available through the Sonoma County Code.

Plaintiff is also making new allegations of an unlawful drone search of the property at 4640 Arlington Ave, Santa Rosa in June 2022.  These allegations are denied.

Defendants are presently unaware of facts being claimed other than alleged in the Complaint, which are generally being denied.

### 3. LEGAL ISSUES

A. <u>Plaintiff's Statement of Legal Issues</u>:

This is Plaintiff's Statement of Legal Issues as they are presently framed by the Complaint and do not discuss any amendments Cupp intends to make.

(i) Whether Cupp has cognizable claims against Cablk or Hoffman for common law trespass or invasion of privacy as alleged in paragraphs 149 and 156 of the Complaint, related to the 2022 incident involving the use of a drone to search the Arlington Avenue property;

(ii) Whether Cupp has a cognizable claim against the County under the *Monell* Doctrine that the County has and continues to maintain one of more unconstitutional policies or practices related not only to the County's use of drones in violation of the 4th Amendment but also the County's policies and practices related to its methods of enforcement including but not limited to assessment of fines and penalties, use of local taxing authority and/or receivership procedures to seize private land from landowners, and use of other judicial and governmental agencies and procedures to impose unconstitutionally excessive fines and/or penalties in violation of the 8th Amendment.

(iii) Whether Cupp is entitled to compensatory damages based on any of the legal issues discussed in (i)-(ii), above, including but not limited to any fines, penalties, fees, or other damages incurred within two years before the filing of the Complaint in this action;

(iv) Whether Cupp is entitled to any additional compensatory damages beyond those stated in (iii), above, in light of the 9th Circuit's ruling in *Thomas v. County of Humboldt (Thomas)*, Case No. 23-15847, issued on December 30, 2024 [Allowing plaintiffs' putative class action to proceed alleging that the County of Humboldt's system of administrative penalties and fees pertaining to cannabis abatement violates the 8th Amendment's Excessive Fines Clause. Plaintiffs stated ripe and

cognizable claims for 8th Amendment violations; Plaintiffs plausibly alleged a sufficient concrete injury to satisfy standing due to the County's imposition of penalties, even before any payment. The continued imposition of significant penalties caused plaintiffs emotional and psychological distress, and they incurred expenses attempting to abate the violations by hiring engineers to inspect their property and attorneys to defend them in hearings.] *See,* Plaintiff's **Exhibit 1**, attached (unofficial copy) for the Court's convenience.

(v) Whether Cupp is entitled to either declaratory relief; specifically, Cupp seeks declaratory relief that one or more of the actions undertaken by Defendants as alleged in the Complaint were unconstitutional or unlawful;

(vi) Whether Cupp is entitled to injunctive relief; specifically, Cupp seeks injunctive relief enjoining Defendants from entering the private property of the residents of Sonoma County without first securing an inspection warrant unless (1) necessary due to exigent circumstances threatening life, health or safety; (2) Defendants have the consent of the owner or possessor of the property to enter without an inspection warrant; or (3) the property is "open field" or the search is conducted from a public vantage point.

B. <u>Defendants' Statement of Legal Issues</u>:

For purposes of this Statement, Defendants do not dispute that Plaintiff is claiming the issues stated above.  Defendant raised as defenses in their Motions to Dismiss pursuant to FRCP Rule 12: claim and issue preclusion, statutes of limitation, absolute and qualified immunities under Federal and State law, reasonableness of defendants' conduct, plaintiff's failure to mitigate damages, failure to timely file a tort claim, and other defenses as may appear to be warranted after the pleadings are settled.

### 4. MOTIONS

A. <u>Plaintiff's Position</u>: The pleadings will likely need to be amended further in light of the *Thomas* decision. Cupp has built this into the proposed schedule, and it should not require any further delay in commencing discovery.

B. <u>Defendants' Position</u>: This Court has already determined some of the issues raised in the First Amended Complaint. Defendants filed a Motion to Dismiss all the allegations in the First Amended Complaint. They also requested dismissal of any injunctive and declaratory relief based upon the *Younger* Abstention Doctrine.

Defendants anticipate filing a motion for summary judgment in the event that any claims remain after discovery. Defendants do not presently anticipate filing any discovery motions. There does not appear to be any basis for excessive depositions or written interrogatories.

