JOSHUA A. MYERS #250988
County Counsel
MICHAEL A. KING #77014
Deputy County Counsel
County of Sonoma
575 Administration Drive, Room 105A
Santa Rosa, California 95403
Telephone: (707) 565-2421
E-mail: michael.king@sonomacounty.gov

Attorneys for Defendants
COUNTY OF SONOMA, TODD HOFFMAN,
JESSE CABLK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA-OAKLAND COURTHOUSE

RONALD CUPP,

Plaintiff,

vs.

COUNTY OF SONOMA, et al;

Defendants.

Case No. 4:23-cv-01007 JST

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Rule 56

Date: May 21, 2026
Time: 2:00 p.m.
Courtroom: 6, 2nd Floor
Judge: John S. Tigar
Trial Date: July 13, 2026

TO PLAINTIFF RONALD CUPP AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on May 21, 2026 at 2:00 p.m., or as soon thereafter as the matter may be heard in the above-entitled Court located at Oakland, California, Defendants COUNTY OF SONOMA, TODD HOFFMAN, and JESSE CABLK ("County Defendants") will and hereby do move this Court for Summary Judgment in relation to the remaining claims in First Amended Complaint ("FAC") filed on April 30, 2024. (ECF #49). County Defendants' Motion to Dismiss the First Amended Complaint was granted as to all claims except Plaintiff's Monell claim regarding its drone policy against the County, and the trespass and invasion of privacy claims against the individual employee Defendants. (ECF #73, p. 16: 11-13.)

This Motion for Summary Judgment is brought pursuant to Federal Rules of Civil Procedure Rule 56, on the grounds that there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law as to Plaintiff's various causes of action. This Motion is based on this Notice, Memorandum of Points and Authorities, the supporting Declarations of Jesse Cablk, Todd Hoffman, and Michael King along with any attached exhibits and such further evidence and oral argument as may be presented on this matter.

Dated: March 11, 2026

JOSHUA A. MYERS, County Counsel

By: Michael A. King

Michael A. King
Deputy County Counsel
Attorneys for Defendant

# TABLE OF CONTENTS


I. INTRODUCTION ..... 7

A. Issues Decided in Other Actions ..... 7

B. Status of this Action ..... 8

II ISSUES PRESENTED: ..... 8

III. STATEMENT OF RELEVANT FACTS ..... 9

A. June 1, 2022 Incident ..... 9

B. Damages Claimed ..... 10

IV. LEGAL ANALYSIS ..... 10

A. Legal Standard for Summary Judgment ..... 10

B. Plaintiff Does Not Have A Viable Monell Claim ..... 12

1. No Evidence or Law Supports Liability ..... 12

2. Drone Use by County is Constitutional ..... 14

3. No Causal Link Exists Between Any Policy and Injury to Plaintiff ..... 16

C. No Trespass Occurred Since Plaintiff Did Not Enter the Property ..... 16

D. There is No Basis for an Invasion of Privacy Claim ..... 17

E. Defendants Cablk and Hoffman Are Immune from Liability for Trespass or Invasion of Privacy ..... 19

F. Plaintiff Sustained No Harm Related to the Alleged Drone Activity ..... 21

V. CONCLUSION ..... 22

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242, 248 (1986) .................... 10, 11

*Artes-Roy v. City of Aspen*
31 F.3d 958 (10th Cir. 1994) .................... 14

*Barren v. Harrington*
152 F.3d 1193, 1194 (9th Cir. 1998) .................... 16

*California v. Ciraolo*
476 U.S. 207, 215 (1986) .................... 14

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) .................... 10

*Chapman v. United States*
365 U.S. 610, 616-17, 81 S. Ct. 776, 5 L. Ed. 2d 828 (1961) .................... 18

*City of Canton v. Harris*
489 U.S. 378, 385 (1989) .................... 11, 16

*City of Los Angeles v. Heller*
475 U.S. 796, 799, (1986) .................... 13

*Dougherty v. City of Covina*
654 F.3d 892, 900 (9th Cir. 2011) .................... 12

*Erdman v. Cochise County, Arizona*
926 F.2d 877, 882 (9th Cir. 1991) .................... 16

*Florida v. Riley*
488 U.S. 445 (1988) .................... 15

*Galen v. Cty. of L.A.*
477 F.3d 652, 667 (9th Cir. 2007) .................... 13

*Gant v. Cnty. of Los Angeles*
772 F.3d 608, 618 (9th Cir. 2014) .................... 12