### 5. AMENDMENT OF PLEADINGS

A. <u>Plaintiff's Position</u>: Plaintiff anticipates substantial discovery issues. Absent a stipulation, Cupp will seek an order allowing the number of depositions to exceed the number provided in Fed R. Civ. Proc. Rule 30(a)(2)(A)(i). Cupp also intends to move for injunctive relief as alleged in the Complaint. Cupp may file a motion for summary judgment after discovery. Cupp will file all appropriate pre-trial motions in limine.

B. <u>Defendants' Position</u>: No new amendments to the Complaint should be entertained by the Court. The Court clarified the limited issues still remaining in this case, in its Order Granting in Part and Denying in Part Defendants' Motions to Dismiss. (ECF 73).

### 6. EVIDENCE PRESERVATION

A. <u>Plaintiff's Position</u>: Plaintiff's counsel has reviewed the Court's *Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information* ("ESI Guidelines") and discussed them in detail with Cupp. Due to scheduling conflicts and defense counsel's need to have surgery, counsel was

unable to conduct an in-depth Rule 26(f) meet and confer until June 13, 2023.

At the telephonic conference on June 13, 2023, an attempt was made to discuss the ESI checklist that forms part of the Northern District's approved Guidelines for the Rule 26(f) conference. Cupp's counsel was prepared to provide all the information required by the checklist, and indeed, did provide said information on Cupp's behalf. Defense counsel either did not know the answers to many of the topics contained in the ESI Checklist, or he was unprepared to discuss them on June 13, 2023. Defense counsel acted as though a discussion of the ESI Checklist was catching him utterly by surprise. He promised instead to provide the information at some later date, despite the fact the Rule 26(f) conference had been scheduled for date prior to June 13. When Cupp's counsel pressed for a date when the information would be provided and suggested that the information be provided no later than June 26, 2023 along with a mutual exchange of the parties initial disclosures – which has also not yet occurred – defense counsel became irate. He would not commit to the date offered or any date for providing the additional ESI information or exchange disclosures. With regard to the initial disclosures, defense counsel stated, "We are not required to." With regard to providing further ESI information, defense counsel stated, "You'll get what you get." Not surprisingly, this lack of cooperation led to a breakdown in the Rule 26(f) conference. Consequently, from Cupp's counsel's perspective, no agreement or understanding was reached on many ESI issues, nor is there any understanding as to when, if ever, an exchange of initial disclosures of information will take place. This necessitated Cupp's counsel having to write an extensive letter to defense counsel following the conference, confirming what unfortunately had taken place.

B. <u>Defendants' Position</u>:   Defense counsel was ready to discuss these issues prior to June 13, 2023, and was provided Plaintiff's request for discussion on ESI Guidelines on June 13.  The parties discussed the guidelines at length and Defense counsel is aware of what Plaintiff wants to be preserved and generally what sections of the guidelines Plaintiff counsel believes should be provided by

Defendants. Defense counsel now believes that the scope of discovery has been significantly narrowed by the Court's ruling on the Rule 12 Motions. All discovery should be based upon the present pleadings, not the original Complaint.

## 7. DISCLOSURES

A. <u>Plaintiff's Position</u>: At present, neither side has served initial disclosures. No discovery has occurred, and no depositions have been taken. Again, the only reason these steps have not been taken on Plaintiff's behalf is due to counsel's illness as explained in the Young Declaration.

B. <u>Defendants' Position</u>:

The parties discussed this issue on June 13, 2023. Defendants believe that initial disclosures (and discovery) before the pleadings are settled, are a potential waste of both parties' time and resources. Defendants will prepare Initial Disclosures based upon the few remaining issues in this case following the Order on the Motion to Dismiss the First Amended Complaint. (ECF No. 73).

## 8. DISCOVERY

A. <u>Plaintiff's Position</u>:

(i) <u>Protective Order</u>: Cupp intends to conduct discovery into specific matters related to the County's policies, procedures and practices related to inspections of private property by Permit Sonoma/Code Enforcement and its permit approval process. It is anticipated the defense will want a protective order limiting the dissemination of this information. Cupp's position is that at least some of the information may already be in the public sphere. To the extent the information has not previously been made public by the County, Cupp's position is that the information is a matter of public concern to the people of the County, and that the information belongs to the people and not the County. Subject to the Court's orders, Plaintiff's counsel reserves the right to discuss this matter with members of the press, specifically including but not limited to the Sonoma County Press Democrat.