*Gregory v. County of Maui*
523 F.3d 1103, 1109 (9th Cir. 2008) .................... 13

*Gygax v. Grule*
1994 U.S. Dist. LEXIS 18114 (N.D. CA 1994) .................... 14, 16

*Hernandez v. Hillsides, Inc.*
47 Cal. 4th 272, 286 (2009) .................... 17

*Hill v. National Collegiate Athletic Assn.*
7 Cal.4th 1, 39–40 (1994) .................... 18

*Horton v. City of Santa Maria*
915 F.3d 592, 602-03 (9th Cir. 2019)........................................................................ 13

*Johnson v. City of Loma Linda*
(2000) 24 Cal.4th 61, 70.................................................................................................. 7

*Lynn v. Sheet Metal Workers Int'l Ass'n.*
804 F.2d 1472, 1478 (9th Cir. 1986)............................................................................ 11

*Mangino v. Incorporated Village of Patchogue*
739 F. Supp. 2d 205, 234 (E.D. N.Y. 2010)................................................................. 19

*Marcavage v. Borough of Lansdowne, Pa.*
826 F. Supp. 2d 732, 741 (E.D. Pa. 2011).................................................................... 19

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*
475 U.S. 574, 586–587 (1986) ..................................................................................... 11

*McBride v. Smith*
18 Cal. App. 5th 1160, 1174 (2018)............................................................................. 17

*Mezger v. Bick*
66 Cal.App. 5th 76 (2021) ........................................................................................... 19

*Monell v. Department of Soc. Svcs.*
436 U.S. 658 (1978) ............................................................................................... passim

*Ogborn v. City of Lancaster*
101 Cal.App.4th 448 (2002)......................................................................................... 20

*Oliver v. United States*
466 U.S. 170 (1984) ..................................................................................................... 15

*Pohlman v. Torres*
2015 U.S. Dist. LEXIS 69214*17-18 (C.D. Cal. 2015)................................................ 18

*Prebilich v. City of Cotati*
2021 U.S. Dist. LEXIS 240549, at *3 (N.D. Cal. 2021)............................................... 12

*Ralphs Grocery Co. v. Victory Consultants, Inc.*
17 Cal. App. 5th 245, 262 (2017)................................................................................. 17

*Rutherford v. Cal.*
188 Cal. App. 3d 1267 (1987)...................................................................................... 20

*Scott v. Harris*
550 U.S. 372, 380 (2007) ............................................................................................. 11

*Shanko v. Lake Cnty.*
116 F. Supp. 3d 1055 (N.D. CA 2015)......................................................................... 21

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*
809 F.2d 626, 630 (9th Cir. 1987)................................................................................ 11

*Trevino v. Gates*
99 F.3d 911, 918 (9th Cir. 1996).................................................................................. 12

*United States v. Dunn*
480 U.S. 294 (1987) ........................................................................................ 15, 16

*United States v. Warner*
843 F.2d 401, 403 (9th Cir. 1988) ................................................................ 18

*Veiseh v. Stapp*
35 Cal.App.5th 1099, 1105 (2019) ................................................................ 17

*Villiarimo v. Aloha Island Air, Inc.*
281 F.3d 1054, 1061 (9th Cir. 2002) ............................................................ 11

*Widgren v. Maple Grove Township*
429 F.3d 575, 579-80 (6th Cir. 2005) ............................................................ 14

*Wilson v. Interlake Steel Co.*
32 Cal.3d 229, 233 (1982) ............................................................................ 17

**Statutes**

42 United States Code
§ 1983 ...................................................................................................... 12, 13, 16

California Goverment Code
§ 820.4 ...................................................................................................... 19, 20

California Government Code
§ 820.6 ...................................................................................................... 20

California Government Code
§ 821.8 ...................................................................................................... 19, 20

California Government Code §821.6 ................................................................ 19, 20

Government Code
§820.2 ...................................................................................................... 20

**Rules**

Federal Rule of Civil Procedure
Rule 56 ...................................................................................................... 2, 10, 11

**Constitutional Provisions**

United States Consititution
Fourth Amendment ......................................................................................... 14, 15, 16

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

The Verified First Amended Complaint for Damages ("FAC"), filed herein by Plaintiff Ronald Cupp ("Plaintiff"), alleges that Defendants violated rights that Mr. Cupp has under Federal statute and under California law. (Dkt. No. 49.) The genesis of this case arises from the first County Code Enforcement inspection on February 15, 2019 finding building and zoning code violations, aerial images in early 2020, and a later July 30, 2020 inspection with a warrant, finding additional violations, including unpermitted cannabis cultivation violations. These inspections were the subject of prior litigation filed in this Court by Plaintiff Ronald Cupp, entitled *Cupp v. Smith*, Case No. 20-cv-03456.