(ii) <u>Initial Disclosures</u>: Neither side has exchanged initial disclosures. These should be

ordered forthwith, and Cupp requests an order to that effect.

(iii) <u>Subjects of Discovery</u>: Cupp contends that discovery will pertain to all claims and defenses alleged by any of the parties. Cupp expects that discovery will include, but not be limited to, all communications and correspondence, including emails, voicemail, or other electronic communications, that discuss, describe, evidence, or pertain to Cupp or the Arlington Avenue property, specifically, from on or about January 2019 up to an include the present time, as certain allegations in the Complaint are continuing. Discovery will also include, but not be limited to, policies, practices and procedures undertaken by the County from 2010 to not later than June 2022, including statistical data, that pertains to inspections of private property by Permit Sonoma/Public Resource Management Department/Code Enforcement, applications for inspection warrants to conduct inspections, procedures related to and the manner in which administrative citations are issued and hearings are conducted, the County's methodology for calculating fines and penalties against property owners for Code violations, cooperation between Code Enforcement and local law enforcement agencies in conduct searches without warrants (either search or inspection warrants), and the role of County Counsel's office in these matters.

<u>Electronic Discovery</u>: Cupp believes an electronic discovery order will be necessary in this case based on Plaintiff's counsel's prior dealings with the County and its rather narrow view of discovery, particularly its approach to e-discovery. Plaintiff agrees most documents may be produced as searchable PDFs without metadata. However, there are exceptions, including spreadsheets, database records or information, texts and chat applications, and emails, which should be produced in native or near-native format with any software needed to view them. Cupp anticipates collecting drone-related data, including video and geo-positioning data that will also require special handling and production.

<u>Privilege Claims</u>: No order is sought at this time.

<u>Timing of Discovery</u>: No discovery has been conducted. Discovery should commence immediately. No reason exists to delay discovery in this matter, particularly in light of the *Thomas*

decision. Both parties have conducted discovery in the underlying state case, *County of Sonoma v. Cupp*, Case No. SCV-273578, but the County has successfully managed to forestall any further discovery by Cupp in that matter, which will be the subject of further motions. This is all the more reason why discovery should be commenced here.

To that end, Cupp will serve today a brief FRCP Rule 34(a) Request to Produce Documents, seeking documents and electronically stored information which Cupp knows the County has already compiled in response to one or more Public Records Act (PRA) Requests served on the County late last year by the American Civil Liberties Union (ACLU), which has been investigating the County's use of Code Enforcement for many months in possible preparation for its own lawsuit. Because the County has already compiled and provided this documentation to the ACLU, it is required by law to provide it to Cupp if Cupp served a PRA Request. GOV'T CODE § 7921.300 [No limitation allowed based on purpose for which records are sought]; GOV'T CODE § 7922.500 [Public agency not permitted to delay or obstruct the inspection or copying of public records]; GOV'T CODE § 7921.500 [Administration of agency under inspection allowed unless disclosure is otherwise prohibited by law]; (Added by Stats. 2021, Ch. 614, Sec. 2. (AB 473) Effective January 1, 2022. Operative January 1, 2023, pursuant to Sec. 7931.000); GOV'T CODE § 7921.505(b) [if a state or local agency discloses to a member of the public a public record that is otherwise exempt from this division, this disclosure constitutes a waiver of the exemptions allowed under PRA including Sections 7920.505, 7924.510, 7924.700, and other similar provisions of law].

Discovery Limits: Cupp anticipates that this matter will require more than ten (10) depositions as provided in Rule 30(a)(2)(A)(i) and sought a stipulation from defense counsel to exceed the number provided by the rule at the Rule 26(f) conference on June 13, 2023. In order to establish a *Monell* claim based on a practice or procedure, Cupp must demonstrate that his treatment by Defendants was not an isolated incident, necessitating the deposition of a number of other affected property owners.