**A. Issues Decided in Other Actions**

The Honorable Phyllis J. Hamilton dismissed the same basic *Monell* claims as are now being raised again in this lawsuit. Judge Hamilton found there was insufficient allegation that any County policy caused the purported violations. (Exhibit No. 11, pp. 6-11). She expressly found that drone activity over private land, was not unconstitutional per se. (Exhibit No. 11 pp. 9: 20 - 10: 5). She also denied a restraining order regarding the July 30, 2020 inspection with a warrant, based upon plaintiff's failure to show he was likely to succeed on the merits of due process and unlawful entry claims. (Exhibit No. 10, pp. 5-6.)

After the Orders by the Honorable Phyllis Hamilton dismissing almost all causes of action and defendants in that action, Plaintiff Cupp chose not to proceed to trial. The action was dismissed with prejudice against the remaining Defendant Andrew Smith, and Judgment was entered on his behalf on March 30, 2023. (Exhibit No. 12.)

The County of Sonoma also prevailed in an Administrative Hearing against Ronald Cupp. The February 11, 2021 Statement of Decision and Administrative Order (Exhibit No. 9) is a final decision confirming the existence of the violations and the requirement to abate. *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 70. The abatement process was commenced in late July 2021. It was the subject of an abatement

action, *County of Sonoma v. Ronald Cupp* filed on June 23, 2023 in Superior Court, Sonoma County, Case No. SCV-273578. (Exhibit No. 13, pp. 1: 26- 2: 4.)

The Code Enforcement case was tried in October 2025 and is nearing a final Judgment The Court has just issued a Final Statement of Decision after the proposed Statement of Decision, was objected to by counsel for Ronald Cupp. (Ex. No. 13.)

**B. Status of this Action**

Plaintiff alleges in this case, unconstitutional or unlawful policies and practices to conduct unlawful searches including the February 15, 2019 inspection, the July 30, 2020 inspection, and aerial drone searches. (E.g., Dkt. No 49, p. 2). When dismissing *Cupp v. Smith*, Case No. 20-cv-03456 with prejudice. Plaintiff obviously intended to continue his attack against the County of Sonoma and its employees. He filed this action on March 6, 2023. After successive motions to dismiss were successfully filed, the Honorable Jon S. Tigar whittled down the number of Defendants and claims remaining in this case. (Dkt. Nos. 42 and 73.) The Plaintiff's remaining claims are trespass and invasion of privacy against Jesse Cablk and Todd Hoffman for a drone flight on June 1, 2022, and a *Monell* claim by Mr. Cupp against the County involving its drone use policy. These claims have no basis in fact or law.

County Defendants request that the Court grant this motion with prejudice as to each clam individually and jointly and grant them judgment against Plaintiff Ronald Cupp.

**II ISSUES PRESENTED:**

1. Whether Plaintiff's *Monell* claim against the County for its drone use policy is valid for any reason, since the policy itself is constitutional and the single remaining actionable instance of drone activity is neither unconstitutional, nor did it concern Plaintiff's privacy.

2. Whether the Plaintiff's claims of trespass and invasion of privacy under California law is barred since the actual facts and law do not support such a claim.

3. Whether the claims of trespass and invasion of privacy under California law are barred by immunities granted Defendants under the California Government Code.

## III. STATEMENT OF RELEVANT FACTS

### A. June 1, 2022 Incident

The County of Sonoma, Code Enforcement inspections of the property at 4640 Arlington Ave, Santa Rosa, California ("Property") started on February 15, 2019 and included the inspection of July 30, 2020 that led to multiple violations being assessed against Ronald Cupp. Any claims pertaining to those events and any County of Sonoma Code Enforcement policies, were resolved by the Judgment in Case No. Case No. 20-cv-03456, or in the prior rulings in this case granting Motions to Dismiss. (Exhibit No. 12; Dkt. Nos. 42 and 73.) The remaining claims in this case concern a single drone flight to inspect neighboring property by Code Enforcement Inspector Jesse Cablk on June 1, 2022. Co-defendant Todd Hoffman was only acting as an observer.