Plaintiff's counsel has submitted, and continues to submit, declarations from property owners who will need to be deposed. The number of affected property owners who have signed declarations already approaches ten (10) individuals, and there are several more that Cupp has yet to submit. It was Cupp's counsel's understanding that defense counsel had agreed to the stipulation, but based on his additions to this joint statement, Cupp's counsel is now not so certain.

At the Rule 26(f) conference, counsel agreed to depart from Rule 33(a) and, further, that each side could propound up to 60 interrogatories total. Now, defense counsel is "seeking guidance" from the Court, so evidently, defense counsel is backing out of the stipulation reached at the Rule 26(f) conference.

Cupp agrees to serve all discovery requests and responses by electronic mail. Cupp proposes that for purposes of computing time, service of discovery requests by email shall be treated as if service was made by U.S. mail pursuant to Fed. R. Civ. P. 5(b)(2)(C). It is unclear if defense counsel agrees to treat this service as if it is service by mail.

Finally, Cupp proposes that any expert witnesses be deposed by remote video conferencing if the expert is located more than 50 miles from Santa Rosa, California, and that the video depositions may be used at trial. Cupp will explore an appropriate stipulation with Defendants' counsel. It is unclear if defense counsel agrees that the video testimony can be used at trial in lieu of live testimony.

B. <u>Defendants' Position</u>:

Discovery can proceed based upon the remaining claims.  Initial disclosures can also proceed since the Plaintiff's pleadings are settled.  There is no legitimate reason to direct discovery to non-parties (any defendant who was dismissed), nor to allow a wide and unrestrained scope of discovery since Plaintiff is not allowed to proceed on numerous claims and causes of action.  There will undoubtedly be substantial disagreements on the responses (by either side) and a request for referral to a magistrate judge for assistance resolving the disagreements.

Defendants believe that based upon the Court's decision on the Rule 12 Motions, that the number of depositions will be limited and not exceed the amount allowed per side by Federal rule. The number of interrogatories should not exceed more than 25 per side. There is no basis under the pleadings about a single incident which is factually disputed, that any significant discovery is necessary. The alleged June 2022 drone flyover incident took place long after the inspections of the property; and the drone policy will be irrelevant if there is no drone flyover as alleged. The remaining issues are moot based upon this Court's Ruling on the Rule 12b Motion.

The parties will seek guidance from the Court in the event that agreement cannot be reached about the total number of depositions and interrogatories per side.

Defendants agrees to electronic service of discovery requests and responses, but it should be noted that many of the records that may be requested are not electronic records, but are documents downloaded for storage from paper records.

Defendants agree to depositions of expert witnesses via remote video conferencing; and possibly with use of the video testimony at trial in lieu of live testimony.

## 9. CLASS ACTIONS

A. <u>Plaintiff's Position</u>: This is no longer an issue, so the defense position is moot.

B. <u>Defendants' Position</u>: Based upon the Plaintiff's acknowledgment, no further position is needed.

## 10. RELATED CASES

A. <u>Plaintiff's Position</u>: Subsequent to the filing of this case, Defendants filed the state case mentioned below. There is also a related matter now filed, *Meyer v. County of Sonoma*, Case No. 3:24-cv-09056, which was filed on December 13, 2024. That case was just served in April 2025.

B. <u>Defendant's Position</u>:  *County of Sonoma v. Ronald Cupp*, Case No. SCV 273578 was filed in the Superior Court of California, Sonoma County.  This case was filed to enforce the Administrative

JOINT CASE MANAGEMENT CONFERENCE STATEMENT -CASE NO: 4:23-CV-01007 - 14

Hearing Decision pertaining to this property. Work was commenced pursuant to permits and has been completed for the most part.  There are outstanding issues of civil penalties, staff and counsel costs, since the other issues were resolved via the Administrative Hearing.  Court trial is set for June 13, 2025.

## 11. RELIEF

A. Plaintiff's Position: Under the current Complaint, Cupp seeks the following relief: compensatory damages, punitive damages against individual Defendants (on state law claims), declaratory and injunctive relief. Cupp also seeks an award of attorney's fees and costs as well as interest as allowed by law.

B. Defendants' Position:  There is no legal or factual basis for recovery of any damages or for any form of injunctive relief.

## 12. SETTLEMENT AND ADR

A. Plaintiff's Position: Plaintiff requests a referral to a Magistrate Settlement Conference once the pleadings are settled and some discovery has occurred.