The drone flight on June 1, 2022 did not cross into airspace over any building or the property at 4640 Arlington Ave., Santa Rosa. The flight did not even involve Mr. Cupp's Property. The drone flight on June 1, 2022 was inspecting the neighboring 4656 Arlington Ave., not the Cupp Property. Neither Jesse Cablk, nor Todd Hoffman entered 4640 Arlington Ave. on June 1, 2022. The drone they were using was being flown from a spot on Millbrae Avenue and taking photographs of the cannabis cultivation on the neighboring property. (Declarations of Jesse Cablk and Todd Hoffman; Exhibit Nos.1, 2, 3.)

Mr. Cupp's friend and partner, Antonio Cruz, was at 4640 Arlington Ave to inspect ongoing construction, at the time of the drone flight on June 1, 2022. He took a video clip of the drone from his position on the roof. Although he verbally describes the drone as overhead, the actual video clearly shows the drone at a substantial distance from him and barely visible. The video shows the drone at an angle to the videographer, never "over" him. Mr. Cruz never observed the drone operator, nor does he have any idea where the drone operator was located. (Exhibit 4, Depo. Antonio Cruz, pp. 35-38, 81-82; Exhibit No. 5, Cruz Video.)

The video evidence taken by Mr. Cruz clearly supports the drone activity described by the operator Jesse Cablk, (path taken from a point south of Arlington Ave, then to the east and north of the house at 4640 Arlington), and the documentation of the investigation of unpermitted cannabis cultivation at neighboring 4656 Arlington Ave. (Declaration of Jesse Cablk, ¶¶ 7, 8, 9; Declaration of Todd Hoffman ¶¶ 8, 9, 10; Exhibit Nos. 1, 2, 3, 5.)

In any event, Mr. Cruz never saw the operator, nor did he make any contact with Permit Sonoma Code Enforcement about his observations. Mr. Cruz was not a resident of the property and has denied anyone else being present on the property. (Exhibit No. 4, Cruz depo. pp. 25, 29, 35, 81.) Plaintiff Ronald Cupp was not present at 4640 Arlington Ave at the time of the June 1, 2022 drone flight, nor was he living at the Property at the time.(Exhibit 4, Cruz depo. pp. 36-37, 81; Exhibit 15, Cupp depo. pp. 98, 100, 117.)

**B. Damages Claimed**

Plaintiff has failed to properly respond to discovery and failed on multiple occasions to appear for deposition, with one exception, until March 9, 2026[1]. (Dkt. Nos. 99. 106.) He was not a resident of the property and was not present according to his friend Antonio Cruz; he had no reasonable expectation of privacy related to this drone flight. There are no damages actually caused by this drone flight over the road directed toward neighboring property.

## IV. LEGAL ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. FRCP 56*; Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A "genuine" issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it is

[1]Mr. Cupp appeared on December 4, 2025, but his counsel cancelled the deposition about two hours before the start time.

relevant to an element of a claim or a defense, the existence of which may affect the outcome of the suit. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987).

Disputes as to immaterial issues of fact do "not preclude summary judgment." *Lynn v. Sheet Metal Workers Int'l Ass'n*, 804 F.2d 1472, 1478 (9th Cir. 1986). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002). The non-moving party must instead set forth "significant probative evidence tending to support the complaint." *T.W. Elec Serv., Inc.* 809 F.2d at 630-631.

At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). As the Supreme Court has emphasized, "[w]hen the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*, citing (*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–587 (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott*, 550 U.S. at 380 (emphasis in original); *Liberty Lobby, Inc.*, 477 U.S. at 247-48. Further, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380-381.

//

//

**B. Plaintiff Does Not Have A Viable Monell Claim**

**1. No Evidence or Law Supports Liability**

Under the well-established standards of *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), the County may only be found liable for a 1983 claim in federal court if Plaintiff plausibly alleges and proves a pattern, practice, or custom of constitutional violations. See *Monell*, 436 U.S. at 690-91. To establish liability for governmental entities under *Monell*, a plaintiff must prove: (1) the plaintiff possessed a constitutional right of which she was deprived; (2) the local government entity had a policy; (3) this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the policy is the moving force behind the constitutional violation. *Monell*, Id., 436 U.S. at 694; *Dougherty v. City of Covina,* 654 F.3d 892, 900 (9th Cir. 2011).