B. Defendants' Position:  The parties attempted to resolve many of the issues presented in this case, with the Honorable Kandis A. Westmore after referral in Case No. 4:20-cv-03456.  Defendants are amenable to referral to Judge Westmore, or another Magistrate Judge.  Defendants' settlement position has changed significantly since those discussions in 2022.

## 13. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

A. Plaintiff's Position: Plaintiff has already objected to magistrate judge jurisdiction, but as noted above, Cupp will consent to a referral to a Magistrate Settlement Conference.

B. Defendants' Position: Not applicable.

## 14. OTHER REFERENCES

A. Plaintiff's Position: Based on the outcome of the Rule 26(f) conference, Plaintiff anticipates the potential need for a discovery referee. Plaintiff is not making that a formal request at this time, but

reserves the right to make this request should a lack of cooperation persist.

B. <u>Defendants' Position</u>: None at this time.

### 15. NARROWING OF ISSUES

A. <u>Plaintiff's Position</u>: This issue was previously addressed in the discussion above regarding Defendants' motions to dismiss.

B. <u>Defendants Position</u>:  Defendants believe that the issues have been narrowed significantly as a result of its Motions to Dismiss.  They anticipate further narrowing of issues and final judgment via Motion.

### 16. EXPEDITED TRIAL PROCEDURE

A. <u>Plaintiff's Position</u>: Cupp does not believe this matter can be handled under the expedited trial procedures.

B. <u>Defendants' Position</u>:  It is possible that after the motions to dismiss, the issues in this case can be handled via expedited trial procedures.

### 17. SCHEDULING

<u>Plaintiff's Position</u>:

| Action/Activity/Proceeding | Due Date/Deadline/Hearing Date |
|---|---|
| Amendments in light of *Thomas* Decision, if any are necessary | |
| Close of fact discovery | October 31, 2025 |
| Expert disclosure/reports due | January 9, 2026 |
| Expert/rebuttal reports due | January 23, 2026 |
| Expert discovery cut-off | February 13, 2026 |
| File motions for summary judgment by | TBD |

| File oppositions to motions for summary judgment by | TBD |
|---|---|
| File replies to motions for summary judgment by | TBD |
| Pre-trial conference | TBD |
| Trial | TBD |

B. Defendants' Position: Defendants expect neither fact nor expert discovery should not take very long based upon the ruling on the Motions to Dismiss. The issues are very narrow at present.

## 18. TRIAL

A. Plaintiff's Position: Plaintiff has demanded a jury trial and estimates the trial would take 5 full days as the pleadings are framed presently. The trial time could be longer if additional parties or claims are added, or if the matter is certified as a class.

B. Defendants' Position: The trial should be shorter depending upon the remaining issues.

## 19. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

A. Plaintiff's Position: Plaintiff has no such interests to report.

B. Defendants' Position: None known at present.

## 20. PROFESSIONAL CONDUCT

A. Plaintiff's Position: Plaintiff's counsel has reviewed the Guidelines for Professional Conduct for the Northern District of California.

B. Defendants' Position: Defense counsel has reviewed the Guidelines for Professional Conduct for the Northern District of California.

## 21. OTHER MATTERS FOR CONSIDERATION

A. Plaintiff's Position: It is of paramount concern and importance that this matter proceed, particularly that disclosure and discovery commence at once. Any further delay prejudices Cupp, emboldens the County's continued violations of the Constitutional rights of its people, and

promotes obstructionist litigation tactics the FRCP expressly forbids. FRCP Rule 1.

Delay, delay, delay is the County's "M.O." It is front and center in the underlying state case where the County has sought to compel discovery from Cupp when it suits them, but seek protective orders from the Court when Cupp tries to obtain discovery from the County. This has led to lop-sided decisions by the state court, which will be subjects of further motions. There is simply no merit to Defendant's position that neither discovery nor disclosures should commence until the pleadings are settled. Defendants want to have their "cake and eat it too."

B. <u>Defendants' Position</u>: Defendants disagree with comments made by Plaintiff counsel in this section and related sections.

Dated: May 6, 2025  Robert H. Pittman, Sonoma County Counsel

By: *Michael A. King*
MICHAEL A. KING,
Deputy County Counsel
Attorneys for Defendants