In June 2022, the County Code Enforcement Division had a policy regarding operating procedures for Unmanned Aircraft Systems ("UAS" or drones) that was reviewed and approved by the Office of County Counsel. (Declaration of Jesse Cablk ¶4; Exhibit No. 7.) Jesse Cablk and Todd Hoffman received training how to operate UAS, according to policy and FAA regulations. (Declaration of Jesse Cablk ¶¶ 4 ; Declaration of Todd Hoffman ¶ 6.) No evidence has been produced by Plaintiff that confirms that this policy is unconstitutional. The County is unaware of any law that the policy is unconstitutional. Prior rulings of this Court recognize the absence of clearly established law that the drone policy itself is unconstitutional.

"A policy or practice requires more than a few occurrences of challenged conduct. A single or even a few isolated and sporadic incidents of unconstitutional conduct are not enough to impose municipal liability under Section 1983." *Prebilich v. City of Cotati*, 2021 U.S. Dist. LEXIS 240549, at *3 (N.D. Cal. 2021)., (citing *Gant v. Cnty. of Los Angeles*, 772 F.3d 608, 618 (9th Cir. 2014)). Liability must be "founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

To plausibly state and prove a claim for municipal liability under *Monell*, a plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Horton v. City of Santa Maria*, 915 F.3d 592, 602-03 (9th Cir. 2019). Under *Monell*, a municipality may be held liable for the violation of an individual's constitutional rights if it "had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he suffered." *Galen v. Cty. of L.A.,* 477 F.3d 652, 667 (9th Cir. 2007). Plaintiff has provided no evidence of a violation of his rights other than his conclusions, nor that any policy or practice was the “moving force” behind any injury to him. The only relevant or actionable drone flight remaining in the First Amended Complaint, took place on June 1, 2022 and was inspecting the neighboring property, not Mr. Cupp’s Property. Plaintiff was not even present at that time.

There is no 1983 liability for Defendants Cablk and Hoffman due to qualified immunity. (ECF No. 42, pp. 5-7.) Even if Defendant Cablk was flying a drone to inspect the ongoing abatement efforts of Plaintiff for the numerous zoning and building code violations, there is no evidence of a violation of Cupp’s civil rights. In fact, the drone flight directed at the unpermitted cannabis cultivation at a neighboring parcel does not establish any unconstitutional policy or practice. This single event or even a few drone flights that actually inspected the Cupp property, do not prove an unconstitutional policy actionable by Ronald Cupp, especially when no clear law exists that evidence that any County employee violated Mr. Cupp’s constitutional rights pursuant to that policy.

There is no evidence that Defendant Cablk’s actions flying the drone were unreasonable for any drone flight near Mr. Cupp’s Property. Defendant Hoffman was not even operating a drone, he just was observing, There is certainly no evidence of unconstitutional conduct or policy. Where the conduct of the individual employees is reasonable, the county cannot be liable because no constitutional violation occurred. *Gregory v. County of Maui*, 523 F.3d 1103, 1109 (9th Cir. 2008) (police officers did not use excessive force; so claims against the county also fail.) See *City of Los Angeles v. Heller*, 475 U.S. 796, 799, (1986) (If a person has suffered no constitutional injury at the

hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.)

To date, Plaintiff offers nothing more than conclusory allegations that the County has a "custom, practice and policy" of violating individual owner's rights through is use of drones. Plaintiff's contentions lack any factual support and are inconsistent with the documented extensive efforts necessary by the County to prompt Ronald Cupp to start bringing the property into code compliance, which are outlined in detail in the Administrative Hearing Officer's Order and Statement of Decision in the Superior Court case. (Exhibit No. 9, 13.) The validity of that Administrative Order has been conclusively proved by the Superior Court, Sonoma County in Case No. SCV-273578. That case has a Final Statement of Decision and is nearing final Judgment. (Exhibit No. 13.)

It was held by the Sixth Circuit that a warrantless inspection conducted by the township's zoning administrator did not amount to a Fourth Amendment violation, even though that inspector drove past a metal gate and several "No Trespassing" signs to observe the property owner's house. *Widgren v. Maple Grove Township*, 429 F.3d 575, 579-80 (6th Cir. 2005). The court noted that the administrator did not violate the Fourth Amendment, even though he entered the Plaintiff's property, because there "is no constitutional difference between police observations conducted while in a public place and while standing in the open fields." Id. at 579. See also *Artes-Roy v. City of Aspen*, 31 F.3d 958 (10th Cir. 1994) (building inspector who actually entered a house to issue stop work order did not violate the Constitution). In *Gygax v. Grule*, 1994 U.S. Dist. LEXIS 18114 (N.D. CA 1994), where plaintiff alleged that the County employees actually drove past multiple "no trespassing" signs, this Court granted a motion to dismiss on an unreasonable search claim and dismissed the pendent state law trespass claims.

**2. Drone Use by County is Constitutional**

Drones are definitely allowed to be used, even without warrants. *California v. Ciraolo*, 476 U.S. 207, 215 (1986) [warrantless observation of the curtilage area from an aircraft located in public navigable airspace was constitutionally permissible]; *Florida v.*

*Riley*, 488 U.S. 445 (1988) [warrantless helicopter surveillance at 400 feet was not unconstitutional under 4th Amendment]. Use of Unmanned Aerial Systems (UAS) by many government agencies are becoming quite common-place and often for uses that have nothing to do with law or code enforcement. They provide tremendous benefits in construction, disaster or emergency investigation, inspections of hazardous conditions, and a myriad of other legitimate uses.

It is also well-established that constitutional law permits officers to make warrantless observations from open fields of items within constitutionally protected areas, *even if they trespass to get to their observation point*. (*United States v. Dunn* (1987) 480 U.S. 294; *Oliver v. United States* (1984) 466 U.S. 170). "an individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home." (*Oliver, supra*, 466 U.S. at p. 178). A subjective expectation of privacy in an open fields area is not an expectation that society is willing to recognize as reasonable. (*Id*. at p. 179.) The term "open fields" is somewhat of a misnomer in that "an open field need be neither 'open' nor a 'field'" and "may include any unoccupied or undeveloped area outside of the curtilage." Id. at 180 n.11.

In *Oliver v. United States,* the Supreme Court found that there was no reasonable or legitimate expectation of privacy in open fields, the officers' actions in entering such open fields without a warrant or probable cause did not violate the Constitution. Because privacy for outdoor activities conducted in fields only extended to the area immediately surrounding the home.

Law enforcement may conduct warrantless observations from open fields; the fact that the observing officer trespasses to get to his or her observation point does not transmute the observation into an unconstitutional search. (*Oliver, Id.* at p. 183.) In defining "open fields area," the court noted that the term "may include any unoccupied or undeveloped area outside of the curtilage. An open field need be neither 'open' nor a 'field' as those terms are used in common speech." (*Id.* at p. 180, fn. 11.)

In *United States v. Dunn*, *supra*, the court held that police officers may observe without a warrant, items located inside constitutionally protected areas as long as the observation point itself is outside the curtilage, in an open field area not protected by the Fourth Amendment. *Dunn, Id.,* 480 U.S. at p. 304. The court concluded that the officers in Dunn did not conduct an illegal warrantless search when they stood in an open field outside the curtilage and looked into the open door of a barn located inside the curtilage.

**3. No Causal Link Exists Between Any Policy and Injury to Plaintiff**

A plaintiff must allege and prove a "direct causal link" between the claimed constitutional deprivation and a municipal policy or custom. *Erdman v. Cochise County, Arizona*, 926 F.2d 877, 882 (9th Cir. 1991), quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).) This requires that a plaintiff actually allege the specific "policy" that caused the constitutional deprivation and resulting injury – mistakes or isolated events of municipal officials do not arise to the level of "policy" sufficient for § 1983 liability. (Id.)

In *Gygax v. Grule* 1994 U.S. Dist. LEXIS 18114 (N.D. Cal.1994) this Court faced similar overbroad conclusory pleading of constitutional, without evidence, just like the present case. The Court granted Defendant county and county employees' Motion to Dismiss as to eleven causes of action including trespass and violations of constitutional rights. "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his [or her] civil rights." See *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) As noted, infra, there is no *Monell* liability without a violation of constitutional rights by an employee, and none is proven. There is certainly no evidence that the drone policy itself is unconstitutional, nor that it was the moving force behind any violation.

**C. No Trespass Occurred Since Plaintiff Did Not Enter the Property**

"The elements of trespass are: (1) the plaintiff's ownership or control of the property; (2) the defendant's intentional, reckless, or negligent entry onto the property; (3) lack of permission for the entry or acts in excess of permission; (4) harm; and (5) the defendant's conduct was a substantial factor in causing the harm." *Ralphs Grocery Co. v.*

*Victory Consultants, Inc*., 17 Cal. App. 5th 245, 262 (2017) The proper person to bring an action for trespass to real property is the person in actual possession. "Possession" is synonymous with "occupation" (*Veiseh v. Stapp* 35 Cal.App.5th 1099, 1105 (2019).) In *Veiseh*, judgement was affirmed for Defendant on a trespass claim since Plaintiff was not the owner in possession of the real property at the time. He had deeded the property to a custodian in trust for his minor daughter.

Trespass is an invasion of the plaintiff's interest in the *exclusive* possession of land. (*Wilson v. Interlake Steel Co.* 32 Cal.3d 229, 233 (1982).): *McBride v. Smith*, 18 Cal. App. 5th 1160, 1174 (2018). The Court in *McBride* sustained a demurrer dismissing the cause of action for trespass because Plaintiff had an easement on the property, but not exclusive possession.

Plaintiff Ronald Cupp was not in possession of the Property at the time of the June 1, 2022; since he did not live at 4640 Arlington, he was not even acting as landlord leaving that to Mr. Cruz; nor was he even present at the time of the drone flight. (Exhibit No. 4 Cruz depo. p. 81; Cupp depo. pp. 117.) No defendant entered 4640 Arlington Ave on that date since the drone was located over public roads taking photographs of another property. There can be no "harm" to Mr. Cupp since he had no expectation of privacy at the Property since he was not in possession. Nothing about the drone flight to inspect the neighboring property is a substantial factor causing any argument of harm to Ronald Cupp.

**D. There is No Basis for an Invasion of Privacy Claim**

As this Court noted in Dkt. No. 73, p,13; "A privacy violation based on the common law tort of intrusion has two elements. First, the defendant must intentionally intrude into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy. Second, the intrusion must occur in a manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc*., 47 Cal. 4th 272, 286 (2009). In *Hernandez*, the California Supreme Court held that a privacy intrusion installing a hidden

camera in an office, was not highly offensive as a matter of law since the employer wanted to provide a wholesome environment for abused children in its care.

"Whether plaintiff has a reasonable expectation of privacy in the circumstances and whether defendant's conduct constitutes a serious invasion of privacy are mixed questions of law and fact." *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 39–40. "If the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Id.* "[C]ustoms, practices, and physical settings surrounding particular activities may create or inhibit reasonable expectations of privacy." *Id.* at 36.

Since the object of the June 1, 2022 drone flight was 4656 Arlington Ave., the drone did not even enter airspace above the Cupp Property, and Plaintiff was not present; Plaintiff has absolutely no reasonable expectation of privacy. Even if the drone was inspecting his Property, Plaintiff was neither living at the Property, nor was he present at the time of the June 1, 2022 drone flight. (Exhibit No. 15, pp. 98, 100, 117.) While not relevant to this motion, he was also not aware of any March 2020 drone flight near the 4640 Arlington Ave. property until about August 4, 2020 when they were filed in response to his request for a restraining order. (Exhibit 15, Cupp depo, pp. 109-112.)

Mr. Cupp claims he was not the landlord for any tenant on the Property. Antonio Cruz was the landlord. (Exhibit 15, Cupp depo. pp. 101-102, 105-106.) Even as landlord Ronald Cupp would have had no reasonable expectation of privacy. As discussed in *Pohlman v. Torres*, 2015 U.S. Dist. LEXIS 69214*17-18 (C.D. Cal. 2015): "As a general rule, the tenant, not the landlord, has a protectable expectation of privacy in leased premises. See *Chapman v. United States*, 365 U.S. 610, 616-17, 81 S. Ct. 776, 5 L. Ed. 2d 828 (1961); see also *United States v. Warner*, 843 F.2d 401, 403 (9th Cir. 1988) ("Landlords . . . do not have authority to waive the fourth amendment's warrant requirement by consenting to a search of premises inhabited by a tenant who is not at home at the time of a police call."); *Mangino v. Incorporated Village of Patchogue*, 739 F.

Supp. 2d 205, 234 (E.D. N.Y. 2010) ("A landlord generally does not have a reasonable expectation of privacy with respect to property that he has rented to a tenant and that is occupied by that tenant."); *Marcavage v. Borough of Lansdowne, Pa*., 826 F. Supp. 2d 732, 741 (E.D. Pa. 2011) (owner of rental properties did not have reasonable expectation of privacy in leased apartments)."

In *Mezger v. Bick*, 66 Cal. App. 5th 76 (2021), the California Court of Appeal, 2d District, affirmed the grant of summary judgment for plaintiff's next door neighbors who recorded conversations with cell phones and security cameras, since no serious privacy invasion had occurred. In determining the existence of offensiveness, one must consider: (1) the degree of intrusion; (2) the context, conduct and circumstances surrounding the intrusion; (3) the intruder's motives and objectives; (4) the setting into which the intrusion occurs; and (5) the expectations of those whose privacy is invaded. *Id.,* 66 Cal. App. 5th at 86-87.

Defendants Todd Hoffman and Jesse Cablk did not enter the Property on June 1, 2022. The drone Defendant Cablk was operating did not enter the airspace over the Property. Even if it did, the drone was obviously being flown well above the ground and just as obviously a great distance from the single-family dwelling and Mr. Cruz.

**E. Defendants Cablk and Hoffman Are Immune from Liability for Trespass or Invasion of Privacy**

While other statutory immunities may apply, at a minimum, Jesse Cablk and Todd Hoffman are immune from liability for trespass or invasion of privacy under California Government Code §§821.6, 821.8 and 820.4

Government Code §821.6, provides:
A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause.

Government Code §821.8, states:
A public employee is not liable for an injury arising out of his entry upon any

> property where such entry is expressly or impliedly authorized by law. Nothing in this section exonerates a public employee from liability for an injury proximately caused by his own negligent or wrongful act or omission.

Government Code §820.4, provides:

> A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment.

Even if Jesse Cablk accidentally flew the drone a short distance over the Cupp property line on June 1, 2022,; California Government Code §821.8, very clearly applies in this case. Entry on public roadways or open fields is entry upon property authorized by law. In this case, Ronald Cupp had already been determined by the Administrative Hearing Officer to have violated numerous building and zoning codes. ( Exhibit No. 9.) By June 1, 2022, Plaintiff had started that abatement process, hence the reason that Antonio Cruz was on the Property that day. Mr. Cruz was monitoring the construction. (Exhibit 4 Cruz depo., p. 35.)

Government Code §821.8 and §820.2 were held to be applicable where a code enforcement officer entered onto property lawfully and made a discretionary decision to declare a property a nuisance. *Ogborn v. City of Lancaster*, 101 Cal.App.4th 448 (2002). (affirming summary judgment on trespass claim.)

Immunity under Government Code §§820.2, 820.4, 820.6, 821.6 and 821.8, was provided to Department of Fish and Game employees where a landowner substantially altered the natural streambed off his property and diverted water without notifying the Department. *Rutherford v. Cal.*, 188 Cal. App. 3d 1267 (1987). Department wardens were allowed to actually enter onto private open fields to enforce fish and game laws.

Absolute immunity to state law claims is also available where, like here, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Government Code §821.6. The Honorable Jon S. Tigar

dismissed a state law claim for intentional infliction of emotional distress where the code enforcement inspection was performed in connection with a code enforcement proceeding. Defendants were absolutely immune from state law claims under Government Code Section 821.6. *Shanko v. Lake Cnty*., 116 F. Supp. 3d 1055 (N.D. CA 2015).

Defendants Jesse Cablk and Todd Hoffman were located a sizable distance from the property at 4640 Arlington Ave. No credible evidence exists that they ever entered the Property on June 1, 2022. The drone did not even enter 4640 Arlington Ave, as clearly shown by Mr. Cruz' actual video footage showing a drone far above ground and a great distance from the videographer. The drone was always being flown from the County Water Agency trail, primarily over public airspace (above roads) to the road north of the Cupp Property. Even if the drone was flown over part of 4640 Arlington Ave., it would have been protected conduct under the California Government Code.

**F. Plaintiff Sustained No Harm Related to the Alleged Drone Activity**

Plaintiff was not aware of the drone flights until he learned about them from some other source. He was not in possession of the Property on June 1, 2022. He also made no attempt to contact Code Enforcement to inquire or complain about the drone flights.

He did not see any health care professionals about the drone activity. (Exhibit No. 15, Cupp depo. pp. 113-114.) He has provided no documentation of injury or harm related to any drone that was flying near his Property in 2020, or the one investigating the neighboring property on June 1, 2022. The only claims which have not yet been adjudicated adversely to Plaintiff, pertain to the June 1, 2022 drone flight inspecting 4656 Arlington Ave.

//

//

//

//

//

//

## V. CONCLUSION

For the reasons stated, the County of Sonoma, and the individual employee Defendants Jesse Cablk and Todd Hoffman, hereby request that this motion be granted, and that judgment be entered in their favor.

Dated: March 11, 2026

JOSHUA A. MYERS, County Counsel

By: Michael A. King
Michael A. King
Attorneys for Defendants
County of Sonoma, et al.